BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

*Attorney for Defendant and Counterclaim Plaintiff Daniel Morel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**AGENCE FRANCE PRESSE**

        **Plaintiff,**

    **v.**

**DANIEL MOREL**

        **Defendant and**
        **Counterclaim Plaintiff**

    **v.**

**AGENCE FRANCE PRESSE,**
**GETTY IMAGES, INC., CBS, INC.,**
**ABC, INC.,**
**and (AFP and Getty Licensees et. al).**

        **Counterclaim Defendants**

_____

**Case No: 10-cv-2730 (WHP)**

**ECF Case**

**DANIEL MOREL'S ANSWER, AFFIRMATIVE DEFENSE AND COUNTERCLAIMS**

**JURY TRIAL DEMANDED**

     Defendant, Daniel Morel (hereinafter "Mr. Morel"), by and through his attorney, Barbara T. Hoffman, hereby answers the Complaint of Plaintiff Agence France Presse ("AFP") in this action, dated March 26, 2010, as follows:

<u>**PARTIES**</u>

     1.     Denies knowledge or information sufficient to form a belief as to the allegations of the Complaint and therefore denies the same, except on information and

belief admits that AFP is an international wire service that provides photographs to subscribers and customers worldwide.

2. Admits that Mr. Morel is a photojournalist who conducts business in this district as a photojournalist and copyright licensor and denies that Morel has committed tortious acts in this District or any other District.

## NATURE OF THE ACTION

3. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶3 of the Complaint and therefore denies the same, except admits that Plaintiff has asserted claims for declaratory relief and commercial disparagement.

4. Denies the allegations contained in ¶4 of the Complaint, except admits that Mr. Morel has asserted that Plaintiff has infringed Mr. Morel's rights in and to at least thirteen (13) of his copyrighted works, and further admits that Mr. Morel's current attorney Barbara T. Hoffman has sent correspondence and had settlement discussions with AFP's counsel as well as AFP's Washington office prior to AFP's retention of outside counsel, and further admits that Mr. Morel instructed his counsel to request third parties to cease and desist from any and all unauthorized use of his copyrighted photographs. The letters state *inter alia*, "at no time has Mr. Morel licensed either AFP and/or Getty Images ("Getty") the right to license the "Morel Photographs.""

5. To the extent that ¶5 states conclusions of law, no response is appropriate or required. Denies the allegations of ¶5, except admits Mr. Morel posted photographs on Twitter.

6.      Admits the allegations of ¶6, to the extent that Mr. Morel asserts rights in the photographs and that AFP's actions have infringed his copyright and other intellectual property rights.

7.      States that the allegations contained in ¶7 of the Complaint are conclusions of law as to which no response is appropriate or required, but that to the extent any response is required, denies that this Court has subject matter jurisdiction over Plaintiff's claim.

8.      States that the allegations in ¶8 of the Complaint are conclusions of law as to which no response is appropriate or required.

9.      States that the allegations are conclusions of law as to which no responsive pleading is appropriate or necessary, but that to the extent any response is required, admits the Court has personal jurisdiction over Mr. Morel.  Admits that the Defendant is subject to the personal jurisdiction of this Court and further admits that Defendant through his attorney wrote to AFP/Getty and USA Today, the Boston Globe, and other Getty customers, stating that "At no time has Mr. Morel licensed either Agence France Presse ("AFP") and/or Getty Images ("Getty") the right to license the Morel Photographs. Moreover, both AFP and Getty, have been informed that any permission or license granted is without Mr. Morel's approval."  Denies the remainder of the allegations set forth in ¶9.

10.     States that the allegations contained in ¶8 of the Complaint are conclusions of law as to which no responsive pleading is appropriate or necessary, but that to the extent any response is required, admits that venue is proper in this District.

## COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND LICENSE

11.     Defendant repeats and realleges each and every response to ¶1-10 as is fully set forth herein.

12.     States that the allegations contained in ¶12 are conclusions of law to which no response is appropriate or necessary, but that to the extent any response is required, admits he posted at least thirteen (13) photographs on Twitter in high resolution and that thirteen (13) digital images were stolen from his Twitter account,and denies the rest of the paragraph.

13.     States that the allegations set forth in ¶13 are conclusions of law to which no response is appropriate or necessary, but to the extent any response is required, denies the same.

