

As of 4/16/2010, Newsweek (above) and the San Antonio Times (right) continue to credit "Lisandro Suero/AFP/Getty Images" for Mr. Morel's Iconic Image.

125. Time, Inc., in partnership with CNN, as of April 17, 2010, displayed on its website five of the Infringing Iconic Images, notwithstanding a cease and desist letter from Mr. Morel's counsel on March 9, 2010.



126. By letter dated March 12, 2010, Time Inc.'s deputy general counsel stated that Time had referred Mr. Morel's claim to Getty, from whom they licensed the images.

127. On March 9, 2010, Mr. Morel's counsel wrote to the Washington Post, requesting that it change the credits on its photo section on the Haiti Earthquake site to properly credit Mr. Morel. Mr. Morel did not request a takedown. As of April 18, 2010 Lisandro Suero is credited.



Iconic Images from www.washingtonpost.com, credit "Lisandro Suero AFP/Getty Images" as of 4/18/2010

128. Attached hereto as Exhibit M are examples of a small number of the other Infringing Iconic Images uses by the media, charities, aid organizations, and magazines, licensed by AFP and Getty as the attached Google search conducted March 22, 2010 indicates. Only NPR has noted any change as of April 18, 2010.

129. Conflict photographers on the first flights may be more experienced in reacting to events rather than telling a story. Twitter offers a real opportunity for independent distribution of photographic images beyond the one photo wire service or the Iconic Images; however, not if images are free for the taking for all media and commercial uses and the copyright management, such as name and source, are removed.

130. If the argument of AFP/Getty were to prevail and such activity were to become the norm it would ruin the livelihoods of the many photojournalists. It would also harm the interests of other content owners who rely on fair compensation for their work in order to support their creative endeavors. Licensing is an important source of revenue for content creators. This is especially true for photographers and photojournalists in these difficult times where cheap stock images provided by amateurs compete with quality images taken by photojournalists like Mr. Morel. The rule of law that AFP/Getty argues here essentially would permit someone to take and commercialize a content owner's property without attribution or reasonable compensation, undermining the long-established practice of using such revenue streams to support the ongoing creation of new content by these photojournalists.

131. In an article entitled "Fair Game: Intellectual Property in the Digital Age," (www.bigthink.com/ideas) blogger Francis Reynolds comments:

> The means to plunder grow more prevalent every day, so much so that blogger Dave Taylor feels the need to ask, "is copyright irrelevant?"
>
> …while society may seem to be moving in that direction, no matter how much this "plundering" may seem to chip away at our intellectual hierarchies, the politics of allusion and borrowing continues to be shaped by the existing power dynamics of ownership. That's why advocates of a world of free and therefore free-flowing content sometimes risk shortchanging those who have historically been wronged by cultural and intellectual appropriation or outright theft.

> …when ideas, sounds, images are taken without consent, in today's world, someone ends up losing in terms of getting the credit and in terms of getting the money that sometimes accompanies that credit.

**FIRST COUNTERCLAIM**
**COPYRIGHT INFRINGEMENT**
(17 U.S.C. § 101 et seq.)
("AFP" and "Getty")

132.   Mr. Morel incorporates by reference ¶¶ 1-128 above as if fully set forth herein.

133.   On or about February 23, 2010, Mr. Morel, by his attorney, submitted for expedited copyright registration the January 12, 2010 Haiti Earthquake Photos, which included the Iconic Images. A copy of the registration certificate #VA 1-701-374 is attached hereto as Exhibit O with the Iconic Images submitted for registration in a timely fashion within three months of the publication of the Iconic Images or within one month of Mr. Morel's knowledge of the infringements set forth herein.

134.   By the actions alleged above, Counterclaim Defendants AFP and Getty have willfully infringed and continue to infringe Daniel Morel's copyright in his original Iconic Images by reproduction, display, distribution, licensing and/or sale without his permission or authorization.

135.   Counterclaim Defendants knew or should have known of Daniel Morel's rights in and to the Iconic Images, have willfully and intentionally infringed Mr. Morel's exclusive rights in the Iconic Images under 17 U.S.C. §106, in violation of 17 U.S.C. §501.

136.   As a direct and proximate result of the copyright infringement detailed herein, Mr. Morel has been and continues to be damaged in an amount unknown at present and to be determined at trial. Counterclaim Defendants have garnered and/or will

43

garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to Mr. Morel.

137. In the alternative and at his election, Mr. Morel is entitled to seek maximum statutory damages for each separate act of willful infringement by Counterclaim Defendants AFP and Getty in an amount of $150,000 per each infringement.

