**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                              :

AGENCE FRANCE PRESSE,            :
                              :

               Plaintiff,        :

                              :   **Case No. 10-cv-2730 (WHP)**

      v.                            :

DANIEL MOREL                  :
                              :

              Defendant and Counterclaim :
              Plaintiff,           :

      v.                            :

AGENCE FRANCE PRESSE,            :
                              :

             Counterclaim Defendant,   :

    And                           :

                              :

GETTY IMAGES (US), INC., CBS BROADCASTING :
INC., ABC, INC., TURNER BROADCASTING :
SYSTEM, INC.                           :
and (AFP and Getty Licensees does 1 – et al.). :
                              :

             Third Party Counterclaim :
             Defendants.       :
                              X
- - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF-COUNTERCLAIM DEFENDANT AND THIRD PARTY COUNTERCLAIM**
**DEFENDANTS' MOTION TO DISMISS DEFENDANT-COUNTERCLAIM PLAINTIFF'S**
<u>**SECOND AMENDED COUNTERCLAIMS**</u>

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT  ................................................................  1

STATEMENT OF PLEADED FACTS  ....................................................  3

The Parties  ........................................................................................  3

The Haiti Photographs and Online Posting  ..........................................  3

Distribution of Photographs  ................................................................  4

LEGAL STANDARD  ..........................................................................  5

ARGUMENT  ......................................................................................  7

1.   AFP Moves to Dismiss the First Counterclaim for
     Copyright Infringement  .........................................................  7

2.   AFP Moves to Dismiss the Second Counterclaim for
     Contributory Copyright Infringement  .....................................  14

3.   AFP and Getty Images Move to Dismiss the Fourth
     Counterclaim for Violation of the DMCA (17 U.S.C. § 1202(a))
     and AFP, TBS, Inc., Getty Images, CBS and ABC All Move to
     Dismiss the Fifth Counterclaim for Violation of the DMCA
     (17 U.S.C. § 1202(b))  ...........................................................  15

     A.   The TwitPic Images Allegedly Copied by Counterclaim
          Defendants Did Not Contain Any CMI  ..........................  15

          i.   The Exhibits to Morel's Claims Demonstrate the
               Complete Absence of CMI  ................................  16

          ii.  The Notations on Morel's TwitPic Page Do Not
               Constitute CMI  .................................................  17

     B.   Morel Cannot State a Claim Under Section 1202(b)
          Because No CMI Was Removed  .................................  20

     C.   Morel Cannot State a Claim Under Section 1202(a)
          Because He Cannot Adequately Plead Any of the
          Requisite Elements For Such a Claim  .........................  22

**TABLE OF CONTENTS (Continued)**

<u>Page</u>

4.    AFP and Getty Images Move to Dismiss the Sixth
       Counterclaim for False or Misleading Representation
       of Fact (15 U.S.C. § 1125(a)(1))    …………………………………    24

5.    AFP and Getty Images Move to Dismiss the Seventh
       Counterclaim for False Advertising (15 U.S.C. § 1125(a)(2)) ……..    27

6.    ABC and CBS Move to Dismiss the Eighth and Ninth Claim
       for Secondary Copyright Liability    ………………………………    29

7.    TBS Inc. Moves to Dismiss the Tenth Claim for Direct
       Copyright Infringement    ……………………………………    31

**CONCLUSION** ……………………………………………………    31

### TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                      <u>Page(s)</u>

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...........     5,7

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500
    (S.D.N.Y. 2009) ...................................................................     16

*Antidote International Films, Inc. v. Bloomsbury Publishing, PLC*,
    467 F. Supp.2d 394 (S.D.N.Y. 2006) ........................................ 25,26,27,29

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 L.Ed.2d 868 (2009) .......................   5,6,21

*Associated Press v. All Headline News Corp.*, 608 F. Supp.2d 454
    (S.D.N.Y. 2009) ...................................................................     18

*BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 112 A.D.2d 850,
    493 N.Y.S.2d 1 (1st Dep't 1985) .....................................................     10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ...........   5,6,22

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003) ..........................................     28

*Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995) ..............................     8

*BroadVision, Inc. v. General Electric Co.*, 2009 WL 1392059
    (S.D.N.Y. 2009) ...................................................................     30

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................     7,9

*Commander Oil Corp. v. Advance Food Service Equipment*,
    991 F.2d 49 (2d Cir. 1993) ..........................................................     10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ..................................................................     *ibid*

*Dow Jones & Co., Inc. v. Int'l Securities Exchange, Inc.*, 451 F.3d 295
    (2d Cir. 2006) .........................................................................     5

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48
    (2d Cir. 2002) .........................................................................     28

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................     8

**TABLE OF AUTHORITIES (continued)**

Cases                                                                                           Page(s)

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 2009 WL 6412018
    (S.D.N.Y. 2009) ……………………………………………………………….    25

*Generale Bank v. Czarnikow-Rionda Sugar Trading, Inc.*,
    47 F. Supp.2d 477 (S.D.N.Y. 1999) …………………………………………..    10

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
    443 F.2d 1159 (2d Cir. 1971) …………………………………………………..    14,31

*IQ Group, Ltd v. Wiesner Pub., LLC*, 409 F. Supp.2d 587 (D.N.J. 2006)……17,18-19,20

*Kelly v. Arriba Soft Corp.*, 77 F. Supp.2d 1116 (C.D. Cal. 1999),
    *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) …….    21-22

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ……………………    7,9,11

*Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693 (2d Cir. 1998) …….    31

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) …………..    7

*Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993) …………………………………    7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    125 S.Ct. 2764 (2005) …………………………………………………………..    14,30

*Murphy v. Millennium Radio Group LLC*, 2010 WL 1372408
    (D.N.J. 2010) …………………………………………………………………    17,19-20,22

*Neitzke v. Williams*, 490 U.S. 319 (1989) ……………………………………….    5

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) …………………………………….    5,6

*Rosner v. Bank of China*, 528 F. Supp.2d 419 (S.D.N.Y. 2007) ……………….    6,21,24

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) ……    30

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)…………………    14

**TABLE OF AUTHORITIES (continued)**

Cases                                                                                                    Page(s)

*Silver v. Lavandeira,* 2009 WL 513031 (S.D.N.Y. Feb. 26, 2009)  ................   17

*Smartix International Corporation v. Mastercard International LLC,*
    2008 WL 4444554 (S.D.N.Y. 2008) …………………………………………   6-7

*Softel, Inc. v. Dragon Med.  & Scientific Communications, Inc.,*
    118 F.3d 955 (2d Cir. 1997) ……………………………………………   30

*Textile Secrets International, Inc. v. Ya-Ya Brand Inc.,*
    524 F. Supp.2d 1184 (C.D. Cal. 2007) ……………………………………   17-18

*Yak v. Bank Brussels Lambert, BBL*, 252 F.3d 127 (2d Cir. 2001) ................   7


Other Authority

15 U.S.C. § 1125(a)(1) ……………………………………………………   24

15 U.S.C. § 1125(a)(1)(B) ……………………………………………………   27,29

15 U.S.C. § 1125(a)(2) ……………………………………………………   27

17 U.S.C. § 1202(a) ……………………………………………………   15,22

17 U.S.C. § 1202(b) ……………………………………………………   15,20

Fᴇᴅ. R. Cɪᴠ. P. 8(a)(2) ……………………………………………………   5

Federal Rule of Civil Procedure 12(b)(6) ……………………………………   1,5,24

Fed. R. Civ. P. 12(f) ……………………………………………………   2

*Nimmer on Copyright* § 12.04[D][1] ……………………………………………   14,25

Restatement 2d Contracts § 202(2) ……………………………………   10

**PRELIMINARY STATEMENT**

This memorandum is respectfully submitted by the Plaintiff-Counterclaim

Defendant Agence France Presse ("AFP"), and Counterclaim Defendants ABC, Inc.

