BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

*Attorney for Defendant and Counterclaim Plaintiff Daniel Morel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**AGENCE FRANCE PRESSE**

                     **Plaintiff,**

    **v.**

**DANIEL MOREL**

                     **Defendant and**
                     **Counterclaim Plaintiff**

    **v.**

**AGENCE FRANCE PRESSE**

                     **Counterclaim Defendant,**

    **And**

**GETTY IMAGES (US), INC., CBS BROADCASTING, INC.,**
**ABC, INC., TURNER BROADCASTING, INC**
**and (AFP and Getty Licensees does 1 - et. al.)**

                     **Third Party Counterclaim**
                     **Defendants**
_____

**Case No: 10-cv-2730 (WHP)**

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF AND THIRD PARTY**
**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS DEFENDANT-**
**COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………...iv

PRELIMINARY STATEMENT………………………………………………………1

STATEMENT OF FACTS……………………………………………………………...7

A. Daniel Morel and the Counterclaim Defendants………………………………………..8

B. The Haiti Earthquake and the Uploading of the 13
   Iconic Images to TwitPic…………………………………………………………9

C. AFP and Other News Media, Including CNN and CBS
   Try to Purchase the Iconic Images……………………………………………………9

D. AFP Theft of the Iconic Images and AFP/Getty's Removal of CMI and
   Infringement…………………………………………………………………...10

E. Willful Copyright Infringement by Counterclaim Defendants and
    Removal of CMI…………………………………………………..…………………12


ARGUMENT………………………………………………………………………13

I.    LEGAL STANDARD ON MOTION TO DISMISS
      PURSUANT TO RULE 12(b)(6)………………………………………...…..13

II.   THE DOCUMENTS PROFERRED BY AFP AND
      CNN MAY NOT BE CONSIDERED ON
      RULE 12(b)(6) MOTION……………………………………………………....14

III.  AFP AND CNN'S MOTION TO DISMISS
      COUNTERCLAIMS I AND X FOR DIRECT COPYRIGHT
      INFRINGMENT SHOULD BE DENIED…………………………………16

      A.   The SAC Meets the Standard for Pleading a Claim of
           Infringement…………………………………………………………...16

      B.  AFP and CNN's Affirmative Defense to Copyright
          Infringement Fails as a Matter of Law: No License was
          Granted By Morel To AFP, CNN or Any Other Third Party…………..18

           1.  AFP and CNN Cannot Prove a Contract……………………………18

           2.  Choice of Law………………………………………………………...21

3.  AFP et. al. Have No Third Party Status Under
Any Applicable State Law………………………….………………….21

**C.  AFP, CNN and the Other Counterclaim Defendants
Cannot Claim an Implied Non-Exclusive License………………………23**

**D.  AFP, CNN and the Other Counterclaim Defendants
Have Not Stated A Plausible Affirmative Defense of License…………..24**

**IV.   THE COUNTERCLAIM DEFENDANTS' 12(b)(6)
MOTION TO DIMISS MOREL'S SECONDARY LIABILITY
COUNTERCLAIMS SHOULD BE DENIED ………………..…………...25**

**V.    MOREL'S ALLEGATIONS ON THE FOURTH AND
FIFTH COUNTERCLAIMS ARE PLAUSIBLE AND
SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(b)(6)………..27**

**VI.   MOREL'S FACTUAL ALLEGATIONS UNDER
THE LANHAM ACT RAISE A RIGHT TO
RELIEF ABOVE THE SPECULATIVE LEVEL…………………..…...30**

**A.  False Attribution of Facts……………………………………..………30**

**B.  False Advertising…………………………………………..…………31**

**CONCLUSION………………...………………………………….……………32**

## TABLE OF AUTHORITIES

**CASES**                                                                                                        **Page(s)**

*AFP v. Google*
05cv.00546 (GK) (D.D.C. 2005)……………………………………………………5, 8, 24, 29

*Antidote International Films, Inc. v. Bloomsbury Publishing, PLC*
467 F.Supp.2d 394, 400 (S.D.N.Y 2006)…………………………………………….………….30

*Ashcroft v. Iqbal*
129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)………………………..……………………13

*Artista Records LLC v. Lime Group LLC*
F. Supp. 2d, 2010 U.S. Dist. LEXIS 46638, (S.D.N.Y. May 25, 2010)……………..…………25-26

*Associated Press v. All Headline News Corp.*
608 F. Supp.2d 454 (S.D.N.Y. 2009)…………………………………………………...……28-29

*Banxcorp et. al. v. Costco Wholesale Corp. et. al*
No. 09-CV-1783 (KMK), 2010 U.S. Dist. LEXIS 70380 (S.D.N.Y July 13, 2010)……..28-29, 32

*Barclay Capital et. al. v. Theflyonthewall.com*
10-1372-cv (2d. Cir. 2010)………………………………………………………….……….4

*Bell Atlantic Corp. v. Twombly*
550 U.S. 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)…………………………………..…7, 13-14, 25

*Boisson v. Banian, Ltd*.
273 F.3d 262, 267 (2d Cir. 2001)…………………………………………………………...…17

*Boule v. Hutton*
328 F. 3d 84, 91 (2d Cir. 2003)…………………………………………………………...…31

*Broadvision, Inc. v. General Electric Co, et. al.*,
08 Civ. 1478 (WHP) 2009 U.S. Dist. Lexis 45862 (S.D.N.Y. May 5, 2009)……………………17

*Cameron Indus., Inc. v. Caravan, Ltd.*
676 F. Supp. 2d 280, 283-84 (S.D.N.Y. 2009)…………………………………………...……16

*Cargill, Inc. v. Charles Kowsky Res., Inc.*
949 F.2d 51, 55 (2d Cir. 1991)………………………………………………………….……20-21

*Chambers v. Time Warner, Inc*
 282 F.3d 147, 152-53 (2d Cir. 2002)……………………………………………….……14-15, 31

*Chosun Int'l. Inc. v. Chrisha Creations, Ltd.*
413 F.3d 324, 329 (2d Cir. 2005)……………………………………………………...…….30

*Christopher Jaspter v. Sony Music Entertainment, Inc.*
No. 04 CIV. 7876(CM) 378 F.Supp.2d 334 (2005)…………………………………...……..18

*Cleveland v. Caplaw Enters.*
448 F.3d 518, 521 (2d Cir. 2006)……………………………………………………...…….13

*Cortec Indus., Inc. v. Sum Holding L.P.*
949 F.2d 42, 47 (2d Cir.1991)……………………………………………………...……….15

*Cynthia Hines et. al. v. Overstock.com, Inc.*
No. 09-4201-cv  2010 U.S. App. LEXIS 11265 (2d. Cir.  2010)……………………….…….19-20

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23 (2003)……………………………………………………………………….……6, 30

*Diana Allen Life Insurance Trust et. al. v. BP P.L.C. et. al*
No. 08-2045-cv. (2d. Cir 2009)……………………………………………….……………22

*Erik Curran v. Amazon.com et. al.*
2008 U.S. Dist. LEXIS 12479…………………………………………………...…………….16

*Europacific Asset Management Corp. v. Tradescape Corp. et. al.*
03 Civ. 4556 (PKL), 2005 U.S. Dist. LEXIS 3227……………………………..……….21

*Express Indus. & Term. Corp. v. N.Y. State Dep't of Transp.*
93 N.Y.2d 584, 589, 715 N.E.2d 1050, 693 N.Y.S.2d 857 (1999)………………………….20

*Fashion Boutique of Short Hills, Inc. v. Fendi, USA, Inc.*
314 F.3d 48, 56 (2d Cir. 2002)…………………………………………………...………….31

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)…………………………….16

*Fitzgerald v. CBS Broadcasting*, Inc.
491 F. Supp. 2d. 177 (U.S.D. Mass. 2007)……………………………………...…………….26

*Fox v. Hildebrand,*
No. CV 09-2085 DSF (VBKx), 2009 U.S. Dist. LEXIS 60886, (C.D. Cal. 2009)………...…….28

*Frangrancenet.com, Inc. v. Francrancex.com, Inc.*
No. 06-cv-2225 (E.D.N.Y. January 14, 2010)……………………………………......…13, 17

*Gershwin Publishing Group v. Columbia Artist's Mgmt.*
443 F. 2d 1159, 1162 (2d. Cir. 1971)……………………………………....……25

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*
449 F.3d 377, 383 (2d Cir. 2006)……………………………………....……21

*Gmurzynska v. Hutton*
355 F.3d 206, 210 (2d Cir. 2004)……………………………………...…………31

*Graham v. James*
144 F.3d 229, 235 (2d Cir. 1998)……………………………………...……… 23

*Hishon v. King & Spalding*
467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)……………………...…….19

*I.A.E., Inc. v. Shaver*
74 F.3d 768, 775 (7th Cir.1996)……………………………………...…19, 24

*International Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*
363 F.3d 137, 143 (2d Cir. 2004)……………………………………....…21

*Island Software and Computer Services, Inc. v. Microsoft*
413 F. 3d 257 (2d. Cir. 2005)……………………………………...17, 29

*Jackson v. American Plaza Corp.*
2009 U.S. Dist. LEXIS 35847 (S.D.N.Y. Apr. 28, 2009)……………………...……22

