**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X
                                              :

**AGENCE FRANCE PRESSE,**      :

        Plaintiff,           :

                                        : **Case No. 10-cv-2730 (WHP)**
   v.                                      :

**DANIEL MOREL**                :

        Defendant and Counterclaim   :
        Plaintiff,                  :
   v.                                      :

**AGENCE FRANCE PRESSE,**      :

        Counterclaim Defendant,     :
  And                                   :

**GETTY IMAGES (US), INC., CBS BROADCASTING** :
**INC., ABC, INC., TURNER BROADCASTING**     :
**SYSTEM, INC.**                                 :
and (AFP and Getty Licensees does 1 – et al.).   :

        Third Party Counterclaim      :
        Defendants.                 :
                                        X
------------------------------------- 

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF-COUNTERCLAIM DEFENDANT AND THIRD PARTY COUNTERCLAIM
DEFENDANTS' MOTION TO DISMISS DEFENDANT-COUNTERCLAIM
<u>PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS</u>**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| DOCUMENTS WHICH MAY BE CONSIDERED | | 2 |
| ARGUMENT | | 3 |
| 1. | Counterclaims I and X for Copyright Infringement Must be Dismissed | 3 |
|  | A. Morel Entered a Contract with Twitter/TwitPic | 3 |
|  | B. AFP, TBS, Inc. and Others are Third Party Beneficiaries to the Contract | 5 |
|  | C. AFP, TBS, Inc. and Others Have an Express License | 6 |
| 2. | Counterclaims II, VIII and IX for Secondary Infringement Must be Dismissed | 6 |
| 3. | Counterclaims IV and V for Violation of the DMCA Must be Dismissed | 6 |
|  | A. The TwitPic Images Did Not Contain Any CMI | 6 |
|  | B. No CMI was Removed Under Section 1202(b) | 8 |
|  | C. The Elements of a Claim Under Section 1202(a) Are Not Alleged | 9 |
| 4. | Counterclaim VI for Misleading Representation of Fact Must be Dismissed | 9 |
| 5. | Counterclaim VII for False Advertising Must be Dismissed | 10 |

# **TABLE OF AUTHORITIES**

Cases                                                                                                                         Page(s)

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500
  (S.D.N.Y. 2009) ........................................................................................  6

*BanxCorp v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 70380
  (S.D.N.Y. July 13, 2010) .........................................................................  7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)   .................................................  1

*Berry v. Deutsche Bank Trust Co.*, 2008 WL 4694968 (S.D.N.Y. 2008)  .....................  6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .........................................  2

*Curran v. Amazon.com*, 2008 WL 472433, 86 U.S.P.Q.2d 1784
  (S.D.W.Va. 2008) ....................................................................................  3

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)   ...................  2, 9, 10

*Diana Allen Life Ins. Trust v. BP P.L.C.*, 333 Fed. Appx. 636 (2d Cir. 2009)  ..............  5

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48
  (2d Cir. 2002)  ........................................................................................  10

*Finnegan v. University of Rochester Med. Ctr.*, 180 F.R.D. 247
  (W.D.N.Y. June 30, 1998) .........................................................................  2

*Hines v. Overstock.com, Inc.*, 2010 WL 2203030 (2d Cir. 2010)   ................................  4

*IQ Group, Ltd v. Wiesner Pub., LLC*, 409 F. Supp.2d 587 (D.N.J. 2006)   .....................  7

*Jackson v. American Plaza Corp.*, 2009 WL 1158829 (S.D.N.Y. 2009)  .......................  5

*Jasper v. Sony Music Entertainment, Inc.*, 378 F.Supp.2d 334
  (S.D.N.Y. 2005). ......................................................................................  2, 3

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999),
  *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003)   ...............  7, 8

*Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219
  (2d Cir. 2006)  ........................................................................................  5

*Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877
  (N.D. Ill. 2005) ........................................................................................  8

*Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91 (2d Dept. 2002) ........... 4

*Murphy v. Millennium Radio Group LLC*, 2010 WL 1372408 (D.N.J. 2010) ............ 7, 8

*Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) ........................................................ 1

*Ricciuti v. New York City Transit Authority*, 1991 WL 221110
(S.D.N.Y. Oct. 3, 1991) ............................................................................................. 2

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ...................................... 4

*Schiffer Pub., Ltd. v. Chronicle Books, LLC*, 2004 WL 2583817
(E.D. Pa. 2004) .......................................................................................................... 8

*Silver v. Lavandeira,* 2009 WL 513031 (S.D.N.Y. Feb. 26, 2009) ………......………. 7

*U.S. Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692
(2d Cir.1991) ............................................................................................................. 3

Other Authority

12 U.S.C. §1202(a) ........................................................................................................ 9

12 U.S.C. §1202(b)(1) ................................................................................................... 7, 8

12 U.S.C. §1202(c)(1)-(3) ............................................................................................. 7

15 U.S.C. § 1125(a)(1)(B) ............................................................................................. 10

Fed. R. Civ. P. 12(a)(4)(A) ............................................................................................ 2, 3

Moore's Federal Practice, Section 12.12, fn. 3.1 .......................................................... 3

**PRELIMINARY STATEMENT**

Morel has submitted an Opposition brief that begins with a seven-page preliminary statement that includes irrelevant, unnecessary and inadmissible materials, including rhetoric, references to blogs, AFP's counsels' statements from unrelated cases, and misstatements.[1] It goes on to insert a multitude of "facts" that are not part of the pleadings and have no citation, and to make inferences to which Morel is not entitled.[2] At long last, it reaches the legal issues, but fails to demonstrate why any of the counterclaims should survive.

The pleadings and Motion show that Morel entered a contract with Twitter/TwitPic that provided for a license to third parties to use his photographs.  Morel does not dispute that he signed up for a Twitter/TwitPic account, posted his photographs, and sent messages publicizing those images, all with the stated goal of the broadest distribution of the photographs.  The pleadings show that the terms of use for Twitter/TwitPic, to which Morel expressly agreed when he registered for his account and used those services, provide for a license to the Counterclaim Defendants and other third parties to use, copy, reproduce, publish, display and distribute his posted photographs.  That license means that Morel's claims for copyright infringement

---

[1] Morel cites to paragraphs in the SAC that do not support his statements, including reference to the "Clinton Bush Haiti Fund" (p. 2, not in SAC, ¶¶37-39) and the claim that "Morel does business as Photomorel" (p. 3, not in SAC ¶163).  Morel referenced blogs and commentators in the SAC and does so again in his Opposition (p. 6, citing "The Russian's Photo Blog"); none of those materials are admissible or relevant, which is not changed by Morel's disingenuous claim that they "indicate potential expert testimony." Morel refers to prior litigation involving AFP and quotes a portion of a brief from 2005; that irrelevant case involved different claims, facts, law and parties. Morel also cites to an irrelevant pending litigation involving AFP, again involving different facts, claims, parties and in a different circuit.  Morel includes rhetoric, claiming that Counterclaim Defendants "stole," engaged in "piracy," are "free riders," and think that "a Haitian photographer should not be entitled to 'aggressively assert his rights'"; all of these statements are irrelevant, false and derogatory.

[2] Although the Court will "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff" (*Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007)), the Court is not required to accept facts that are not well-pled or not pled at all.  Nor must the Court accept conclusory allegations, unsupported conclusions, or unwarranted inferences.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A partial list of Morel's unsupported statements that are not entitled to any presumption of veracity is attached as Exhibit A.

1

(Counterclaims I, II, VIII, IX and X)[3] – both direct and indirect – must be dismissed. The DMCA claims (Counterclaims IV and V) must also be dismissed because the Morel photographs did not contain any CMI, no CMI was ever removed from the images, and the Counterclaim Defendants had no knowledge of any false CMI or any intent to remove or distribute false CMI (elements Morel fails to even plead). Finally, Morel's Lanham Act claims (Counterclaims VI and VII) must be dismissed as preempted under *Dastar* (the holding of which Morel does not dispute) and as improperly pled.

