```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
AGENCE FRANCE PRESSE,                :

          Plaintiff,                 :

     -against-                       :   MEMORANDUM & ORDER

DANIEL MOREL,                        :   10 Civ. 2730 (WHP)(MHD)

          Defendant and              :
          Counterclaim-Plaintiff,    :

     -against-                       :

AGENCE FRANCE PRESSE,                :

          Counterclaim-Defendant,    :

          -and-                      :

GETTY IMAGES (US), INC,; CBS         :
BROADCASTING, INC.; ABC, INC.; TURNER
BROADCASTING, INC. and AFP and GETTY :
Licensees Does 1-et al.,
                                     :
          Third-Party Defendants.
-------------------------------------x
```

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

Defendant Daniel Morel and third-party defendant Getty Images (US) ("Getty") are in disagreement as to the propriety of Getty's withholding of a quantity of documents from discovery, all but one said by Getty to be covered by the attorney-client privilege, and the remaining document asserted to constitute attorney work-product. Although the parties initially argued over 108 documents,

1

Getty has since produced 26 of them, leaving for a ruling the remaining 82. In addition, we understand that Morel has since challenged another 190 items from the Getty privilege log, but we have chosen to address the dispute as initially presented to us.

At the court's direction, Getty has proffered a declaration by Lizanne Vaughn, Esq., the Senior Director, Corporate Counsel, for Getty, to provide the factual basis for inclusion of these documents on the Getty privilege log. Morel in turn has submitted opposition papers. Upon a review of the privilege log, declaration and other papers received in connection with this dispute, we have found it appropriate to conduct an in camera review of the documents in question, a procedure that Morel had invited us to undertake. See, e.g., United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). We make the following rulings based on our assessment principally of the Vaughn declaration and our review of the documents.

A large number of documents reflect communications between business employees of Getty and either counsel directly or a paralegal who has operated as agent for counsel. Insofar as these communications are identified as seeking legal advice or dispensing it, the documents appear to come within the commonly accepted

2

version of the privilege under federal law.[1] That protection extends, in general terms, to confidential communications between counsel and client or their agents that were undertaken for the purpose of obtaining or rendering legal advice or services by the attorney. See, e.g., In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007); United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989); Bodega Investments, LLC v. United States, 2009 WL 1456642, *2 (S.D.N.Y. May 14, 2009).[2] This category includes the following documents, as listed on Getty's privilege log: 6, 7, 9, 10, 14-17, 21-23, 29, 31-32, 34, 36-38, 40, 44-50, 54, 57, 59, 61-68, 70, 75-78, 80, 82-84, 88-90, 95, 97, 99 and 104.

In opposing this conclusion, Morel appears to argue that these communications were not maintained in confidence, or at least that Getty has not so demonstrated. (June 24, 2011 letter to the Court from Barbara Hoffman at 1-2). The precise point that Morel seeks to

---

[1] Inasmuch as Mr. Morel asserts claims for copyright infringement, the privilege issues in this case are governed by federal law. See, e.g., In re Omnicom Group, Inc. Secs. Litig., 233 F.R.D. 400, 404 (S.D.N.Y. 2008)(citing cases).

[2] The protection of the privilege extends to communications by the client to the attorney that concern factual information, if the communication was intended to further the rendition of legal services. See, e.g., Paul R. Rice, Attorney-Client Privilege: Continuing Confusion About Attorney Communications, Drafts, Pre-Existing Documents, and the Source of the Facts Communicated, 48 Am. U. L. Rev. 967, 985-86 (1999).

make is not altogether clear, although we infer that he may be suggesting either that the Vaughn declaration does not explicitly assert that confidentiality was maintained or that, as a matter of fact, the communications seeking or dispensing legal advice were copied to people who did not have a need to know their substance.

