UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                   :

AGENCE FRANCE PRESSE,
                 Plaintiff,            :

        -v.-              :

                                     10-CV-2730 (AJN)
DANIEL MOREL,                 :
                Defendant,       ECF CASE
                                  :

        -v.-              :

GETTY IMAGES, INC., ET AL.,                 :
                     Counterclaim    :
                     Defendants
                                     :

-------------------------------------------------------------X

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION FOR RECONSIDERATION

WILLKIE FARR & GALLAGHER LLP

**787 Seventh Avenue**
**New York, New York 10019**

**Attorneys for Counterclaim Plaintiff**
**Daniel Morel**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..........................................................................................................................3

I.     The Language of Section 504(c), The Policy Underpinnings Of That Statute, And Appropriate Rules Of Statutory Construction Entitle Mr. Morel To Seek A Separate Statutory Award From Getty For Its Individual Wrongful Conduct ...................................3

II.    Mr. Morel Should Be Entitled To Present Evidence To The Jury That Getty Is Individually Liable For Its Wrongful Licensing Of The Photos-At-Issue After Receiving The Caption Correction And Kill Notice............................................................7

CONCLUSION ........................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.*,
    969 F. Supp. 184 (S.D.N.Y. 1997) ........................................................................7

*Arista Records LLC v. Lime Group LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011).....................................................................5

*Castillo v. Time Warner Cable*,
    No. 09 Civ. 7644, 2011 WL 5084590 (S.D.N.Y. Oct. 24, 2011) ...........................9

*Crandon v. U.S.*,
    494 U.S. 152 (1990)................................................................................................5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..................................................................................................5

*Ez-Tixz, Inc. v. Hit Tix, Inc.*,
    919 F. Supp. 728 (S.D.N.Y. 1996) ......................................................................10

*Gutierrez v. RWD Technologies*,
    279 F. Supp. 2d 1223 (E.D. Cal. 2003)..................................................................5

*Hamilton v. Werner Co.*,
    268 F. Supp. 2d 1085 (S.D. Iowa 2003) ................................................................5

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)................................................................................................5

*In Design v. Lauren Knitwear Corp.*,
    782 F. Supp. 824 (S.D.N.Y. 1991) ........................................................................5

*KBL Corp. v. Arnouts*,
    646 F. Supp. 3d 335 (S.D.N.Y. 2009)....................................................................5

*Latimer v. Roaring Toyz, Inc.*,
    601 F.3d 1224 (11th Cir. 2010) ......................................................................4, 5, 9

*Mason v. Montgomery Data, Inc.*,
    967 F.2d 135 (5th Cir. 1992) ............................................................................4, 8

*McRoberts Software, Inc. v. Media 100, Inc.*,
    329 F.3d 557 (7th Cir. 2003) .................................................................................9

*Microsoft Corp. v. Computer Care Center, Inc.*,
No. 06-CV-1429, 2008 WL 4179653 (E.D.N.Y. Sept. 10, 2008) .........................5

*Nature's Enterprises, Inc. v. Pearson*,
No. 08 Civ. 8549, 2010 WL 447377 (S.D.N.Y. Feb. 9, 2010) ...............................5

*U.S. Media Corp. v. Edde Entertainment Corp.*,
No. 94 CIV. 4849, 1998 WL 401532 (S.D.N.Y. Jul. 17, 2008) ............................5

*Zirlin v. Village of Scarsdale*,
365 F. Supp. 2d 477 (S.D.N.Y. 2005)....................................................................9

**Statutes**                                                                          **Page(s)**

17 U.S.C. § 504(c)(1).............................................................................................3

Counterclaim Plaintiff Daniel Morel submits this memorandum of law in Opposition to Counterclaim Defendants' ("Defendants") Supplemental Memorandum of Law in Support of Their Motion for Reconsideration ("Supp. Br.") (Dkt. 209).

