UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                          :
AGENCE FRANCE PRESSE,
                        Plaintiff,                        :

          -v.-                                            :
                                                              10-CV-2730 (AJN) (FM)
DANIEL MOREL,                                             :
                        Defendant,                           ECF CASE
                                                          :
          -v.-                                            :

GETTY IMAGES, INC., ET AL.,                               :
                        Counterclaim                      :
                        Defendants.
                                                          :

-----------------------------------------------------------X


## OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MOTIONS *IN LIMINE*


WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, New York 10019

Attorneys for Counterclaim Plaintiff
Daniel Morel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT .......................................................................................1

ARGUMENT .................................................................................................................4

I.    THE RELEVANT LEGAL STANDARDS TO BE APPLIED BY THE COURT IN
      EVALUATING DEFENDANTS' MOTIONS IN LIMINE. ................................................4

II.   EVIDENCE AND TESTIMONY CONCERNING GETTY'S SIZE AND WEALTH
      ARE ADMISSIBLE. ................................................................................................8

III.  EVIDENCE AND TESTIMONY CONCERNING AFP'S CONDUCT AND
      ATTITUDE TOWARD MR. MOREL IS HIGHLY RELEVANT AND SHOULD
      NOT BE KEPT FROM THE JURY. ...........................................................................11

IV.   RELEVANT TESTIMONY FROM MR. MOREL'S PRIOR COUNSEL ABOUT
      NOTICES SENT TO THE DEFENDANTS AS TO THEIR CONTINUING
      INFRINGEMENTS SHOULD NOT BE PRECLUDED. ...................................................14

V.    EVIDENCE AND TESTIMONY CONCERNING DEFENDANTS' WORLDWIDE
      DISSEMINATION AND SALES OF MR. MOREL'S PHOTOGRAPHS ARE
      HIGHLY RELEVANT AND SHOULD NOT BE KEPT FROM THE JURY. ...................17

VI.   MR. MOREL SHOULD BE PERMITTED TO TESTIFY ABOUT THE INJURIES
      HE SUFFERED AS A RESULT OF DEFENDANTS' WRONGFUL CONDUCT. ............19

VII.  THE COURT SHOULD DENY DEFENDANTS' MOTION TO PRECLUDE
      EVIDENCE AS TO THEIR DMCA VIOLATIONS AND TO CAP OR ELIMINATE
      THE NUMBER OF POTENTIAL AWARDS. ................................................................21

      A.    AFP And Getty Have Been Fully Apprised Of The Evidence Supporting Mr.
            Morel's Entitlement To Statutory Awards Under The DMCA. ...............................23

      B.    Defendants Are Liable For Each Violation Of DMCA § 1202. ................................25

      C.    Damages Awarded To Mr. Morel Under DMCA § 1203 Will Not Be
            Duplicative Of Damages He Is Entitled To For Copyright Infringement. .................27

CONCLUSION ..............................................................................................................31

## TABLE OF AUTHORITIES

*Cases*                                                                                     *Page(s)*

*Aboeid v. Saudi Arabian Airlines Corp.,*
    No. 10 CV 2518, 2011 WL 5117733 (E.D.N.Y. Sept. 6, 2011) ........................................ 7

*Am. Stock Exch., LLC v. Mopex, Inc.,* 215 F.R.D. 87 (S.D.N.Y. 2002)................................. 16, 25

*Been v. New Mexico Dept. of Info. Tech.,* 815 F. Supp. 2d 1222 (D.N.M. 2011).................. 16, 25

*Blazina v. Port Auth. of N.Y. and N.J.,*
    No. 06 Civ. 481, 2008 WL 4539484 (S.D.N.Y. Oct. 7, 2008).......................................... 19

*Bonilla v. Janovick,* No. 01-CV-3988, 2007 WL 3047087 (E.D.N.Y. Oct. 16, 2007) ................. 5

*Bryant v. Media Right Prods., Inc.,* 603 F.3d 135 (2d Cir. 2010)........................................... 6, 12

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 517 F.3d 1271 (11th Cir. 2008) ............................ 18

*Burke v. Deere & Co.,* 6 F.3d 497 (8th Cir. 1993) ........................................................................ 9

*Campmor, Inc. v. Brulant LLC,* No. 09-5465-WHW (D. N.J. April 30, 2013) ........................... 13

*Cass Cnty. Music Co. v. Khalifa,* 914 F. Supp. 30 (N.D.N.Y. 1996)........................................... 12

*Close-Up Int'l, Inc. v. Berov,*
    No. 02-CV-2363, 2007 WL 4053682 (E.D.N.Y. Nov. 13, 2007) .................................... 18

*Culebras Enter. Corp. v. Rivera-Rios,* 846 F.2d 94 (1st Cir. 1988)............................................ 17

*Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.,* 656 F.3d 47 (1st Cir. 2011) ....................... 13

*Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613 (5th Cir. 1977) .................................................... 4

*Dorn v. Berson,* No. 09-CV-2717, 2012 WL 1004907 (E.D.N.Y. Mar. 1, 2012)........................ 28

*Engel v. Wild Oats, Inc.,* 644 F. Supp. 1089 (S.D.N.Y. 1986)................................................. 17, 20

*Geddes v. United Fin. Grp.,* 559 F.2d 557 (9th Cir. 1977) ........................................................... 9

*Gilliland v. Hergert,*
    No. 2:05-cv-01059, 2008 WL 2682587 (W.D. Pa. July 1, 2008) .................................... 13

*Goldman v. Healthcare Mgmt. Sys., Inc.,* 559 F. Supp. 2d 853 (W.D. Mich. 2008) ............. 26, 27

*Granger v. One Call Lender Servs., LLC,*
    No. 10-3442, 2012 WL 3065271 (E.D. Pa. July 26, 2012)............................................... 28

*Hettinger v. Kleinman*, 733 F. Supp. 2d 421 (S.D.N.Y. 2010) ....................................................... 28

*Hizam v. Clinton*,
    No. 11 Civ. 7693, 2012 WL 3116026 (S.D.N.Y. July 27, 2012)...................................... 30

*Impulsive Music, Inc. v. Bryclear Enterprises, LLC*,
    483 F. Supp. 2d 188 (D. Conn. 2007) ......................................................................... 12

*Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).................... 6

*Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177 (E.D.N.Y. 2005) ........................................ 7

*John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*,
    No. 12-cv-4194, 2013 WL 1828671 (N.D. Tex. May 1, 2013) ....................................... 28

*Leopold v. Baccarat, Inc.*, 174 F.3d 261 (2d Cir. 1999) ................................................................ 4

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995)......................................................................... 6

*Loral Fairchild Corp. v. Victor Co. of Japan*, 911 F. Supp. 76 (E.D.N.Y. 1996) ................. 16, 25

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004).....................8-10

*Magee v. U.S. Lines, Inc.*, 976 F.2d 821 (2d Cir. 1992)............................................................... 28

*Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997) .............................................. 13

*Marshall v. Marshall*,
    No. 08 CV 1420, 2012 WL 1079550 (E.D.N.Y. Mar. 30, 2012)............................. passim

*McClatchey v. Associated Press*,
    No. 305-CV-145, 2007 WL 1630261 (W.D. Pa. June 4, 2007) ...................................... 26

*Media Alliance, Inc. v. Mirch*,
    No. 09-CV-0659, 2012 WL 162375 (N.D.N.Y. Jan. 19, 2012) ...................................... 18

*In re Methyl Tertiary Butyl Ether Products Liab. Litig.*,
    643 F. Supp. 2d 471 (S.D.N.Y. 2009) ..................................................................... 4, 5

*MJD Marketing, Inc. v. McGrail*,
    No. 11-cv-02842, 2012 WL 261199 (D. Md. Jan. 26, 2012) .......................................... 28

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*,
    937 F. Supp. 276 (S.D.N.Y. 1996)............................................................................... 5

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007 (9th Cir. 1994) ................................. 30

*Pacific Stock, Inc. v. MacArthur & Co., Inc.,*
   No. 11-00720, 2012 WL 3985719 (D. Hawaii Sept. 10, 2012) ........................ 28

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
   716 F. Supp. 2d 236 (S.D.N.Y. 2010) ............................................................... 4

*Propet USA, Inc. v. Shugart,*
   No. C06-0186-MAT, 2007 WL 4376201 (W.D. Wash. Dec. 13, 2007).................... 26, 28

*Psihoyos v. John Wiley & Sons, Inc.,*
   No. 11 Civ. 1416, 2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012)................................. 8, 11

*Psihoyos v. Pearson Educ., Inc.,* 855 F. Supp. 2d 103 (S.D.N.Y. 2012) ...................................... 25

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers,*
   378 F.3d 269 (2d Cir. 2004) ............................................................................16-17