14.     States that the allegations contained in ¶14 are conclusions of law to which no response is appropriate or necessary, but to the extent that a response is required, denies knowledge or information sufficient to form a belief as to the allegations in ¶14 and therefore denies the allegations of ¶14.

15.     Denies knowledge or information sufficient to form a belief as to the allegations of ¶15 and therefore denies the same.

16.     States that the allegations contained in ¶16 are conclusions of law to which no response is appropriate or necessary, the same is denied.

17.     Denies the allegations in ¶17.

18.     Denies knowledge or information to form a belief as to the allegations contained in ¶18 of the Complaint and therefore denies the same, except admits that AFP

was contacted by Mr. Morel's attorneys, in house counsel of Corbis and Barbara T. Hoffman.

19.     Denies the allegations of ¶19 except admits that Mr. Morel maintains that AFP has infringed his copyright and other intellectual property rights.

20.     States that the allegations contained in ¶20 of the Complaint are conclusions of law as the which no responsive pleading is appropriate and necessary, but to the extent a response is required, denies the same.

21.     States that the allegations contained in ¶21 of the Complaint are conclusions of law as to which no responsive pleading is appropriate or necessary, but to the extent a response is required, denies the same.

22.     States that allegations contained in ¶22 of the Complaint are conclusions of law as to which no responsive pleading is appropriate or necessary, but to the extent a response is required, denies knowledge or information to form a belief as to the allegations contained in ¶22 of the Complaint and therefore denies same, except admits the Plaintiff requests the Court enter an Order of non-infringement for Plaintiff.

23.     ¶23 states conclusions of law to which no response is necessary or required, to the extent a response is required, denies the same.

## COUNT II

## COMMERCIAL DEFAMATION

24.     Mr. Morel repeats and re-alleges his responses to paragraphs ¶1-23.

25.     Admits that his attorney, Barbara T. Hoffman sent correspondence to third parties, including but not limited to the Boston Globe, the Denver Post, the New York Times, USA Today, and other third parties.  Mr. Morel is without sufficient information

to admit or deny whether USA Today, the Boston Globe, and the Denver Post are subscribers or customers of AFP, or subscribers or customers of Getty Images.

26. States that the allegations contained in ¶26 are conclusions of law as to which no responsive pleading is appropriate or necessary, but that to the extent any response is required, denies the same.

27. States that the allegations contained in ¶27 are conclusions of law as to which no responsive pleading is appropriate or necessary, but that to the extent any response is required, denies the same, except admits that AFP is infringing upon Mr. Morel's photographs and that AFP did not have a license to distribute Mr. Morel's photographs.

28. States that the allegations contained in ¶28 are conclusions of law and that no response is appropriate or required, but to the extent any response is required, denies the same.

29. Denies the allegation of ¶29.

30. States that the first sentence inappropriately refers to settlement discussions, denies the remainder of the sentence.

31. Denies the allegations of ¶31.

32. States that the allegations contained in ¶32 are conclusions of law as to which no responsive pleading is appropriate or necessary, but that to the extent any response is required, denies the same, except admits that AFP is infringing upon Mr. Morel's photographs and that AFP did not have a license to distribute Mr. Morel's photographs. Affirmatively states that any damages suffered by AFP to its business

reputation, customer relationships, and/or damages incurred are caused by its willful and reckless disregard of Mr. Morel's intellectual property rights.

33.     Denies the allegations of ¶33.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief can be granted.


## DEFENDANT-COUNTERCLAIM PLAINTIFF DANIEL MOREL'S COUNTERCLAIMS

### NATURE OF THE ACTION AND THE RELIEF SOUGHT

34.     On January 12, 2010 at 4:53 p.m., a catastrophic earthquake of a magnitude of 7.0 struck Southern Haiti, devastating the capital city of Port au Prince.

35.     Daniel Morel ("Counterclaim Plaintiff" or "Mr. Morel"), an award winning professional photojournalist was in Haiti when the earthquake struck. Narrowly escaping, he was one of the few professional photographers on the ground when the quake struck and one of even fewer able to transmit the tragedy and human suffering through his powerful and emotional images ("Haiti Earthquake Photographs").