138. Mr. Morel has no adequate remedy at law to protect its rights in the Iconic Images and to prevent Counterclaim Defendants from continuing to infringe the Iconic Images and to injure Mr. Morel. Mr. Morel has suffered and is continuing to suffer irreparable injury from the Counterclaim Defendants' conduct as alleged.

139. As a direct and proximate result of the copyright infringments detailed herein, Counterclaim Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Counterclaim Defendants AFP and Getty from infringing his copyright.

**SECOND COUNTERCLAIM**
**COPYRIGHT INFRINGEMENT**
(17 U.S.C. § 101 et seq.)
(AFP and Getty)

140. . Daniel Morel incorporates by reference ¶¶ 1-139 above as if fully set forth herein.

141. By the actions alleged above, Counterclaim Defendants AFP and Getty have encouraged, assisted, induced, caused, and/or materially contributed to a vast number of actual or imminent copyright infringements of the Iconic Images in violation of 17 U.S.C. §§ 106 and §501.

142.   Counterclaim Defendants know or have reason to know of the actual copyright in the Iconic Images.

143.   The infringements of Mr. Morel's Iconic Images that Counterclaim Defendants have encouraged, assisted, induced, caused and/or materially contributed to through the conduct described above is without Mr. Morel's consent and not otherwise permissible under the Copyright Act.

144.   The foregoing acts of infringement by Counterclaim Defendants have been willful, intentional, purposeful, and with indifference to Daniel Morel's rights under the Copyright Act.

145.   Mr. Morel is entitled to recover from Counterclaim Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Counterclaim Defendants as a result of their acts of infringement alleged above. At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Mr. Morel, but will be established according to proof at trial. Mr. Morel is also entitled to recover statutory damages for AFP/Getty's willful infringement of its copyright.

146.   Plaintiff and Counterclaim Defendant Getty have promoted, facilitated, and enabled—and continue to promote, facilitate, and enable—third party purchasers of the Infringing Iconic Images ("Infringing Third Parties") to copy, display and distribute the Iconic Images.

147.   The Infringing Third Parties have in fact licensed various uses of the Iconic Images from AFP/Getty, and used, sold and/or displayed such Infringing Iconic Images without Mr. Morel's authorization, thereby infringing Mr. Morel's copyrights.

148.   AFP and Getty induced and promoted Infringing Third Parties' copyright infringement.

149.   AFP and Getty are liable for the acts of infringement that result from the Infringing Third Parties' use of the Infringing Iconic Images.

150.   The talent, skill and effort required to create compelling still images has fostered a vibrant market for professional photography, one on which the media and the photographers have come to rely on for their livelihood.  Without licensing revenues made available to photojournalists worldwide, particularly in covering disasters, a robust First Amendment is placed in jeopardy.

**THIRD COUNTERCLAIM**
**VICARIOUS COPYRIGHT INFRINGEMENT**
(Getty and AFP/Getty Third Party Infringers)

151.   Mr. Morel repeats and realleges the allegations of paragraphs 1-150 as if fully set forth herein.

152.   At all times material hereto, Counterclaim Defendants The New York Times, Time Inc., USA Today, Vanity Fair, and Counterclaim Defendants Does 1-? had the right and ability to supervise the infringement of the Iconic Infringing Images and had a direct financial interest in that infringement.

153. Upon information and belief, Counterclaim Defendants have derived and continue to derive substantial and direct financial benefit from the infringement of Mr. Morel's Iconic Images.

154. Counterclaim Defendants' actions alleged herein constitute vicarious copyright infringement in violation of the Copyright Act, 17 U.S.C. §§101 *et seq*.

155. The conduct of Counterclaim Defendants, and each of them, was intentional, willful, malicious, fraudulent and calculated to injure Mr. Morel and infringe the Iconic Images.

156. As a result of the copyright infringements described above, Mr. Morel is entitled to relief including but not limited to, injunctive relief, actual or statutory damages in the maximum amount allowed by law, statutory costs and attorney's fees, and prejudgment interest.

**FOURTH COUNTERCLAIM**
**VIOLATION OF THE DCMA (17 U.S.C. §1202)**
(AFP and Getty)

157. Mr. Morel incorporates by reference paragraphs 1 through 156 above as if fully set forth herein.

158. Upon information and belief, AFP and Getty without authorization of Mr. Morel or the law, has intentionally removed and/or altered and had caused and induced others to remove and/or alter copyright management information from the Iconic Images including for the use in the Infringing Iconic Images, and have thereafter distributed said Iconic Images having reasonable grounds to know that such acts will induce, enable, facilitate or conceal an infringement of copyright under Title 17, United States Code, in violation of 17 U.S.C. §1202(b)(1) and (3).