("ABC"), Getty Images (US), Inc. ("Getty Images"), CBS Broadcasting Inc. ("CBS"), and

Turner Broadcasting System, Inc. ("TBS, Inc.")(collectively, "Counterclaim Defendants"),

in support of their consolidated motion to dismiss, pursuant to Federal Rule of Civil

Procedure 12(b)(6), the Second Amended Counterclaims filed by Defendant-

Counterclaim Plaintiff Daniel Morel ("Morel").   The Counterclaim Defendants are named

in different counterclaims, but pursuant to the Court's request, have consolidated their

motions into one pleading.

This case arises in connection with Counterclaim Defendants' use of

photographs by Morel depicting the aftermath of the earthquake that struck Haiti on

January 12, 2010.   By this memorandum, AFP and TBS, Inc. move to dismiss the direct

and secondary copyright claims asserted against them by Morel (Counts I (against

AFP), II (against AFP), and X (against TBS, Inc.))[1]; AFP, TBS, Inc., ABC, CBS, and

Getty Images move to dismiss the claims asserted by Morel under the Digital

Millennium Copyright Act ("DMCA")(Count IV (against AFP and Getty) and Count V

(against all Counterclaim Defendants)); AFP and Getty Images move to dismiss the

claims asserted by Morel under the Lanham Act (Counts VI, and VII (against AFP and

Getty Images)); and CBS and ABC move to dismiss the claims asserted by Morel as to

secondary liability (Count VIII (against CBS) and Count IX (against ABC)).

---

[1]     To the extent the Court grants the motion to dismiss the direct and secondary copyright
infringement claims of AFP and TBS, Inc. pursuant to their arguments herein, Counterclaim Defendants
ABC, CBS, and Getty Images respectfully request that the direct and secondary copyright infringement

For his Second Amended Counterclaims, Morel has submitted a voluminous document that goes to great lengths to profile Morel, his business and his personal story, and is filled with irrelevant anecdotes, quotes from third party articles, argument, inflammatory terms (such as "pirated" and "stolen") and rhetorical questions. Numerous pages of this "pleading" are subject to being stricken pursuant to Fed. R. Civ. P. 12(f) as redundant, immaterial, irrelevant, inflammatory, and impertinent. Yet, despite his 72-page "pleading" and the hundreds of pages of exhibits attached thereto, Morel has utterly failed to state a cause of action, and his counterclaims should be dismissed.

The counterclaims each have fatal flaws. Morel's First, Second and Tenth Counterclaims – asserting copyright infringement against AFP and TBS, Inc. – fail because, as the terms of service for Twitter and TwitPic attached to Morel's pleadings demonstrate, Morel granted a nonexclusive royalty free license to third parties to copy, use, distribute and display his photographs, which is a complete defense to his claims of copyright infringement. Morel's Fourth Counterclaim – asserting that Getty Images and AFP violated section 1202(a) of the DMCA by allegedly distributing copies of Morel's photographs that contained "false copyright management information" – and his Fifth Counterclaim – asserting that Counterclaim Defendants violated DMCA section 1202(b) by allegedly removing copyright management information from Morel's works prior to distributing copies of his photographs – fail because, as the exhibits to Morel's own counterclaims demonstrate, the photographs allegedly copied *did not contain any copyright management information*. Moreover, Morel has otherwise failed to adequately allege any actionable DMCA claim. In addition, Morel's Sixth and Seventh

---

claims against each of them (*i.e.*, Counts III (against Getty Images), VIII (against CBS) and IX (against ABC)) likewise be dismissed.

Counterclaims – asserting claims against AFP and Getty Images for false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1) and (2) – are barred by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36-38 (2003), which makes clear that a claim for false designation of origin is unavailable where the "origin" in question is the authorship of a communicative work.  Similarly, a claim for false advertising is unavailable where the "falsity" goes to attribution of authorship.  Morel's Eighth and Ninth Counterclaims against CBS and ABC, respectively, fail to the extent they attempt to allege secondary copyright liability because Morel has failed to allege facts necessary to state such a claim.  For all these reasons, the Court should dismiss Morel's counterclaims.

### STATEMENT OF PLEADED FACTS

The following facts are alleged in the Second Amended Counterclaims ("SAC", Dkt. 29) and are accepted as true solely for the purposes of this motion.  Counterclaim Defendants do not accept legal conclusions in Morel's pleading as true.

**The Parties**

Morel is a photographer.  (SAC, ¶ 44).  AFP "is an international French news agency."  (*Id.*¶ 45).  TBS, Inc. "is a multimedia company" that "operates the CNN networks."[2]  (*Id.* ¶ 49).  Getty Images "is one of the world's largest imagery companies."  (*Id.* ¶ 46).  CBS "is a mass media company."  (*Id.* ¶ 47).  And, ABC also "is a mass media company."  (*Id.* ¶ 48).

**The Haiti Photographs and Online Posting**

On January 12, 2010, Morel took photographs of the devastation caused by the earthquake that struck Haiti, and "upload[ed] the digital files of the Haiti Earthquake

Photographs … on TwitPic." (SAC, ¶ 72). There were no copyright notices or information of any kind on the photographs Morel posted to Twitter/TwitPic. (*See id.* pages 18, 20, 21 and Ex. P). Rather, elsewhere on the Twitter/TwitPic pages to which Morel posted his photographs was a statement that the photographs were posted "by photomorel." (*Id.* Ex. P). Also on these pages, but not on the photographs themselves, the following copyright notice appeared in connection with the layout of the entire page: "© Twitter" or "© TwitPic." (*Id.* Ex. P and ¶¶ 160-61). No copyright notice in the name of Daniel Morel appeared anywhere on the TwitPic pages on which Morel's photos were posted, displayed, and made available to the world. (*See id.* Ex. P).

Morel's photographs also were posted and publicly available on the Twitter/TwitPic page of Lisandro Suero, an individual in the Dominican Republic. (SAC, ¶ 73 and Ex. B). There was no mention whatsoever of Morel on Suero's Twitter/TwitPic page, much less a copyright notice in Morel's name. (*Id.* Ex. B). Nor was there any copyright notice or other information of any kind on the photographs appearing on Suero's page. (*Id.*) There was, however, Twitter's and TwitPic's own copyright notices for the layout of the page, just as there was on Morel's Twitter/TwitPic page. (*Id.*)

**Distribution of Photographs**

According to the Second Amended Counterclaims, the Counterclaim Defendants "downloaded, uploaded, stored in digital databases, displayed, transmitted and distributed" Morel's photographs "copied from Mr. Morel's TwitPic or Suero's TwitPic page without CMI [Copyright Management Information]." (SAC, ¶ 165). Thereafter, the Counterclaim Defendants allegedly "distributed" copies of Morel's photos. (*Id.*) Morel alleges, on information and belief, that when AFP and Getty Images distributed copies

---

[2] In actuality, TBS, Inc.'s subsidiary, Cable News Network, Inc., operates the CNN Networks.

of Morel's images to third parties, they included a credit line identifying themselves as

licensing agents for, and identifying Lisandro Suero as the creator of, the photographs.