*Kaplan v. Stock Market Photo Agency*
133 F. Supp. 2d 317, 323 (S.D.N.Y. 2001)……………………………………...…17

*Katz v. Image Innovations Holdings*
2008 U.S. Dist. Lexis 22975……………………………………...15

*Kelly v. Arriba Soft Corp.,*
77 F. Supp. 2d 1116 (C.D. Cal. 1999)……………………………………...29

*Lennon v. Seaman*
No. 99 Civ 2664 (LBS), 2002 U.S. Dist. LEXIS 1237……………………………………17

*Lewinson v. Henry Holt & Co.*
 659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009)……………………………………...16

*Madeira v. Affordable Hous. Found., Inc.*
469 F.3d 219, 251 (2d Cir. 2006)…………………………………………………..……22

*Mark Wallenfang v. John Havel et. al.*
No. 08 Civ. 288, 2010 U.S. Dist. LEXIS 36332…………………………………………....19

*Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*
585 F.3d 677, 692-93 (2d Cir. 2009)……………………………………………………29

*MGM Studio Inc. v. Grokster*
545 U.S. 913, 930 (2005)…………………………………………………………25-26

*Moore v. Microsoft Corp.*
293 A.D.2d 587, 741 N.Y.S.2d 91, 92 (2d Dep't 2002)…………………………………20

*NBA v. Motorola, Inc.*
105 F. 3d. 841 (2d. Cir 1997)……………………………………………………..……4

*Neitzke v. Williams*
490 U.S. 319, 326-327 (1989)……………………………………………………………5

*Peter F. Gaito Architecture, LLC et. al v. Simone Development Corp., et. al.*
No. 09-2613-cv. 602 F.3d 57 (2d. Cir. April 2010)…………………………………………...18

*Premium Mortg. Corp. v. Equifax, Inc.*
583 F.3d 103, 108 (2d Cir. 2009)………………………………………………………...…22

*Register.com, Inc. v. Verio, Inc.,*
356 F.3d 393, 427 (2d Cir. 2004)…………………………………………………..……20

*R.F.M.A.S., Inc. v. Mimi So*
619 F. Supp. 2d 39, 51 (S.D.N.Y. 2009)……………………………………………..……17

*Robert Luizzi et. al v. Pro Transport, Inc. et. al*
02 CV 5388 (CLP), 2010 U.S. Dist. LEXIS 77709………………………………………...…21

*Roberts v. Keith*
04 Civ. 10079, 2006 U.S. Dist. LEXIS 8959 (S.D.N.Y March 3, 2006)……………….…….15

*Robison v. Sweeney*
301 A.D.2d 815, 753 N.Y.S.2d 583, 586 (3d Dep't 2003)…………………………….……20

*Roger v. Koons*
960 F.2d 201 (2d. Cir. 1992)……………………………………………………………..3, 17

*S. Cherry St., LLC v. Hennessee Group LLC*
573 F.3d 98, 110 (2d Cir. 2009)…………………………………………………………………13

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*
211 F.3d 21, 25 (2d Cir. 2000)………………………………………………………...……24

*Softel, Inc. v. Dragon Med. & Scientific Communc'ns, Inc.*
118 F.3d 955, 971 (2d Cir. 1997)……………………………………………………....…25

*Specht et. al. v. Netscape et. al.*
306 F.3d 17 (2d Cir. 2002)…………………………………………………….……………20

*Subaru Distribs. Corp. v. Subaru of America, Inc.*
425 F.3d 119, 124 (2d Cir. 2005)……………………………………………………...……22

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*
629 F. Supp. 2d 526, 537 (E.D. Va. 2008)………………………………………………...…28

*U2 Home Entertainment, Inc. v. Kylin TV, Inc. et. al*
(2007 U.S. Dist. LEXIS 50131 (E.D.N.Y. July 10, 2007)…………………………………...…15, 17

*Underdog Trucking, LLC et. al. v. Verizon Services Corp*. et. al.
09 Civ. 8918 (DLC), 2010 U.S. Dist. LEXIS 72642 (S.D.N.Y July 20, 2010)………………….22

*United Feature Syndicate v. Koons*
817 F. Supp. 370; 1993 U.S. Dist. LEXIS 3479(S.D.N.Y. March 24, 1993)……………….……3

*United States v. City of New York*
359 F.3d 83, 91 (2d Cir. 2004)………………………………………………………….……8

*United States v. Portrait of Wally*
663 F. Supp. 2d 232 (SDNY 2009)………………………………………………………….…3

*United States v. Reves*
302 F. 3d 48, 54 2d. Cir. 2002……………………………………………………………....3-4

*Universal Steel Buildings Corp. et. al. v. Shore Corp. One et. al.*
No. 09-0656, 2010 U.S. Dist. LEXIS 27817 (W.D.Pa. 2010)………………………………..…14

*W. Elec. Co. v. Pacent Reproducer Corp.*
42 F.2d 116, 118 (2d Cir. 1930)……………………………………………………………19

*Wayne Cable v. AFP*
2010 U.S. Dist. Lexis 73893 (N.D.Illinois July 20, 2010)………………………….....5, 29, 32

*The Weinstein Company v. Smokewood Entertainment Group, LLC*
664 F. Supp. 2d 332 (S.D.N.Y September 24, 2009)…………………………………………24


## STATUTES

15 U.S.C. §1125(a)…………………………………………………………………….…4

15 U.S.C. §1125(a)(1)(a)…………………………………………………...…………30

15 U.S.C. §1125(a)(1)(b)…………………………………………………………...…30-31

17 U.S.C. §101…………………………………………………………………….………1

17 U.S.C. §102(a)(5)…………………………………………………………...…………17

17 U.S.C. §106………………………………………………………………...…..1, 17

17 U.S.C. §204(a)……………………………………………………………...…………23

17 U.S.C. § 410(c)…………………………………………………………...……………17

17 U.S.C. §501…………………………………………………………………...…………24

17 U.S.C. §1201(a)(1)…………………………………………………………………24

17 U.S.C. §1202………………………………………………………………...…………3

17 U.S.C. §1202(b)(1)…………………………………………………………….………27

17 U.S.C. §1202(b)(3)……………………………………………………………..……...27

17 U.S.C. §1202(c)(1)…………………………………………………………………....28

17 U.S.C. §1202(c)(2)…………………………………………………………...………28

17 U.S.C. §1202(c)(3)…………………………………………………………...……...28

17 U.S.C. §1202(c)(6)……………………………………………………………...……...28

17 U.S.C. §1202(c)(7)…………………………………………………………...………28

28 U.S.C. §1915(d)…………………………………………………………………..…………5

**RULES**

Fed.R.Civ.P 8(a)………………………………………………………….……..……….13

Fed.R.Civ.P 8(a)(2)………………………………………………………….……………..…..13

Fed.R.Civ.P 12(b)(6)……………………………………………….……5, 13-14, 18, 21, 24-27, 30, 32

Fed.R.Civ.P 12(f)……………………………………………………………………………….3

**OTHER AUTHORITIES**

Moringello, Juliet M. and Reynolds, William L., *Electronic
       Contracting Cases 2008-2009*…………………………………………………...20

Neuberger, Jeff, *No Third Party Beneficiary Status under
       Craigslist Terms of Use*, (May 6, 2009)……………………………..…………..23

*Restatement (Second) of Contracts § 302* (1981)……………………………………….22

The Russian's Photo Blog ©2010 Jeremy Nichol.
       http://www.jeremynicholl.comblog.......................................................................6

Wright, Charles A. and Miller, Arthur R. 5A *Federal Practice
       and Procedure* § 1327 (2007)…………………………………….…..…..16

## PRELIMINARY STATEMENT

Defendant-Counterclaim Plaintiff Daniel Morel ("Morel" or "Counterclaim Plaintiff") submits this Memorandum of Law in Opposition to the Motion to Dismiss the Second Amended Counterclaim ("SAC")[1] of Defendant-Counterclaim Plaintiff Agence France Presse ("AFP") and Third Party Counterclaim Defendants Getty Images (US), Inc., ("Getty"), CBS Broadcasting, Inc. ("CBS"), ABC, Inc. ("ABC"), and Turner Broadcasting, Inc. ("CNN") (collectively the "Counterclaim Defendants").

On January 12, 2010 at 4:53 p.m., a catastrophic earthquake of a magnitude of 7.0 struck Southern Haiti, devastating the capital city of Port au Prince (¶34). Morel, an award winning professional photojournalist was in Haiti when the earthquake struck. Narrowly escaping, he was one of the few professional photographers on the ground when the quake struck and one of even fewer able to transmit the tragedy and human suffering through his powerful and emotional images ("Haiti Earthquake Photographs")(¶35).

Morel's counterclaims arise out of Counterclaim Defendants' willful and reckless disregard of Morel's intellectual property rights in his Haiti Earthquake Photographs (¶36-43 et. seq.).