## DOCUMENTS WHICH MAY BE CONSIDERED

The parties agree that the Court may consider documents attached to the complaint, documents incorporated by referenced into the complaint, and documents that are "integral" because they were relied upon for their terms and effects. *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-153 (2d Cir. 2002). Lack of notice to the non-movant is not a concern where it "has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Id.* at 153. A license that underlies the claims in suit is a "classic example" of a document that may be considered on a motion to dismiss even though it was not attached to the complaint. *Jasper v. Sony Music Entertainment, Inc.,* 378 F.Supp.2d 334, 338 (S.D.N.Y. 2005). Here, Morel had notice of both the Twitter Terms of Service ("TOS") and the TwitPic Login Page, both of which are integral to the counterclaims. The

---

[3] Morel includes in a footnote a motion for default against ABC, CBS and Getty Images for "Counterclaims one, three, eight, and nine against them for direct copyright or contributory infringement" claiming default is appropriate because they did not move on those claims and did not file an answer. *See* Opp. p. 7, ftnt. 8. However, ABC, CBS and Getty Images have partially moved to dismiss Morel's counterclaims. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), none of these parties are required to file an answer as to the claims that they are not challenging: "[a] motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." *Finnegan v. University of Rochester Med. Ctr.*, 180 F.R.D. 247, 249-250 (W.D.N.Y. June 30, 1998); *see also Ricciuti v. New York City Transit Authority*, 1991 WL 221110 at *2 (S.D.N.Y. Oct. 3, 1991) ("Any motion, particularly when the motion addresses a significant portion of the complaint ... will suspend the time to answer any claim. As a matter of policy and judicial economy such a

2

Twitter TOS were relied upon in AFP's complaint, relied upon, referred to and attached to Morel's Amended Counterclaim (Dkt. 4, Ex. A), and referred to and relied upon in the SAC (¶¶71, 72).  The Twitter TOS and Twitpic Login Page are publicly available[4] and would necessarily have been viewed and accepted by Morel at least upon creating his Twitter/TwitPic account and logging in to that account.[5]  The TwitPic Login Page demonstrates that a <u>Twitpic user</u> specifically agrees that, "By clicking 'Allow' you <u>continue to operate under Twitter's Terms of Service</u>."  Morel cannot avoid a motion to dismiss by creating a "now you see it, now you don't" situation by attaching an integral document to one pleading but then amending to attach a different document.  A TwitPic user is bound by both the Twitter and TwitPic TOS and these integral documents may be considered even though not attached to the pleading.

## ARGUMENT

**1. <u>Counterclaims I and X for Copyright Infringement Must be Dismissed.</u>**

"It is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." *Jasper,* 378 F.Supp.2d at 339, citing *U.S. Naval Inst. v. Charter Communications, Inc*., 936 F.2d 692, 695 (2d Cir.1991).  A claim by a licensor for copyright infringement therefore fails as a matter of law.  *Id.*

    A. <u>Morel Entered a Contract with Twitter/TwitPic.</u>

Morel acknowledges that he signed up for a Twitter/TwitPic Account on January 12, 2010, and that he uploaded and posted the photos at issue to the TwitPic page and posted various

---

conclusion is required."); Moore's Federal Practice, Section 12.12, fn. 3.1, citing Fed. R. Civ. P. 12(a)(4)(A). Therefore, no default against ABC, CBS and Getty Images is warranted.

    [4] Morel claims that webpages are not public records.  *Curran v. Amazon.com*, 2008 WL 472433, 86 U.S.P.Q.2d 1784 (S.D.W.Va. 2008).  That case is inapposite.  There, the court found that terms of service were not to be considered because neither the terms nor the website, were referred to by the complaint, the terms were not integral to the complaint and were not authenticated, and the terms of service never had to be viewed before use of the website.  The court explained that "the relationship between webpages will depend on the configuration of the particular website"; here, as discussed above, the Twitter TOS were viewed before registration for Twitter, for TwitPic, and Morel was bound by both the TOS, rendering them integral to the complaint.