Neither version of this argument yields the conclusion that the privilege cannot be maintained. We do not enforce a stringent quasi-pleading requirement that the declarant articulate a rote statement that the communications in question were kept confidential, and in context we read Getty's papers as implicitly so stating, since they list the individuals to whom the communications were sent or distributed and explain why these individuals received copies of the documents. That submission still leaves open, of course, the question of whether the documented scope of circulation of the challenged communications was inconsistent with the confidentiality requirement. Based on the summary in the Vaughn declaration and the list of addressees and "cc" recipients from the privilege log, we are not prepared to say that the circulation of the documents that otherwise come within the intendment of the privilege was too broad to preserve that

4

privilege.[3] That finding is, however, without prejudice to Morel's right to pursue discovery on this issue -- that is, the rationale for the distribution of the otherwise privileged communications to all of the listed recipients -- as well as on any other factual question that may be implicated by Getty's invocation of the privilege.

Alternatively, Morel offers a vague argument that the privilege should be deemed waived because the withheld documents are in some way highly significant to issues raised by Getty. (Hoffman June 24 letter at 2-3). Although not clearly labeled, we view this argument as possibly an effort to invoke the principle of waiver by assertion or "at issue" waiver, a concept that Morel does not demonstrate has any application here.[4]

---

[3] Morel makes no document-specific waiver argument based on the circulation of any of the listed documents to any specific individual, all of whom appear to have been Getty employees involved with the project of contacting licensees to advise them whether to end their use of assertedly unlicensed photographs from Morel.

[4] We note that there was some discussion of the "at issue" waiver at the June 15, 2011 conference, albeit in connection with the scope of a potential deposition (Tr. 13-22), but Morel does not make any specific argument for applying an implied waiver based on Getty having produced some privileged documents; rather, his counsel contents herself with asserting vaguely that Getty is withholding documents that are pertinent to its assertions of good faith or absence of willfulness. (Hoffman June 24 letter at 3-4). Although Getty's counsel referred at the conference to
5

The implied waiver of protection for an otherwise privileged communication may be found "when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense. . . ." In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008)(citation omitted). "The assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege." Id. (quoting In re Kidder Peabody Secs. Litig., 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).

In this case Morel does not directly address the criteria for "at issue" waiver, and instead contents himself with pointing out that the withheld documents, or at least some of them, are likely to be highly relevant to the proof of his case, and he offers a fairly detailed summary of his claims and the defenses at issue here. (Hoffman June 24, 2011 letter at 2-4). None of this discussion, however, demonstrates a basis for overriding an otherwise applicable privilege. Relevance alone -- even compelling

---

having made a partial waiver of the privilege (Tr. 14), we do not agree that the documents that counsel described as privileged -- apparently contacts by Getty staff with clients -- ever came within the attorney-client privilege.

6

relevance -- does not demonstrate a basis for a waiver of the privilege.

Insofar as the "at issue" theory is concerned, Morel fails at this stage to show that any arguments proffered by Getty on the merits of the parties' claims or defenses rest on the substance of any communications between Getty and its attorneys; rather, Getty relies on what it actually did to stop clients from the infringing use of Morel's photographs. This is not a basis to find an implied "at issue" waiver. See In re County of Erie, 546 F.3d at 229 (to invoke "at issue" waiver, "a party must *rely* on privileged advice from his counsel to make his claim or defense")(emphasis in original).

Finally, Morel invokes the familiar nostrum that a party may not use the privilege as both "a shield and a sword" (Hoffman June 24, 2011 letter at 3-4), but he fails to demonstrate the applicability of that concept here. The principle to which Morel refers prohibits a party from selectively releasing privileged documents or portions of such documents in a manner that discloses material favorable to the producing party while withholding portions that are adverse to that party's interests. See, e.g., In re Sims, 534 F.3d 117, 132 (2d Cir. 2008)(quoting In re Grand Jury

7

Proceedings, 219 F.3d 175, 182 (2d Cir. 2000)). Morel entirely fails, however, to identify any privileged communications that Getty has disclosed, much less to make a case for the notion that such documents are favorable to Getty and that, by implication, Getty has withheld related documents as privileged that are likely to be favorable to Morel's case. In short, his invocation of a sword and shield, while colorful, is irrelevant to the issues before us.