## PRELIMINARY STATEMENT

Defendants concede that, under the Copyright Act, a plaintiff is entitled to a separate statutory damages award from each defendant that is individually liable for copyright infringement of a protected work.  If two defendants each are responsible individually for the infringement of eight copyright protected works, Defendants recognize that a plaintiff may recover eight statutory awards *from each defendant*, for a total of sixteen awards.  Defendants nevertheless argue that, because AFP and Getty are jointly and severally liable for infringing Mr. Morel's copyrights in the Photos-At-Issue, the maximum number of statutory recoveries available to Plaintiff is cut in half – to eight – *even if* Getty is also individually liable for its own copyright violations of the same works.  Plaintiff submits that Defendants' argument is inconsistent with the language of section 504(c), the case law that has construed it, and the policies underlying the Copyright Act.

Mr. Morel, in contrast, submits that he is entitled to seek one statutory award per work from AFP for its conduct *and* one statutory award per work from Getty for its individual violations of the Copyright Act, for a total of up to sixteen awards.[1]  Unlike Defendants' theory of shrinking liability based on enhanced wrongdoing, Mr. Morel's argument is fully consistent with the statutory language, the relevant case law, the goals of deterrence and punishment embodied in the Copyright Act, and common notions of fairness.  Put simply, if the jury

---

[1] Mr. Morel does not claim that he is entitled to collect more than one statutory award per work from Getty individually in the event that he elects to receive statutory damages under the Copyright Act.  Any argument to the contrary during the hearing on February 22, 2013 was in error.

concludes that Getty's post-Kill Notice licensing activities constitute individual acts of infringement, Getty should not be able to use as a liability-limiting defense the fact that it *also* is jointly liable with AFP for other infringements.

While Defendants use the words "troubling," "perverse," and "absurd" to disparage Plaintiff's position on this Motion, Mr. Morel's successful prosecution of his claims against Getty and AFP will not lead to the "parade of horribles" that Defendants conjure up. Getty and similarly situated wrongdoers are still only exposed to a single statutory award under the Copyright Act and will be separately punished if they are found to be individually liable by a jury. There will be no prospect of unlimited liability for wrongdoers on a "per infringement" basis and Mr. Morel will not receive some unjustified "windfall." Rather than incentivizing infringing activity, as Defendants augur in their papers, Getty's individual exposure will discourage future wrongdoers from pursuing a similar course of conduct. Infringers will be on notice that they ignore Kill Notices and thereafter license misappropriated works at their peril. And entities like AFP will be incentivized to issue proper and effective Kill Notices in the hope that such conduct will reduce their own exposure.

Finally, as Defendants' counsel concedes, Getty's individual liability is a question of fact. As such, the jury should determine whether Getty's conduct – particularly its post-Kill Notice licensing efforts – constitutes individual infringing activity. Defendants' assertion on this Motion that the Kill Notice should not be viewed as a break in their joint wrongdoing is undermined by their filings throughout this litigation. AFP has repeatedly argued that the issuance of its Kill Notice precludes the possibility of a finding that it participated in any post-Kill Notice infringements by anyone who displayed or licensed Mr. Morel's works after receiving that notice. Getty claims that AFP should be faulted for being imprecise in its

descriptions of the works that were to be killed.  In light of these assertions, accusations, and

purported excuses, Defendants should not be able to circumvent Mr. Morel's ability to ask the

jury to find Getty individually liable for failing to follow the Kill Notice it unquestionably

received.

       Plaintiff therefore respectfully submits that the Court's ruling that "AFP and

Getty are, at most, each liable for a single statutory damages award per work infringed" should

be left undisturbed.[2]  Defendants' Motion to limit Mr. Morel to "a total of eight (8) statutory

damages awards against Counterclaim Defendants jointly" should be denied.

## ARGUMENT

**I.**    **THE LANGUAGE OF SECTION 504(C), THE POLICY UNDERPINNINGS OF THAT STATUTE, AND APPROPRIATE RULES OF STATUTORY CONSTRUCTION ENTITLE MR. MOREL TO SEEK A SEPARATE STATUTORY AWARD FROM GETTY FOR ITS INDIVIDUAL WRONGFUL CONDUCT.**

       The starting point for the analysis is the relevant statute:  section 504(c)(1) of the

Copyright Act, which provides that a copyright owner may obtain:

> [A]n award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.

17 U.S.C. § 504(c)(1).  This language specifically contemplates two types of recovery:  (1) a

recovery from any *one* infringer which is liable individually, or (2) a recovery from two or more

infringers who are liable jointly.  Based on that language, Mr. Morel submits that he should be

allowed to seek one statutory award from AFP for its wrongful misappropriation and

downstream licensing for every infringed work and one award from Getty for each of Mr.