*Rare Blue Music, Inc. v. Guttadauro,* 616 F. Supp. 1528 (D. Mass. 1985) ................................. 12

*RCA Records, Div. of RCA Corp. v. All-Fast Systems, Inc.,*
   No. 84 Civ. 631, 1985 WL 3059 (S.D.N.Y. Oct. 9, 1985)........................................ 8, 10

*RSO Records, Inc. v. Peri,* 596 F. Supp. 849 (S.D.N.Y. 1984)........................................................ 17

*SEC v. DiBella,* 587 F.3d 553 (2d Cir. 2009)................................................................................... 30

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.,*
   453 F.2d 552 (2d Cir. 1972) ............................................................................... 18

*Soley v. Wasserman,* No. 08 Civ. 9262, 2013 WL 3818044 (S.D.N.Y. July 17, 2013)................. 5

*Solis v. SCA Restaurant Corp.,*
   No. 09-CV-2212, 2013 WL 1401396 (E.D.N.Y. Apr. 5, 2013)........................................ 17

*Stevens Linen Assocs., Inc. v. Mastercraft Corp.,* 656 F.2d 11 (2d Cir. 1981)............................ 19

*Stockart.com, LLC v. Engle,*
   No. 10-CV-00588, 2011 U.S. Dist. LEXIS 20470 (D. Colo. Feb. 18, 2011) .............26-28

*Stockwire Research Grp., Inc. v. Lebed,* 577 F. Supp. 2d 1262 (S.D. Fla. 2008)....................26-27

*Tu v. TAD Sys. Tech. Inc.,*
   No. 08-CV-3822, 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009)................................... 29

*TVT Records v. Island Def Jam Music Grp.,* 250 F. Supp. 2d 341(S.D.N.Y. 2003) .................... 5

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366 (2d Cir. 1993) ............... 12, 16

*U.S. v. Richardson*, No. CRIM.A.01-235, 2002 WL 461662 (E.D. La. Mar. 21, 2002) ............. 13

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
  No. 00 Civ. 472, 2000 WL 1262568 (S.D.N.Y. Sept. 6, 2000) ...................................... 8, 9

*Unicity Music, Inc. v. Omni Commc'ns, Inc.*, 844 F. Supp. 504 (E.D. Ark. 1994)...................... 12

*United States v. Chan*, 184 F. Supp. 2d 337 (S.D.N.Y. 2002) ............................................ 5

*United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ............................................ 5

*United States v. Norris*, 513 F. App'x 57 (2d Cir. 2013) ................................................ 4

*W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306 (3d Cir. 2003)............................ 13

*Walt Disney Co. v. Best*,
  No. 88 Civ. 1595, 1990 WL 144209 (S.D.N.Y. Sept. 26, 1990) ...................................... 20

*Warner Bros., Inc. v. Dae Rom Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989) ............................ 12

*Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135 (S.D.N.Y. 2003)................................ 5

*Wright v. Aargo Sec. Servs., Inc.*,
  No. 99 CIV. 9115, 2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001) ...................................... 16

## Statutes                                                                                   *Page(s)*

17 U.S.C. § 106 ...................................................................................................... 29

17 U.S.C. § 501 ...................................................................................................... 29

17 U.S.C. § 504 ................................................................................................. 8, 29

17 U.S.C. § 1202(a)-(b) ........................................................................................ 29

17 U.S.C. § 1203(c)(3)(B) .............................................................................. 21, 26

Fed. R. Civ. P. 26(e)................................................................................. 7, 16, 25

Fed. R. Civ. P. 37(c)(1) .................................................................................. 7, 25

Fed. R. Evid. 401 ..................................................................................................... 4

Fed. R. Evid. 403....................................................................................................... 4

N.Y. Rules of Prof. Conduct Rule 3.7............................................................... 17

***Other Authorities***                                                                       ***Page(s)***

H. Rep. 94-1476 (1976) ...................................................................................... 29

H. Rep. 105-551 (1998) .................................................................................... 29

S. Rep. 105-190 (1998) ..................................................................................... 29

Defendant and Counterclaim Plaintiff Daniel Morel ("Plaintiff" or "Mr. Morel") submits this omnibus memorandum of law in Opposition to the Motions *In Limine* filed by Getty Images (US), Inc. ("Getty") and Agence France Presse ("AFP," collectively with Getty, the "Defendants") to exclude from the jury's consideration evidence and argument by Plaintiff concerning: (1) Getty's revenues and net worth (Dkt. Nos. 236-237); (2) AFP's retaliatory actions against Mr. Morel (Dkt. No. 238-239); (3) notices of infringement sent to the Defendants by Mr. Morel's former counsel (Dkt. No. 245); (4) the full extent of Defendants' unauthorized world-wide distribution of Mr. Morel's works (Dkt. No. 244); (5) the damages suffered by Mr. Morel as a result of Defendants' conduct (Dkt. No. 243); and (6) Plaintiff's entitlement to recover for Defendants' violations of the Digital Millennium Copyright Act (the "DMCA") (Dkt. No. 242).

## PRELIMINARY STATEMENT

Over the last three-and-a-half years, the conduct and attitude of AFP and Getty toward Daniel Morel have been consistently abhorrent. After infringing Mr. Morel's remarkable photographs, repeatedly misidentifying them in transmissions to countless Internet users, hundreds of paying subscribers and scores of licensees around the world (even *after* the Defendants unquestionably knew that the photographs were Mr. Morel's alone), and failing to follow their own ethical guidelines, AFP and Getty had the opportunity to do the right thing and belatedly ameliorate the damage they inflicted on Mr. Morel. Instead, in an arrogant display of power, AFP sued Mr. Morel to strip him of any copyright protection for his own works and to recover damages against him for supposed defamation, thereby hoping to silence an individual photojournalist who had the temerity to assert his rights in his own work against two media giants.

In their 73-pages of *in limine* motions, AFP and Getty have continued their relentless attack against Mr. Morel, hoping to muzzle him before the trial and to keep from the jury virtually every

aspect of this shameful history.  Six of Defendants' seven motions should be denied in their entirety.[1]

The conduct and evidence that the Defendants hope to suppress is highly relevant and unambiguously admissible under Second Circuit law.  Because Mr. Morel is entitled to statutory damages, the jury can receive, consider, and weigh a wide range of evidence in determining how much AFP and Getty – the adjudicated wrongdoers – should be required to pay Mr. Morel.  The jury can evaluate evidence that goes to Defendants' state of mind (including their knowledge and use of the very copyright laws they have ignored here), the information they received that put them on notice of their infringing actions, what Defendants made and what Mr. Morel lost when they wrongfully took from him the defining moment of his distinguished career, their lack of cooperation in providing evidence concerning the value of what they misappropriated, and the full extent and global reach of their infringing behavior.  Moreover, the jury can consider evidence of the "conduct and attitude" of the Defendants toward Mr. Morel as well as Defendants' wealth and financial wherewithal.  Case law makes it clear that the jury can consider such evidence to determine just what it will take to punish the Defendants for their infringements and to deter them and other would-be infringers from doing to another solo photojournalist what the Defendants have done and continue to do to Mr. Morel.

Defendants' principal objection to the evidence they hope to suppress is that it will prejudice them in the eyes of the jury.  That objection is specious.  All evidence offered by an adverse party is properly designed to prejudice opponents.  The issue is whether the evidence that Defendants hope to keep from the jury will ***unfairly prejudice*** them and whether that unfair prejudice outweighs the

---

[1]  Mr. Morel does not intend to introduce evidence of or otherwise refer to his brain tumor or his wife's tragic death at trial – unless, of course, Defendants themselves open the door to testimony about these subjects.  (Dkt. No. 246.)

probative value of the challenged evidence.  The evidence that Defendants hope to exclude, however, goes to the heart of Defendants' misconduct, is highly relevant to the issues to be resolved by the jury, and largely involves the Defendants' own conduct and what they knew and learned about the photographs they misappropriated.  Under the law, there is nothing unfairly prejudicial about any of the challenged evidence.  If Defendants wished to avoid being judged based on what they did and what they knew, they should have changed their behavior when they had the chance to do so.

Defendants have also filed a motion *in limine* to cap or eliminate entirely the number of awards that the jury can find for their various violations of the DMCA.  Defendants first pretend that they "only recently learned" that Mr. Morel is seeking more than sixteen DMCA awards in this case.  This contention is false.  During the briefing on the motions for summary judgment, the Defendants loudly complained that Mr. Morel sought *far too many* potential statutory awards under the DMCA, not the sixteen such awards they point to in his initial Rule 26 disclosures.  Defendants should not be allowed to claim that they are "shocked" to learn that Mr. Morel is seeking to recover an award under the DMCA for each violative act they performed.