36.     Mr. Morel's counterclaims arise out of Plaintiff and Counterclaim Defendants Agence France Presse, Getty Images, Inc. willful and blatant violation of Mr. Morel's intellectual property rights in his photographs of the earthquake in Haiti ("Haiti Earthquake Photographs").

37.     Plaintiff-Counterclaim Defendant AFP and Counterclaim Defendants have used the Haiti Earthquake Photographs without Mr. Morel's consent, in violation of the Copyright Act of 1976 as amended 17 U.S.C. §101, 106 and 501 et. seq. Namely, notwithstanding Mr. Morel's ownership of the original content of the Haiti Earthquake

Photographs, AFP and Getty, fully aware of Mr. Morel's Copyright, infringed, Mr. Morel's rights in thirteen (13) of the Earthquake Photographs , by displaying, distributing, selling and reproducing the Iconic Images worldwide, knowing they were stolen from Mr. Morel, under the name "AFP/Getty, Lisandro Suero," and then "AFP/Getty, Daniel Morel" (the "Infringing Iconic Images").  The Infringing Iconic Images were reproduced, distributed, sold and licensed to AFP/Getty subscribers, clients and customers, including the New York Times, the Boston Globe, USA Today, The Age (Australia), the Washington Post and other news outlets worldwide from the evening of January 12, 2010 and thereafter.

38.     Upon information and belief, AFP and/or Getty from January 12 distributed, licensed and sold the Iconic Images *inter alia* to National Public Radio ("NPR"), National Geographic, Vanity Fair, Newsweek, MTV and Time Inc., who were induced to infringe and did infringe Mr. Morel's copyright by incorporating said images in news broadcasts, online photo-galleries, magazines and other media outlets which infringement continues as of this date with the exception of NPR and Vanity Fair.

39.     Upon information and belief, AFP and/or Getty from January 12 distributed the Iconic Images to Christian groups, and relief organizations *inter alia* in Haiti, including the Jehovah's Witness Watchtower, the Presbyterian Church in Canada, Soles4Souls, who were induced to infringe and did infringe Mr. Morel's copyright by incorporating said images in news broadcasts, online photo-galleries, websites, newsletters, posters, such licensees both editorial and commercial.

40.     Counterclaim Defendants CBS, Inc. and ABC, Inc. have also used Mr. Morel's Iconic Images.

41. Nowhere in Plaintiff's Complaint for declaratory judgment and other relief does it mention that Plaintiff and Counterclaim Defendants have made and continue to receive substantial benefit and revenue from the reproduction, display and distribution from Mr. Morel's Iconic Images to devastating commercial harm and impact on Mr. Morel's professional reputation and financial situation, including lost sales, lost opportunities to license and diminution in value of his copyrights.



See http://forum.nikonpassion.com.[*]

---

[*] Translation of caption above: Controversy in Haiti. One negative, two photographs. Before reproduction in the media, the photo appeared on Twitter, on the accounts of Daniel Morel and Lisandro Suero…24 hours later, the image was removed from Mr.

42. Iconic Infringing Image #1, set forth above, pirated by AFP, appeared on front pages of newspapers worldwide, on websites, and television and cable news networks, local and foreign, via satellite and other transmissions, and continues to be displayed and distributed worldwide on the internet and newspaper photo galleries with the logo "AFP/Getty" and the name "Lisandro Suero" or "Daniel Morel"

43. In light of Agence France Presse and Counterclaim Defendant Getty Images, Inc.'s unauthorized use of the Iconic Images in disregard of Mr. Morel's copyright and other intellectual and commercial rights, Mr. Morel asserts claims under the Copyright Act 17 U.S.C. §101, 106 et. seq., (the "Copyright Act"), and/or for contributory infringement of Mr. Morel's copyright, and/or vicarious infringement against Counterclaim Defendants and for the removal or alteration of copyright management information from the Iconic Images to conceal or induce infringement of copyright under 17 U.S.C. §1202(b)(1) and (3) against Agence France Presse and Getty. Defendant Daniel Morel further asserts claims against Plaintiff and Counterclaim Defendant Getty under §43(a) of the Lanham Act, 15 U.S.C. §1125(a) and §1125(b) for misattribution, false description or misleading the facts with respect to sponsorship or affiliation. Pursuant to the Copyright Act 17 U.S.C. §504(c) and 505, Counterclaim Plaintiff seeks actual damages or maximum statutory damages for willful infringement, for each infringement by each of the named Counterclaim Defendants.