159. AFP and Getty's removal or alteration of copyright management information from the Iconic Images, included for use on the Images, *inter alia* Mr. Morel's name, and subsequent distribution of the Infringing Iconic Images, as alleged above, was and is willful and intentional, and was and is executed with full knowledge of Mr. Morel's rights under the Copyright Law, and in disregard of those rights.

160. Mr. Morel is entitled to recover his actual damages suffered as a result of the violation and any profits of AFP and Getty attributable to the violation and not taken into account in computing actual damages, or, at Mr. Morel's election, statutory damages pursuant to 17 U.S.C. §1203(c).

161. Mr. Morel is entitled to recover costs and attorney's fees from Counterclaim Defendants pursuant to 17 U.S.C. §1203(b)(4) and (5).

162. Counterclaim Defendants' violations of 17 U.S.C. §1202(b)(1) and (3) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Mr. Morel not fully compensable in monetary damages.  Pursuant to 17 U.S.C. §1203(b)(1), Mr. Morel is entitled to a preliminary and permanent injunction enjoining Counterclaim Defendants from such further violations, including proper crediting of the Infringing Images to ©Daniel Morel/Corbis.

### FIFTH COUNTERCLAIM
### FALSE OR MISLEADING REPRESENTATION OF FACT
(15 U.S.C. 1125(a)(1))
(AFP and Getty)

163. Mr. Morel repeats and realleges paragraphs 1 through and including 162 set froth above as if the same were fully set forth herein.

164. Daniel Morel's claim arises under section 43(a) of the Lanham Act, 15 U.S.C. 1125(a)(1).  The Lanham Act creates a cause of action of misattribution or for a

false or misleading representation of fact which deceives as to a relationship, sponsorship, or approval.

165. As above stated, Mr. Morel owns all intellectual property rights in and to the Iconic Images, including rights under Section 43(a) of the Lanham Act.

166. The use by Counterclaim Defendants AFP and Getty of the statements "AFP/Getty/Daniel Morel" or "AFP/Getty/Lisandro Suero") in connection and association with the Iconic Images is a false description and representation that Mr. Morel's Iconic Images are sponsored by, or otherwise affiliated with AFP and Getty or that AFP/Getty received authorization from Mr. Morel to act as his agent for the licensing or that he was their employee. Said acts are in violation of 15 U.S.C. §1125(a) in that AFP/Getty is using false or misleading attribution of fact, which is likely to cause confusion or to deceive as to affiliation, connection or association as to sponsorship or approval and has caused such goods to enter into or affect interstate commerce. Mr. Morel believes that he is and is likely to be respectively damaged by such false description and representation by reason of the likelihood that clients, customers, or viewers of the Iconic Images will be confused as to the true source, sponsorship or affiliation.

167. Counterclaim Defendants have used and continue to use in connection and association with their own services and goods in interstate commerce; false representations of association with Mr. Morel without license or authorization from Mr. Morel.

168. AFP and Counterclaim Defendants' products and services are targeted to the exact same consumers, subscribers, clients and licensees as Daniel Morel and the

Counterclaim Defendants provide exactly the same services to Mr. Morel's competitors, as does Mr. Morel.

169. Plaintiff AFP and Counterclaim Defendant Getty's misrepresentation of fact is intentionally designed to deceive, and has deceived, consumers and customers, subscribers and clients that Mr. Morel's Iconic Images are authorized and licensed for use or otherwise approved by him for use by AFP and Getty.

170. As the insert below, from an article written by James Creedon on January 14, 2010 for France24 (www.france24.com, downloaded April 18, 2010) entitled "Haiti's nightmare dominates world's press," indicates, Mr. Morel's clients and customers, including the media have been deceived by AFP's misrepresentation:

> INTERNATIONAL PRESS REVIEW: "The unluckiest country", "devastation", "cursed"… This morning's papers struggle to find words to sum up the disaster that has struck one of the world's poorest countries.
>
> The front pages of papers around the world this morning lead with images of the devastation that has struck Haiti after a 7.0 magnitude earthquake ravaged its capital, Porte-au-Prince. One photo taken by AFP photographer Daniel Morel appears on the front page of Libération, Le Parisien and France Soir as well as the Italian daily Corriere della Serra and the British paper The Guardian. It shows a woman, her face covered in dust, staring into the camera as she emerges from a collapsed building.