(*Id.* ¶ 160).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a

complaint for failure to state a claim.  Rule 12(b)(6) permits courts to dismiss meritless

cases that waste judicial resources and result in unnecessary discovery.  *See Neitzke v.*

*Williams*, 490 U.S. 319, 326-27 (1989).

A complaint must contain allegations "showing that the pleader is entitled to

relief," FED. R. CIV. P. 8(a)(2), and accordingly must plead "enough facts to state a claim

to relief that is plausible on its face," rather than merely possible.  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); *Patane v. Clark*, 508 F.3d

106, 111-12 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570); *see also Dow Jones &*

*Co., Inc. v. Int'l Securities Exchange, Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (claim "fails

even under the liberal standard of Rule 12(b)(6)" when a complaint "consists of

conclusory allegations unsupported by factual assertions").  That required "facial

plausibility" only exists "when the plaintiff pleads *factual content* that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 L.Ed.2d 868 (2009)(emphasis added).  "Factual

allegations must be enough to raise a right to relief above the speculative level" such

that they "raise a reasonable expectation that discovery will reveal evidence of [the

claim or element]."  *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965; *ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

This requirement applies equally to pleading intent and other states of mind.  As explained by the Supreme Court, "[i]t is true that Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.'  But 'generally' is a relative term.  In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake.  Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid-though still operative-strictures of Rule 8."  *Iqbal*, 129 S.Ct. at 1954.

On a motion to dismiss, the Court will "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff."  *Patane*, 508 F.3d at 111.  However, the Court is not required to accept conclusory allegations, unsupported conclusions, or unwarranted inferences, even if cast in the form of factual allegations, when considering a motion to dismiss.  *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965; *Rosner v. Bank of China*, 528 F. Supp.2d 419, 427 (S.D.N.Y. 2007) (noting that a "plaintiff's pleading obligations require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice").  Importantly, under the Supreme Court's *Twombly* standard, a plaintiff must make a "showing," rather than a blanket assertion, of entitlement to relief.  *Twombly*, 127 S.Ct. at 1965 n.3 (citations omitted).

"In addition to considering the factual allegations pled in the amended complaint, the Court may also consider documents attached to the complaint as exhibits and any documents incorporated by referenced into the complaint."  *Smartix International*

*Corporation v. Mastercard International LLC*, 2008 WL 4444554, *2 (S.D.N.Y. 2008), citing *ATSI*, 493 F.3d at 98; *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citations and internal quotations omitted).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153; *Yak v. Bank Brussels Lambert, BBL*, 252 F.3d 127, 131 (2d Cir. 2001).  Moreover, the Court may also consider documents "in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Chambers*, 282 F.3d at 153.  Finally, the Court may consider publicly available documents on a motion to dismiss.  *Menowitz v. Brown*, 991 F.2d 36, 39 (2d Cir. 1993); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991)(the court was not required to convert motion to dismiss into motion for summary judgment because it considered publicly filed documents; on motion to dismiss, court may look to the complaint, exhibits thereto, documents incorporated therein by reference, and matters of which judicial notice may be taken, including public records).

<u>**ARGUMENT**</u>

1. <u>**AFP Moves to Dismiss the First Counterclaim for Copyright Infringement.**</u>

   AFP moves to dismiss the First Counterclaim for Copyright Infringement because the Court can decide on the pleadings that Morel granted a license, which is a complete defense to a claim of infringement.  AFP maintains that Morel provided a non-exclusive license to use his photographs when he posted them via a social networking website known as Twitter and its photography sharing application known as TwitPic and

advertised and linked to them through Twitter, all without any limitation on the use, copying, or distribution of the photographs.  AFP and its customers or affiliates relied on this license and their respective uses do not constitute copyright infringement.

To prevail on a copyright infringement claim, a claimant must prove ownership of a valid copyright and copying of original elements of the allegedly infringing work.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).  Even assuming that Morel could demonstrate ownership and copying, a fact not admitted by this pleading, a license is a complete defense to a claim of copyright infringement.  *Bourne v. Walt Disney Co.*, 68 F.3d 621, 632 (2d Cir. 1995).  The burden of proving the existence of a license is on the party claiming its protection; that is, the licensee.  *Id.* at 631.  However, where "the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized."  *Id.*

Here, Morel signed up for accounts on Twitter and its companion photograph sharing site, TwitPic, and by his own admission, posted at least thirteen photographs in high resolution format with no limitation on their use.  (SAC, ¶71; Am. Answer, Dkt. 6, ¶13).  Simultaneously, using the Twitter portion of his account, Morel, "tweeted that he had exclusive earthquake photos and directed users to his TwitPic account."  (SAC, ¶71).  By signing up for this Twitter/TwitPic account, Morel was subject to the Terms of Use for both Twitter and TwitPic, as explained below.

Here, the Court may rely upon the Twitter and TwitPic Terms of Service and the Twitter and TwitPic login pages in deciding this motion to dismiss because the Terms of Service established by Twitter (*see* First Counterclaims, Dkt. 4, Ex. A, also attached hereto for the Court's convenience as Exhibit A), the additional Terms of Service

established by TwitPic (*see* SAC, Ex. A; also attached hereto for the Court's convenience as Exhibit B) and the Twitter/TwitPic login page (attached as Exhibit C hereto), are all attached to some version of the counterclaims (Exs. A and B) (*Chambers*, 282 F.3d at 152); are integral to the counterclaims since the copyright infringement counterclaims rely upon the interpretation of these documents (Exs. A, B, and C)(*id.* at 153); are in Morel's possession since they are publicly available and Morel had knowledge of them since they were available and would necessarily have been viewed and accepted by him at least upon creating his Twitter/TwitPic account and logging in to that account (Exs. A, B and C)(*id.*); and/or are publicly available (Exs. A, B and C)(*Kramer*, 937 F.2d at 773-74).

TwitPic is a photo sharing site for Twitter users, which states that "Twitpic lets you share photos on Twitter."[3]  To post photos on TwitPic, a user must first register for a Twitter account.  The TwitPic website explains: "If you have a Twitter account then you already have a Twitpic account, just login to Twitpic with your Twitter username and password and you are all set.  If you don't have a Twitter account you can sign up for one for free at Twitter.com."[4].  To sign in and use TwitPic, a user must enter his or her Twitter username and password.  This demonstrates that the TwitPic service is integrally bound to the Twitter service, and they cannot be viewed separately.

Notably, when a user selects "Sign In With Twitter" on the TwitPic page, the user is transferred to a Twitter page[5] to complete the login.  That Twitter login page includes the specific notice that "*By clicking 'Allow' you continue to operate under Twitter's*

---

[3]    http://www.twitpic.com/
[4]    http://www.twitpic.com/
[5]    https://twitter.com/oauth/authorize?oauth_token=GyKdE1dlnXc9A91KAyBPKDe4Jt7zAhbtBniH6uMfUGc

*Terms of Service.*"  (*See* Exhibit C hereto, emphasis added).[6]  A TwitPic user is thus

bound by both the Twitter Terms of Service as well as the additional TwitPic Terms of

Service.