AFP, Getty, CBS, ABC, and CNN have used the Haiti Earthquake Photographs without Morel's consent, in violation of the Copyright Act of 1976 as amended 17 U.S.C. §101, 106 et. seq. Namely, notwithstanding Morel's ownership of the original content of the Haiti Earthquake Photographs, AFP and Getty, with knowledge of or in reckless disregard of Morel's intellectual property rights, infringed Morel's rights in thirteen (13) of the Earthquake Photographs (the "Iconic Images"), by displaying, distributing, selling and reproducing the Iconic Images

---

[1] ¶ numbers refer to paragraphs in the SAC. Morel has also filed a Second Amended Answer ("SAA"). ¶ numbers in the SAA will be referred to as ___-SAA.

worldwide, knowing they were stolen from Morel, with the name "AFP/Getty, Lisandro Suero," and/or "AFP/Getty, Daniel Morel". The Iconic Images were reproduced, distributed, sold and licensed to AFP/Getty subscribers, clients and customers, including the New York Times, the Boston Globe, USA Today, The Age (Australia), the Washington Post and other news outlets worldwide from the evening of January 12, 2010 and thereafter ("AFP/Getty Subscribers"). Getty and AFP continued to license even after the alleged name change and "kill" (See Ex. B). As of this date, despite repeated cease and desist letters, the Washington Post and various other media outlets continue to display the Iconic Images on their websites and the World Food Program, the United Nations and other organizations, like the Clinton Bush Haiti Fund, display the Iconic Images on billboards, at conferences, in advertising and fundraising related to the Haiti Earthquake, without credit or compensation to Morel (¶37-39).

Counterclaim Defendants CNN, ABC and CBS have also infringed Morel's copyright by display, transmitting, reproducing and adapting the Iconic Images in news broadcasts, online photo galleries and in other ways alleged herein (¶40, ¶198-210, ¶212-218, ¶220-231). Counterclaim Defendants have made and continue to receive substantial benefit and revenue from the reproduction, display and distribution of Morel's Iconic Images to devastating commercial harm and impact on Morel's professional reputation and financial situation, including lost sales, lost opportunities to license and diminution in the value of his copyrights (¶41).

Iconic Infringing Image #1 (SAC p. 9), pirated by AFP and licensed to and distributed by Getty in the United States, appeared on front pages of newspapers worldwide, on websites, and television and cable news networks, local and foreign, via satellite and other transmissions, and continues to be displayed and distributed worldwide on the internet and newspaper photo

galleries with the logo "AFP/Getty" and the name "Lisandro Suero" or "AFP/Getty/Daniel

Morel" (¶42).  Morel does business as Photomorel and uses this designation as a means of source

identification of his photography (¶163, Ex. C, Ex. P).  Certain of his Haiti Earthquake Images

were licensed to Corbis on January 13, 2010.  Morel alleges that AFP and the other Counterclaim

Defendants deliberately removed Morel's name, Photomorel and ©TwitPic when they

reproduced, distributed and displayed the Iconic Images or distributed the Iconic Images

knowing that the CMI had been removed, in violation of the DMCA 17 U.S.C. §1202 (¶158-

169).

The Counterclaim Defendants argue that numerous pages of Morel's SAC are subject to a

motion to strike pursuant to Fed.R.Civ.P. 12(f) and refer in particular to the allegation that AFP

"stole" the Iconic Images or characterized the Counterclaim Defendant's actions as "piracy" as

inflammatory or impertinent.  The Second Circuit in *Roger v. Koons* (960 F.2d 201 (2d. Cir.

1992)), however, used similar language:

> The Court's summary judgment determination emphasized that "it is not really the parody
> flag that appellants are sailing under, but rather the flag of piracy." In reaching this
> decision, the Second Circuit rejected virtually every legal argument which Koons has
> asserted in the instant case in opposition to UFS's similar motion for summary judgment.
> See *United Feature Syndicate v. Koons* (S.D.N.Y. March 24, 1993) *817 F. Supp. 370*;
> *1993 U.S. Dist. LEXIS 3479.*

As for the term "stolen" it is a legal construct.  Based on the undisputed facts to date,

Morel has alleged that AFP knew the Suero images had been stolen from Daniel Morel when

they took them from Lisandro Suero's website[2].  (See *United States v. Portrait of Wally*, 663 F.

Supp. 2d 232 (SDNY 2009) stating "In order for property to be considered 'stolen' it must

rightfully belong to someone other than the person who has it."  See *United States v. Reves*, 302

---

[2] Because of the files that have been destroyed from both the AFP and Suero Twitter/TwitPic
pages, it is not known whether AFP actually took the images from Daniel Morel with a right-
click cut and paste or from Lisandro Suero.

F. 3d 48, 54 2d. Cir. 2002), defining scienter for the purposes of the National Stolen Property Act as "to act 'knowingly', is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question.  When such awareness is present, 'positive' knowledge is not required.").

Perhaps Morel should instead have referred to the Counterclaim Defendants as free riders." [3]  That is a term used by AFP in joining an Amici Curiae Brief filed in the Second Circuit in *Barclay Capital et. al. v. Theflyonthewall.com* (10-1372-cv).  The Brief pointed out that "the vulnerability of news originators has grown exponentially in the internet era…with a simple computer program and a few keystrokes, a free rider can immediately copy the valuable news content from the internet…The consequences of unchecked , widespread free riding on a news organization would be devastating to publishers and costly to society."[4]

Paradoxically, Morel's arguments are similar. "Licensing is an important source of revenue for content creators.  This is especially true for photographers and photojournalists…" The argument advanced by Counterclaim Defendants would essentially permit someone without written authorization, to take and commercialize a content owner's property without attribution or reasonable compensation for the use (¶130-131).

Perhaps from the Counterclaim Defendants' point of view a Haitian photographer should not be entitled to "aggressively assert his rights," notwithstanding, AFP's aggressive assertion of

---

[3] See *NBA v. Motorola, Inc.* 105 F. 3d. 841 (2d. Cir 1997) ("*Motorola*").  Under *Motorola*, "free-riding" refers to appropriation by the defendant of "the plaintiff's costly efforts to generate or collect" information without paying for it in some manner.  105 F.3d. at 852.  Morel's Iconic Images were "hot news"; however he has not alleged a claim based on *Motorola* because of the availability of copyright protection for his original photographs.
[4] Morel further alleges violations of the Lanham Act 15 U.S.C. §1125(a) inter-alia, that FP and the other Counterclaim Defendants took the Haiti Earthquake digital files and repackaged them as their own and that AFP/Getty falsely claimed an association with Morel.

its rights in a lawsuit filed against Google, alleging copyright infringement for posting headlines and news stories and removing the CMI in violation of the DMCA.  Mr. Kaufman wrote:

> This Court should also not be taken in by Google's efforts to wrap itself in a "public interest mantle" and avoid liability by arguing that by copying the works of others, it provides a benefit to society…Considering that society has a strong interest in fostering creative expression, it is unclear how Google's wholesale copying furthers any societal interest. Google is a profit motivated enterprise on a quest for dominance in the field of search engines. Google does not have the right to take what it wants without regard to third party intellectual property rights, even if this approach makes Google's search engines more attractive to end users.

This Court should substitute AFP for "Google" in the paragraph above as has Morel has in the paragraph below, quoted from AFP's Reply Memo in *AFP v. Google* 05cv.00546 (GK) (D.D.C. 2005):

> If AFP can offer information to the public without infringing third party rights, then why does AFP copy the works of others -- because it understands and appreciates their commercial appeal and economic value (at p. 5) (¶72, ¶99, ¶129).

Counterclaim Defendants boldly assert that Morel's counterclaims are the equivalent of a frivolous lawsuit and on that basis alone should be dismissed to avoid waste of judicial resources[5].

Counterclaim Defendants are well aware that Morel's case is not frivolous.  In *Wayne Cable v. AFP* (2010 U.S. Dist. Lexis 73893 (N.D.Illinois July 20, 2010)) Cable filed a complaint alleging various claims against AFP for its alleged misappropriation of Cable's proprietary photographs (See Hoff. Decl. Ex. 5).

Cable alleged, as does Morel, that AFP caused his photos to be copied and infringed by, among other things, displaying reproductions on its website *ImageForum,* disseminating the reproductions worldwide via the Internet, distributing copies as reproduced on *ImageForum*

---

[5] Counterclaim Defendants cite *Neitzke v. Williams* (490 U.S. 319, 326-327 (1989)) which dealt with frivolous lawsuits brought in forma pauperies (by indigents) and the relationship between 12(b)(6) and 28 U.S.C. §1915(d).

through digital means as the purported licensor, and purporting to sub-license sales of the photos to third parties, all without Cable's permission. Cable also alleged that AFP deliberately removed Cable's photo credit and copyright notice in violation of the DMCA and violated his rights under Sec. 43(a) of the Lanham Act.

Confronted with arguments identical to those made by the Counterclaim Defendants', here the Court correctly denied AFP's motion to dismiss the DMCA and Lanham Act §43(a) claims.

In rejecting the 43(a) claim, the *Cable* Court held that AFP's reliance on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) to preclude the 43(a) claim was misplaced, "…the *Dastar* Court…stated that a claim under §43(a) 'would undoubtedly be sustained if *Dastar* had brought some of New Line's crusade videos and merely repackaged them as its own." Similarly, Morel has alleged that the Counterclaim Defendants AFP and Getty are misrepresenting Morel's product (the digital files) as their own.