3

"tweets" and communicated with various news sources via Twitter. (SAC ¶¶71, 72, 75-81, 88-94). The TwitPic and Twitter TOS and the Twitter login page evidence that by registering for and using this account, Morel was entering a contract with Twitter/TwitPic. (See Motion, Exs. A-C).[6] The Twitter signup page (https://twitter.com/signup) provides the TOS in a scrollable box for viewing, explicitly states below the TOS that "By clicking on 'Create my account' below, you are agreeing to the Terms of Service above and the Privacy Policy," and requires that the use affirmatively click and therefore accept before continuing the signup process.[7]

Case law is clear that an agreement such as the one with Twitter/TwitPic where a user takes an affirmative action by clicking "Allow" or "Create my Account" upon being notified of the TOS (often referred to as a "click-wrap" agreement) constitutes an assent to the terms of the contract, rendering a binding contract. *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91 (2d Dept. 2002)(finding valid, binding contract where the terms displayed on the user's computer screen before software could be installed and user was required to assent by clicking the "I agree" icon before proceeding with the download of the software); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004); *Hines v. Overstock.com, Inc.*, 2010 WL 2203030 (2d Cir. 2010)(factually inapposite but articulating that "binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance").

---

[5] Notably, Morel does not dispute that they were viewed and does not question their authenticity.
[6] The Twitter TOS state, "Your access to and use of the Services is conditioned on your acceptance of and compliance with these Terms. By accessing or using the Services you agree to be bound by these Terms." (Motion, Ex. A). The TwitPic TOS state "By using Twitpic.com, you signify that you have read, understand and agree to be bound by these Terms and conditions." (Motion, Ex. B). The TwitPic login page requires, "By clicking 'Allow' you continue to operate under Twitter's Terms of Service." (Motion, Ex. C).
[7] As with the TwitPic login page and the Twitter TOS, this signup page is publicly available and would necessarily have been viewed and accepted by Morel at least upon creating his Twitter/TwitPic account and logging in to that account, meaning that Morel had adequate notice of the login page, its appearance and content. It is integral to the counterclaims in demonstrating the terms under which Morel was operating when he posted his photographs to Twitter/TwitPic and may be considered by the Court on this Motion to Dismiss.

4

B. <u>AFP, TBS, Inc. and Others are Third Party Beneficiaries to the Contract.</u>

Morel points to New York law as the appropriate choice of law by referring to a Getty Images License. Counterclaim Defendants are unclear as to the relevance of the Getty Images License when it is the Twitter/TwitPic TOS that are at issue. The Twitter and TwitPic TOS call for interpretation pursuant to California law (Motion, Ex. A) and Delaware law (Motion, Ex. B), respectively. In any event, the relevant law in all three states is similar and in any of these jurisdictions, TBS, Inc., AFP and others are third party beneficiaries to the contract entered between Morel and Twitter/TwitPic. Generally, in addition to showing a valid contract, a party asserting rights as a third-party beneficiary must also establish that the contract was intended for his benefit and that the benefit to him is sufficiently immediate, rather than incidental. *Madeira v. Affordable Housing Foundation, Inc*., 469 F.3d 219, 251 (2d Cir. 2006)(New York law); *Jackson v. American Plaza Corp*., 2009 WL 1158829 (S.D.N.Y. 2009)(California law); *Diana Allen Life Ins. Trust v. BP P.L.C*., 333 Fed. Appx. 636, 638 (2d Cir. 2009)(Delaware law).