Apart from these privileged documents, Getty has withheld one document for which it invokes a claim of attorney work product. That item, numbered 35 on the privilege log, is a draft of a letter prepared for Getty's trial counsel to send to Morel's attorney before the anticipated filing of the lawsuit, in which he analyzes the issues in the case. There is no question that this draft, which was circulated to other attorneys for comment, comes within the scope of Rule 26(b)(3). See generally United States v. Adlman, 134 F.3d 1194, 1196-97 ("Analysis of one's case 'in anticipation of litigation' is a classic example of work product.").[5] Since Morel makes no showing of a compelling need for access to that document,

---

[5] The fact that the letter was intended, when finalized, to be sent to opposing counsel does not undercut the application of work-product protection to the draft. See, e.g., Renner v. Chase Manhattan Bank, 2001 WL 1356192, *8 (S.D.N.Y. Nov. 2, 2001).

8

see, e.g., id. at 1204 (declining to decide whether discovering party may ever access documents reflecting "mental impressions" of attorney, but stating that he must at least show more than "substantial need" under Rule 26(b)(3)), it is properly withheld.

The remaining contested documents do not appear to come within the scope of the attorney-client privilege, which is the only ground that Getty asserts for withholding them. As described in the Vaughn declaration, these communications for the most part involve instructions by Getty non-lawyer supervisors to non-lawyer subordinates telling them to contact Getty clients or instructing them as to how to handle such contacts. It appears that copies of some of these communications were also sent to Getty's counsel or paralegals, and we infer -- although Getty is not particularly forthcoming with its explanation of its privilege theory -- that it views these documents as privileged because legal staff were so copied. An alternative explanation, not explicitly offered by Getty, is that these communications between non-lawyers are protected because the instructions given in them mirrored what counsel had told the supervisors to do. Neither argument is persuasive.

We understand that these documents were, in whole or in part,

9

triggered by advice from counsel. That does not mean, however, that the privilege covers them since, if that were so, a party could claim privilege for documents reflecting any activity required or influenced by the advice of an attorney. The privilege covers only the communication of advice, not the implementation of that advice. The only limitation on this result in this case is that if the document both instructs the subordinate as to what to do and refers explicitly to a communication by an attorney offering advice, the portion of the document that describes the advice may be redacted.

As for the fact that copies of these documents were circulated to an attorney or paralegal, that too does not offer the protection of the privilege to the document. Communications between non-lawyer employees that are not on their face privileged do not acquire a privileged status by virtue of the author sending a copy to a lawyer or his representative. See, e.g., In re Rivastigmine Patent Litig., 237 F.R.D. 69, 80 (S.D.N.Y. 2006)(citing cases). Moreover, although Getty offers the ritual assertion that copies of these communications were sent to counsel "to keep the legal department informed of activities undertaken by Sales to respond to Mr. Morel's claims and to enable them to monitor the process and to provide advice as needed" (e.g., Vaughn Decl. ¶ 5(b)), these communications are not properly interpreted as requests for advice

or renditions of legal service.

Based on these findings. We direct that Getty produce the following logged items: 2-5, 8, 11-13, 18-20, 24, 25-27, 39, 51-53, 60, 81, 86 and 107.

## CONCLUSION

For the reasons noted, Getty is to produce within seven days the aforementioned items but may redact from them any explicit descriptions of the advice of counsel.

Dated: New York, New York
       October 28, 2011

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been sent today to:

Barbara T. Hoffman, Esq.
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023

James Rosenfeld, Esq.
Davis Wright Tremaine LLP
1633 Broadway
27th floor
New York, New York 10019-6708

Joshua J. Kaufman, Esq.
Venable LLP
575 Seventh Street NW
Washington, D.C. 20004

Saul B. Shapiro, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036