---

[2]    Opinion at 56.

Morel's photographs that it licensed after AFP directed Getty to remove the images from all of its systems and to stop using or licensing the works.

The case law supports the same conclusion.  In *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992), the court held that "the total number of 'awards' of statutory damages . . . that a plaintiff may recover in any given action depends on the number of *works* that are infringed and the number of individually liable *infringers*."  As the Court held:

> [I]f a plaintiff proves that one defendant committed *five* separate infringements of *one* copyrighted work, that plaintiff is entitled to only one award of statutory damages . . . .  And if a plaintiff proves that *two* different defendants each committed *five* separate infringements of *five* different works, the plaintiff is entitled to ten awards, not fifty.

*Id.* at 143-144 (emphasis in original); Opinion at 50-51 ("if multiple infringers are each liable individually, a separate award of statutory damages against each infringer is appropriate").  Defendants themselves acknowledge that in the "unremarkable situation where multiple infringers, each liable individually for infringement of the plaintiff's work, are joined in the same action," they are *each* liable for separate statutory damages awards.[3]

Despite the language of the statute and the case law construing it, Defendants argue that if an independently-liable defendant like Getty has *also* participated in infringing activities for which others may be jointly liable, the Copyright Act *protects* that defendant from liability for its individual infringing activity and requires that the victim be satisfied with a single statutory damages award from all infringers jointly.  There is, of course, no case that supports this remarkable proposition.  This is not surprising, given that the "clear intent" of the Copyright Act is to "protect original works of authorship against misappropriation" and not to protect wrongdoers who both jointly and individually infringe copyrighted works.  *Latimer v. Roaring*

---

[3]    Supp. Br. at 3.

*Toyz, Inc.*, 601 F.3d 1224, 1234 (11th Cir. 2010); *Arista Records LLC v. Lime Grp. LLC*, 784 F.

Supp. 2d 398, 432 n.32 (S.D.N.Y. 2011) ("The ultimate aim of copyright law is to stimulate

artistic creativity for the public good . . . . [T]he Copyright Act must be construed in light of this

basic purpose.").[4]

The Copyright Act is designed to punish and deter those who violate the creator's

"marketable right to the use of [his own] expression." *Harper & Row Publishers, Inc. v. Nation*

*Enterprises*, 471 U.S. 539, 558 (1985); *U.S. Media Corp. v. Edde Entertainment Corp.*, No. 94

CIV. 4849, 1998 WL 401532, at *18 (S.D.N.Y. Jul. 17, 2008) ("an award [of statutory damages

under the Copyright Act] is designed to serve both compensatory and punitive purposes");

*Microsoft Corp. v. Computer Care Center, Inc.*, No. 06-CV-1429, 2008 WL 4179653, at *9

(E.D.N.Y. Sept. 10, 2008) ("the statutory award under the Copyright Act is designed to serve

purposes other than disgorgement of unjust enrichment, specifically, deterrence and

punishment").[5]  In light of these clearly articulated purposes, Getty should not be able to

decrease its liability by pointing to its increased culpability.[6]

---

[4]  *Accord Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (the Copyright Act is "designed to protect originality or creativity"); *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 340 (S.D.N.Y. 2009) ("the purpose of the Copyright Act is to protect authors from infringers").

[5]  *Accord Nature's Enterprises, Inc. v. Pearson*, No. 08 Civ. 8549, 2010 WL 447377, at *9 (S.D.N.Y. Feb. 9, 2010) ("one of the main purposes of the Copyright Act is to deter willful infringement of copyrighted works"); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 837 (S.D.N.Y. 1991) ("Generally, the purposes of the Copyright Act are to compensate the plaintiff and deter the defendant from future infringement.").

[6]  To the extent the statutory language at issue here may be ambiguous, the Court should "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. U.S.*, 494 U.S. 152, 158 (1990); *Gutierrez v. RWD Technologies*, 279 F. Supp. 2d 1223, 1226 (E.D. Cal. 2003) ("If the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute."); *accord Hamilton v. Werner Co.*, 268 F. Supp. 2d 1085, 1090 (S.D. Iowa 2003).  Applying this principle of statutory construction here, Getty should not be able to evade individual liability by relying on its joint culpability.