In light of the Court's ruling on summary judgment, Mr. Morel will seek DMCA awards consistent with that decision and based *solely* on the Defendants' own statutorily-prohibited conduct, irrespective of the number of end-users and viewers who received Mr. Morel's misappropriated and misidentified works through the Defendants' "feeds."  As this Court held, the term "each violation," as used in the DMCA, means "each violative act performed by a defendant."  A defendant commits a violative act with each posting of the purloined and misidentified assets.  Here, the evidence of each such act was provided by the Defendants themselves.  Defendants have not identified *any* discovery they would have taken to learn about their own conduct if Mr. Morel

-3-

had updated his Rule 26 disclosures, further undermining Defendants' claim that they will be

unfairly prejudiced if they are held responsible for each act that violated the DMCA.

Finally, Defendants assert for the first time that Mr. Morel is entitled to no award

whatsoever under the DMCA because any award would purportedly duplicate his recoveries under

the Copyright Act.  But courts have repeatedly entered awards for violations of both statutes in the

same action.  Mr. Morel submits that Defendants are effectively asking this Court to wipe out the

legislation embodied in the DMCA, which addresses different harms and provides for different

damage awards than those addressed by the Copyright Act.  Defendants themselves conceded that

"one of the salutary purposes of copyright management is to provide attribution."  Defendants

should be held accountable for their misattribution of Mr. Morel's photographs.

## ARGUMENT

### I.   THE RELEVANT LEGAL STANDARDS TO BE APPLIED BY THE COURT IN EVALUATING DEFENDANTS' MOTIONS IN LIMINE.

The Federal Rules favor the admission of all relevant evidence.  *Pension Comm. of the Univ.*

*of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 716 F. Supp. 2d 236, 242 (S.D.N.Y. 2010); *In*

*re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 643 F. Supp. 2d 471, 475-76 (S.D.N.Y. 2009).

Evidence is relevant if it "is of consequence in determining the action" and has "any tendency to

make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Relevant evidence may be excluded where "its probative value is substantially outweighed by a

danger of . . . unfair prejudice."  Fed. R. Evid. 403; *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 270

(2d Cir. 1999); *United States v. Norris*, 513 F. App'x 57, 60 (2d Cir. 2013).  Evidence is not

unfairly prejudicial simply because it is adverse to the opposing party.  *United States v. Gelzer*, 50

F.3d 1133, 1139 (2d Cir. 1995).  The claimed prejudice must be unfair.  *Dollar v. Long Mfg., N.C.,*

*Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("'[U]nfair prejudice' . . . is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial or it isn't material.  The prejudice must be 'unfair.'").

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted and discrete evidence.  *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003).  Motions *in limine* should not be used as a blunderbuss weapon to cut off entire blocks of probative evidence. *TVT Records*, 250 F. Supp. 2d at 344 (motions *in limine* denied in part because used "as preemptive weapons . . . to strike in shotgun fashion at whole topics and sources of prospective evidence"). Evidence should be excluded on a motion *in limine* "**only** when the evidence is clearly inadmissible on all potential grounds."  *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (emphasis added); *Methyl Tertiary Litig.*, 643 F. Supp. 2d at 475-76.  Where the evidence challenged in the motion involves disputed issues of fact, the court should defer any decision until trial so that the motion is placed in the appropriate factual context.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996); *Soley v. Wasserman*, No. 08 Civ. 9262, 2013 WL 3818044, at *1 (S.D.N.Y. July 17, 2013); *Bonilla v. Janovick*, No. 01-CV-3988, 2007 WL 3047087, at *2 (E.D.N.Y. Oct. 16, 2007).

In the case before this Court, Defendants have already been adjudicated as infringers with respect to eight photographs taken by Mr. Morel in the aftermath of the Haiti earthquake.[2]  As a result, the trial will focus predominantly on evidence and conduct that the jury may consider in

---

[2] Getty has informed counsel for Mr. Morel that it has withdrawn its purported "safe harbor" defense based on § 512 of the DMCA.  With no defense, Getty is liable for copyright infringement.

evaluating and setting the actual and statutory damages to be awarded against the Defendants.  In *Bryant v. Media Right Prods., Inc.*, the Second Circuit identified a wide array of evidence that is relevant to the jury's determination of the amount of statutory damages to award.  Under *Bryant*, the jury may consider evidence relating to:

    (1)    the infringer's state of mind;

    (2)    the expenses saved, and profits earned, by the infringer;

    (3)    the revenue lost by the copyright holder;

    (4)    the deterrent effect on the infringer and third parties;

    (5)    the infringer's cooperation in providing evidence concerning the value of the infringing material; and

    (6)    the conduct and attitude of the parties.

603 F.3d 135, 144 (2d Cir. 2010).

Under the first *Bryant* factor, the jury can consider and weigh the evidence to determine whether the Defendants were "willful" in their persistent use of Mr. Morel's works and in their other actions against him. *See id.* at 143-44.  Evidence of "willfulness" is admissible if it shows that these Defendants either knew that their conduct was infringing or that their actions were the result of reckless disregard or willful blindness to the prospect that their conduct was infringing. *See id.* at 143; *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005); *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995).  In evaluating the Defendants' state of mind, the jury can consider whether (i) they were "on notice that the copyrighted work was protected"; (ii) "whether [they] had received warnings of the infringements"; and (iii) whether they "had experience with previous copyright ownership, prior lawsuits regarding similar practices, or work in an industry where copyright is prevalent." *Marshall v. Marshall*, No. 08 CV 1420, 2012 WL 1079550, at \*25 (E.D.N.Y. Mar. 30, 2012) *aff'd*, 504 F. App'x 20 (2d Cir. 2012) (citations omitted).

As detailed below, all the evidence Defendants hope to suppress is highly relevant to one or more of the *Bryant* factors or to the issue of Defendants' pattern of willful misconduct.  The central issue to be addressed in evaluating Defendants' *in limine* motions, therefore, is whether the Defendants will be unfairly prejudiced as a result of the admission of the challenged evidence and whether the highly probative value of that evidence is outweighed by that unfair prejudice.  Mr. Morel submits that, in each instance, the answers are clearly "no."

Finally, under Rule 26(e) of the Federal Rules of Civil Procedure, a party must supplement or correct its Rule 26 disclosures:

> [I]f the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. Rule 26(e)(1)(A) (emphasis added).  Mr. Morel submits that he had no obligation to amend or supplement any disclosure because any possible additional or corrective information was made known to Defendants either through the discovery process or in writing.

In any event, preclusion is a "harsh remedy" that "should be imposed only in rare situations." *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).  A party should not be precluded where the failure to disclose was "substantially justified or is harmless," meaning that "there is no prejudice to the party entitled to the disclosure."  Fed. R. Civ. P. 37(c)(1); *Aboeid v. Saudi Arabian Airlines Corp.*, No. 10 CV 2518, 2011 WL 5117733, at *2 (E.D.N.Y. Sept. 6, 2011).  Because Defendants had all of the relevant information in their possession and suffered no prejudice as a result of Plaintiff's disclosures, their requests for preclusion should be denied.

## II.     EVIDENCE AND TESTIMONY CONCERNING GETTY'S SIZE AND WEALTH ARE ADMISSIBLE.

Getty does not want the jury to know that it is one of the largest sellers of digital imagery in the world, with recent annual revenues of over $900 million and a net worth of billions of dollars.[3] Getty is concerned that the jury may become confused when confronted with a purported "sideshow" about its wealth and multi-billion dollar sale to the Carlyle Group.  Dkt. No. 237 at 7. According to Getty, evidence of its wealth might subvert "the entire compensatory function of statutory damages" and lead the jury to favor Mr. Morel as a "'little guy' who cannot prove substantial damages or infringing profits." *Id.* at 7.

In an unbroken line of cases where statutory damages have been awarded under the Copyright Act, courts have rejected Getty's argument and held that a defendant's wealth and corporate assets may be considered by the jury in setting an award that will punish the defendant for his infringing conduct and deter him from future infringements, as well as deter other potential would-be infringers.  *See, e.g., Psihoyos v. John Wiley & Sons, Inc.*, No. 11 Civ. 1416, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012) ("*Psihoyos*"); *UMG Recordings, Inc. v. MP3.Com, Inc.*, No. 00 Civ. 472, 2000 WL 1262568, at *6 (S.D.N.Y. Sept. 6, 2000); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 461 (D. Md. 2004) ("*Lowry's Reports*"); *RCA Records, Div. of RCA Corp. v. All-Fast Systems, Inc.*, No. 84 Civ. 631, 1985 WL 3059, at *1 (S.D.N.Y. Oct. 9, 1985).  In order to serve the twin goals of deterrence and punishment, evidence of a "defendant's size and financial assets [is] highly relevant to arriving at the appropriate level of statutory damages" for copyright infringement under 17 U.S.C. § 504(c).  *UMG Recordings, Inc.*, 2000 WL

---

[3]     AFP has not joined this motion or independently moved to exclude similar evidence about its corporate structure or finances, and Mr. Morel intends to inquire and offer evidence about these subjects at trial.