**PARTIES**

44. Counterclaim Plaintiff Daniel Morel, a veteran, award winning freelance photojournalist, born in Haiti, has been working in and photographing the country for

---

Morel's account, Morel is a resident for years in Haiti, "we purchased the rights from him," assured AFP. The images also disappeared from the account of Lisandro Suero.

more than twenty-five years.  Mr. Morel was an Associated Press resident photojournalist for fourteen years, during which time he received a Citation for Excellence from the Overseas Press Club of America and the AP Award of Excellence.  He currently spends time between Port au Prince, Haiti and New York, New York.

45.     Upon information and belief, Counterclaim Defendant Agence France Presse ("AFP") is an international French news agency, with its principal US office in Washington, D.C.  On information and belief, it has offered an international photo service to thousands of clients, mainly newspapers, since 1985, delivered by satellite as a "photo wire" or accessible on a web-based database called Image Forum.  AFP is present in 165 countries and provides services in eight (8) main languages (French, English, Spanish, German, Italian, Portuguese, Arabic and Chinese), in the form of photos, graphics, texts and multi-media.

46.     On information and belief, Counterclaim Defendant Getty Images, Inc. ("Getty") is one of the world's largest imagery companies, creating and providing a collection of still and moving images around the globe.  Getty licenses its images to newspapers, magazines, advertising, film, television, books and websites.  On information and belief, Seattle headquartered Getty is a global company and has customers in more than fifty (50) countries.  Upon information and belief, AFP/Getty entered into a strategic partnership in 2003.  Upon information and belief, under the terms of the Agreement, Getty has exclusive rights for the marketing of AFP images in North America and the United Kingdom.

47.     Upon information and belief, Counterclaim Defendant CBS News is a division of CBS Corporation, a mass media company with constituent parts, with its principal corporate headquarters in New York, New York.

48.     Upon Information and belief, ABC, Inc. ("ABC") is a mass media company, including ABC National News and local TV stations, including its Fresno affiliate and WABC News, New York, it's New York affiliate, cable, radio, and internet business with its principal headquarters in New York, New York.

49.     Counsel for Counterclaim Defendant Agence France Presse has agreed to defend the New York Times (Boston Globe) and the Age (Sydney, Australia), Getty Images, Vanity Fair.

50.     Several other Getty licensees may also be added as named Counterclaim Defendants.

51.     Counterclaim Plaintiff is unaware of the names and capacities, whether individual, corporate, or non-profit, of the subscribers, customers, clients and other individuals who have licensed the Iconic Images from AFP or Getty and therefore sue these defendants by their fictitious names.  Counter Plaintiff will seek leave to amend this Complaint when the identities of the Doe defendants are known and if their presence as parties is required.

**JURISDICTION AND VENUE**

51.     This action asserts counterclaims arising under the Copyright Act, 17 U.S.C. §101 et. seq. (the "Copyright Act"), and the Lanham Act §43(a) 15 U.S.C.

§1125(a) ("Lanham Act"). This Court has federal jurisdiction over Daniel Morel's counterclaims pursuant to 28 U.S.C. §1331, 1338(a), and 1338(b).

53. Upon information and belief, this Court has personal jurisdiction over all Counterclaim Defendants because they have committed tortious acts outside of New York causing injury within the State of New York, regularly solicit business in New York, and derive substantial revenue from interstate commerce. Upon information and belief, this Court also has personal jurisdiction over all Counterclaim Defendants because they transact business in New York and/or maintain corporate headquarters in New York. Additionally, this Court has personal jurisdiction over AFP and Getty because they contract to supply goods or services in New York. Further, this Court has personal jurisdiction over AFP. It has chosen to avail itself of the laws and protections of this Court and Mr. Morel's claims arise from the same series of operative facts that AFP alleges.

54. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (d).