171. As a direct and proximate result of Plaintiff and Counterclaim Defendant Getty, the public is likely to be confused as to the origin and source of AFP and Getty's products and relationship to Mr. Morel and/or believe that AFP and Getty are licensed, sponsored or otherwise authorized by Mr. Morel to offer the Iconic Images and services, when they are not.

172. The public is also likely to be confused as to the authorship of the Iconic Images based on the misattribution by AFP/Getty.

50

173. Counterclaim Defendants AFP and Getty's blatant and continuing use of the AFP/Getty affiliation to the Iconic Images constitutes willful and intentional violation of the Lanham Act sec 43(a)-including unfair competition.

174. As a direct and proximate result of the willful and wanton conduct of AFP and Getty, Mr. Morel has been injured and will continue to suffer commercial harm in this District, the State of New York, and worldwide due to the pervasive reach of the Internet, in an amount unknown at present and to be determined at trial.

175. As a direct result of AFP and Getty's willful infringement and misrepresentation of fact, Mr. Morel is entitled to enhanced damages as provided by law.

176. As a direct and proximate result thereof, Mr. Morel is entitled to injunctive relief enjoining and restraining Counterclaim Defendants from use of the Iconic Images.

177. Mr. Morel has no adequate remedy at law.

### SEVENTH COUNTERCLAIM
### FALSE ADVERTISING
(15 U.S.C. §§1125(a)(2))
(AFP and Getty)

178. Mr. Morel repeats and realleges paragraphs 1 through and including 177 set forth above as if the same were fully set forth herein.

179. Mr. Morels claim arises under the Lanham Act, 15 U.S.C. §§1125(a)(2).

180. Counterclaim Defendants AFP and Getty, with intent to deceive, have made material, false and misleading descriptions or misrepresentations of fact concerning Mr. Morel's Iconic Images in their licensing databases and in marketing the Iconic Images, by giving the clear but false impression that Mr. Morel licensed or otherwise authorized Counterclaim Defendants AFP and Getty to reproduce, display and distribute

the Iconic Images stolen from him, and that Mr. Morel has licensed or endorsed Counterclaim Defendants AFP and be to reproduce, license, or otherwise distribute the Infringing Iconic Images.

181.   Counterclaim Defendants AFP and Getty's conduct is willful, deliberate, intentional and in bad faith.

182.   Counterclaim Defendants AFP and Getty's false and misleading representations about the Iconic Images including the misrepresentation as to the authorship and Lisandro Suero's role therein have deceived or are likely to deceive a substantial segment of the intended audience and have caused and continue to cause Mr. Morel actual injury since media customers and websites have identified Lisandro Suero as one of the major photographers of the Haiti Earthquake, which identification is due to the distribution by AFP/Getty.  Ironically, this willful confusion continued and continues because AFP/Getty when and if sending an e-mail to change the credit, continued to represent itself as the licensor of the Iconic Images.

183.   The Iconic Infringing Images and the advertising and promotion therefore are being displayed and distributed in interstate commerce.

184.   As a direct and proximate result of Counterclaim Defendants false and misleading representations, Mr. Morel has been damaged in an amount unknown at present and to be proved at trial.

185.   Mr. Morel is entitled to treble damages based on the bad faith and willful conduct of defendant.

186. Mr. Morel has suffered and, unless Counterclaim Defendants are enjoined, will likely continue to suffer irreparable injury by reason of the false and misleading claims made by Counterclaim Defendants.

**EIGHT COUNTERCLAIM
FOR DIRECT COPYRIGHT INFRINGEMENT**
(CBS)

187. Mr. Morel repeats and realleges the allegations in paragraphs 1-186 set forth above.

188. At 8:01 p.m. on January 12, 2010, David Hancock, Home Page Editor from CBSNews.com, e-mailed Mr. Morel "looking for Haiti images…what you have and what price?."

189. At 8:54 p.m. William Goodman, a producer from CBS News contacted Mr. Morel for information and photos and at 11:51 p.m. asked "if there was a way to view the photos and then try to find a price";

190. At 9:08 p.m. Patricia Beauvais contacted Mr. Morel if he was "willing to share these photos with CBS News?."

191. On January 13 at 12:21 a.m. Ryan Corsano contacted Mr. Morel requesting pictures and offering to "credit [Mr. Morel] tomorrow on CBS News."

192. CBS's in house counsel in a subsequent correspondence denied that either saw the images or obtained them from Twitter. Notwithstanding, CBS reproduced, displayed, and transmitted the following Iconic Images without authorization or license