      The respective services and the Terms of Service for Twitter and TwitPic are

interrelated and should be read together.  *See Commander Oil Corp. v. Advance Food*

*Service Equipment*, 991 F.2d 49, 53 (2d Cir. 1993) ("[I]n the absence of anything to

indicate a contrary intention, '[w]here several instruments constitute part of the same

transaction, they must be interpreted together'"), *quoting BWA Corp. v. Alltrans Exp.*

*U.S.A., Inc.*, 112 A.D.2d 850, 493 N.Y.S.2d 1, 3 (1st Dep't 1985); *see also* Restatement

2d Contracts § 202(2) ("A writing is interpreted as a whole, and all writings that are part

of the same transaction are interpreted together."); *Generale Bank v. Czarnikow-Rionda*

*Sugar Trading, Inc.*, 47 F. Supp.2d 477, 481 (S.D.N.Y. 1999) ("the two documents are

interrelated and co-dependent, and in such circumstances New York contract law holds

that documents should be read and interpreted together").

      Here, the user specifically agrees that, "*By clicking 'Allow' you continue to*

*operate under Twitter's Terms of Service*" before they begin using TwitPic.  (See Ex. C

hereto).  There is nothing to indicate a contrary intention.  Thus, by using TwitPic and

Twitter to post his photographs, Morel expressly agreed to, and is subject to, the Terms

of Service established by Twitter ( Ex. A hereto), as well as the additional Terms of

Service established by TwitPic (Ex. B), and they should be read together.  This is not a

difficult task since they are not contradictory[7] and they overlap.

---

[6]     As discussed in the "Legal Standard" section above, this login page and the Terms of Service for
Twitter and TwitPic may be considered by the Court on this motion to dismiss.
[7]     The only contradictory term relates to venue, which is not at issue here.

Pursuant to the Twitter Terms of Service, Morel granted Twitter a worldwide, non-exclusive, royalty-free license, with the right to sub-license others, to use, copy, publish, display, and distribute materials posted.  Specifically, the Twitter Terms of Service state:

> By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (*with the right to sublicense*) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods (now known or later developed).
>
> Tip This license is you authorizing us to *make your tweets available to the rest of the world and to let others do the same*.  But what's yours is yours – you own your content.
> ...
> You are responsible for your use of the Services, for any Content you provide, and for any consequences thereof, including *the use of your Content by other users and our third party partners*.

Ex. A at pp. 2-3 (emphasis added).

The Twitter Terms of Service make clear that Twitter "encourage[s] and permit[s] broad re-use" of content that is posted on Twitter (*id*. at p. 4), which it is permitted to do under its Terms of Service and license rights, including for "syndication, broadcast, distribution or publication" with "no compensation" to the user (*id*. at p. 3).  Such broad re-use is evidenced everyday in the media where Twitter/TwitPic posts are copied, reprinted, quoted, and republished by third parties[8].  Twitter/TwitPic users intend for

---

[8] AFP does not intend to convert this motion to a motion for summary judgment, but instead points out the following publicly available information for the Court's information, to demonstrate reuse of Twitter/TwitPic materials by third parties, and to provide context, not for the truth of the matter within these links.  The Court may consider publicly available documents on a motion to dismiss and that does not convert it to a motion for summary judgment  *Kramer*, 937 F.2d at 773-74.  These websites offer a very small sampling of the thousands of examples of postings on Twitter/TwitPic being copied, reprinted, quoted and republished by third parties without any indication that permission was sought or granted:

- http://www.nydailynews.com/gossip/galleries/celebrities_are_all_atwitter/celebrities_are_all_atwitter.html;

their postings to be publicly available and to be broadly distributed through the internet and other media, and most users of Twitter/TwitPic use the service in order to broadly disseminate the material that they post.  (*Id.* at p. 1, 3, "Tip What you say on Twitter may be viewed all around the world instantly.  You are what you Tweet!" and "This license is you authorizing us to *make your tweets available to the rest of the world <u>and to let others do the same</u>.* ")(emphasis added).  Indeed, Morel acknowledges that he posted his photographs on Twitter/TwitPic and tweeted about them on Twitter in the hopes that his images would span the globe to "inform the world" of the earthquake and his photographs.  (SAC, ¶72).

When Morel signed up for his Twitter/TwitPic account and posted his photographs on Twitter/TwitPic, he expressly agreed to the Terms of Service established by Twitter and TwitPic, and he therefore granted Twitter, TwitPic and third parties, including AFP, a "worldwide, non-exclusive, royalty-free license … to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute" his photographs, and he is "responsible for [his] use of the Services … and for any consequences thereof, including the use of [his] Content by other users...." (Ex. A at pp. 2-3).  That license is freely and widely exercised thousands of times a day by Twitter/TwitPic users.  He made no notation that he was in any way limiting use or the license granted pursuant to the Twitter and TwitPic Terms of Service.  Thus, a third

---

- http://www.thebahamasweekly.com/publish/sports/Lance_Armstrong_trains_in_The_Bahamas7193.shtml;
- http://www.nydailynews.com/news/politics/2009/10/15/2009-10-15_meghan_mccain_twitter_photo_backlash_leads_to_apology.html;
- http://www.okmagazine.com/2010/04/lindsay-lohan-holds-gun-to-her-mouth-in-twitter-photo/;
- http://www.people.com/people/gallery/0,,20292944_20773135,00.html#20773136;
- http://www.people.com/people/article/0,,20344282,00.html.
- http://www.popeater.com/2009/12/28/best-celebrity-twitter-photos/

party would reasonably assume that based on the Twitter and TwitPic Terms of Service and broad typical use, by posting his photographs on Twitter/TwitPic, Morel was granting Twitter/TwitPic and third parties, including AFP, the requisite license to use, copy, publish, display, and distribute those photographs.  AFP acted with this understanding, and pursuant to the non-exclusive license provided by Morel.  Perhaps Morel later regretted his actions, as demonstrated by his subsequent removal of his photographs from Twitter and TwitPic.  It is certainly his right to remove the photographs, but he cannot retroactively undo the non-exclusive, royalty-free license already granted and relied upon by AFP and other third parties.  Simply put, until Morel pulled his photographs from Twitter/TwitPic, third party use of these photographs was permitted.[9]

Morel points out, in his Second Amended Counterclaim, that the Twitter Terms of Service provide that "you retain your rights to any content you ... post on or through the services."  (SAC, ¶ 72).  This is not the point.  AFP is not disputing Morel's ownership of his copyright; instead, it is simply demonstrating that by posting his photographs on Twitter/TwitPic, Morel granted the requisite license to Twitter/TwitPic and third parties, including AFP and its licensees, to use, copy, publish, display and distribute these photographs.

---

[9]     When AFP became aware that the photographs were taken down and was contacted by Morel's agent, Corbis, indicating that it believed it was the exclusive licensee for the photographs, AFP again acted in good faith and ceased publication and distribution of the photographs and attempted to notify its subscribers that the photographs should no longer be published or distributed (SAC, ¶¶ 109-110).  Similarly, the other Counterclaim Defendants removed the photographs from their websites upon request by Morel's counsel.  (*See, e.g., id.* at ¶¶ 204-205, 214).  AFP does not intend to convert this motion to a motion for summary judgment by providing this information, but rather, simply proffers it for context as to AFP's and its licensees' behavior.