As one commentator has noted, AFP's lawyer tried to wriggle out of the case by having it dismissed on a legal technicality.

> Falling back on the defense of "that law doesn't apply to us," AFP's lawyers argued that "the DMCA…only applies to automated rights management systems…It's an interesting defense by AFP since the vast majority of images on the internet lack any digital rights management: ownership is generally identified, if at all, by a copyright notice" (or other CMI in the vicinity of the image). "So to follow AFP's argument to its logical conclusion, the vast majority of images on the internet are fair game for AFP—or anyone else—to grab and distribute…The five page judgment contains plenty of dense legalese, but is easily summarized, you are wasting the Court's time."[6]

Counterclaim Defendants also attack the SAC as containing irrelevant information. To the contrary, excerpts from journalists and bloggers, not only provide factual support for Morel's counterclaims (i.e. customer confusion as to the source of Morel's affiliation)(¶99), but also

---

[6] The Russian's Photo Blog ©2010 Jeremy Nichol.  http://www.jeremynicholl.comblog.

6

indicate potential expert testimony to be introduced at trial to confirm AFP, Getty, CBS, CNN, and ABC's reckless disregard of Morel's intellectual property rights in contrast to the responsible media codes and practices adopted by their colleagues (¶85-87, ¶108, ¶117)[7].

The other arguments of Counterclaim Defendants are similarly flawed. AFP's and CNN's argument that posting the Iconic Images on Twitter/TwitPic created a non-exclusive license in AFP and CNN and third party users is so preposterous and lacking in both factual and legal foundation, that it is unaccompanied by any supporting citation to case law or support from the other Counterclaim Defendants[8].  The issue of whether the Twitter ToS apply is in fact, a red herring, since even if a contract was created incorporating the Twitter ToS, the Counterclaim Defendants are not third party beneficiaries of contract.

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint, *Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) at 570 ("Twombly") at p. 563*.  Therefore, the Court does not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its fact" *id* at *570*.

The allegations set forth in the SAC are certainly sufficient to "nudge[] [Morel's] [Counterclaims] across the line from conceivable to plausible" *id* at 570.

## STATEMENT OF FACTS

For the purposes of the motion, the allegations of the Second Amended Counterclaim are accepted as true, and all reasonable inferences are drawn in favor of Morel as the non-movant.

---

[7] Counterclaim Defendants are correct in criticizing the questions in ¶86.  That ¶ should be amended to state "Upon information and belief," to be confirmed after discovery.

[8] Because Getty, CBS and ABC have not moved to dismiss Counterclaims one, three, eight, and nine against them for direct copyright or contributory infringement, and have not timely filed an answer, nor obtained a stay to file the answer pending the 12(b)(6) motions, judgment by default on these claims should be entered against ABC, CBS and Getty on these Counterclaims.

*United States v. City of New York*, 359 F.3d 83, 91 (2d Cir. 2004) cert. denied, 543 U.S. 1146 (2005).  Because the Counterclaim Defendants in their recitation of the facts have violated this standard and incorrectly mischaracterize or omit factual allegations to prevent inferences in Morel's favor and allege facts on inferences not found in the SAC, Mr. Morel is obliged to highlight *inter alia* certain facts.

## A.  Daniel Morel and the Counterclaim Defendants

Morel was born in Haiti in 1951 .  He is a widely recognized and published photo journalist known for his work for more than twenty five years in Haiti (¶55-66).

AFP maintains a worldwide operation, reaching thousands of subscribers via radio, television, newspapers, the Internet and companies from its main headquarters in Paris and regional centers in Washington, Hong Kong, Nicosia and Montevideo.  Through its subscribers AFP's photographs and stories reach millions of readers on a daily basis.  All of AFP's images are available from and are posted on AFP's online database, Image Forum www.imageforum.afp.com (¶45).

AFP does not give away its content for free, but rather has set up a worldwide marketing apparatus through which it licenses its news photographs and articles directly or through agents to an extensive range of customers including newspapers, wires, web sites, aggregators, companies, governments, national and international agencies, and data services like Lexis-Nexis. See *AFP v. Google Inc.*, No. 1:05-CV-546 (D.D.C.), First Amended Complaint.

Since 2003, Getty and AFP have been in a strategic and exclusive partnership, most recently extended in December 2009 to Italy.  Getty Images has the exclusive right to market AFP images in the U.S. and the United Kingdom (http://media.gettyimages.com/article).  See also p.11-12 of the SAC for a description of the other Counterclaim Defendants.

8

**B.  The Haiti Earthquake and the Uploading of the 13 Iconic Images to TwitPic**

Morel was in the city of Port au Prince, Haiti when the earthquake struck at 4:54 p.m. on January 12, 2010 (¶67).  Morel photographed some of the most powerful and moving images documenting the quake's aftermath (¶70).  Because of the devastation, Morel was limited as to how he could send his photographs to the outside world (¶105).  At sunset, it was dark, there was no electricity or communication--all phone networks were down.  Morel, with the assistance of Isabel Morse, daughter of his friend Richard A. Morse, manager of the Oloffson hotel, was able to connect to the internet and have Ms. Morse open an account on the social networking site, Twitter with the username "PhotoMorel" and TwitPic.  TwitPic and Twitter are incorporated in different states, Delaware and California respectively, have different Terms of Service ("ToS"), with different choice of law and venue provisions.  (Delaware and California respectively for choice of law; Delaware and San Francisco, respectively for choice of venue)(¶71).  TwitPic is a third party application of Twitter.  Morel tweeted that he had exclusive earthquake photos and directed users to his TwitPic account with the intention of licensing his breaking news photographs for a price (¶71-72).

Shortly thereafter, Lisandro Suero in the Dominican Republic, stole the images and uploaded them to his own TwitPic website.  He tweeted that they were his photographs and available for distribution, with credit (¶73-74).

**C.  AFP and Other News Media, Including CNN and CBS Try to Purchase the Iconic Images**

The news media contacted Morel from the time of the posting of the Iconic Imges on TwitPic (¶75-80)(See Ex. F).

The SAC details the correspondence between Vincent Amalvy, photo editor of AFP, via e-mail in which Amalvy tries to acquire rights to the Iconic Images from 6:26 p.m. on January 12, 2010 by linking to Morel's TwitPic page (¶82-87).  Similarly, CNN, CBS , AP and other media attempted to purchase the Haiti Earthquake Images from Morel (¶198-201; ¶221-223). Morel licensed one image to the Wall Street Journal (¶76-77).

### D.  AFP Theft of the Iconic Images and AFP/Getty's Removal of CMI and Infringement

Morel's SAC alleges that on or about 9:45 p.m. EST, AFP downloads the digital files of the Iconic Images from the TwitPic page of Lisandro Suero with knowledge that the Iconic Images are Morel's and that his authorization is necessary to use them (¶88-94).  Morel then alleges that without his authorization, AFP uploads the files to the Image Forum (¶83-84) (Ex. D and E).  (AFP employees copied these digital files to AFP's online image computer database for storage, distribution, sale and licensing worldwide to all AFP subscribers through its wire service and other clients and customers ("Clients") without Morel's name, Photomorel, or the Twitpic © notice ("CMI").  The Iconic Images were then copied and uploaded to Getty where they were copied and stored in Getty's online database for distribution, licensing for managed rights, editorial and commercial use throughout the United States without the CMI.  The Iconic Images were falsely labeled "AFP/Getty/Lisandro Suero," notwithstanding that AFP and Getty knew that the images were Morel's (¶87-88; see also SAC p.28-29).  By way of example, copies of some of the Iconic Images are attached hereto as Ex. E (¶37-39, ¶84).  Morel never gave permission or received compensation for any uses (SAA-¶4, SAA-¶9, SAA-¶14-16) (See Ex. D).

Morel alleges that AFP knew by 2:06 am 1/12/10 that the images were Morel's and had been used without his authorization; however, no "kill" notice was issued, by admission of AFP, until January 14, 2010 (¶88, ¶109).  The "kill" notice was deliberately ambiguous and

produced little, if any, result, in part because it did not apply to the thousands of photographs wrongfully attributed to Lisandro Suero.  Notwithstanding an alleged credit change notice was issued at 5:30 a.m. 1/13/10 and Morel removed his Iconic Images from his TwitPic site at 9:01 a.m., AFP, Getty and their Clients continued to license and distribute the Iconic Images (¶100-107; ¶110-113).  Morel's counsel's cease and desist letters produced little result (¶120-125).

Morel's allegations permit the inference that Counterclaim Defendants acted in reckless or willful disregard of Morel's rights.

Pursuant to its ToA, Getty and presumably AFP, under its license with Getty have the right to withdraw any infringing material (see Getty License Agreement ¶11.4, Hoff. Decl. Ex. 1 ("Getty ToA")). As the images provided in Ex. K and L1-L3 show, Getty has failed to notify its customers, clients, subscribers and licensees ("Clients")(¶98-100; ¶125; ¶153).