The Twitter TOS (which is binding on Twitpic users) specifically provides for immediate benefit to third parties. They grant "[Twitter] a worldwide, non-exclusive, royalty-free license (*with the right to sublicense*)" and explain that "[t]his license is you authorizing us to *make your tweets available to the rest of the world <u>and to let others do the same</u>*"  (Motion, Ex. A at pp. 2-3 (emphasis added)). Twitter "encourage[s] and permit[s] broad re-use" of content (*id*. at p. 4) and this broad re-use is evidenced every day when Twitter/TwitPic posts are copied, reprinted, quoted, and republished by third parties. Morel admits that his intent when he posted his photos on Twitter/TwitPic and tweeted about them on Twitter, was to "inform the world of the disaster." (SAC ¶72). This ability to broadly reuse content on Twitter and TwitPic is an immediate benefit to third parties, including TBS, Inc., AFP and other third parties, provided for by the TOS.

5

C. AFP, TBS, Inc. and Others Have an Express License.

As discussed above, AFP and TBS, Inc. have moved to dismiss, asserting that they have an express license to use the Morel images at issue. Morel's discussion of an implied license and the affirmative defense of license are not currently at issue and Counterclaim Defendants reserve the right to respond to any such arguments as needed at the appropriate juncture.

2. **Counterclaims II, VIII and IX for Secondary Infringement Must be Dismissed.**

Since the Court can decide on the pleadings that Morel granted a license to his photographs and there is no direct infringement, there can be no claim of contributory copyright infringement.[8] Further, Morel no longer even argues any basis for contributory liability against ABC, and does not dispute that he has failed to make any allegation, as is needed to establish vicarious liability, that CBS or ABC directly profited from or induced the alleged infringement committed by others. Indeed, he concedes that he is unaware of any "direct financial benefit derived by Counterclaim Defendants ABC and CBS from their affiliates." Opp. p. 6. Moreover, Morel failed to allege "any facts showing the degree of control [by ABC or CBS] necessary to state a claim of vicarious copyright infringement." *Berry v. Deutsche Bank Trust Co.*, 2008 WL 4694968, at *5 (S.D.N.Y. 2008).

3. **Counterclaims IV and V for Violation of the DMCA Must be Dismissed.**

A. The TwitPic Images Did Not Contain Any CMI.

Morel cannot disavow the exhibits he attached to his counterclaims, namely Exhibit P, which demonstrates that there is no CMI on the photographs. *See, e.g., Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500, 502 (S.D.N.Y. 2009). Morel points to three alleged sources of CMI in Exhibit P: (1) the name "Morel" or "Daniel Morel", (2) the source Photomorel

---

[8] Morel claims that the existence of the Twitter/TwitPic license is "not plausible" and cites to *Twombly*. The *Twombly* standard applies to whether Morel's claims survive a motion to dismiss; not to existence of a license.

6

and (3) the statement "TwitPic, all rights reserved" on TwitPic or the copyright notice ©2010 Twitter on Twitter. He admits that these references were below the images and that the images themselves have no CMI.[9]

The DMCA defines CMI as the title of the work, the name of the author of the work, or the name of the copyright owner of the work. 12 U.S.C. §1202(c)(1)-(3). Specifically *excluded* is identifying information of the *user* of the work. *Id.* The Twitter or TwitPic copyright notices identify the user (unless Morel is now claiming that those entities own his works) and cannot meet the basic statutory definition of CMI. Further, Courts have interpreted CMI narrowly to be limited to components of technological measures that function as automated systems. *Silver v. Lavandeira,* 2009 WL 513031, *2 (S.D.N.Y. Feb. 26, 2009), quoting *IQ Group, Ltd v. Wiesner Pub., LLC*, 409 F. Supp.2d 587, 596 (D.N.J. 2006). Morel does not dispute that the claimed CMI does not meet that standard. Nor does he distinguish or oppose these cases[10] except to refer to a prior litigation with different facts, parties, law and situation, in which AFP's counsel argued for a broad definition of CMI. Counsel's prior arguments are not binding authority and are not before the Court as they were not part of the Complaint or SAC. Further, that prior case was argued before most of the above referenced cases – which *are* binding authority – were decided.