Finding no support for their theory in the statute, the case law, or the legislative history, Defendants instead argue that if AFP and Getty were each liable for statutory damages awards, "absurd results" would follow.  More specifically, Defendants argue that if both Getty and AFP were required to pay statutory damages awards for their infringing activities:  (i) Mr. Morel would "inject[] per-infringement damages back into the statutory scheme" and receive a "financial windfall"; (ii) knowing copyright infringers would be rewarded at the expense of unwitting infringers; and (iii) infringers would cease sending kill notices.[7]  None of these arguments has any merit.

Mr. Morel simply is not claiming entitlement to statutory damages under the Copyright Act on a *per infringement* basis.  Rather, he seeks *eight* statutory damages awards from AFP on a *per work* basis for its infringement of *eight* of his works, and *eight* statutory damages awards from Getty on a *per work* basis for *its individual* infringement of *eight* of his works.  Mr. Morel's position is fully consistent with the Court's ruling that, at most, AFP and Getty are "***each*** liable for a single statutory damages award per work infringed."[8]  Neither Mr. Morel's demand nor the Court's ruling gives rise to the possibility of a massive number of statutory awards against AFP and Getty or the prospect of a "windfall" for Mr. Morel.  One potential statutory award per work against each defendant under the Copyright Act, nothing more and nothing less.

Defendants' claim that the Court's ruling would reward willful infringers at the expense of unwitting infringers is specious.  As Defendants know, the Copyright Act provides for a sliding scale of statutory damages awards based on a defendant's willfullness.  To the extent

---

[7]    Supp. Br. at 5-7.

[8]    Opinion at 56 (emphasis added).

that Defendants here are concerned about the liability of theoretical infringers who "inadvertently fail to obtain full or valid rights,"[9] they can rest assured that those infringers, if subject to individual statutory awards, will be able to argue that they should pay a lesser amount than those who willfully infringe another's copyright.

Finally, Defendants argue that imposing separate statutory damages awards against AFP and Getty would have the "perverse effect of discouraging distributors of copyrighted content from sending kill notices" because such distributors "frequently indemnify downstream recipients for copyright claims that arise from the content provided."[10]  But a "defendant's right to indemnification from a third party does not affect its liability to the plaintiff."  *American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.*, 969 F. Supp. 184, 189 (S.D.N.Y. 1997).  Defendants should not be permitted to escape individual liability under the Copyright Act by electing to enter into a private indemnification agreement.  If AFP now regrets its decision to indemnify an entity that ignored its Kill Notice – if that's what it has done – that choice should have no bearing whatsoever on what Mr. Morel can recover from the various wrongdoers.

## II.   MR. MOREL SHOULD BE ENTITLED TO PRESENT EVIDENCE TO THE JURY THAT GETTY IS INDIVIDUALLY LIABLE FOR ITS WRONGFUL LICENSING OF THE PHOTOS-AT-ISSUE AFTER RECEIVING THE CAPTION CORRECTION AND KILL NOTICE.

It is undisputed that AFP issued a Kill Notice on the afternoon of January 14, 2010.  The Kill Notice was distributed through AFP's wire and on ImageForum, and it was sent

---

[9]   Supp. Br. at 6.

[10]   Supp. Br. at 7.

to Getty and to Getty's customers who received AFP's content through Getty's feed.[11]  The Kill

Notice stated the following:

> MANDATORY KILL == MANDATORY KILL == MANDATORY KILL
> Due to a recent copyright issue, we kindly ask you to kill from all your systems
> Daniel Morel Pictures from Haiti. We are sorry for any inconvenience; thank you
> for your cooperation.
> MANDATORY KILL == MANDATORY KILL == MANDATORY KILL[12]

According to AFP, the Kill Notice "directed subscribers to remove the photos

from their databases and discontinue use of the photos."[13]  AFP claims that it "believed that the

[prior] Caption Correction plus the Kill Notice was enough to properly notify subscribers of the

Kill."[14]

Getty did not follow the directive in the Kill Notice and did not discontinue use of

the photos.  In fact, Getty licensed Mr. Morel's photographs on at least fifty-two occasions *after*

it received the Kill Notice.[15]  Mr. Morel should be allowed to argue to the jury that, by

disregarding the Kill Notice and thereafter licensing Mr. Morel's photographs to third parties,

Getty embarked on its own course of infringing activity for which it is individually liable.

*Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992) ("the total number of

'awards' of statutory damages . . . that a plaintiff may recover in any given action depends on the

---

[11]    Opinion at 9; *see also* Defendants' Joint Counter-Statement to Morel 56.1 SOMF (Dkt. 163) ¶ 213.

[12]    Opinion at 9.

[13]    Defendants' Joint Mem. of Law in Supp. of Mot. for Summ. J. (Dkt. 144) at 33.

[14]    Defendants' Joint 56.1 SOMF (Dkt. 129) ¶ 204.

[15]    Getty admits that it licensed Mr. Morel's images for a number of weeks after its receipt of the Kill Notice. Decl. of C. Calhoun in Supp. of Getty Images' Mot. for Summ. J. (Dkt. 136) ¶ 15.  Indeed, Getty sold *a la carte* licenses to Mr. Morel's images at least twenty-four times and allowed at least twenty-eight downloads of Mr. Morel's images from its customer website until at least February 2, 2010.  *See, e.g.*, Ex. A to the Decl. of C. Calhoun in Supp. of Getty Images' Mot. for Summ. J., (Dkt. 136-1) at 52 ("Purchases" chart rows 87-106, showing, in Column "C," various sales of Mr. Morel's images from January 19, 2010 through February 2, 2010).

number of *works* that are infringed and the number of individually liable *infringers*." (emphasis in original)).

Getty's individual liability for its own infringing actions is a question of fact to be decided by the jury. *See McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 564 (7th Cir. 2003); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1240 n.8 (11th Cir. 2010) ("If fact questions are in dispute, these must be resolved by the jury."); *Castillo v. Time Warner Cable*, No. 09 Civ. 7644, 2011 WL 5084590, at *1 (S.D.N.Y. Oct. 24, 2011) ("There are genuine issues of fact which plaintiffs are entitled to present to a jury. . . ."). "The jury's function in deciding all issues of fact must not be abrogated by a court except under limited and most serious circumstances." *Zirlin v. Village of Scarsdale*, 365 F. Supp. 2d 477, 483 (S.D.N.Y. 2005). Defendants acknowledge that Getty's liability is a factual issue:

> MS. KENT: . . .  Second of all, we don't believe there was a separate act by Getty if it continued to license the images after the kill notice if it was a continuing transaction. The images were still received from AFP. AFP licensed them to Getty and then Getty licensed them to third parties.
>
> THE COURT: Is that a factual question?
>
> MS. KENT: No. I think that's been established.
>
> THE COURT: You mean so it is a factual question, but one which no reasonable juror could conclude otherwise here.
>
> MS. KENT: Correct. . . .[16]

Despite this concession, Defendants argue that Getty cannot be liable individually, as a matter of law and indisputable fact, because Getty's post-Kill Notice actions are purportedly part of an unbroken stream of copyright infringements that started with AFP's

---

[16]    Transcript of February 22, 2013 Hearing at 17.

misappropriations of the works on January 10, 2010.[17]  For purposes of the current Motion, Defendants assert that the Kill Notice did not constitute a break in the "ongoing series" of infringing acts that the parties jointly embarked on from January 10, 2010.[18]  Throughout the history of this case, however, AFP and Getty have argued that the issuance of the Kill Notice *did* constitute a breaking point in their actions as joint tortfeasors.  As detailed below, AFP asserts that the Kill Notice is purportedly an exculpatory event that should eliminate its responsibility for the post-Kill Notice acts of Getty and others, while Getty complains about the vagueness of the Kill Notice to justify its dozens of post-Kill Notice sales of Mr. Morel's works.