1262568, at *6. Getty's *in limine* motion to shield its wealth from the jury should therefore be denied.[4]

The court's decision in *Lowry's Reports, supra,* demonstrates this point. There, the plaintiff, a publisher of a copyrighted stock market newsletter, successfully sued Legg Mason, a global asset management firm, for breach of contract and willful copyright infringement. 302 F. Supp. 2d at 457-58. In evaluating an appropriate statutory damages award under the Copyright Act, the jury received evidence as to the defendant's wealth. *Id.* at 461. After trial, the jury awarded plaintiff an amount of nearly $19 million in statutory damages. *Id.* at 458.

Legg Mason moved for a new trial, claiming that the jury was impermissibly permitted to learn about Legg Mason's wealth and was improperly instructed that deterrence was a factor that the jury could consider in setting the statutory award. *Id.* Legg Mason argued that the actual harm that plaintiff suffered was only $59,000 – the amount of its lost subscription fee – and that the $19 million verdict was so disproportionate to the actual damages that it violated due process. *Id.*

The court rejected defendant's argument, noting that "when a jury's intent findings are sustainable, an award within the statutory range is entitled to substantial deference." *Id.* The Court noted that statutory damages "exist in part because of the difficulties in proving – and providing compensation for – actual harm in copyright infringement actions." *Id.* at 460. Indeed, as the court added, "[s]tatutory damages are appropriate even when actual damages cannot be proven." *Id.* (citing *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 233 (1952)). And, in language particularly appropriate to Getty's *in limine* motion, the court rejected defendant's argument that the

---

[4] Getty has cited no case that provides otherwise in the copyright context. The two cases cited by Getty analyze compensatory damages in unrelated contexts and have nothing to do with the *Bryant* factors or § 504(c). *See Geddes v. United Fin. Grp.,* 559 F.2d 557 (9th Cir. 1977) (class action lawsuit alleging violations of the securities laws); *Burke v. Deere & Co.,* 6 F.3d 497 (8th Cir. 1993) (personal injury lawsuit under Iowa law).

jury should have been precluded from considering Legg Mason's wealth in setting statutory damages:

> The wealth of the defendant has been widely recognized as relevant to the deterrent effect of a damages award. *See, e.g., Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir.2003) ("sizeable award . . . is both suitable and necessary to punish and deter a corporation of this size") . . . . Accordingly, the jury's consideration of Legg Mason's wealth was a correct application of the deterrent role of statutory damages, and a new trial is not required as a result of that consideration.

*Id.* at 461.

In addition, in the recently decided *Psihoyos* case, this Court employed the same analysis and reached the same result. There, the defendant, John Wiley & Sons, moved for remittitur after a jury awarded statutory damages to the plaintiff, a photographer. The defendant, one of the largest book publishers in the United States, asserted, among other things, that the jury's award lacked a rational deterrent purpose and shocked the conscience. The Court disagreed:

> Defendant also argues that the jury erred by excessively punishing Defendant. It is well established that the purpose of statutory damages is not only compensatory and restitutionary, but also to discourage wrongful conduct .... [C]onsidering the fact that Defendant is a $300 million a year division of a $1.7 billion company, the deterrent effect of a $130,000 damages award hardly seems excessive, and may not even be sufficient to hurt the offender's pocketbook enough for it to take notice. Finally, the jury may well have been attempting, quite appropriately, to deter the infringements of other publishers as well as the conduct of Defendant.

2012 WL 5506121, at *4 (internal quotations omitted); *see also RCA Records*, 1985 WL 3059, at *1 ("[t]he degree to which an award of statutory damages smarts the offender depends, in part, upon the offender's size and ability to absorb economic punishment").[5]

---

[5] Echoing the defendant's unsuccessful argument in *Psihoyos*, AFP and Getty belittle Mr. Morel's purported attempt to "convert this case from a thirty thousand dollar case" into a multi-million dollar case. Dkt. No. 242 at 10. If Defendants had their way, they would be able to steal a photojournalist's work and then merely pay a

For all of the same reasons, Getty's wealth is highly relevant to the jury's determination of the appropriate range of statutory damages to be awarded against Getty.  To be sure, given the top end of the range for statutory damages, the eventual award may be a tiny drop from Getty's corporate bucket, an amount that, even at its very highest level, will not hurt Getty's pocketbook enough for it to take any notice.  But Getty should not be allowed to pretend that it is just some local photo agency that should only have to pay Mr. Morel the licensing fee that Getty thinks is appropriate.  The jury should know the truth, apply the established legal standards, evaluate Getty's wealth and conduct, and give Getty what it has coming to it.

## III.   EVIDENCE AND TESTIMONY CONCERNING AFP'S CONDUCT AND ATTITUDE TOWARD MR. MOREL IS HIGHLY RELEVANT AND SHOULD NOT BE KEPT FROM THE JURY.

Like Getty, AFP does not want the jury to have access to all of the relevant evidence that it is entitled to receive in order to set appropriate statutory awards in this case.  Specifically, AFP does not want the jury to know that it sued Mr. Morel in federal district court after he asserted his legal and economic rights as the maker and copyright holder of the images that AFP had misappropriated. AFP also does not want the jury to know that it sued Mr. Morel with the intention of forcing Mr. Morel and his counsel to back down and to stop telling AFP customers that the photographs were his and his alone.  Plaintiff submits that the jury should know about AFP's base intimidation tactics because they reveal AFP's attitude and conduct toward Mr. Morel as well as AFP's state of mind once its agents and counsel unambiguously knew that Mr. Morel would vigorously pursue his rights in his own works.[6]

---

licensing fee when and if they are caught red-handed.  Fortunately, the law does not countenance such arrogance.

[6]   Mr. Morel does not object to being called "Plaintiff" – or to Getty and AFP being called "Defendants" – in the presence of the jury.

-11-

In determining statutory damages under § 504(c), the jury is entitled to receive and evaluate evidence that reflects on a defendant's state of mind and reveals the "conduct and attitude of the parties" toward each other during the relevant period. *See Bryant*, 603 F.3d at 144. Particularly relevant is a defendant's conduct after it is put on notice that it is infringing another's copyright. *Marshall*, 2012 WL 1079550, at *25 (finding defendant's infringement willful where "he continued to promote the videos on the internet after plaintiff sent him multiple take-down notices, as well as after plaintiff filed this lawsuit"); *accord Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (defendant "concede[d] that it knew of the copyrights, and continued publication after receiving a specific warning"); *Impulsive Music, Inc. v. Bryclear Enterprises, LLC*, 483 F. Supp. 2d 188, 191 (D. Conn. 2007) (same); *Cass Cnty. Music Co. v. Khalifa*, 914 F. Supp. 30, 35 (N.D.N.Y. 1996) ("*Khalifa*"), *aff'd*, 112 F.3d 503 (2d Cir. 1996) (finding the defendant's infringement was willful because plaintiff "warn[ed]" defendant of his infringing conduct and defendant "turned a blind eye towards" the infringement); *Unicity Music, Inc. v. Omni Commc'ns, Inc.*, 844 F. Supp. 504, 508-09 (E.D. Ark. 1994); *Rare Blue Music, Inc. v. Guttadauro*, 616 F. Supp. 1528, 1531 (D. Mass. 1985) (plaintiff's representatives sent at least 18 letters and other correspondence to defendant).

In addition, courts have found that litigious, oppressive, and unreasonable behavior can be considered by the finder of fact and can affect the statutory damages awarded. *See Warner Bros., Inc. v. Dae Rom Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) (affirming a lower court's statutory damage award due in part to the "vexatious, oppressive, and unreasonable manner" in which the plaintiff conducted the litigation); *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 58-59 (1st Cir. 2011) (affirming an award of maximum statutory damages for copyright

infringement because, among other things, the infringers "did not cooperate" with litigation and court deadlines).[7]

In this case, AFP's conduct and attitude toward Mr. Morel, and its reaction to Mr. Morel's notices of infringement, are as unambiguous as they are vicious. AFP concedes that it sued Mr. Morel *specifically because* he and his counsel maintained "that AFP has infringed upon his copyrights in the photographs he posted on Twitter." *See* Exhibit 1 to the Declaration of Joseph T. Baio in Opposition to the Motions In Limine, dated August 27, 2013 ("Baio Decl."), Complaint at ¶ 19. AFP also sued Mr. Morel for defamation, demanding "nominal, special, general compensatory and punitive damages" and its attorneys' fees *specifically because* he asserted – accurately – that AFP did not have a license to distribute Mr. Morel's photographs:

> 27.      Specifically, Defendant has made the statement to numerous third parties, including AFP's subscribers, that AFP is infringing upon Mr. Morel's photographs and that AFP did not have a license to distribute Mr. Morel's photographs.