## FACTUAL BACKGROUND

### Daniel Morel and his Photography

55. Daniel Morel was born in Haiti in 1951. The day he discovered photography wasn't the happiest of days, but it set the stage for the rest of his life. It was Nov. 12, 1964, in Port-au-Prince, Haiti. The Haitian government canceled school and people came from miles to watch the execution of Louis Drouin and Marcel Numa - the last two survivors of a 13-member group that called themselves "Jeune Haiti," meaning Young Haiti. The group had planned to overthrow the regime of Franois Duvalier, also

known as "Papa Doc."  The next day, a photographer, who shot the rebels' deaths frame by frame, posted them in the front of his studio. Morel said it was a gruesome sight for a young child - but it made him realize that he wanted to take pictures too.  "I thought that by being a photographer, I would learn not to be scared of anything."

56.     James North on November 29, 2009, in an article entitled "Haitians, like Palestinians, are misrepresented in the mainstream press," wrote:

> If you have looked at a newspaper article about Haiti over the past 25 years, the chances are excellent that you have seen the work of the photographer Daniel Morel. He is himself Haitian; he has been a witness to much of the turbulence in his country; and other journalists have credited him with saving their lives in the streets of Port-au-Prince.  It is not easy to work as a journalist in Haiti, where people are dignified but poor, and lashed at times by political violence and natural disaster.  Morel's thought-provoking photos captured moments of pain, fear, death, and anarchy.

57.     North continues that "Morel enjoys an excellent reputation among his colleagues, and he has pulled some of them out of the line of fire more than once.  Mr. Morel uses his past U.S. Military experience to stay safe in the streets."

58.     Mr. Morel's philosophy of photojournalism is equally critical of parachute photojournalism (journalists who land in a country to file stories and images) and art photography: "When I take peoples' pictures, I don't just stick the camera in their face. When people see me in Haiti, they know I'm there to spread the word, to spread the news. So they're always happy to see me. When they see me they know the world is going to learn something about their condition."  Mr. Morel, in an interview with the New York Times in February, 2010, stated, "maybe I put 15% of art in my picture and the rest is history, is documentary.  Because if you put too much art, you play with history."  See *Media Nation* by Dan Kennedy www.dankennedy.net.

59.     Mr. Morel was a resident photographer for The Associated Press in Haiti for fourteen years, until 2004. His photos have appeared on the front pages of such world-renowned publications as the New York Times, Vanity Fair, Newsweek, Toronto Star, Paris Match and others. He also served as the first Haitian bureau chief for the New York-based Haitian Times. He was also a freelance photojournalist for the wire service Reuters and many other leading publications. From 2004 he became less and less interested in news photography and in working with or for a wire service. He wanted to own the rights to his photographs and work on long term documentary photography and film projects as an independent photojournalist to develop his work beyond traditional media outlets. "Afterward is more important to me. Afterward is when you get the real news. Photojournalism is not about taking pictures of dead bodies. Photojournalism is about the beauty of humanity—happiness and pain."

60.     Daniel Morel's commitment to the documentation of the history of the Haitian people is not limited to a commitment of time and money. He has often put his life in jeopardy to gain access and report the political situation and catastrophes and natural disasters of Haiti.



Caption: A boy cries over the body of his brother, allegedly shot by United Nations soldiers in April 2005.

61.     In December, 2005, a photo exhibit of 45 images taken in Haiti by Mr. Morel was exhibited in New York. This photojournalistic exhibition entitled *Haiti Eyes* focuses on the tumultuous and often violent times and events from 2003-2008 in Haiti.

The exhibition was divided into four subject areas: *Ouster* depicts demonstrations leading to the February 2004 expulsion of Aristede; *Desperate Belief* includes religion and practice photographs, a welcome respite amidst the other's cruel realties; *Violence*, a third segment includes, "many heart-wrenching photos of gang violence and UN activity. Aggression and its aftermath cross paths in one of Mr. Morel's photographs below from this segment. The final segment is called *In Dependence*, an irony of the word 'independence'. As Tequila Minsky, a freelance photographer for the New York Times wrote in her review of the exhibition in Heritagekonpa Magazine (December 13, 2005, www.heritagekonpa.com), dependence on outsiders (for aid, food, help) is a frequent need for many impoverished Haitians. In these images, those asking for help are victims this time of nature--the flood and hurricane that befell Haiti in 2004.