13

In light of the foregoing, Morel's copyright claim cannot survive, and AFP respectfully requests that the Court dismiss the First Counterclaim for Copyright Infringement.

**2. AFP Moves to Dismiss the Second Counterclaim for Contributory Copyright Infringement.**

AFP moves to dismiss the Second Counterclaim for Copyright Infringement because the Court can decide on the pleadings that Morel granted a license to his photographs, which is a complete defense to the claim of contributory copyright infringement.

Contributory infringement exists where a party "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). However, "there can be no contributory liability if that conduct that is aided by the putative contributory infringer is not itself infringing." *Nimmer on Copyright* § 12.04[D][1], citing *inter alia, Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984). In other words, third party liability only exists when direct liability, *i.e.,* infringement, is present. *Id.*; *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2782 (2005).

Here, as explained above, there can be no infringement by use or distribution of the photographs that Morel posted on Twitter/TwitPic, because by posting the photographs there, he granted Twitter, TwitPic, its licensees and third parties, including AFP, a royalty-free, worldwide, non-exclusive license to use and distribute those photographs. Since there is no direct infringement, there can be no contributory

infringement.  AFP therefore respectfully requests that the Court dismiss the Second

Counterclaim for Contributory Copyright Infringement.

3. **AFP and Getty Images Move to Dismiss the Fourth Counterclaim for Violation of the DMCA (17 U.S.C. § 1202(a)) and AFP, TBS, Inc., Getty Images, CBS and ABC All Move to Dismiss the Fifth Counterclaim for Violation of the DMCA (17 U.S.C. § 1202(b)).**

In his Fourth and Fifth Counterclaims, Morel asserts that AFP and Getty Images

should be liable for allegedly providing false copyright management information ("CMI")

in violation of 17 U.S.C. § 1202(a), and that all of the Counterclaim Defendants should

be liable for removing CMI in violation of 17 U.S.C. § 1202(b).  Both these claims fail as

a matter of law.

Morel bases his claims entirely upon his conclusory assertion that the images he

displayed on his Twitter/TwitPic page contained CMI in the first place.  The exhibits to

Morel's own counterclaims, however, demonstrate beyond any doubt that there simply

was no CMI for the parties to remove—it just was not there.  Furthermore, even if the

type of information Morel implausibly asserts was removed by Counterclaim Defendants

had been present, that information does not constitute CMI within the meaning of the

statute.  Finally, Morel's pleadings otherwise fail to allege the remaining elements

needed to state a DMCA claim.

### A. The TwitPic Images Allegedly Copied by Counterclaim Defendants Did Not Contain Any CMI.

In pleading both of his DMCA claims, Morel relies entirely on his unsupported

assertion that copyright management information was removed from the photographs

15

allegedly copied—which information he asserts was in some instances replaced by allegedly false information.  His own pleadings reflect otherwise.

### i.  The Exhibits to Morel's Claims Demonstrate the Complete Absence of CMI.

It is black letter law that conclusory allegations contradicted by documents attached to the complaint need not be accepted as true.  Thus, Morel cannot disavow the exhibits he attached to his counterclaims.  *See, e.g., Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true").  Morel attached as Exhibit P to his counterclaims a copy of "Mr. Morel's TwitPic page" from which he asserts Counterclaim Defendants obtained the photos at issue.  (SAC, ¶¶ 160, 163 and Ex. P).  Although Morel contends that this page included the notation "© Daniel Morel" (*id.* ¶ 163), this notation does not appear anywhere on the Twitter/TwitPic page that is Exhibit P, let alone on the photo displayed on that page.  In fact, no CMI of any kind—indeed, no information whatsoever—appears on the image that Counterclaim Defendants allegedly "copied from Mr. Morel's TwitPic … page." (*see id.* Ex. P).  Likewise, Morel included "[c]opies of the Lisandro Suero TwitPic page as Exhibit B" to his counterclaims.  (*Id.* ¶ 73).  Although Morel contends that the Counterclaim Defendants copied his photos from "Suero's TwitPic page" and allegedly removed CMI from the images (*id.* ¶¶ 165-66), Exhibit B makes plain that there was no CMI on these images.

Morel also inserted into the pages of his counterclaims copies of the photographs at issue, which he identifies in his counterclaims as "Iconic Image 1," "Iconic Image 2," and so on.  (*Id.* pages 18, 20 and 21)  These images—which are precisely the images Morel alleges "he was able to upload … on TwitPic" (*id.* ¶ 72), do not contain any copyright notices, identification of Morel, or any other information that could conceivably qualify as CMI.

In short, Morel's DMCA claims, both of which are predicated on his allegations that counterclaim defendants removed CMI from his photos, cannot stand because there simply was no CMI associated with his photos that could have been removed.

### ii.  The Notations on Morel's TwitPic Page Do Not Constitute CMI.

To the extent that Morel's TwitPic page did contain notations that conceivably could link Morel to the photos at issue, those notations simply do not constitute CMI.

For example, Morel claims that he included the phrases "TwitPic PhotoMorel" and "© Daniel Morel" on his Twitter/TwitPic page.  (SAC, ¶163)  Even if this assertion was correct (which, as discussed above, it is not), these phrases do not fall within the definition of "copyright management information" set forth in the DMCA.  Although the text of section 1202 appears to define CMI quite broadly, courts have interpreted it narrowly, holding "[c]opyright management information is limited to components of … technological measures … [functioning as] automated systems."  *Silver v. Lavandeira,* 2009 WL 513031, *2 (S.D.N.Y. Feb. 26, 2009), quoting *IQ Group, Ltd v. Wiesner Pub., LLC*, 409 F. Supp.2d 587, 596 (D.N.J. 2006); *see also Murphy v. Millennium Radio Group LLC*, 2010 WL 1372408 (D.N.J.  2010); *Textile Secrets International, Inc. v. Ya-*

*Ya Brand Inc.*, 524 F. Supp.2d 1184 (C.D. Cal. 2007).[10]  The *IQ Group* court examined

the legislative history and extrinsic sources and found that the "statute should be subject

to a narrowing interpretation.'"  *IQ Group, Ltd.,*  409 F. Supp.2d at 593.  The *IQ Group*

court explained:

> Congress intended the DMCA to modernize copyright
> protection as a response to the development of new
> technologies which both enabled new forms of copyright
> protection as well as new forms of copyright infringement. …
> traditionally, the rights of authors have been managed by
> people, who have controlled access and reproduction.
> Through scientific advances, we now have technological
> measures that can control access and reproduction of works,
> and thereby manage the rights of copyright owners and
> users.  Section 1202 operates to protect copyright by
> protecting a key component of some of these technological
> measures.  It should not be construed to cover copyright
> management performed by people, which is covered by the
> Copyright Act, as it preceded the DMCA; it should be
> construed to protect copyright management performed by
> the technological measures of automated systems.

*IQ Group, Ltd.*, 409 F. Supp.2d at 597.