Moreover, the Getty ToA requires its licensees to carry the false source or affiliation to "AFP/Getty" with Morel's name or the false attribution "Lisandro Suero/AFP/Getty" (Getty ToA ¶3).  Thus, the Iconic Images continued to be licensed without Morel's name or with a false affiliation listing AFP/Getty (¶98-100; ¶153).  Given AFP and Getty's core business is licensing, a reasonable fact finder could conclude that by altering the copyright management information ("CMI"), AFP and Getty had the requisite intent to induce or conceal infringement.

Morel alleges the Iconic Images remain on the websites and continue to be used by AFP, Getty, CNN and their Clients in violation of Morel's rights.  In some instances, such as Time, Inc., the World Food Organization and the Washington Post, to the date of the SAC and after (¶39, ¶125, ¶127) (Ex. E).  (See also Hoff. Decl. Ex. 2).

**E.  <u>Willful Copyright Infringement by Counterclaim Defendants and Removal of CMI</u>**

The SAC alleges that the Counterclaim Defendants removed Morel's name, Photomorel and TwitPic©, used as CMI by Morel, from near the Iconic Images (Ex. P).  It is alleged that CBS and CNN were aware of Morel's Iconic Images and contacted Morel to purchase or license his rights.

It is reasonable, to infer that having been unsuccessful in securing a license from Morel, CBS and CNN simply "right clicked" or downloaded the digital files from Morel's TwitPic account or from Lisandro Suero's account with knowledge that the Iconic Images were Morel's proprietary photographs.  In any event, the Iconic Images transmitted on CNN's and CBS's 1/12/10 and 1/13/10 programming displayed no CMI, ©TwitPic, nor did Katie Couric or Larry King bother to indentify Morel as the photographer in their evening broadcasts (¶203, ¶208, Ex. N).

Morel alleges that CBS listed Daniel Morel/CBS knowing it had no authorization from Morel.  ABC simply used the Iconic Images without authorization or copyright credit to Morel, with knowledge that ABC had not obtained any rights in the Iconic Images from Morel.  (See Ex. H; ¶110; p.43-46; ¶120-128; ¶213).  ABC did not credit TwitPic, Twitter or PicFog as the source of the Iconic Images.  Morel disputes the Counterclaim Defendants' self-serving and disingenuous protestations of good faith.

## ARGUMENT

### I.    LEGAL STANDARD ON MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [9], the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); see also *Frangrancenet.com, Inc. v. Francrancex.com, Inc.* (No. 06-cv-2225 (JFB)(AKT) (E.D.N.Y. January 14, 2010)).  A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a).  Rule 8(a) sets forth the requirements for pleading a claim in federal court.  Under Rule 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*. This rule "does not require 'detailed factual allegations,'" id. (quoting *Twombly)*, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting *Twombly, 550 U.S. at 555*).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal, 129 S. Ct. at 1949* (quoting *Twombly, 550 U.S. at 570*) (citation omitted); see also *S. Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009)*.  Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, 129 S. Ct. at 1950*.

---

[9] Federal Rules of Civil Procedure are herein referenced as Rule ____.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57). *Ashcroft v. Iqbal* 556 U.S. 129 S.Ct. 1937 id. at 1949.

A Court may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 556, 563 n.8. Instead, a Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id*. at 556. "In the end, if, in view of the facts alleged, it can be reasonably conceived that the plaintiff could, upon a trial, establish a case that would entitle him to relief, the motion to dismiss should not be granted." *Id*. at 563 n.8. *Universal Steel Buildings Corp. et. al. v. Shore Corp. One et. al.* (No. 09-0656, 2010 U.S. Dist. LEXIS 27817 (W.D.Pa. 2010)).

## II.  THE DOCUMENTS PROFERRED BY AFP AND CNN MAY NOT BE CONSIDERED ON RULE 12(b)(6) MOTION

When material outside the complaint is presented to, and not excluded by the court, a Rule 12(b)(6) "motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion . . . ." Rule 12(b)(6). However, for purposes of this rule, the complaint is deemed to include documents attached to the complaint, documents referenced in the complaint, and documents integral to the complaint. *Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)*; Rule 10(c). A document is "integral" to the complaint where "the complaint relies heavily upon its terms and effects." *Chambers, 282 F.3d at 153*. "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary

prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).

In the guise of a Rule 12(b)(6) motion to dismiss Morel's claim for copyright infringement against AFP and CNN, AFP's counsel seeks to have this Court rule  on AFP's declaratory judgment pleading[10].  Morel specifically deleted from the SAC the ToS of Twitter and Morel expressly denies that the ToS of Twitter are applicable (SAC p.20).  Based on the above standard, the Court should exclude from Counterclaim Defendants' Memorandum of Law references to documents not relied upon by Morel or integral to his SAC, factual allegations made by AFP not based in the SAC, footnotes and p.8-13, Kaufman's Declaration and the Exhibits attached thereto.

As the District Court stated in *Chambers*:

Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough. (Citation omitted) *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991).

This standard is congruent with that of our sister Circuits... *Lester Chambers v. Time Warner, Inc*. (No. 01-7010. 2d. Cir. 2002); see also *Katz v. Image Innovations Holdings*, 2008 U.S. Dist. Lexis 22975.  See *U2 Home Entertainment, Inc. v. Kylin TV, Inc*. et. al (2007 U.S. Dist. LEXIS 50131 (E.D.N.Y. July 10, 2007)).

As to the requirement that the document must be integral to the complaint, the SAC does not refer to Twitter's ToS webpages or its website generally. Whether or not the Court considers the Twitter ToS, ultimately the Counterclaim Defendants' argument must fail because Morel denies that, as a matter of law, Counterclaim Defendants can prove they are third party

---

[10] Morel respectfully requests that if AFP's 12(b)(6) motion is denied as a matter of law on Count I, this Court dismiss sua sponte AFP's Complaint for declaratory judgment.  *Roberts v. Keith*, 04 Civ. 10079, 2006 U.S. Dist. LEXIS 8959 (S.D.N.Y March 3, 2006)(the defendant's argument that it was a valid license failed because neither the complaint, nor attached documents, nor any documents attached by reference established it was a valid license).

beneficiaries; Charles A. Wright & Arthur R. Miller, 5A *Federal Practice and Procedure* § 1327 (2007).

Morel does not allege that the Twitter ToS webpages must be viewed prior to accessing his Iconic Images or that it provides an indispensible context for the Iconic Images, other than to affirmatively support his allegation that both his Twitter and TwitPic pages contained CMI. Indeed, the Court may take it that a user may visit a website frequently without ever viewing particular webpages of the given website. Thus, webpages from the same website do not necessarily provide a background or a context for other webpages found at that website. Rather the relationship between webpages will depend on the configuration of the particular website. There is no allegation in the SAC about the relationship of the webpages or TwitPic/Twitter ToS to each other; to the contrary, any relationship is denied in ¶71-72. *Cf Erik Curran v. Amazon.com et. al*. (2008 U.S. Dist. LEXIS 12479), holding that in general, a court should not consider postings on websites as the equivalent of public records. On the other hand, applying the above discussed legal standard, this Court may properly consider the Hoff. Decl. and the documents attached thereto.

### III.   AFP AND CNN'S MOTION TO DISMISS COUNTERCLAIMS I AND X FOR DIRECT COPYRIGHT INFRINGEMENT SHOULD BE DENIED

#### A.   The SAC Meets the Standard for Pleading a Claim of Infringement

There is no disagreement as to the elements Counterclaim-Plaintiff must plead to state a claim for copyright infringement. "'To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'" *Cameron Indus., Inc. v. Caravan, Ltd., 676 F. Supp. 2d 280, 283-84 (S.D.N.Y. 2009)*; *Lewinson v. Henry Holt & Co., 659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009)* (same) (quoting

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340,(1991))*; *R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 51 (S.D.N.Y. 2009)* (requiring ownership of a valid copyright and "'unauthorized copying of the copyrighted work'"; *Island Software v. Microsoft* 413 F. 3d 257 (2d Cir. 2005) 2005 U.S. App. LEXIS 12766 (requiring valid copyright in work infringed and that defendant infringed the copyright by violating one or more 17 U.S.C. §106 rights, at p. 7).

Further, Morel's SAC meets the specific Rule 8 pleading requirements for copyright infringement which in the Second Circuit require that a Complaint allege: (1) which specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) "by what acts" and "at what time [defendant] infringed his copyright." *Lennon v. Seaman, No. 99 Civ. 2664 (LBS), 2002 U.S. Dist. LEXIS 1237, 2002 WL 109525, at \*6 (S.D.N.Y. Jan. 28, 2002); Broadvision, Inc. v. General Electric Co, et. al.*, 08 Civ. 1478 (WHP) 2009 U.S. Dist. Lexis 45862 (S.D.N.Y. May 5, 2009); see also *U2 Home Entertainment, supra* p. 10.

The Copyright Act extends copyright protection to pictorial and graphic works. 17 U.S.C. § 102(a)(5). Accordingly, pictorial and graphic works may be copyrighted as long as they possess the requisite originality for copyrightable works. *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (¶64-65; ¶116); *Kaplan v. Stock Market Photo Agency*, 133 F. Supp. 2d 317, 323 (S.D.N.Y. 2001); *Fragrancenet.com*; see also *U2 Home Entertainment*.