Moreover, Morel cannot overcome that, to allege a violation of DMCA § 1202(b)(1), the copyright notices must "appear in the images themselves." *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003); *Murphy v. Millennium Radio Group LLC*, 2010 WL 1372408 (D.N.J.  2010). It

---

[9] Morel does not deny that the copies of the photographs at issue inserted in the counterclaims, which he identifies in his counterclaims as "Iconic Image 1," "Iconic Image 2," and so on, do not contain any copyright notices, identification of Morel, or any other information that could be CMI.

[10] Morel includes a block quote from a case he identified only as *Banxquote*. Counterclaim Defendants presume that Morel was referring to the case *BanxCorp v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 70380 (S.D.N.Y. July 13, 2010). That case did not analyze the definition of CMI or the legislative history of the DMCA and is inapposite because the parties had an agreement as to sourcing, which supported the allegation of mal-intent.

is not enough for the copyright notice to be in "surrounding text;" it must be part of the "original work."  *Id.*; *accord Murphy*, 2010 WL 1372408, at *3.  Morel merely contends that *Kelly* is "distinguishable on its facts" and that it "has not been followed," Opp. p. 29, but neither argument is valid.  First, Morel fails to explain how *Kelly* is supposedly distinguishable.  In fact, it is not.  In *Kelly*, the court held that the DMCA was not violated because the copyright notice did not appear *on* the image that was allegedly infringed; it appeared *near* it.  So too here:  no copyright information appeared *on* Morel's photos; it appeared (if at all) in a wholly different place.  Second, *Kelly* repeatedly has been followed on this point.  *See, e.g., Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 893 (N.D. Ill. 2005); *Schiffer Pub., Ltd. v. Chronicle Books, LLC*, 2004 WL 2583817, *4 (E.D. Pa. 2004).  Moreover, *All Headline News* and *Cable*, the cases relied on by Morel, are not to the contrary – they do not discuss the question of where the copyright information must be located, nor do they cite *Kelly*.  Plaintiff has cited no authority suggesting that the DMCA is violated when an alleged infringer fails to include copyright information that was located apart from the infringed image.

  B. <u>No CMI Was Removed Under Section 1202(b).</u>

  The facts do not support Morel's claim that the Counterclaim Defendants "intentionally removed and/or altered" CMI from his photos.  (SAC, ¶ 165).  Rather, Morel plainly alleges that Counterclaim Defendants "downloaded" the photos, as they were, from his page.  (SAC, ¶ 165).  Morel's own Exhibit P and the images he included in the Counterclaims demonstrate—and Morel does not dispute—that these images *did not* contain any CMI.  Thus, irrespective of whatever other information might have appeared on the pages, there simply was no information on the downloaded images – meaning that there was no CMI to remove.  There is no provision of the DMCA requiring that the Counterclaim Defendants *add* hanging references to the images,

and Morel has not cited any authority supporting such a requirement.[11]  Accordingly, Morel did not and cannot state a claim based on the alleged removal of CMI from his images.

### C.  The Elements of a Claim Under Section 1202(a) are Not Alleged.

Morel has conclusorily stated that "AFP/Getty has *knowingly* distributed … *false copyright management information* by listing itself as the exclusive copyright licensing agent and listing Lisandro Suero as the author/copyright holder."  (SAC, ¶160).  Morel has not pled any *factual content* that would support this allegation; instead, he claims that the Court can make a "plausible inference" based on other unsupportable inferences.  The Counterclaim Defendants did not change Morel to Suero; on the contrary, Morel alleges that Lisandro Suero removed Morel and added Suero (SAC ¶¶73, 74) and the SAC at ¶¶75-94 demonstrates that the Counterclaim Defendants were trying to get to the bottom of the proper source so that they could properly credit the images.[12]  Morel has failed to plead the intent element of a section 1202(a) claim, and has failed to provide any factual support for his assertion of knowledge.