     For example, in support of its Motion for Summary Judgment, AFP expressly argued that it was not, and could not have been, a "participant" in any infringing activity by others following the dissemination of its Kill Notice:

> [O]n January 14, 2010, AFP removed access to the Photos at Issue on Image Forum and its archive and sent a mandatory "Kill Notice" to its and Getty Images' feed subscribers that directed subscribers to remove the photos from their databases and discontinue use of the photos.  Further, AFP sent the Mandatory Kill Notice via e-mail to subscribers who had previously requested an e-mail notice for any Kill Notices.  Further, AFP could not truly "participate" in any infringement because AFP cannot access or

---

[17]    Defendants attempt to analogize section 412 copyright registration cases with the facts here.  Their reliance on cases discussing section 412 of the Copyright Act for the proposition that Getty engaged in an "ongoing series of infringing acts" is misplaced.  Section 412 – which is not at issue in this case – makes clear that "acts of infringement that occur[] after the copyright [is] registered do not constitute new acts of infringement" but rather, constitute "a continuation of the infringement that 'commenced' prior to registration." *Ez-Tixz, Inc. v. Hit Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996).  Mr. Morel is *not* asserting that the *registration* of his works commenced a new series of infringement by Getty.  Rather, Mr. Morel asserts that AFP's issuance of a Kill Notice constituted an intervening act and that Getty's decision to ignore that notice and proceed with sales of Mr. Morel's images amounted to a new set of infringing acts for which Getty is *independently* liable.  These cases do not touch on that issue.

[18]    Defendants also argue that there is "no genuine issue of fact" as to the source of the images obtained by Getty (Supp. Br. at 8-9), and cite to the Court's Opinion in support of that proposition.  But nowhere does the Court conclude that Getty obtained the works-at-issue *exclusively* from AFP.  Instead, the Court has simply agreed with Mr. Morel that *some* of the Photos-At-Issue that Getty licensed and sold were obtained by Getty from AFP.  Opinion at 4, 7.

remove material from its third party subscribers, other than Getty Images, and has no ability to change or remove the photos.[19]

For its part, Getty blames AFP for any post-Kill Notice infringements that Getty engaged in because AFP's Kill Notice was purportedly imprecise:

> [T]he AFP Kill Notice did not identify specific Getty Images asset numbers, provide thumbnails of the images in question, or provide notice that any of the Photos at Issue were credited to Lisandro Suero or David Morel, so it could not have given Getty Images notice that misattributed images remained on its site.[20]

Not to be outdone in the blame game, AFP points to the combined effect of the Caption Change and the Kill Notice and summarizes its belief as to how responsible journalists and licensees should have acted in the wake of such notices:

> It was AFP's expectation that *anyone* who had acquired the Photos at Issue improperly captioned to Mr. Suero would make the connection that they should have been changed to Mr. Morel, so that when they received the Kill Notice as to Mr. Morel, they would know that the Kill applied to the previously captioned Mr. Suero photos.[21]

In light of these and other charges and counter-charges that AFP and Getty have hurled at each other, it is disingenuous at best for Defendants to argue on this Motion that their conduct was all an unbroken series of actions taken jointly.  If they wish to argue that point to the jury that is their choice, but we respectfully submit that the jury should be able to consider, evaluate, and decide whether Getty is individually liable for its post-Kill Notice licensing actions.

---

[19]   Defendants' Joint Mem. of Law in Supp. of Mot. for Summ. J. (Dkt. 144) at 33 (internal citations omitted) (emphasis added).

[20]   Defendants' Joint Mem. of Law in Opp. to Morel's Mot. for Summ. J. (Dkt. 162) at 31 n.10.

[21]   Defendants' Joint 56.1 SOMF (Dkt. 129) ¶ 205 (emphasis added).

**CONCLUSION**

Plaintiff respectfully submits that the Court's ruling that "AFP and Getty are, at most, each liable for a single statutory damages award per work infringed" should be left undisturbed.  Defendants' Motion to limit Mr. Morel to "a total of eight (8) statutory damages awards against Counterclaim Defendants jointly" should be denied.

Dated: March 8, 2013                               Respectfully submitted,


                                        By: /s/_____

                                             Joseph T. Baio
                                             jbaio@willkie.com

                                             WILLKIE FARR & GALLAGHER LLP
                                             787 Seventh Avenue
                                             New York, New York 10019-6099
                                             (212) 728-8000

                                             *Counsel for Counterclaim Plaintiff
                                             Daniel Morel*

9214981.8