> 28.      The statement that AFP acted without a license and infringed Mr. Morel's copyrights is false because, as explained above, Mr. Morel did provide a non-exclusive license, through Twitter, to third parties, including AFP and its subscribers.

> 29.      Defendant, through his attorney, has made these statements to numerous third parties with knowledge that they were false or with reckless disregard of whether they were false.

---

[7]     AFP has failed to identify a single case that supports its contention that the jury should remain ignorant of AFP's retaliatory lawsuit, and the cases that AFP does cite are not applicable here. *See W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306 (3d Cir. 2003) (allowing plaintiff to read to the jury excerpts from a prior decision sanctioning the defendant was reversible error because plaintiff sought to use evidence to "establish a pattern of bad faith culminating in the 'action' in this case" in contravention of Fed. R. Evid. 404(b)); *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997) (allowing defendant to read over 50 pages of oral argument transcript into the record was reversible error as court had already determined that subject of oral argument was moot); *Gilliland v. Hergert*, No. 2:05-cv-01059, 2008 WL 2682587 (W.D. Pa. July 1, 2008) (excluding evidence of procedural history from liability phase of the case only); *U.S. v. Richardson*, No. CRIM.A.01-235, 2002 WL 461662 (E.D. La. Mar. 21, 2002) (excluding evidence of defendant's prior criminal conduct, over defendant's objection); *Campmor, Inc. v. Brulant LLC*, No. 09-5465-WHW, Dkt. 114 (D. N.J. April 30, 2013) (excluding testimony that plaintiff complied with state procedural rules for service of process because irrelevant to claim of unjust enrichment).

-13-

*Id.* at ¶¶ 18, 27-29.

Unlike the defendant in the Second Circuit *Khalifa* case, *supra*, AFP did not merely "turn a blind eye towards" the infringement after being put on notice by the plaintiff; instead, AFP launched a full-scale assault against Mr. Morel after it learned that he intended to pursue his rights. Moreover, the entire premise of AFP's argument and the basis for its defamation action against Mr. Morel have been judicially discredited, first by Judge Pauley when he held that AFP "fail[ed] to establish a right to use the photos" in his decision on Defendants' motion to dismiss (*see* Baio Decl., Ex. 2 at 9), and then by this Court in its Opinion on the motions for summary judgment. *Id.* at Ex. 3 at 25. Plaintiff respectfully submits that the jury is entitled to know about AFP's retaliatory actions, specifically because they reveal AFP's true state of mind immediately after "AFP got caught with a hand in the cookie jar," as one of its senior employees testified. *See* Transcript of Deposition of E. Hambach, Baio Decl., Ex. 4 at 246:14-247:15.

## IV. RELEVANT TESTIMONY FROM MR. MOREL'S PRIOR COUNSEL ABOUT NOTICES SENT TO THE DEFENDANTS AS TO THEIR CONTINUING INFRINGEMENTS SHOULD NOT BE PRECLUDED.

As part of their relentless war of attrition against Mr. Morel, Defendants have made clear that they will not enter into any meaningful stipulations to streamline this case, even as to indisputable facts. In connection with this opposition, Mr. Morel has submitted a document showing Mr. Morel's proposed stipulations that Defendants have stricken and to which they remain unwilling to agree. *See* Baio Decl., Ex. 5. The result is a virtual sea of red. Among other things, Defendants will not stipulate to the relevant contractual and business relationships between them or the different captions that they actually employed when they distributed Mr. Morel's photographs both before and after the Caption Change and Kill Notices. *See id.* at 11-12, 22. Defendants

likewise will not stipulate to their ethical policies and procedures in effect during the relevant

period, including, but not limited to, specific admonitions and warnings against using content from

online networks, the requirement that they secure the original images with metadata from the

purported maker before using them and obtain "important corroborative information" about the

source of the pictures, and the need for employees to search for "the same or similar images online"

in order to "gain important evidence as to the authenticity of a photo."[8] *See id.* at 3-7, 8-10.

 With this same scorched-earth mindset, Defendants have not agreed to stipulate to the

repeated notices they received on behalf of Mr. Morel as to their continuing infringing behavior and

the repeated demands that were sent to them to cease and desist their unauthorized use of Mr.

Morel's photographs.  Accordingly, Mr. Morel has identified Ms. Barbara Hoffman as a potential

witness who "will be questioned about her communications with the Defendants and their agents

and other copyright infringers."  *See* Dkt. No. 241, Ex. I at 7.

 As this Court and others have held, the finder of fact can consider "whether the infringer

was on notice that the copyrighted work was protected [and] whether the infringer had received

warnings of the infringements" in evaluating the infringer's state of mind.  *See* Opinion, dated

January 14, 2013 ("Jan. 14, 2013 Opinion"), Baio Decl., Ex. 3 at 35; *see also Marshall*, 2012 WL

1079550, at *25; *Twin Peaks*, 996 F.2d at 1382.  Testimony from Ms. Hoffman on these important

subjects is therefore highly relevant and probative as to Defendants' state of mind.  AFP and Getty

nevertheless contend that Mr. Morel should be precluded from calling Ms. Hoffman as a witness at

---

[8] For example, Defendants will not stipulate to the fact that AFP's Stylebook advised, "Content sharing and social networking sites such as Twitter, Facebook and YouTube are important tools . . . . The use of this material carries significant risks to the agency's reputation for reliability and accuracy, however, not withstanding any legal or ethical issues.  For whatever reasons, people may post content that is invented or distorted. They may reproduce someone else's images . . . ." *Id.* at 4.  Some of the "precautions" mandated by the Stylebook include  obtaining "the original images . . . [with] metadata"; "verify[ing] the image, ownership and rights with the person concerned or with someone who knows them such as their employer," and; using a "similar images tool . . . [to] search for images as similar as possible to the picture you have received." *Id.* at 5.

trial because she was not listed in early Rule 26 disclosures as an "individual likely to have discoverable information." Dkt. No. 245 at 1-2. This argument is without merit.

The purpose of Rule 26 disclosures "is to avoid surprise or trial by ambush." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002); *Loral Fairchild Corp. v. Victor Co. of Japan,* 911 F. Supp. 76, 79-80 (E.D.N.Y. 1996) (Rule 26(e)(2) is designed to facilitate the objective of the Federal Rules of Civil Procedure by "eliminat[ing] surprise"). Rule 26(e) itself provides that the need to supplement prior disclosures arises only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. Rule 26(e). Defendants, as the recipients of Ms. Hoffman's notices directly or from their subscribers, cannot seriously contend that they are surprised to learn that Ms. Hoffman has relevant information about the subject matter of this suit. As such, the failure to identify Ms. Hoffman in Plaintiff's Rule 26 disclosures was harmless. *See Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115, 2001 WL 1035139, at *3 (S.D.N.Y. Sept. 7, 2001) (defendant's failure to name certain witness in his initial disclosures was harmless where "the identities of the [undisclosed] witnesses were otherwise made known to plaintiff"); *Been v. New Mexico Dept. of Info. Tech.*, 815 F. Supp. 2d 1222, 1244 (D.N.M. 2011) (failure to disclose was harmless where it did not result in any "appreciable surprise or prejudice").

No unfair prejudice will result from Ms. Hoffman's fact testimony. The Second Circuit has held that former counsel may testify as a fact witness at trial where – as here – she is not serving as trial counsel in the same proceeding. *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004) (affirming lower court decision admitting the testimony of plaintiff's former counsel at jury trial); *see also Solis v. SCA Restaurant Corp.*, No. 09-CV-2212, 2013 WL 1401396, at *3 (E.D.N.Y. Apr. 5, 2013) (testimony of defendant's former attorney

admitted at bench trial regarding the hours employees worked at defendant's restaurant).  The "advocate-witness rule" cited by AFP is simply inapplicable as Ms. Hoffman will not be serving as both advocate and witness at trial in this action.  *See* N.Y. Rules of Professional Conduct Rule 3.7(a) (restricting a lawyer from "act[ing] as advocate before a tribunal" if the lawyer "is likely to be a witness" in the same matter) (made enforceable by S.D.N.Y. Local Civil Rule 1.5(b)(5)); *see also Culebras Enter. Corp. v. Rivera-Rios*, 846 F.2d 94, 99 (1st Cir. 1988) (former counsel that provide services prior to trial are not "advocate[s] at a trial").  The motion to exclude Ms. Hoffman's limited testimony, therefore, should be denied.