62.     Mr. Morel has also produced two documentaries: "Unfinished Country," a PBS WIDE ANGLE film about Haiti's attempts to overcome chaos told by Haitians; and the Circle of Change film "A Quiet Revolution in Haiti," which focuses on grassroots reform of educational and leadership practices.

63.     In 2007, Mr. Morel received an Open Society Institute Photography project distribution grant for his New York show, "Anfas Listwa nou -Facing Our History," was first shown to many groups in Haiti, especially students. He did not put the explanatory captions right next to his photographs because he did not want to distract from the images themselves.

64.     Mr. Morel's biggest project – he has already been working on it for a

decade – is a book and film about the Haitian band called Septentrional d'Haiti, from the port of Cap Haitien in the North of Haiti, which has been making music for six decades.

65.     It is not a coincidence that Mr. Morel's photographs stand out for their iconic quality and newsworthiness by virtue of his creative process, judgment and expertise.  As a photojournalist, he seeks not only to make a fine art or beautiful photograph, but to carefully seek out those elements that might make a compelling photograph that also is relevant to the story at hand.  Such elements include his choice of camera and lens, the timing and selection of subject matter, the angle, lighting and shadows, depth of field, color contrast, symmetry, scale and focus, as well as capturing peak action, emotion or any number of other unique visual elements.  It requires the creative talent and ability of a photographer of Mr. Morel's dedication and expertise to recognize these elements and even when confronted with catastrophic images of pain and suffering to find a way to create a compelling photograph.

66.     The outstanding quality and significance of Daniel Morel's work has been recognized over the years with numerous awards.  He received a Citation for Excellence from the Overseas Press Club of America and the AP Award of Excellence during his 14 years as an Associated Press resident photojournalist. Morel was co-recipient of the 2004 Sam Chavkin Prize for Integrity in Latin American Journalism.  These awards reflect recognition within the photographic journalism communities of the extent to which Mr. Morel's photographs have captured many significant moments in Haiti's recent history.

**The Haiti Earthquake and the Twitter Posts**

67.     On January 12, 2010 at 4:54 p.m., the most catastrophic earthquake in the Caribbean region in 200 years struck Haiti.  Upon information and belief, an estimated 230,000 people died and 1.5 million were left homeless.

68.     Daniel Morel was with an American journalist, Eric Parker in a school in Grand Rue, Port au Prince when the earthquake struck. Mr. Morel had been teaching the young students for the past three days how to make their own Facebook page and Mr.



Iconic Image 2

Morel was taking photographs to put on their Facebook pages, while his friend was buying art from the students.

69.     "I was about ready to leave and the earth started shaking.  I got out in the street, it looked like the street was hit by 500 cruise missiles at the same time.  My journalist friend was buried.



Iconic Image 3

After we dug him out, we hit the street to obtain daylight shots.  Everybody was panicked.  Sobbing and dazed people wandered around the street.  It was rush hour.  Lots of people were dead.  Then I photographed until dark.  I saw a lot of injured and dead—people crying for help.  Buildings collapsed—the Natural Cathedral,

the Presidential Palace, the Palace of Justice, my father's bakery.  The principal manifestations, institutions, and symbols of my Haitian childhood were destroyed in less than a minute.  There were aftershocks every 15 to 20 minutes which lasted from three to five seconds."

70.     Few professional journalists and photographers were in Haiti at the time of the quake and even fewer had access to the internet.  Upon information and belief, Mr. Morel's Haiti Earthquake Photographs, including the Iconic Images, were among the first photographs by a professional photojournalist taken before sunset on January 12, 2010 to show the evolving tragedy to the world.

71.     At sunset, it was dark, there was no electricity or communication—all phone networks were down.  Mr. Morel, nevertheless from the still-standing landmark Oloffson Hotel, with the assistance of his friend Richard A. Morse, manager of the hotel, was able to use a laptop to connect to the internet and have Mr. Morse open a Twitter account with the username "PhotoMorel" for him.  Mr. Morel had no prior experience with Twitter, the social networking site and did not read the Terms of Service.  A copy of the Twitter Terms of Service and rules governing usage by third parties is attached hereto as Exhibit A.