In *IQ Group*, the plaintiff created and distributed advertisements for distribution

by email that included a logo and a hyperlink that when clicked directed the recipient to

the plaintiff's website.  *Id.* at 589.  The defendant distributed those copyrighted

advertisements, but first removed the plaintiff's logo and hyperlink.  *Id.*  The plaintiff

---

[10]     *But see Associated Press v. All Headline News Corp.*, 608 F. Supp.2d 454, 461-62 (S.D.N.Y.
2009).  In *Associated Press*, the court expressly declined to take into account "the goals and purpose of
the DMCA" as expressed in the act's legislative history, and applied a broad interpretation of the phrase
"copyright management information" based on the court's finding that the defendant "cited no textual
support for limiting the DMCA's application to 'the technological measures of automated systems.'"  *Id.* at
461-62.  So doing, the court ignored the textual arguments found to be persuasive by other courts
addressing the issue, such as in *Textile Secrets*, 524 F. Supp.2d at 1195, where the court "consider[ed] §
1202's placement in the structure of the DMCA – a statutory scheme which, along with protecting the
integrity of copyright management information, also prohibits the circumvention of technological measures
that protect copyrighted works" and thus limited CMI to information related to "technological measures or
processes as contemplated in the DMCA as a whole." *Id.* at 1201.  Counterclaim Defendants respectfully
urge this Court to adhere to the better reasoned majority of cases which limit CMI to information related to
technological measures or processes.

sued defendant, for among other things, violation of the DMCA.  *Id.*  On a motion for summary judgment, the *IQ Group* court held in favor of defendant, finding that neither the logo nor the hyperlink fell within the definition of CMI because they did not function as a component of an automated copyright protection or management system.  *Id.* at 597-598.  There was no evidence that "an automated system would use the logo or hyperlink to manage copyrights, nor that the logo or hyperlink performed such a function."  *Id.*  On the contrary, "to the extent that they functioned to protect copyright at all, they functioned to inform people who would make copyright management decisions," which is not CMI.  *Id.*

Here, the phrases "TwitPic PhotoMorel" and "© 2010 Twitter" (or even the alleged "© Daniel Morel") on Morel's Twitter/TwitPic page certainly do not fall within any automated system that would be used to manage copyrights.  On the contrary, they are merely a Copyright Notice - *a means of identifying Morel as the copyright owner and the source of the imagery*.  The information was included as a means of identifying the creator and owner of the images and copyrights – just as in *IQ Group*, the information was used to "inform people who would make copyright management decisions."  Morel has failed to plead that "an automated system would use the [identifying information] to manage copyrights, nor that the [identifying information] performed such a function" and as such, this information is not CMI under the DMCA.  *See IQ Group, Ltd.*, 409 F. Supp.2d at 597.

Furthermore, preparing or inserting the copyright notice using software does not transform a copyright notice into CMI.  In *Murphy*, 2010 WL 1372408, adopting the *IQ Group* interpretation of CMI, the court held that a photography credit in the gutter of a

print magazine did not constitute CMI.  *Id.* at *3.  The court explained that "the fact that a New Jersey Monthly employee used a software program to compose the page and insert the gutter credit does not bring this case into the scope of the DMCA."  *Id.*  "The DMCA 'should not be construed to cover copyright management performed by people, which is covered by the Copyright Act, as it preceded the DMCA; it should be construed to protect copyright management performed by the technological measures of automated systems.'"  *Id.*, citing *IQ Group, Ltd.*, 409 F. Supp.2d at 597.  If simply using software to insert a copyright notice were sufficient to transform a photography credit into CMI, "each time, for example, a magazine photograph was reproduced without its original credit a violation of the DMCA would occur.  Indeed, virtually all garden-variety copyright infringement claims would be converted to DMCA claims, supplanting the original Copyright Act.  As an added section to the Copyright Act, the DMCA is clearly intended to supplement the act; the result urged by Plaintiff would completely disregard statutory intent and design."  *Id.* at *4.  Here, using the Twitter/TwitPic software to include "TwitPic PhotoMorel" or "© 2010 Twitter" (or even the alleged "© Daniel Morel") does not transform that identifying information into CMI.

In sum, because the photographs Morel alleges were copied did not contain any CMI, he cannot state a claim for violation of the DMCA.

## B.  Morel Cannot State a Claim Under Section 1202(b) Because No CMI Was Removed.

Section 1202(b) makes it a violation to "intentionally remove or alter any copyright management information."  17 U.S.C. § 1202(b).  Simply parroting the language of the statute, Morel claims that the Counterclaim Defendants "intentionally

removed and/or altered" CMI from his photos.  (SAC, ¶ 165).  It is axiomatic, however, that "[t]hreadbare recitals of the elements of a cause of action" in a complaint, "supported by mere conclusory statements, do not suffice" to state a viable claim.  *Iqbal*, 129 S.Ct. at 1949.  Quoting language used in the statute without asserting a plausible factual basis to support such a conclusory allegation is insufficient to state a claim.  *Rosner v. Bank of China*, 528 F. Supp.2d 419, 427 (S.D.N.Y. 2007) ("plaintiff's pleading obligations require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice").

Although Morel alleges that CMI was removed or altered from his photos, as discussed above, there simply was no CMI on the photos to be removed or altered.  Moreover, even accepting Morel's assertion that notations appearing elsewhere on his Twitter/TwitPic page constituted CMI, the counterclaims do not plausibly assert that Counterclaim Defendants removed that information.  Rather, Morel asserts that Counterclaim Defendants "downloaded" the photos, as they were, from his page.  (SAC, ¶ 165).  Thus, for example, there are no allegations that the Counterclaim Defendants cropped any photos to omit any copyright notice, or utilized any software to remove notices or metadata embedded in the downloaded images.  Rather, Morel's complaint, in essence, is that Counterclaim Defendants did not copy more of his Twitter/TwitPic page—such as the copyright notice in Twitter's or TwitPic's name, but not his name, that appeared lower down on the page.  But, failing to copy additional material does not constitute removing anything from the materials actually downloaded and does not violate the statute.  *See, e.g., Kelly v. Arriba Soft Corp.*, 77 F. Supp.2d 1116, 1122 (C.D. Cal.  1999) (when "notices do not appear in the images themselves," copying photos

from a web page "without displaying the corresponding copyright management

information consisting of standard copyright notices in the surrounding text" does not

violate section 1202(b)(1) as "this provision applies only to the removal of copyright

management information on a plaintiff's product or original work"), *aff'd and rev'd in part

on other grounds*, 336 F.3d 811 (9th Cir. 2003); *Murphy*, 2010 WL 1372408, at *3

(failure to reproduce "the fine print gutter credit that was located on the magazine page"

not a violation of section 1202(b)).

Because Morel has failed to allege sufficient plausible factual allegations capable

of showing that CMI was removed, his claims fail "to raise a right to relief above the

speculative level" and should be dismissed. *Twombly*, 550 U.S. at 545.

**C. Morel Cannot State a Claim Under Section 1202(a) Because He**

   **Cannot Adequately Plead Any of the Requisite Elements For Such a**

   **Claim.**

Section 1202(a) generally prohibits the knowing falsification of CMI with the intent

to aid copyright infringement.  The specific language provides:

> No person shall knowingly and with the intent to induce,
> enable, facilitate, or conceal infringement— (1) provide
> copyright management information that is false, or (2)
> distribute or import for distribution copyright management
> information that is false.