Morel's SAC alleges that the Iconic Images are original and were timely registered within three months in accordance with 17 U.S.C §410(c) (¶132-139)(Ex. O). Accordingly, a registered copyright for an image serves as prima facie evidence of both the validity of the copyright and the originality of the work. *Boisson v. Banian, Ltd.*, 273 F.3d at 268 (2d. Cir. 2001).

17

AFP and CNN somewhat disingenuously and without any legal or factual basis assert that Morel meets neither of the two prongs of ownership and copying, notwithstanding Morel's timely registration certificates and Morel's allegation that the Counterclaim Defendants have admitted that the digital files originally created by Morel are the original source of the Iconic Images uploaded to their respective databases and websites, and reproduced, displayed and distributed or transmitted the Iconic Images without his authorization.

> **B. AFP and CNN's Affirmative Defense to Copyright Infringement Fails as a Matter of Law: No License was Granted By Morel To AFP, CNN or Any Other Third Party**

Notwithstanding that Morel alleges he posted his Iconic Images to TwitPic, AFP and CNN contend that pursuant to the Twitter ToS, by posting his photographs on Twitter, Morel granted Twitter a worldwide non-exclusive, royalty free license with the right to sublicense others, therefore he cannot state a claim for copyright infringement.

This argument fails measured against the Rule 12(b)(6) standard.  While under certain circumstances, courts have considered an affirmative defense to copyright infringement as a matter of law, i.e. lack of substantial similarity or license, in such instance the license or the substantial similarity was evident from the face of the Complaint or the documents properly considered thereto.  *Peter F. Gaito Architecture, LLC et. al v. Simone Development Corp., et. al*., No. 09-2613-cv. 2d. Cir. April 2010 602 F.3d 57; 2010 U.S. App. LEXIS 7141; see also *Christopher Jaspter v. Sony Music Entertainment, Inc.* No. 04 CIV. 7876(CM) 378 F.Supp.2d 334 (2005).

> **1.  AFP and CNN Cannot Prove a Contract**

In order to prevail on Counterclaim Defendants' theory, they must first show the formation of a contract between Twitter and Morel and second, that the parties intended to

benefit Counterclaim Defendants.  This they cannot do.  There are simply no factual allegations in the SAC that would enable this Court to conclude as a matter of law that Morel had reasonable notice and manifested an assent to the copyright terms of TwitPic, let alone Twitter.

Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); however, a court may not dismiss such claims if disputed issues of material fact prevent judgment as a matter of law.  AFP and CNN argue that a Morel Twitter/TwitPic contract created an express non-exclusive license.  Morel in his SAA denies that any license was created or that he intended to create such license and the conduct of the media in their effort to acquire rights to the photographs belies the assertion that it was reasonable for AFP and CNN to rely on a license from the posting.  (See also ¶72, ¶75-78, ¶88-90, ¶111-113).

A license is simply "leave to do a thing which the licensor would otherwise have a right to prevent." *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir.1996) (quoting *W. Elec. Co. v. Pacent Reproducer Corp.,* 42 F.2d 116, 118 (2d Cir. 1930))). In granting a license, "[t]he copyright owner simply permits the use of a copyrighted work in a particular manner." *I.A.E.,* 74 F.3d at 775; see also *Mark Wallenfang v. John Havel et. al*. No. 08 Civ. 288, 2010 U.S. Dist. LEXIS 36332; 94 U.S.P.QD (BNA) 1459.

Notwithstanding the confusing technical rhetoric of AFP or CNN, cases involving electronic contracts look pretty much like cases involving oral or paper contracts.  In order to show that an express non-exclusive license was created, AFP and CNN must first prove the existence of an agreement between Twitter and Daniel Morel.  Courts have in the past under

certain fact patterns, not alleged herein, upheld click-wrap agreements on the theory if you click you are bound.[11]

The argument that Twitter ToS and TwitPic Tos are to be read together finds no support in the terms—copyright, venue and choice of law clauses are contradictory—or the case law cited by AFP and CNN.

New York law provides that no binding contract exists until the offer is accepted. *Robison v. Sweeney,* 301 A.D.2d 815, 753 N.Y.S.2d 583, 586 (3d Dep't 2003) ("To create a binding contract, there must be a manifestation of mutual asset sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." (quoting *Express Indus. & Term. Corp. v. N.Y. State Dep't of Transp.,* 93 N.Y.2d 584, 589, 715 N.E.2d 1050, 693 N.Y.S.2d 857 (1999))). Pursuant to this principle, in the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance. *See, e.g., Moore v. Microsoft Corp.,* 293 A.D.2d 587, 741 N.Y.S.2d 91, 92 (2d Dep't 2002). The contract terms involved in determining the validity of click agreements involved right to compel arbitration or venue, not a transfer of intellectual property rights. Morel alleged that he did not intend to license the Counterclaim Defendants to use his Iconic Images or sublicense, authorize and induce others to do so. *Specht et. al. v. Netscape et. al.* 306 F.3d 17 (2d Cir. 2002); *Cynthia Hines et. al. v. Overstock.com, Inc.* (09-4201-cv). 2d. Cir.  2010.  2010 U.S. App. LEXIS 11265; see also *Register.com, Inc. v. Verio,*

---

[11] See *Electronic Contracting Cases 2008-2009* (Moringello, Juliet M. and Reynolds, William L.); see also *Cynthia Hines et. al. v. Overstock.com, Inc.* (09-4201-cv). 2d. Cir.  2010.  2010 U.S. App. LEXIS 11265.  The role of Ms. Morse, The chaotic situation at the time and the fact that Morel's first language is French are relevant facts from which this Court can conclude no contract was formed.

*Inc.,* 356 F.3d 393, 427 (2d Cir. 2004) ("To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound").

### 2.   Choice of Law

*Assuming arguendo* the formation of a contract, whether Counterclaim Defendants are third party beneficiaries is a question of state law.  The Getty ToA provides that New York law applies and the Counterclaim Defendants have cited only to New York law.  Because under New York choice of law provisions, a court may apply New York law in the absence of a conflict, Morel argues that New York law applies.  See, e.g., *Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991);* see also *International Bus. Mach. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004)* (In the event that no conflict exists, and "if New York law is among the relevant choices, New York courts are free to apply [New York law]").

With regard to contract claims, New York applies the law of the state with the "most significant contacts to the contract." *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d at 384*; see also *Robert Luizzi et. al v. Pro Transport, Inc. et. al*, 02 CV 5388 (CLP), 2010 U.S. Dist. LEXIS 77709.

### 3.   AFP et. al. Have No Third Party Status Under Any Applicable State Law

Under New York law, the initial interpretation of a contract is a matter of law for the court to decide.  *Europacific Asset Management Corp. v. Tradescape Corp. et. al*. 2005 U.S. Dist. LEXIS 32227, p. 32 (citation omitted).  Morel submits that even *assuming arguendo* he entered into a contract with TwitPic/Twitter, the parties did not intend AFP, Getty, CNN or their sub-licensees to be third party beneficiaries of such contract.

A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence  an intent to permit enforcement by the third party in question." *Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009)* (citation omitted).

A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties which Morel asserts Counterclaim Defendants cannot do on this 12(b)(6) motion, (2) that the contract was intended for AFP's and CNN's benefit and (3) that the benefit to AFP and CNN is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate AFP and CNN if the benefit is lost.  *Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251 (2d Cir. 2006)*.

Conversely, the third-party beneficiary claim may be dismissed "where the contract rules out any intent to benefit the claimant," "or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant." *Subaru Distribs. Corp. v. Subaru of America, Inc., 425 F.3d 119, 124 (2d Cir. 2005)*; *Underdog Trucking, LLC et. al. v. Verizon Services Corp*. et. al. 09 Civ. 8918 (DLC), SDNY July 20, 2010.  2010 U.S. Dist. LEXIS 72642 at p. 12; see also *Restatement (Second) of Contracts § 302* (1981).

It is patently clear that under New York law, the Counterclaim Defendants have no standing to assert a license as third party beneficiaries.

The result is no different in California.  In *Jackson v. American Plaza Corp.*, 2009 U.S. Dist. LEXIS 35847 (S.D.N.Y. Apr. 28, 2009), the district court held that a user could not claim third-party beneficiary status under the Craigslist ToU.

The court applied California law (as specified in the Craigslist ToU) in concluding that the plaintiffs had failed to show a likelihood of success on the merits. California law requires a claimed third-party beneficiary to show that it was an intended beneficiary of the contract. The court looked to a number of elements in the ToU in concluding that the plaintiffs were not intended beneficiaries.  See *No Third Party Beneficiary Status under Craigslist Terms of Use*, Neuberger, Jeff.  May 6, 2009.

A similar result would pertain in Delaware.  *Diana Allen Life Insurance Trust et. al. v. BP P.L.C. et. al,* No. 08-2045-cv. 2d. Cir June 23, 2009.  *333 Fed. Appx. 636*; *2009 U.S. App. LEXIS 13358.*

There is no reference in the TwitPic ToU to any third parties and the only reference in the Twitter ToS is to "sub-licensees" of Twitter.[12]  AFP and CNN cannot meet their burden to prove that they are intended beneficiaries as a matter of law.[13]

### C.  AFP, CNN and the Other Counterclaim Defendants Cannot Claim an Implied Non-Exclusive License

The requirement contained in *§ 204(a)* that a "transfer of copyright ownership" be contained in a writing does not apply to non-exclusive licenses, which can be granted orally or, in certain cases, implied by conduct. *Graham v. James, 144 F.3d 229, 235 (2d Cir. 1998).*  AFP, CNN and the other Counterclaim Defendants, however, cannot rely on an implied license if they fail to show an express license.