### 4.  Counterclaim VI for Misleading Representation of Fact Must be Dismissed.

Morel does not dispute the holding of *Dastar*, which bars claims for false designation of origin where the "origin" in question is the authorship of a communicative work.  Instead, Morel claims that he is exempt from the holding because it affects only authors of the underlying material and he is the producer of "tangible goods" - "the high resolution digital files" - and that AFP and Getty Images have "repackaged" these goods as their own.  Morel's suggestion that the data contained in underlying digital files of photographic images qualifies as "tangible goods" is

---

[11] Nonetheless, the SAC shows that the Counterclaim Defendants typically did include the source identifier available to them at the time: initially "Suero" (when they believed he was the photographer) or "Morel" (when they learned that he was the actual photographer).  SAC pp. 23, 30, 31, 34, 36, 38, 39, 58, 59 show use with "Daniel Morel" or "Morel"; SAC pp. 27, 31, 32, 34, 39, 40, 41, 63, 68 show use with "Suero" or "Lisandro Suero".

[12] Indeed, rather than pleading factual allegations to support its claim that Getty knowingly distributed false CMI, Morel alleges that Getty did nothing more than passively receive the images and store them on its online database.  *See* SAC ¶ 84.

9

contrary to the Supreme Court's holding and would eviscerate the balance acknowledged in *Dastar* between copyright, patent and Lanham Act protections.  Morel's own pleading admits that the data that constitutes the photographs is intangible intellectual property, rather than tangible goods, as he states in the Second Amended Complaint that "Morel owns all intellectual property rights" in the images (¶172), without reference to the high resolution digital files as goods.  The very nature of Morel's claims – that Counterclaim Defendants were able to allegedly "right click" and "download the digital files" (Opp., p. 12) – as much as concedes that the claims involve alleged copying of underlying intellectual property in the photographs, rather than the repackaging of tangible goods of the kinds described by the Supreme Court in *Dastar*.  Moreover, nowhere does Morel allege that AFP or Getty Images have "repackaged" the photos as their own since in all instances they identified/credited a third party photographer as the creator of the photographs – at best, Morel claims that AFP and Getty Images acted as distributors of the photos with either correct or incorrect authorship (Morel or Suero).  Such claims are foreclosed by the holding in *Dastar*.

     **5.  Counterclaim VII for False Advertising Must be Dismissed.**

As above with Counterclaim VI, this Counterclaim is preempted under *Dastar*.  Further, Morel has still failed to articulate that any claim was made in "commercial advertising or promotion."  15 U.S.C. § 1125(a)(1)(B).  Morel has not alleged any "organized campaign to penetrate the relevant market." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc*., 314 F.3d 48, 57 (2d Cir. 2002).  The credit line to Morel on the images used simply does not meet this requirement of "commercial advertising" that goes to the "nature, characteristics, qualities, or geographic origin" of the product, and he cannot point to any place in his pleadings where he made the required allegation.

Respectfully submitted on  September 8, 2010

| | |
|---|---|
| Agence France Presse as to Counts I, II, IV, V, VI and VII and Turner Broadcasting System, Inc. as to Counts V and X | Getty Images (US), Inc. as to Counts III, IV, V, VI and VII and CBS Broadcasting Inc. as to Count V and VIII. |
| VENABLE LLP | DAVIS WRIGHT TREMAINE LLP |
| By:  /s/ Joshua Kaufman<br>Joshua Kaufman, Esq.<br>Meaghan Kent, Esq.<br>575 Seventh Street, N.W.<br>Washington, D.C. 20004-1601<br>(202) 344-4000<br>*Attorneys for Plaintiff-Counterclaim Defendant Agence France Presse and Counterclaim Defendant Turner Broadcasting System, Inc.* | By:  /s/ James Rosenfeld<br>James Rosenfeld, Esq.<br>Deborah A. Adler, Esq.<br>1633 Broadway<br>New York, NY 10019<br>(212) 489-8230<br>*Attorneys for Counterclaim Defendants Getty Images (US) Inc. and CBS Broadcasting Inc.* |

ABC, Inc. as to Count V and IX.

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By:  /s/ Robert Penchina
Robert Penchina
Alia L. Smith
321 West 44th Street, Suite 510
New York, NY 10036
Phone (212) 850-6100
*Attorneys for Counterclaim Defendant ABC, Inc.*