## V.   EVIDENCE AND TESTIMONY CONCERNING DEFENDANTS' WORLDWIDE DISSEMINATION AND SALES OF MR. MOREL'S PHOTOGRAPHS ARE HIGHLY RELEVANT AND SHOULD NOT BE KEPT FROM THE JURY.

Defendants also ask the Court to keep from the jury the fact that they disseminated and sold Mr. Morel's photographs to hundreds of subscribers and "a la carte" customers around the world.  Dkt. No. 244.  This information is highly relevant to the issue of statutory damages to be awarded against the Defendants.  *Engel v. Wild Oats, Inc.*, 644 F. Supp. 1089, 1092 (S.D.N.Y. 1986); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862-63 (S.D.N.Y. 1984) ("[T]he large-scale and willful infringing activity of defendants . . . makes appropriate an award of maximum statutory damages").

While they do not contest that the jury is entitled to know about and consider the extent of an infringer's dissemination of misappropriated works, Defendants nevertheless assert that that Mr. Morel should not be able to present such evidence at trial because he "may have settled" with some or all of Defendants' down-stream users and acquirers.  The argument is baseless and the evidence of the extent of Defendants' distributions of Mr. Morel's works should be admitted.

AFP and Getty are fully aware that Mr. Morel has entered into settlement agreements with CNN, ABC, and CBS (collectively, the "Settling Defendants") for their separate infringements.[9] Mr. Morel entered into one other settlement for a nominal amount with Fox News Network, LLC. *See* Baio Decl. at ¶ 8. The fact of these settlements should have nothing to do with the admissibility of uncontested evidence that AFP and Getty disseminated Mr. Morel's photographs to countless people around the globe and licensed his images to over 430 entities for a fee. Defendants' speculation as to other imagined settlements cannot support their motion to exclude.

In addition, the issue of potential offset for prior settlements is not one for the jury to determine; it typically is addressed by the court *after* a verdict is rendered. *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972); *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008); *Close-Up Int'l, Inc. v. Berov*, No. 02-CV-2363, 2007 WL 4053682, at *13 (E.D.N.Y. Nov. 13, 2007) (denying defendant's motion to offset the jury verdict to account for $250,000 settlement between plaintiffs and the settling defendants). The same procedure should follow here.

Lastly, Defendants' proposed remedy – "judgment" on Mr. Morel's claims for contributory and vicarious infringement – is wholly inappropriate on a motion *in limine*. The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain evidence. *Media Alliance, Inc. v. Mirch*, No. 09-CV-0659, 2012 WL 162375, at *5 (N.D.N.Y. Jan. 19, 2012) (denying motions *in limine* where they contained "implied requests for dispositive relief"); *see also Blazina v. Port Auth. of N.Y. and N.J.*, No. 06 Civ. 481, 2008 WL

---

[9]   Defendants specifically reference these three entities as having settled. Dkt. No. 244 at 3 n.2 ("CNN, CBS and ABC were all previously counterclaim-defendants in this action and the action was dismissed in its entirety and with prejudice against each of them, after they entered [into] settlement agreements with Morel.").

4539484, at *1 (S.D.N.Y. Oct. 7, 2008) ("A motion *in limine* to preclude evidence asks the court to

make a preliminary determination on the admissibility of the evidence.") (internal citation omitted).

## VI.   MR. MOREL SHOULD BE PERMITTED TO TESTIFY ABOUT THE INJURIES HE SUFFERED AS A RESULT OF DEFENDANTS' WRONGFUL CONDUCT.

Defendants also argue that Mr. Morel should be prohibited from testifying about "the

injuries he suffered as a result of [Defendants'] unauthorized use and theft of his photographs."

Dkt. No. 243 at 2.  In their typically derisive way, Defendants berate Mr. Morel because "he never

furnished an expert report on damages," "he has no expert to testify on point, and he has not

conducted any survey evidence of the relevant consuming public to determine how [Defendants'

inaccurate] credit would be (or was) perceived." *Id.* at 7, 3.  According to the Defendants, Mr.

Morel "has nothing to establish or argue that [their improper crediting of his works] would be

perceived as a negative or caused him any injury at all." *Id.* at 3.  Because any evidence of injury

would be "speculative," Defendants argue, Mr. Morel should not be allowed to utter a word that

would suggest that Defendants' wrongful conduct injured him in any way.[10]

Mr. Morel is not required to retain experts, provide expert reports, and hire fancy consultants

to conduct expensive surveys in order to prove that he has suffered injuries as a result of

Defendants' wrongful conduct.  The testimony that Mr. Morel will offer at trial is not speculative at

all, and the real injuries he suffered have been specifically disclosed to the Defendants.  Under their

own ethical standards, Defendants should not have published Mr. Morel's pictures under the name

of Lisandro Suero in the first instance.  Their ham-handed, half-hearted, ineffectual and inaccurate

"correction" of the photograph captions thereafter fixed nothing and continued the charade that

---

[10]   Defendants acknowledge, as they must, that they received approximately $30,000 during their two weeks of unauthorized sales of Mr. Morel's photos. *See* Dkt. No. 243 at 7, 13.  This is evidence that Mr. Morel will offer in support of his claim for actual damages. *See Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11, 14-15 (2d Cir. 1981) (calculating plaintiff's actual damages resulting from defendant's infringement of his fabric using defendant's customer sales data).  Defendants have not moved to preclude that evidence.

Defendants were authorized to sell Mr. Morel's works.  Mr. Morel's photographs of the devastating

consequences of the earthquake that ravaged his homeland were the crowning achievement in his

career as a photojournalist.  By their wrongful conduct, Defendants stole that achievement, forever

tying his works to Lisandro Suero.  The jury should allowed to hear and evaluate this highly

probative and indisputable evidence in setting the statutory damages to be awarded in this case.  *See*

*Engel*, 644 F. Supp. at 1092; *Walt Disney Co. v. Best*, No. 88 Civ. 1595, 1990 WL 144209, at *2

(S.D.N.Y. Sept. 26, 1990).

Defendants concede that Mr. Morel could be entitled to damages for injury to his reputation

under the DMCA as a result of Defendants' conduct.  Dkt. No. 243 at 14.  Defendants recognize

that "one of the salutary purposes of copyright management is to provide attribution."  *Id.*

Defendants frustrated that purpose when they published Mr. Morel's pictures under Mr. Suero's

name, persisted in selling the photographs with their own captions after they learned unequivocally

that Mr. Suero was a fraud, and failed to pull the photographs from their own websites and from

their clients in a timely fashion.

Defendants nevertheless argue that Mr. Morel should not be allowed to offer evidence

concerning the devastating impact of their misattributions "because he offered no specifics [on the

subject] at his deposition."  *Id.*  That statement is false.  At his deposition, Mr. Morel advised the

Defendants in his own words of just what it was that they took from him when they published and

sold his misidentified pictures:

> Q.   What harm or damage did you suffer as a result of the removal
>      of your name?
>
> A.   It's heavy damage, a deep damage, because I work in the press
>      for thirty years.  That event, that's a major event of earthquake
>      in Haiti belongs to me, and I did my best for the world and for

> the future and for – I made my best.  I did my best for the
> second generation.
>
> And that moment was stolen from me, and that moment
> represents the first seconds of that earthquake, the first
> minutes of that earthquake, and the first hours of that
> earthquake, major event.
>
> Those were given to a hooligan of Santo Domingo, whose
> name is Lisandro Suero.  And who did that?  It's AFP and
> Getty.  That damage is permanent, because if you go on the
> internet and add Lisandro Suero's name, and you see that he
> has more pictures than me.
>
> In twenty or thirty years, if somebody will Google Lisandro
> Suero or Daniel Morel, then they will doubt my credibility.
> They would doubt my credibility and they would wonder who
> are – who belongs to those pictures, Daniel Morel or Lisandro
> Suero?

*See* Transcript of the Deposition of D. Morel, dated April 25, 2011, Baio Decl., Ex. 6 at 179:18-

180:19.

Plaintiff submits that the jury is entitled to hear this testimony and consider it in determining

the damages to be awarded against AFP and Getty.

## VII.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO PRECLUDE EVIDENCE AS TO THEIR DMCA VIOLATIONS AND TO CAP OR ELIMINATE THE NUMBER OF POTENTIAL AWARDS.

The DMCA provides for statutory damages against defendants in an amount "not less than

$2,500 or more than $25,000" for "each violation of section 1202."  17 U.S.C. § 1203(c)(3)(B).  In

its summary judgment decision, the Court held that the damages potentially available to Mr. Morel

under the DMCA "should be assessed per violation – *i.e.*, based on AFP and Getty's actions in

uploading or distributing the Photos-at-Issues, regardless of the number of recipients of these

images."  Jan. 14, 2013 Opinion, Baio Decl., Ex. 3 at 57.  In light of this decision, naturally,

Plaintiff will not argue to the jury that Mr. Morel is entitled to DMCA awards based on the number

of recipients of his misappropriated images.  But, consistent with the Court's ruling, Plaintiff ***should***

-21-

be able to proffer evidence to the jury concerning Defendants' actions "in uploading and distributing the Photos-at-Issue," and should be allowed to seek and argue for a statutory award on a "per violation" basis.