72.     With the help of his friend, he was able to upload the Haiti Earthquake Photographs, including the Iconic Images (1-13) on TwitPic PhotoMorel at approximately 5:20 p.m. (EST 17:20)[*].  Iconic Image 1 appears on page 9, Iconic Images

---

[*] All times throughout this Counterclaim Complaint are Eastern Standard Time, which is the local time for New York City and Port au Prince, Haiti.

2 and 3 appear on page 18.  Iconic Images 4-13 appear below.  To the extent that under the circumstances a specific intent in posting the images on Twitter can be attributed to Mr. Morel given the circumstances, with the assistance of Mr. Morse, he posted his images online and advertised them on Twitter in the hopes that his images would span the globe to inform the world of the disaster, and that he would also receive compensation and credit as a professional photographer for breaking news of the earthquake before the news and wire services.

**Iconic Image 4**



**Iconic Image 5**





**Iconic Image 6**

**Iconic Image 7**



**Iconic Image 8**



**Iconic Image 9**



**Iconic Image 10**



**Iconic Image 11**



**Iconic Image 12**



**Iconic Image 13**



**Lisandro Suero Pirates the Iconic Images**

73.     Upon information and belief, on or about 5:28 p.m., Lisandro Suero of the Dominican Republic, pirates Daniel Morel's Iconic Images and places them on his TwitPic page.  Lisandro Suero gives a Dominican cell phone number as his contact number.  Dominican Republic cell phones do not function in Haiti.  Lisandro Suero also offers the Iconic Images for credit and copyright.  The Iconic Images have no captions and nothing on his Twitter page suggests, represents or indicates he is a photographer, or in Haiti.  Copies of the Lisandro Suero TwitPic page are included as Exhibit B.  Lisandro Suero has no history as a photographer.

74.     At 6:01 p.m. EST, Lisandro Suero tweets that he has exclusive photographs of the catastrophe for credit and copyright:



http://twitpic.com/photos/LisandroSuero IMAGENES EXCLUSIVA DE LA CATASTROFE POR FAVOR LOS CREDITOS!!! COPYRIGHT! By: Lisandro Suero!!
7:01 PM Jan 12th via web

**News Media Contact Mr. Morel to Acquire the Iconic Images**

75.     At 7:59 p.m. Ryan Osborn, a producer at NBC News contacted Mr. Morel via e-mail "saw on Twitter you have pictures of situation in Haiti," and at 8:05 p.m. requested to "see what the pictures look like before talk about cost."

76.     At 8:13 p.m. Matthew Craig a Photo Editor from the Wall Street Journal contacted Mr. Morel offering to "publish [the Iconic Images] for $$"; at 8:49 p.m., Mr. Morel was also contacted by Jon Protas from the Wall Street Journal; and at 8:50 p.m.,

Taylor Umlauf, a photo editor from the Wall Street Journal, contacted Mr. Morel

"looking for photos of the earthquake damage in Haiti," and at 8:56 p.m. offered

"$[amount omitted] for the first pic."

77.      The Iconic Image

purchased by the Wall Street Journal

appears on www.wsj.com and to the

right:



78.      At 8:19 p.m. Steven McKinley Assistant Photo Editor from Canwest News

Service contacted Mr. Morel regarding "getting some pix from Haiti."  Attached hereto

as Exhibit C is a record of e-mail and Twitter correspondence, received in the early hours

after the earthquake, between Daniel Morel and various news outlets interested in buying

his Haiti Earthquake Photographs from January 12, 2010.

79.      In an article appearing in the British Journal of Photography March 2010

issue "Buy My Pic" March 17, 2010 (www.bjp-online.com), the author states:

> Social networking sites can be treasure chests of content for news agencies, but
> they can also become a source of embarrassment, especially when fake images
> find their way into print.

80.      The author then goes on to say:

> On 12 January, in the late hours of the evening, Santiago Lyon (@slyon66),
> director of photography for Associated Press, was on Twitter. A few hours before,
> a magnitude 7.0 earthquake hit Haiti, killing more than 200,000 people. At
> 11.32pm, Lyon sent a message to Daniel Morel. The man, based in Haiti, had just
> posted on Twitpic an image of the earthquake's aftermath. Lyon's message went

straight to the point: "Santiago Lyon of the AP here. Great work so far in a difficult situation. Any chance we can do a deal for your images? Can I contact you? Would like to chat if possible."