17 U.S.C. § 1202(a).  When broken down, this requires the following elements:

   i.   Knowingly;
   ii.  With the intent to induce, enable, facilitate or conceal
        infringement;
   iii. Provide false CMI or distribute or import false CMI.

Once again, Morel has simply made conclusory assertions mirroring the

language of the statute, but does not assert a plausible basis capable of establishing

any of the requisite elements.  He has simply stated that "AFP/Getty has *knowingly* distributed … *false copyright management information* by listing itself as the exclusive copyright licensing agent and listing Lisandro Suero as the author/copyright holder." (SAC, ¶160).

First, this claim is a mere conclusory allegation and Morel has not pled any *factual content* that would support this allegation.  In addition, Morel has failed to adequately plead that the inclusion of "Lisandro Suero" was knowingly false.  On the contrary, Morel acknowledges that "Lisandro Suero of the Dominican Republic, pirate[d] Daniel Morel's Iconic Images and place[d] them on his TwitPic page."  (SAC, ¶ 73). Thus, Morel admits in his Second Amended Counterclaims that Suero held himself out as the author and copyright owner of the photographs to third parties, including AFP and Getty Images, and does not provide any facts to suggest that either AFP or Getty Images knew this to be false.[11]  Furthermore, Morel claims, but has made no supporting factual statements, that either AFP or Getty Images listed itself as "the exclusive copyright licensing agent" for any of the photographs.  At most, by including a caption listing AFP and/or Getty Images, along with the author or copyright owner, they were indicating themselves as distributors of the photographs.

Second, Morel fails to state the element of intent to induce, enable, facilitate, or conceal infringement.  At best, Morel claims that this was done by AFP and Getty Images "to facilitate its willful copyright infringement."  (SAC, ¶ 161).  This does not meet element (ii) of 17 U.S.C. § 1202(a) even on its face.  Furthermore, "plaintiff's pleading obligations require more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not suffice." *Rosner*, 528 F. Supp.2d at 427.  Morel has not provided *any* factual basis that would support an allegation of intent to induce, enable, facilitate, or conceal infringement.

Morel simply has failed to even plead the intent element of a section 1202(a) claim, and has failed to provide any factual support for his assertion of knowledge. Accordingly, this claim should be dismissed.

### 4. AFP and Getty Images Move to Dismiss the Sixth Counterclaim for False or Misleading Representation of Fact (15 U.S.C. § 1125(a)(1)).

AFP and Getty Images move to dismiss the Sixth Counterclaim for False or Misleading Representation of Fact because this claim is barred by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36-38 (2003), and the Court can decide on the pleadings that Morel has failed to state a claim upon which relief can be granted.

Morel has asserted a claim for "false or misleading representation of fact" in violation of 15 U.S.C. § 1125(a)(1) for alleged "misattribution or for a false or misleading representation of fact which deceives as to a relationship, sponsorship or approval." Morel alleges that AFP has claimed copyright ownership or license in the photographs or deliberately removed the copyright owner's identity from the photographs.  These are classic "reverse palming off" claims that should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36-38 (2003).

---

[11]    Indeed, as will be shown if this case proceeds on this claim, as soon as AFP and Getty Images were notified that Mr. Suero was not the correct author, they made the credit change and took measures to notify all of their subscribers of the credit change.

In *Dastar*, the Supreme Court held that Lanham Act claims such as those asserted by Morel in this case do not survive and must be dismissed, stating "a cause of action for, in effect, plagiarism – the use of otherwise unprotected works and inventions without attribution" do not survive.  539 U.S. at 36-37.  "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's.  'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own."  *Id.* at 28 (internal citations removed).  As explained in *Nimmer*, "*Dastar* dooms most reverse passing off causes of action" because the "unanimous ruling in favor of *Dastar* gives wide berth to copyright principles in defeating the claims of creative plaintiffs who attempt to dress in other garb what is at base a claim for copying their expression." *Nimmer on Copyright*, § 1.01[D][2].

It is well established that where alleged "misrepresentation of authorship lies at the heart of th[e] action, the plaintiffs' Lanham Act claim is barred by *Dastar*."  *Gary Friedrich Enterprises, Llc v. Marvel Enterprises, Inc.*, 2009 WL 6412018, *12 (S.D.N.Y. 2009), citing *Antidote International Films, Inc. v. Bloomsbury Publishing, PLC*, 467 F. Supp.2d 394, 400 (S.D.N.Y. 2006).  "In *Antidote*, the court reasoned that 'the holding in *Dastar* that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in § 43(a)(1)(B) cannot be read to mean authorship.' Because misrepresentation of authorship lies at the heart of this action, the plaintiffs' Lanham Act claim is barred by *Dastar*."  *Id.*

Even where the claimant attempts to claim that the alleged "false representations here are likely to cause confusion not only with respect to the 'origin'… but also with respect 'the affiliation, connection, or association,'" courts in New York have agreed that *Dastar* prevents such claims.  *See, e.g., Antidote,* 467 F. Supp.2d at 398-99.  The *Antidote* court explained that "*Dastar* holds that a claim for false designation of origin is unavailable where the "origin" in question is the authorship of a communicative work. This holding necessarily applies with equal force to any claim for 'false … representation[s]' with respect to the 'affiliation … of [one] person with another person,' where, as here, one person is the publisher of a novel and the other is the author of the novel, because the holding of *Dastar* would be meaningless if a false authorship claim could be recast in this manner." *Id.* at 399.  Similarly, Morel's attempt to recast this claim in his Second Amended Counterclaims as a deception as to "affiliation, connection or association" rather than as to "origin," does not save his claim, because a photograph is a communicative work just as a novel is a communicative work.  Here, AFP and Getty Images are merely distributors of the photographs and Morel is the author of the photograph.  An allowance of his claim would render *Dastar* meaningless.

Even taking the pleadings in the light most favorable to the non-movant, Morel's Lanham Act claim relies on allegations of misrepresentation of authorship and copyright ownership, not of source of the goods themselves or the source of distribution of the goods, and pursuant to established case law, AFP and Getty Images respectfully request that the Court dismiss the Sixth Counterclaim for False or Misleading Representation of Fact.

5. **AFP and Getty Images Move to Dismiss the Seventh Counterclaim for False Advertising (15 U.S.C. § 1125(a)(2)).**

AFP and Getty Images move to dismiss the Seventh Counterclaim for False Advertising, because this claim is also precluded by *Dastar* and fails to state a claim for the independent reason that it does not satisfy the necessary elements for pleading false advertising.

Morel has asserted a claim for "false advertising" in violation of 15 U.S.C. § 1125(a)(2)[12] on the basis that AFP and Getty Images included "AFP/Getty" on the distributed photographs.  As with the claim for false designation of origin under the Lanham Act, *Dastar* applies to false advertising claims.  *Antidote*, 467 F. Supp.2d 394, 400 (S.D.N.Y. 2006).  The Lanham Act protects "the producer of the tangible goods that are offered for sale," rather than "the author of any idea, concept or communication embodied in those goods." *Dastar Corp.*, 539 U.S. at 37.

Furthermore, Morel has failed to plead and meet required elements of this claim. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), provides for false advertising:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> …
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any

---

[12]   AFP and Getty Images presume that Morel means 15 U.S.C. § 1125(a)(1)(B), which provides for false advertising, and not 15 U.S.C. § 1125(a)(2), which relates to the definition of "person" under the statute.

person who believes that he or she is or is likely to be
damaged by such act.