The Second Circuit has not yet ruled on the precise circumstances under which an implied non-exclusive license will be found, but has followed the lead of other appeals courts

---

[12] TwitPic changed its ToU on July 15, 2010 but this does not affect Morel.

[13] Even if AFP and CNN were intended beneficiaries, which they are not, as a matter of law, a sub-licensee has no right to license to third parties such as Getty et. al. without explicit language.

and cautioned that implied non-exclusive licenses should be found "only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21, 25 (2d Cir. 2000)*.

As the Court in *Weinstein* stated:

At least one other Circuit has reframed this standard into a more analytic test, [8] but the basic requirement remains clear: an implied non-exclusive license will only be found when a copyright owner creates a work at the request of the licensee and with the intention that the licensee exploit it. *I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)*; see also *Weinstein supra* at p.12.

AFP does not disagree. Mr. Kaufman stated in AFP's Motion to Dismiss Google's third counterclaim:

Declaratory Judgment of License or Authorization

First, a copyright owner has no affirmative duty to prevent the infringement of its works. Rather, an action for infringement lies for the reproduction of any registered work. *See* 17 U.S.C. §501. If a copyright owner takes additional measures to protect its work, it might have an *additional* cause of action under the Digital Millennium Copyright Act for any circumvention of those measures. *See* 17 U.S.C. §1201(a)(1)…There is not one scintilla of case law, legislative history, Copyright Office regulation or scholarly commentary, which supports such a proposition.

In this case, Google has not and cannot allege any facts to support even one of the elements for an implied license....

### D.   AFP, CNN and the Other Counterclaim Defendants Have Not Stated A Plausible Affirmative Defense of License

At this stage of the pleadings and on their 12(b)(6) motion, the record is devoid of any factual or legal basis to permit AFP, CNN, et. al. to assert a plausible affirmative defense based on a license pursuant to Rule 8, let alone carry their burden to prove its

existence.  Thus, the Motion to Dismiss the I, II, III and X counterclaims to the extent that

it relies on the affirmative defense of a license must fail[14].

### IV.   THE COUNTERCLAIM DEFENDANTS' 12(b)(6) MOTION TO DISMISS MOREL'S SECONDARY LIABILITY COUNTERCLAIMS SHOULD BE DENIED[15]

Morel asserts plausible claims for secondary liability against all Counterclaim

Defendants.  Morel alleges that AFP, Getty and CNN, with knowledge of Morel's proprietary

rights in the Iconic Images, licensed the Iconic Images and asks the Court to infer that

Counterclaim Defendants "induced, caused, or materially contributed to the infringing conduct."

*Gershwin Publishing Group v. Columbia Artist's Mgmt*. 443 F. 2d 1159, 1162 (2d. Cir. 1971);

see also *Softel, Inc. v. Dragon Med. & Scientific Communc'ns, Inc., 118 F.3d 955, 971 (2d Cir.

1997)* (To establish contributory infringement, the plaintiff is required to show that the defendant

"authorized the infringing use.")

The Counterclaim Defendants in their Motion to Dismiss the Counterclaims based on

contributory infringement rely solely on the existence of a license from Morel and

Twitter/TwitPic.  The existence of such license is "not plausible" as a matter of law (*Cf

Twombly*).

Thus, the Rule 12(b)(6) motion to dismiss the Counterclaims for secondary liability

against AFP, Getty and CNN must be denied.  The Court is respectfully directed to the Getty

ToA (¶11.4, Hoff. Decl. Ex. 1) which specifically give Getty the right to terminate the infringing

activity and the allegations of the SAC indicating that from January 13, 2010 Getty had

---

[14] Morel has not yet conclusively identified ABC and CBS's source of the Iconic Images.

[15] Getty has not filed an answer to Counterclaims I and II, nor obtained a stay of their obligation to do so.  If AFP and CNN's 12(b)(6) Motion on Counterclaim I and X is denied, Morel requests leave to move for a default against Getty on liability on Counterclaims II and III.

knowledge of its use and its Clients' use of the Iconic Images and has failed to exercise its ToA to compel its Clients to cease and desist their infringing activities (¶147).

This leaves the theory of vicarious infringement.  "A defendant is liable for vicarious copyright infringement if it 'profits from direct infringement while declining to exercise a right to stop or limit it.'"  *Artista Records LLC v. Lime Group LLC,* F. Supp. 2d, 2010 U.S. Dist. LEXIS 46638, 2010 WL 2291485, at p. 24 (S.D.N.Y. May 25, 2010).  See Hoff. Decl. Ex. 3, letters to Washington Post, New York Times.

Morel's allegations satisfy the notice pleadings of Rule 8 against all Counterclaim Defendants for vicarious infringement and the 12(b)(6) motion should be denied  (see ¶41, ¶125-128; *MGM Studio Inc. v. Grokster* 545 U.S. 913, 930 (2005)).  It is reasonable to infer from Morel's allegations that these profit-making entities benefited from the use, sublicensing, distribution and transmission of the Iconic Images.

Without further discovery, Morel cannot ascertain the precise relationship and/or direct financial benefit derived by Counterclaim Defendants ABC and CBS from their affiliates.  It may well be that each of these stations has its own FCC license as required for each separate frequency, but stations may not be independently incorporated and thus, are assets of ABC and CBS.  In this case, should Morel elect an award of statutory damages against CBS or ABC, the additional Iconic Images used by the affiliates would figure into the calculation.  *Fitzgerald v. CBS Broadcasting*, Inc. 491 F. Supp. 2d. 177 (U.S.D. Mass. 2007).

**V.    MOREL'S ALLEGATIONS ON THE FOURTH AND FIFTH COUNTERCLAIMS ARE PLAUSIBLE AND SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(b)(6)**

The crux of the Counterclaim Defendants' Motion to Dismiss is based on what they claim to be a conclusory assertion that the Iconic Images contained CMI and that to the extent that the allegations are sufficient, they are contradicted by Ex. P.

This is false.  Ex. P has three sources of CMI.  Just below the Iconic Image is the name, "Morel."  To the right, the source of the post—Photomorel—is indicated.  At the bottom of the page, "TwitPic, all rights reserved."  (See also Ex. B, page of Lisandro Suero for a clearer image of a prototype page).  The second page of Ex. P is a link to Twitter.  This page contains "Photomorel," "Daniel Morel" and "©2010 Twitter" (¶161). The Fifth Counterclaim alleges in ¶164-165 facts sufficient to state a claim for violation of 17 U.S.C. §1202(b).  Here, Morel alleges that Counterclaim Defendants, without authority of Morel or the law, have intentionally altered the CMI by removing the CMI and including altered reference lines and that the removal of CMI and subsequent distribution of the Iconic Images was executed with full knowledge of Morel's rights under the Copyright law, and in reckless or willful disregard of Morel's rights.

To the extent that the Iconic Images were removed from the Lisandro Suero TwitPic site, with respect to AFP and CNN, Morel has alleged that AFP saw his Iconic Images on his TwitPic page and thus, knew that the CMI on Suero's page was false (¶160).

Morel states a valid claim for alteration or removal of CMI under the DMCA (¶163-169 and Exhibits related thereto).  17 U.S.C. §1202(b)(1) and (3), were enacted as part of the DMCA and forbid a defendant from intentionally removing or altering CMI from a copyrighted work, or

distributing any work knowing that CMI has been removed therefrom, without the permission of the copyright holder or authorization by the Copyright Act.

As noted previously, the Counterclaim Defendants have cited no textual support for limiting the DMCA's application to the "technological measures of automated systems"—a phrase that appears nowhere in the statute (See Hoff. Decl. Ex. 4 and 5 for cases).

Judge Karas in *Banxquote* stated:

Copyright management information ("CMI") includes, inter alia, the title or identifying information of the work, author or copyright owner, the terms and conditions of use of the work, and identifying numbers or symbols referring to such information. *See id. § 1202(c)(1)-(3), (6)-(7)*. Courts have applied this statute in a straightforward manner such that Plaintiffs here need only allege (1) the existence of CMI on the BanxQuote Indices; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally. *See Associated Press v. All Headline News Corp., 608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009)* (noting that the DMCA is violated by "removing and/or altering copyright-management information," and denying a motion to dismiss when plaintiff alleged that its articles identified it as the owner and author and that the defendants intentionally altered or removed that information); *accord Fox v. Hildebrand, No. 09-CV-2085, 2009 U.S. Dist. LEXIS 60886, 2009 WL 1977996, at *2-3 (C.D. Cal. July 1, 2009)* (denying a motion to dismiss when the evidence demonstrated that defendants removed plaintiff's hand-written copyright notice from certain drawings); *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC, 629 F. Supp. 2d 526, 537 (E.D. Va. 2008)* (noting that removal of copyright notice from plaintiff's plans was sufficient to satisfy one element of a DMCA claim), *aff'd on other grounds, No. 08-2103, 2010 U.S. App. LEXIS 9299, 2010 WL 1804135 (4th Cir. May 6, 2010)*.