Alleging surprise and unfair prejudice, Defendants ask that the Court preclude or limit such evidence because Mr. Morel did not update his Rule 26 disclosures where he referenced sixteen DMCA violations. Dkt. No. 242 at 2-11. But there is no surprise or unfair prejudice to the Defendants that could justify the suppression of evidence of Defendants' own conduct or provide the basis for a cap of the number of DMCA awards to be considered by the jury. While the parties agree that the law is somewhat uncertain as to what actions constitute a DMCA "violation," there is no uncertainty about Defendants' "actions in uploading or distributing the Photos-at-Issue." The evidence of such actions is and has been well know to Defendants since the inception of this case. Indeed, Defendants themselves are the source of all such evidence.

Defendants' claim of unfair prejudice, therefore, is meritless, because there is no information Defendants would have obtained or discovery that Defendants would have conducted *about their own conduct* had the Rule 26 disclosures been updated. Defendants have not even suggested any potential discovery they would have pursued in such case. This omission, without more, defeats their claim of unfair prejudice.[11]

Defendants separately argue that, as a matter of law, Mr. Morel is entitled to only one DMCA award (or maybe two or three awards) based on their conduct, or possibly no award at all. Defendants did not advance these conflicting legal theories on their motion for summary judgment,

---

[11] Defendants' claim that they never knew that Mr. Morel was seeking more than sixteen DMCA awards is itself bogus. Dkt. No. 242 at 8. Defendants' argument on their summary judgment motion – where they did not even refer to Mr. Morel's Rule 26 disclosures – was that Mr. Morel was improperly seeking almost 2,000 such violations. Defendants' assertions of surprise and unfair prejudice as to Mr. Morel's claims ring hollow at this point in the proceedings.

and they should not be considered as part of an *in limine* motion.  In any event, for the reasons
noted below, Defendants' arguments have no basis in law and ignore Congressional intent and the
goals served by the DMCA.  Mr. Morel respectfully submits that the number of appropriate DMCA
awards should be set by the jury after hearing the evidence and receiving the Court's instructions as
to how that evidence should be evaluated under the law.

### A.   *AFP And Getty Have Been Fully Apprised Of The Evidence Supporting Mr. Morel's Entitlement To Statutory Awards Under The DMCA.*

Defendants contend that they only recently learned of Mr. Morel's damages theory under the
DMCA and have received no documents or information that substantiate his entitlement to statutory
awards under the DMCA.  Dkt. No. 242 at 5-7.  Both contentions are inaccurate and neither justifies
the broad preclusion of evidence and capping of potential awards that Defendants seek.

The legal basis for Mr. Morel's entitlement to DMCA recoveries was established by this
Court earlier this year, when it rejected Mr. Morel's argument based on the number of recipients of
the tainted photographs and accepted Defendants argument that the number of awards should be
assessed "per violation – *i.e.*, based on AFP and Getty's actions in uploading or distributing the
Photos-at-Issue."  Jan. 14, 2013 Opinion, Baio Decl., Ex. 3 at 56-57 (noting that "the Court
concludes that Counterclaim Defendants have proposed the correct interpretation of this
provision").  Defendants cannot seriously contend that they were surprised or unfairly prejudiced
when their own theory of damages carried the day.  The Court's decision on summary judgment
was, of course, after the close of discovery.  Defendants did not move to reopen discovery after the
Court identified the legal standard to be applied to evaluate Plaintiff's DMCA claims.

Defendants also know exactly what evidence demonstrates "AFP and Getty's actions in
uploading or distributing the Photos-at-Issue" because all of that evidence is either uncontroverted

or based on a handful of documents that AFP and Getty themselves produced.  It is uncontested that

Mr. Amalvy of AFP downloaded eight of Mr. Morel's photographs from a social media site and

sent them to the AFP photo desk, where they were "loaded to the AFP system for validation and

captioning so that [they could] be distributed by AFP . . . through its international wire and a

databank called Image Forum."  Jan. 14, 2013 Opinion, Baio Decl., Ex. 3 at 4.  Those pictures were

credited to Lisandro Suero and then transmitted to Getty.  *Id.* at 4.  Getty then "publish[ed]" Mr.

Morel's photographs to its customer website.  *Id.* at 4-5.

Moreover, in their own statement of facts submitted in support of their motion for summary

judgment, Defendants admit that AFP transmitted Mr. Morel's photographs to Getty 44 times,

resulting in 44 assets in Getty's database.  *See* Defendants' Joint Statement Of Material Facts As To

Which There Is No Genuine Issue To Be Tried, dated April 27, 2012, Baio Decl., Ex. 7 at ¶ 153-

154, 162.  Getty then transmitted each of the 44 assets through its feed and posted them to its

customer website.  *Id.* at ¶ 155-156, 162.

In addition, Defendants compiled and produced during discovery three charts that show that

Defendants licensed one or more of the misidentified Photos-at-Issue a combined 439 times.  Getty

issued approximately 105 "a la carte" licenses for the photographs between January 12 and

February 2, 2010, each of which was for a specific fee and for use for a specific period.  Dkt. No.

247 at Ex. 3; *see also* "Purchases" chart, Baio Decl., Ex. 8 at G200000.  Separately, AFP issued 334

"a la carte" licenses for the photographs, each of which was for a specific fee and for use for a

specific period.  *See* Baio Decl. at ¶ 12; Transcript of the Deposition of G. Tarot, Ex. 9 at 21:10-

21:21, 45:9-45:15.  The total number of postings and licensing by the Defendants, therefore, is 527

(88 assets, plus 105 Getty licenses and 334 AFP licenses).  Accordingly, Mr. Morel advised

Defendants that there could be "***up to*** 527 DMCA violations."

While it is unclear under the law whether each and every unique sale constitutes a separate violation under § 1202 of the DMCA, Defendants' own documents produced during discovery show that they engaged in up to 527 separate acts.  Under Rule 26(e), a party must supplement or correct its disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*."  Fed. R. Civ. P. Rule 26(e)(1)(A) (emphasis added).  Here, the information about these discrete acts that Defendants hope to suppress was known to them both before and during discovery, precluding any need for Mr. Morel to amend or supplement his initial disclosures.

In any event, preclusion is inappropriate here because Defendants have suffered no unfair prejudice.  *See* Fed. R. Civ. P. 37(c)(1); *Am. Stock Exch.*, 215 F.R.D. at 93; *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 911 F. Supp. 76, 79-80 (E.D.N.Y. 1996).  Defendants have not identified – nor can they identify – any discovery that they would have engaged in or other actions they would have taken had Mr. Morel updated his initial disclosures.  *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103 (S.D.N.Y. 2012) (plaintiff-photographer's failure to name defendant photo agency's officer in disclosures in infringement action was harmless where defendant did not conduct any discovery of its own agency or employees); *Been*, 815 F. Supp. 2d at 1244 (no sanctions imposed where failure to disclose records did not result in any "appreciable surprise or prejudice").

**B.      *Defendants Are Liable For Each Violation Of DMCA § 1202.***

The plain language of the DMCA provides for damages on a *per violation* basis.  17 U.S.C. § 1203 (c)(3)(B) ("a complaining party may elect to recover an award of statutory damages *for each violation* of section 1202") (emphasis added).  As this Court held, a "violation" is defined as "each

violative act" committed by the defendant – or, "in other words, the number of times the [content at issue] was posted on the internet for distribution." Jan. 14, 2013 Opinion, Baio Decl., Ex. 3 at 57-58 (quoting *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 867-68 (W.D. Mich. 2008); *see also Stockart.com, LLC v. Engle*, No. 10-CV-00588, 2011 WL 10894610, at *14 (D. Colo. Feb. 18, 2011); *Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267 (S.D. Fla. 2008); *McClatchey v. Associated Press*, No. 3:05-CV-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007).

While the statute does not define what constitutes a "violative act" under § 1202, courts have held that each unlawful "posting" of a misidentified image constitutes a violation of the DMCA and the basis for a separate award. In *Propet USA*, the court held that the jury could have found more than 200 violations of § 1202 based on defendant's testimony that he falsified or removed the CMI of two hundred images. *Propet USA, Inc. v. Shugart*, No. C06-0186-MAT, 2007 WL 4376201, at *5 (W.D. Wash. Dec. 13, 2007); *accord* Jan. 14, 2013 Opinion, Baio Decl., Ex. 3 at 57-58. Similarly, in *Stockwire*, the court found three violations of § 1202 because defendants "posted the Unauthorized Product on to the internet on three separate occasions." 577 F. Supp. 2d at 1267. And, in *Stockart.com*, the court found that defendant committed thirty-four violations of § 1202 as a result of his unlawful "posting [of plaintiff's images] on websites for sale." 2011 WL 10894610, at *14.