Searching social networks for "eyewitness content" has become standard procedure for news organisations, says Lyon. However, they must have systems in place to authenticate the images. At AP, "we assess each photo on a case-by-case basis, only selecting the images that we feel are coherent and newsworthy and actually show the events they purport to show."

Then follows the difficult task of identifying the copyright owner. "We search for contact information, we call, email, or comment on the photo asking the person to get in touch with us."

81.     The article then describes that Reuters, another of the major news services, uses the same procedures as followed by AP:

Reuters uses the same procedures, Thomas Szlukovenyi, global editor of pictures, tells BJP. "We occasionally use pictures from social networking websites on major breaking news stories, but they go through an extensive verification and editorial evaluation process before we commit to using them and proceed with the photographer's payment," he says. "Haiti was a good example as we were not comfortable using the very early pictures available on social websites. Since we could not reach the people who posted the image, we did not use them. Our team of photographers was shortly in place and we were able to show the world ourselves."

Once an image has been authenticated, it is distributed to the wire's subscribers and members. "We try to credit using this phrasing: 'In this image provided by Person's Name (we add the occupation if we know it)'," says Lyon. "We don't credit images just to social media. We try to identify an individual who provided the image and always try to get permission from that individual to use the image."

## AFP Pirates Mr. Morel's Iconic Images

82.     Upon information and belief, at approximately 7:12 p.m. Vincent Amalvy, photo editor from AFP, contacts Lisandro Suero via Twitter regarding his TwitPic.

83.     At 9:41 p.m., Vincent Amalvy from AFP e-mails Mr. Morel, asking "do you have pictures?" On information and belief, attached hereto as Exhibit D is a partial record of Mr. Amalvy's Twitter and e-mail correspondence relevant to the acquisition of the Iconic Images. Upon information and belief, certain tweets were removed from both Mr. Suero's account and Mr. Amalvy's account after Mr. Morel's counsel contacted AFP since there are no new posts on the Suero Twitter page from approximately 9:45 p.m. on January 12, until the early morning of January 13, 2010 and nothing to show that the Iconic Images were uploaded from Lisandro Suero's TwitPic, by AFP, which uploading AFP admits.

84.     On information and belief, after AFP saw the images on Mr. Morel's TwitPic on or about 9:45 p.m. EST, but was unable to contact him. AFP uploads thirteen (13) Infringing Iconic Images from the TwitPic page of Lisandro Suero. The images are distributed worldwide to all AFP subscribers through its wire service and other clients and customers of Getty and placed in the image database of both AFP and Getty for distribution, licensing for managed rights, editorial and commercial use. The Iconic Images were labeled "AFP/Getty/Lisandro Suero." By way of example, copies of some of the Infringing Iconic Images are attached hereto as Exhibit E.

85.     Upon information and belief, AFP willfully or with reckless disregard of Mr. Morel's rights, in its rush to receive credit for the news-breaking photographs to the world, failed to use due diligence to ascertain the identity of Mr. Suero, or to verify his authorship of the photographs. No standard or traditional good journalistic practices were followed, practices particularly necessary to assure the authenticity of the content

and information when the source is a social networking site. Either AFP has no reliable process in place to verify the authenticity of the image or the accuracy of the source, or AFP failed to use such process or procedure.

86.     What steps did AFP take to verify Suero's identity? From where were the images sent? Did they call Suero and ask him where he was when the images were taken? Did they contact other AFP resident photographers in Haiti or the Dominican Republic to inquire whether anybody had ever heard of Lisandro Suero? E-mails indicate that AFP was in contact with at least one AFP photographer on the ground in Haiti on January 12, 2010.

87.     Upon information and belief, AFP was less concerned about verifying the authenticity of the Iconic Images because AFP knew the Suero images had been stolen from Daniel Morel, a well known resident Haitian photographer and therefore, notwithstanding the total lack of evidence that Suero was in Haiti to take the photographs, knew that the photographs were reliable images.

Image from [www.boston.com](http://www.boston.com)
March 1, 2010



10 Haitians walk past damaged buildings on January 12, 2010 in Port-au-Prince Haiti after a huge earthquake. (LISANDRO SUERO/AFP/Getty Images) ⊞

Image from [www.washingtonpost.com](http://www.washingtonpost.com), downloaded 4/14/10