A claim for false advertising requires proof that the false representation of fact was

made in "commercial advertising or promotion." *Id.* "[T]he touchstone of whether a

defendant's actions may be considered 'commercial advertising or promotion' under the

Lanham Act is that the contested representations are part of an organized campaign to

penetrate the relevant market." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,

314 F.3d 48, 57 (2d Cir. 2002). The Second Circuit has adopted a three-part test to

determine whether statements constitute "commercial advertising or promotion" under

the Lanham Act: "The statement must be (1) commercial speech; (2) for the purpose of

influencing consumers to buy defendant's goods or services; and (3) although

representations less formal than those made as part of a classic advertising campaign

may suffice, they must be disseminated sufficiently to the relevant purchasing public."

*Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003) (holding that the defendant's statements

to an art magazine questioning the authenticity of plaintiff's art collection was not

commercial speech); *Fashion Boutique*, 314 F.3d at 56.

  Here, Morel has failed to plead the required elements of this claim. For AFP's

and Getty Images' credit lines to constitute commercial speech, they must have

intended to influence consumers to buy AFP's goods. *Boule*, 328 F.3d at 90. No such

allegation is made, and even if it were, there is not a factual basis presented that would

support such an allegation. On the contrary, subscribers or buyers would have gone to

AFP's or Getty Images' site, found the pictures, selected them and/or purchased them.

Only at that point, after selection and purchase, would they have seen the caption which

included the credit line. As such, the credit line did not influence the purchase of the

photographs, and the statements were not used "for the purpose of influencing consumers to buy defendant's goods or services."

Furthermore, the alleged false statement must go to the "nature, characteristics, qualities, or geographic origin" of the product.  15 U.S.C. § 1125(a)(1)(B).  The credit line statement does not reflect the "nature, characteristics, qualities, or geographic origin" of the photograph.  *See Antidote*, 467 F. Supp.2d at 400.  In *Antidote*, the court explained, "the holding in *Dastar* that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship.  If authorship were a 'characteristic[]' or 'qualit[y]' of a work, then the very claim *Dastar* rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)."  *Id.*

Even taking the pleadings in the light most favorable to the non-movant, Morel's false advertising claim must fall under *Dastar*.  Furthermore, Morel has failed to adequately plead the required elements of commercial advertising.  Therefore, AFP and Getty Images respectfully request that the Court dismiss the Seventh Counterclaim for False Advertising.

### 6. __ABC and CBS Move to Dismiss the Eighth and Ninth Claim for Secondary Copyright Liability.__

In each of his Eighth and Ninth Counterclaims, Morel asserts a direct infringement claim against CBS and ABC, respectively, and apparently as an afterthought, has tagged on a claim for vicarious infringement against CBS (SAC, ¶ 208) and "secondary infringement" against ABC (*id.* ¶¶ 211-18).  Morel's attempt to invoke secondary liability for copyright infringement falls short, however, as Morel has

failed to allege facts needed to show a valid claim for vicarious or contributory liability against either CBS or ABC.

To state a claim for vicarious infringement, a plaintiff must allege that the defendant had a "right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963); *see also Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997); *BroadVision, Inc. v. General Electric Co.*, 2009 WL 1392059, at *4 (S.D.N.Y. 2009); *cf. Grokster*, 545 U.S. at 930 ("One … infringes vicariously by profiting from direct infringement while declining to exercise a right to stop of limit it").

Here, Morel makes only conclusory assertions, attempting to mirror the legal standard, that CBS "licensed the Iconic Images to affiliates over whom they have supervision and control" (SAC, ¶ 209), and that Morel "discovered six of the Iconic Images posted in an online photo gallery of KFSN, the ABC affiliate in Fresno" (*id.* ¶ 215).  Starkly missing from Morel's pleadings, however, is any allegation—plausible or otherwise—that CBS or ABC directly profited from the alleged infringement committed by others.  Absent such facts, Morel cannot state a claim for vicarious infringement. *Cf. e.g.*, *BroadVision*, 2009 WL 1392059, at * 4 ("To state a claim for vicarious liability against a parent for the actions of its subsidiary, a plaintiff must show more than just a legal relationship between the parent and the subsidiary or that the parent benefits from ownership of the subsidiary.  Rather, the plaintiff must show that the parent has a direct financial interest in the infringing activity …." )(citations and internal quotes omitted).

30

Likewise, Morel cannot meet the pleading requirements for stating a claim for contributory infringement against ABC.  In the Second Circuit, to establish a claim for contributory copyright infringement, the plaintiff must allege that the defendant "with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another."  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).  Here, Morel's bare bones assertion establishes nothing more than that his photographs appeared on the website of an ABC affiliate. He has provided no facts from which to establish any of the elements for a contributory liability claim.

Accordingly, to the extent Morel's Eighth and Ninth Counterclaims purport to allege claims for vicarious or contributory copyright infringement against CBS and ABC, these claims should be dismissed.

### 7. <u>TBS, Inc. Moves to Dismiss the Tenth Claim for Direct Copyright Infringement.</u>

TBS, Inc. incorporates by reference AFP's argument regarding license as articulated above in Section 1.  In light of the license provided by Morel through posting his photographs on Twitter/TwitPic, his copyright claim cannot survive and TBS, Inc. respectfully requests that the Court dismiss the Tenth Counterclaim for Direct Copyright Infringement.

<u>CONCLUSION</u>

Morel has failed to adequately plead the necessary elements of his counterclaims.  His Second Amended Counterclaims should be dismissed without leave to amend, as an amendment will not cure the baseless claims asserted and will only

serve to needlessly prolong a meritless litigation.  For the foregoing reasons, Morel's

Second Amended Counterclaims should be dismissed with prejudice, and Counterclaim

Defendants should be awarded their costs and fees incurred in defending against them,

together with such other and further relief as the Court deems just and proper.

Respectfully submitted on  July 22, 2010

Agence France Presse as to Counts I, II, IV, V, VI and VII and Turner Broadcasting System, Inc. as to Counts V and X

VENABLE LLP


By:   /s/ Joshua Kaufman
Joshua Kaufman, Esq.
Meaghan Kent, Esq.
575 Seventh Street, N.W.
Washington, D.C. 20004-1601
(202) 344-4000
*Attorneys for Plaintiff-Counterclaim Defendant Agence France Presse and Counterclaim Defendant Turner Broadcasting System, Inc.*

Getty Images (US) Inc. as to Counts III, IV, V, VI and VII and CBS Broadcasting Inc. as to Count V and VIII.

DAVIS WRIGHT TREMAINE LLP


By:   /s/ James E. Rosenfeld
James E. Rosenfeld, Esq. (JR 2256)
Deborah A. Adler, Esq. (DA 0909)
1633 Broadway
New York, NY 10019
(212) 489-8230
*Attorneys for Counterclaim Defendants Getty Images (US) Inc. and CBS Broadcasting Inc.*


ABC, Inc. as to Count V and IX.

LEVINE SULLIVAN KOCH & SCHULZ, LLP


By:   /s/ Robert Penchina
Robert Penchina
321 West 44th Street, Suite 510
New York, NY 10036
Phone (212) 850-6100

*Attorneys for Counterclaim Defendant ABC, Inc.*

33