Just as the Defendants argued in *Banxquote*, AFP and Counterclaim Defendants argue that Morel's allegations fail because they are conclusory and implausible. What AFP and Counterclaim Defendants do not acknowledge, however, are the other allegations contained in the SAC, which include actual examples of Mr. Morel's Iconic Images used by Counterclaim Defendants without the CMI or with false CMI.

Further, Morel alleges that even after Counterclaim Defendants knew of their infringing conduct, as early as 1/13/10, they continued, as did that of their Clients, subscribers, affiliates

and licensees to use the Iconic Images.  Taken together, these allegations are sufficient to give rise to a plausible inference that Counterclaim Defendants were aware of the CMI and chose to eliminate the information regardless. *Cf. Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.), 585 F.3d 677, 692-93 (2d Cir. 2009)* (reversing the district court's grant of a motion to dismiss because "scienter issues . . . are appropriate for resolution by the trier of fact."  See *Banxquote id* at p.36.  See also *Island Software and Computer Services, Inc. v. Microsoft* 413 F. 3d 257 (2d. Cir. 2005) p. 15 (To prove "willfulness" under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights).

To state a claim under the DMCA, Morel does not have to allege that the CMI, included ©Daniel Morel, or that the CMI must be placed on the Iconic Images. *Banxquote* at p. 38.

At summary judgment, Counterclaim Defendants will have an opportunity to present evidence that the placement of the CMI either indicated that it did not refer to the Iconic Images, or was sufficiently removed to demonstrate that Counterclaim Defendants lacked the intent required to show a violation of the DMCA.

*Kelly v. Arriba Soft Corp.,* 77 F. Supp. 2d 1116 (C.D. Cal. 1999), rev'd in part on other grounds, 336 F.3d 811 (9th Cir. 2003), relied upon by the Counterclaim Defendants for the proposition that the CMI must be on the images is distinguishable on its facts.  Moreover, it has not been followed (see *Cable, AP* cited herein).

AFP's own counsel, Joshua Kaufman rejected the narrow definition of the DMCA by Counterclaim Defendants in *AFP v. Google* in which he stated that when put on the wire and

properly published, AFP's photographs are accompanied by CMI specifically, 'a credit line to AFP and/or a copyright notice" for photographs as or near the photograph.

Therefore, since "it is at least possible that Morel may demonstrate, violations of the Copyright Act, including the DMCA, Morel's copyright Counterclaims withstand Counterclaim Defendant's Motion under Rule 12(b)(6).  *Chosun Int'l. Inc. v. Chrisha Creations, Ltd*. 413 F.3d 324, 329 (2d Cir. 2005).

## VI.   MOREL'S FACTUAL ALLEGATIONS UNDER THE LANHAM ACT RAISE A RIGHT TO RELIEF ABOVE THE SPECULATIVE LEVEL

### A. False Attribution of Facts

Mr. Morel's Fifth and Sixth counterclaims allege misrepresentation of fact, principally of "affiliation," "connection," and "association" in violation of 15 U.S.C. §1125(a)(1)(A) and false advertising in violation of 15 U.S.C. §1125(a)(1)(B).   These claims are based on the alleged "false or misleading attribution of fact with respect to Mr. Morel's affiliation with AFP/Getty and "misrepresentation as to the origin" of the photographs at issue in this case.   "AFP/Getty/Lisandro Suero" affirmatively misstates affiliation or relationship.   Pragmatically in this case, authorship and substance interpenetrate.  In *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 36-38 (2003), the Supreme Court stated that the Lanham Act protects "the producer of the tangible goods that are offered for sale," rather than the "author of any idea, concept, or communication embodied in those goods." *Id* at 37.  *Antidote International Films, Inc. v. Bloomsbury Publishing, PLC*, 467 F.Supp.2d 394, 400 (S.D.N.Y 2006).

Getty, CNN, and AFP misstate Defendant Morel's Lanham Act claims.  Defendant does not disagree that *Dastar* does not create an affirmative right of attribution based on authorship. Morel has alleged that he is "the producer of the tangible goods," the high

30

resolution digital files which have been repackaged by AFP and Getty contrary to Counterclaim Defendants' submissions, the SAC alleges a cognizable cause of action under §43(a) of the Lanham Act.  The SAC alleges that AFP and Getty's actions give rise to an impliciation that Morel is affiliated with, endorses, is employed by AFP/Getty and further alleges a factual basis for that conclusion.  *Chambers v. Time Warner*, 00 Civ. 2839, 2003 U.S. Dist. LEXIS 3065 (SDNY 2003).

### B. False Advertising

A claim under §43(a)(1)(B) for false advertising requires evidence of: (1) standing, which requires both "a reasonable interest to be protected against the advertiser's false or misleading claims" and "a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising." ITC, 482 F. 3d at 169 (2d Cir. 2007), and (2) a "commercial advertisement or promotion." by the defendant, *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (citing 15 U.S.C. §1125(a)(1)(B), that contains (3) "false or misleading descriptions or representations of fact concerning 'the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities."

Morel's reasonable interest prong of this test is met because commercial interests, direct pecuniary interests and even a future potential for commercial competitive injury are present because of the nexus between the false and misleading "AFP/Getty Lisandro Suero" caption.  Further Defendant/Corbis and Getty/AFP are competitors.  *Boule v. Hutton*, 328 F. 3d 84, 91 (2d Cir. 2003); see also *Fashion Boutique of Short Hills, Inc. v. Fendi, USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002) (collecting cases).

Counterclaim Defendants argue that Morel's Counterclaim fails on prong (2).  The cases do not support the narrow reading urged by Counterclaim Defendants on a 12(b)(6) motion.  Morel alleges that Getty and AFP were in competition with Corbis for breaking news and that the publicity attendant to, and future benefit of their association with Morel as either their stringer or employee "advertised" and promoted to Clients on the internet was commercial advertising which confused the public as to the producer of the photograph and affiliation of the photographs.  It is reasonable to infer that a viewer of the Iconic Image would be directed to the AFP/Getty site to purchase other disaster photos of the earthquake or other events (see Hoff. Decl. Ex. 2).  The cases of *Cable* and *Banxcorp* already discussed should be the pillars on which this Court rests its denial of the Rule 12(b)(6) Motion on the sixth Counterclaim.

## CONCLUSION

For the foregoing reasons, Counterclaim Defendants' Motion to Dismiss Morel's Counterclaims should be denied and for such further relief as the Court deems just and appropriate, including reasonable attorney's fees.  If any claim fails to meet the Rule 8 standard, Mr. Morel respectfully requests leave to amend.

Dated August 24, 2010

Respectfully submitted,

By:   /s/ Barbara Hoffman
Barbara Hoffman, Esq. (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York  10023
(212) 873-6200
*Attorney for Defendant/Counterclaim Plaintiff, Daniel Morel*

32

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**AGENCE FRANCE PRESSE**

                              **Plaintiff,**

      **v.**

**DANIEL MOREL**                                                          **Case No: 10-cv-2730 (WHP)**

                             **Defendant and**
                             **Counterclaim Plaintiff**           **CERTIFICATE OF SERVICE**

      **v.**

**AGENCE FRANCE PRESSE**

                             **Counterclaim Defendant,**

      **And**

**GETTY IMAGES (US), INC., CBS BROADCASTING, INC.,**
**ABC, INC., TURNER BROADCASTING, INC**
**and (AFP and Getty Licensees does 1 - et. al.)**

                             **Third Party Counterclaim**
                             **Defendants**
_____

I, Hilary Gish, hereby certify that on August 24, 2010, I served a copy of the Memorandum of Law in Opposition to Plaintiff and Third Party Counterclaim Defendants' Motion to Dismiss Defendant-Counterclaim Plaintiff's Second Amended Counterclaims, and the Declaration of Barbara Hoffman in Support of Counterclaim Plaintiff Morel's Answer in Opposition to Plaintiff and Counterclaim Defendants' Motion to Dismiss Morel's Second Amended Counterclaims, including Exhibits 1-6, by email, upon:

        Joshua Kaufman
        Venable LLP
        *Attorney for Plaintiff-Counterclaim Defendant Agence France*
        *Presse and Counterclaim Defendant Turner Broadcasting, Inc.*

        James Rosenfeld, Esq.
        Deborah A. Adler, Esq.
        Davis Wright Tremaine LLP
        *Attorney for Counterclaim Defendants*
        *Getty Images (US), Inc. and CBS Broadcasting Inc.*

Robert Penchina
Levine Sullivan Koch & Schulz, LLP
*Attorney for Counterclaim Defendant ABC, Inc.*

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

This Certificate was executed on August 24, 2010 at 330 W. 72nd Street, New York, NY 10023.

  /s/ Hilary Gish_____
Hilary Gish
The Hoffman Law Firm
330 West 72nd Street
New York, New York  10023
(212) 873-6200

*Assistant to Barbara Hoffman, Attorney for Defendant/Counterclaim Plaintiff, Daniel Morel*