At a minimum, therefore, Mr. Morel should be able to argue to the jury that he is entitled to a DMCA statutory damages award for each "posting" of his work on the Internet or through Defendants' feeds. The jury should also be able to determine whether Defendants' individual licenses constituted separate violations. *See Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp.

2d 853, 868 (W.D. Mich. 2008) ("[W]hether any particular update constitutes a distribution of an infringed copyright is a factual question that should be resolved by a jury.").[12]

Defendants argue that because "any inaccuracies associated with Mr. Morel's copyright management information sprang from a single action . . . not even initiated by either AFP or Getty" but rather initiated when "Lisandro Suero downloaded the photos from Mr. Morel's TwitPic page," the Court should find only *one* DMCA violation against the Defendants or, at most, three. Dkt. No. 242 at 14, 19. Defendants' argument is specious and ignores the very authority they cited as well as a host of facts, including that Mr. Morel's eight photographs were misappropriated by AFP, were distributed some 88 times by AFP and Getty with falsified CMI, and were separately licensed by AFP and Getty – again with falsified CMI – over 439 times in distinct transactions for payment.

Finally, AFP and Getty assert that all of this should be considered one DMCA violation because it purportedly came about through "8 mouse clicks" or "an automatic computer function or simple ministerial act." Dkt. No. 242 at 8, 15. This contention is flippant and offensive. At every stage, AFP and Getty – through their agents, employees and officers – took knowing and deliberate steps to acquire, alter, distribute and sell Mr. Morel's photos. The Court should not permit AFP and Getty to brush off their deliberate acts as "automatic" by referring to their high-end computer systems or blaming their "ministerial" staff.

### C.    *Damages Awarded To Mr. Morel Under DMCA § 1203 Will Not Be Duplicative Of Damages He Is Entitled To For Copyright Infringement.*

For the first time in this case, Defendants assert that Mr. Morel should be precluded from seeking *any* damages under § 1202 of the DMCA because he is already entitled to statutory

---

[12]    Under the DMCA, multiple violations can occur in connection with multiple distributions of the same copyrighted work. *Goldman*, 559 F. Supp. 2d at 868 ("The computer program in the case at bar might be the same, but the conduct of distributing the software is variable."); *Stockwire*, 577 F. Supp. 2d at 1267 ("Defendants posted the Unauthorized Product on to the internet on three separate occasions, and therefore committed three violative acts").

damages under the Copyright Act.  According to Defendants, if Mr. Morel pursued and vindicated

his rights under these distinct statutes he would recover twice for the same injury.  Dkt. No. 242 at

16-17.  Defendants' argument should be rejected.

Defendants' new theory is undermined by the many cases in which courts have awarded

plaintiffs statutory damages under ***both*** the Copyright Act and § 1203(c)(3)(B) of the DMCA.  *See,*

*e.g.*, *Propet USA*, 2007 WL 4376201, at *2-5 (upholding separate awards of statutory damages for

DMCA violation and copyright infringement); *John Perez Graphics & Design, LLC v. Green Tree*

*Inv. Group, Inc.*, No. 12-cv-4194, 2013 WL 1828671, at *5 (N.D. Tex. May 1, 2013) (granting

separate statutory damages awards for DMCA violations and copyright infringement); *Pacific*

*Stock, Inc. v. MacArthur & Co., Inc.*, No. 11-00720, 2012 WL 3985719, at *6, 8 (D. Hawaii Sept.

10, 2012) (same); *Granger v. One Call Lender Servs., LLC*, No. 10-3442, 2012 WL 3065271, at *7

(E.D. Pa. July 26, 2012) (same); *Stockart.com*, 2011 WL 10894610, at *14 (same); *MJD Marketing,*

*Inc. v. McGrail*, No. 11-cv-02842, 2012 WL 261199, at *2 (D. Md. Jan. 26, 2012) (same).[13]

Defendants' argument also flies in the face of the different language in each statute and

ignores the legislative history and policy underpinnings of the two statutes, which are designed to

address different wrongs.  The Copyright Act provides for recovery where the copyright owner's

"exclusive rights" to "reproduce" his work, "prepare derivative works," or "distribute copies" of his

work was violated.  17 U.S.C. §§ 106, 501, and 504.  When the Copyright Act was passed in 1976,

---

[13]  In the event that the Court determines that the two injuries are duplicative, Mr. Morel should be entitled to
elect the greater recovery.  *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 450 (S.D.N.Y. 2010) (where plaintiff's
two claims stemmed from one harm, plaintiff was awarded the "greater measure of damages between these
theories"); *see also Magee v. U.S. Lines, Inc.*, 976 F.2d 821, 822 (2d Cir. 1992) (plaintiff entitled to the "most
complete recovery" from all theories asserted); *Dorn v. Berson*, No. 09-CV-2717, 2012 WL 1004907, at *6
(E.D.N.Y. Mar. 1, 2012) ("[W]here a Plaintiff is seeking compensation for the same injury under multiple
theories, the proper measure of damages is the one that represents the greater recovery.").  Thus, this issue is
not appropriate for decision on a motion *in limine*.

Congress made clear that it was intended to protect the copyright owner's "exclusive rights of reproduction, adaptation, publication, performance, and display." H. Rep. 94-1476 at 61-63 (1976).

By contrast, Congress passed the DMCA in 1998 – twenty-two years later – in order to address a different set of wrongs that have arisen in our digital age and were not addressed by the Copyright Act. The language of § 1202 itself prohibits the "distribution [of] copyright management information that is false," and "intentionally remov[ing] or alter[ing] any copyright management information." § 1202(a)-(b). When Congress passed the DMCA, it noted that the statute was intended to "provide legal protections against circumvention of technological measures used by copyright owners … and against violations of the integrity of copyright management information." S. Rep. 105-190 at 66 (1998). Congress also found that the DMCA will "operate to protect consumers from misinformation as well as authors and copyright owners from interference with the private licensing process." H.R. Rep. 105-551 [I] at 10-11 (1998). Defendants themselves concede that the DMCA is directed towards remedying harm from the improper "attribution" of CMI (see Dkt. No. 243 at 14) – not copyright infringement. Their claim that the relief under both statutes is for one wrong, therefore, should be rejected.[14]

In addition, Plaintiff submits that Defendants' position essentially renders the DMCA superfluous. As the Second Circuit has held, "Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results plainly at variance with the policy of the legislation as a whole, that interpretation should be rejected." *SEC v. DiBella*, 587 F.3d 553, 572 (2d Cir. 2009); *see also Hizam v. Clinton*, No. 11 CIV. 7693, 2012 WL 3116026, at *8 (S.D.N.Y. July 27, 2012) ("There is a presumption against construing a statute as containing

---

[14] To the extent Defendants rely on *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822, 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009), we respectfully submit that this Court should not adopt the reasoning applied by that court for the reasons noted herein.

superfluous or meaningless words or giving it a construction that would render it ineffective."). This Court should not construe the DMCA in a way that renders it meaningless.

Here, Mr. Morel has suffered two wrongs as a result of Defendants' conduct. *First,* Mr. Morel was injured when Defendants infringed upon his copyright by distributing, licensing, and selling his photographs for profit without his permission. For these injuries, Mr. Morel seeks to recover under the Copyright Act. *Second*, Mr. Morel was injured when Defendants intentionally altered the copyright management information associated with Mr. Morel's photographs. Defendants' insertion of the words "Lisandro Suero" as the creator of Mr. Morel's photographs separately injured him because, as a result of Defendants' actions, the world was misinformed as to who captured the iconic images of one of this century's most devastating natural disasters. Defendants compounded their misattributions when their added their names to Mr. Morel's photographs without his permission, improperly linking him with two companies that he wanted nothing to do with, including one that went on to sue him. For these injuries, Mr. Morel is entitled to recover under the DMCA. *C.f. Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (two damages awards appropriate because "[Defendant's] selling the [plaintiff's] cartridges may have been one act, but it was two wrongs.").

Accordingly, Defendants' motion to preclude the jury from awarding Mr. Morel damages under the DMCA should be denied.

## CONCLUSION

For the foregoing reasons, Counterclaim Plaintiff Daniel Morel respectfully requests

that Plaintiff's and Counterclaim Defendants' Motions *in Limine* be denied in their entirety.


Dated: New York, New York
      August 27, 2013

                                Respectfully submitted,

By: _____
            Joseph T. Baio
            jbaio@willkie.com

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

*Counsel for Counterclaim Plaintiff*
*Daniel Morel*