UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AGENCE FRANCE PRESSE,

                Plaintiff,

-v-

DANIEL MOREL,

                Defendant,

-v-

GETTY IMAGES, INC., et al.,

                Counterclaim
                Defendants.
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 2 4 2013

10 Civ. 2730 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    This matter is scheduled to go to trial before a jury on November 12, 2013. Before the Court are a series of motions *in limine* filed on behalf of Agence France Presse ("AFP") and Getty Images (US), Inc. ("Getty") (collectively, "Defendants"). This Order addresses one of those motions, Docket Nos. 240, 242.[1] In that motion, Defendants jointly seek to preclude Daniel Morel ("Plaintiff") from arguing that he is entitled to a statutory damages award for each of 527 purported "violations" of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, and from introducing evidence at trial in support of such an argument.[2] Defendants

---

[1] The remaining *in limine* motions will be addressed either by subsequent written order or orally at the final pretrial conference scheduled to take place on November 1, 2013.

[2] Because this case was initially brought by AFP as a declaratory judgment action, AFP and Getty technically are counterclaim defendants, and Plaintiff is a counterclaim plaintiff, insofar as this motion is concerned. The Court uses the terms "Plaintiff" and "Defendants" for simplicity's sake. In a separate motion *in limine*, Docket No. 238,

make two broad arguments in support of their motion. First, they contend that Plaintiff should, at the least, be held to a damages theory involving only 16 purported DMCA violations, consistent with the damages computation provided in his Rule 26 disclosures. Second, they argue that, in any event, the Court should interpret the DMCA as limiting Plaintiff to seeking at most a single statutory damages award.

For the reasons that follow, the Court agrees that Plaintiff must be held to arguing the theory of damages that he disclosed to Defendants prior to the close of fact discovery. In light of this resolution, the Court reserves decision on the parties' arguments regarding the interpretation of the DMCA's statutory damages provision.

## I. Plaintiff Failed to Meet His Disclosure Obligation[3]

The disclosure obligations imposed by Federal Rule of Civil Procedure 26 are designed to prevent parties from "sandbagging" their adversaries. *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Among other things, the Rule requires each party to disclose, as part of its initial disclosures during discovery, a "computation of each category of damages" claimed. Fed. R. Civ. P. 26(a)(1)(A)(iii). It also requires each party to update its initial disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties." Fed. R. Civ. P. 26(e)(1)(A).

---

AFP affirmatively requests that it be referred to at trial as defendant, and Morel as plaintiff; Morel indicates in his omnibus opposition brief that he has no objection to that request. Pl. Opp. at 11 n.6.

[3] This opinion assumes familiarity with the facts of this case as stated in Judge Pauley's opinion at the motion to dismiss stage and the undersigned's opinions on summary judgment. *See Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011); *Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y.), *superseded in part on reconsideration*, 934 F. Supp. 2d 584 (S.D.N.Y. 2013).

In his Rule 26 disclosure, with respect to the DMCA, Plaintiff identified two types of claimed violations: one for false copyright management information, and one for removal or alteration of copyright management information. Kaufman Decl. Ex. A; *see* 17 U.S.C. §§ 1202(a), (b). Plaintiff indicated that he was seeking the maximum statutory award, or $25,000, for each type of violation. Kaufman Decl. Ex. A; *see* 17 U.S.C. § 1203(c)(3)(B). He further disclosed that he would seek this maximum award, per type of violation, for each of the photographs at issue, which at the time—according to Defendants—was thought to be 13, although all now agree that it is actually 8.[4] Thus, Plaintiff disclosed a damages theory calculation that consisted of: the statutory maximum amount (*i.e.*, $25,000) multiplied by the types of identified violations (*i.e.*, 2) multiplied by the number of photographs at issue (then 13). Using the currently agreed upon number of photographs at issue, this damage theory put Defendants on notice that Plaintiff was seeking up to $400,000 in statutory damages pursuant to the DMCA for 16 violations thereof.

Plaintiff never updated or supplemented this initially disclosed damage calculation during the course of fact discovery. To the contrary, when Defendants sought further elaboration on his damage calculation, Plaintiff confirmed that the calculation provided in his initial disclosure was the one that he would continue to pursue. Specifically, in December 2010, in response to Defendants' interrogatories asking him to state "in detail how [he] [had been] damaged by any alleged miscredit of the Morel Haiti Earthquake Images," Plaintiff simply referred back to the answer provided in his Rule 26 disclosures. Kaufman Decl. Ex. C at 6. When asked to

---

[4] Defendants point to Exhibit A of the Declaration of Joshua J. Kaufman in support of Defendant's motion *in limine*, which exhibit contains certain of Plaintiff's initial disclosures. Dkt No. 241 Ex. A; *see* Def. Br. at 2–3. Yet that document appears to state that there were only 12 photographs at issue, and the source of Defendants' 13 figure is unclear. However, this discrepancy is not relevant to the instant motion: the parties agree that Plaintiff was initially claiming two violations per photograph at issue, and that there are now 8 such photographs.

3

"[i]temize and state with specificity the nature and amount of any damages that you are claiming and show how such damages are calculated," Plaintiff indicated that he had already provided such information with respect to statutory damages. *Id.* Similarly, in two amended discovery responses provided in November 2010, he stated that "[t]o the extent [Plaintiff] will rely on statutory damages, the response has already been provided." Kaufman Decl. Ex. D at 6; Kaufman Decl. Ex. E at 7.

Despite the failure to update or supplement the damage theory calculation disclosed during the course of fact discovery, on July 2, 2013, as part of a pretrial exchange of information for the preparation of the parties' joint pretrial order, Plaintiff indicated for the first time that he was seeking damages for "up to 527 violations (up to $13,175,000 in total)." Kaufman Decl. Ex. F. In other words, Plaintiff is attempting to change his damage theory for the number of DMCA violations from 16 violations to 527. The basis for that figure is offered for the first time in his opposition brief to Defendants' motion *in limine*. Dkt. No. 250. There, Plaintiff explains that at trial he intends to establish DMCA damages based on "[t]he total number of postings and licensing by the defendants" of the photographs at issue, which number comprises "88 assets, plus 105 Getty licenses and 334 AFP licenses." Pl. Opp. at 24.

Plaintiff does not contest the assertion that he never updated his Rule 26 disclosure to reflect this new theory of damages, nor does he contest that he failed to update specific interrogatories and document requests seeking additional details on his damage theory. *See* Pl. Opp. at 22. Instead, citing Rule 26(e)(1)(A), he argues that he had no obligation to supplement or amend his disclosure because "any possible additional or corrective information was made known to Defendants either through the discovery process or in writing." Pl. Opp. at 7; *see also id.* at 22–24. In essence, Plaintiff argues that because the *information* that underlies his newly

4

disclosed theory of damages came from materials produced by the Defendants, he had no obligation to amend or update his damages disclosure.

Plaintiff's argument is wrongheaded because he improperly conflates the *information* that was provided to him in discovery—for example, the fact that Getty licensed the images at issue 105 times—with his own *damage theory and calculation* claiming that each of those licenses constitutes a distinct and remediable violation under the DMCA. As other courts have reasoned, even a party's own production of documents supporting its theory of damages cannot excuse that party from its separate obligation to disclose a damages computation, *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (Chin, J.)—an obligation that extends to supplementing and amending that computation if it changes materially, *see* Fed. R. Civ. P. 26(e)(1)(A); *Design Strategy*, 469 F.2d at 297 n.4. Put simply, damages computations and the documents supporting those computations are two different things, and Rule 26 obliges parties to disclose and update the former as well as the latter. In this light, it is clear why one party's damage theory and calculation cannot be disclosed by the *other* party during the course of discovery, as Plaintiff would have it. Indeed, the fact that Plaintiff did not amend or supplement his damages disclosure upon receiving the relevant information from Defendants might well have suggested to Defendants that he did not intend to assert a damage theory predicated upon the number of licensees who received the photographs. And Defendants may therefore have chosen not to engage in fact discovery with respect to how those licensees received and used the photographs. *See* Def. Br. at 8.

Accordingly, the Court has no hesitation in concluding that Plaintiff violated his Rule 26 obligations. His failure to disclose his new damages theory until soon before trial is particularly

troubling in light of Defendants' repeated requests for more information. *Cf. Design Strategy*, 469 F.3d at 295 ("Rule 26(a) requires a party to provide a computation of any category of damages voluntarily . . . ; [plaintiff's] failure to comply with this requirement was especially troubling because . . . [defendants] specifically *requested* a calculation of damages."). The question then is what sanction is appropriate.

## II. Preclusion of Plaintiff's New Damages Theory Is the Proper Sanction

Where a party does not meet its discovery obligations, "[a] district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy*, 469 F.3d at 294. Pursuant to Rule 37(c)(1), if a party fails to provide Rule 26(a) or (e) information, the party generally is not permitted to use that information at trial "unless the failure was substantially justified or is harmless." *See Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 348 (S.D.N.Y. 2010); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 Civ. 3698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010). In considering whether to exclude evidence under this standard, courts refer to a nonexclusive list of four factors: (1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance.[5] *See Design Strategy*, 469 F.3d at 294 (citing *Patterson v.*

---

[5] Defendants' brief suggests that the "substantially justified or . . . harmless" test stated in Rule 37(c)(1) governs the question of whether *any* sanction is appropriate for a Rule 26 violation, while the four factors outlined in *Design Strategy* and *Patterson* guide only a subsequent determination of whether exclusion is the *correct* sanction. *See* Def. Br. at 7–10. In the Court's view, the four factors are relevant to both inquiries. Rule 37(c)(1) states that a party's failure to provide information pursuant to Rule 26 means that the party "*is not allowed* to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless" (emphasis added), but it also provides that a Court may order an alternative sanction "on motion and after giving an opportunity to be heard." Thus, preclusion is the default sanction once a court determines that the party's failure was neither substantially justified nor harmless. In *Design Strategy*, the Second Circuit applied the four-factor test when considering an argument that the district court had improperly excluded certain evidence, and affirmed the district court's conclusion "that sanctions, including severe sanctions, were warranted." 469 F.3d at 296–97. In

*Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *Underpinning*, 726 F. Supp. 2d at 348; *Spotnana*, 2010 WL 3341837, at *2. The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless. *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012).

Plaintiff never argues that his failure to meet his disclosure obligations was substantially justified, and his theory of why that failure was harmless rests on two arguments explaining why Defendants are not prejudiced. Neither is persuasive.

First, as with his contention that he was not obligated to make the amendments or supplements, Plaintiff argues that Defendants are not prejudiced by his failure because the information undergirding his new damages theory was provided by Defendants themselves. For the reasons already articulated, this argument is unpersuasive. Unaware of the damage theory Plaintiff is newly asserting now, Defendants would have had no reason to conduct discovery sufficient to defend against that theory. For example, Defendants advance a legal argument—which the Court does not address at this juncture—that Plaintiff has standing to bring a DMCA claim, even for statutory damages, only if he has suffered an actual injury as a result of Defendants' conduct. Def. Reply at 4, 9–10. Based on Plaintiff's initial computation, which alleged only two violations per photograph at issue, Defendants' strategy in contesting Plaintiff's standing likely would involve an argument that their entire course of conduct with respect to each photograph did not injure Plaintiff. *See id.* at 10–11. By contrast, if Plaintiff were allowed to argue at trial that each license constituted a separate DMCA violation, Defendants' theory

---

other words, the Circuit referred to the four *Patterson* factors to assess the correctness of the district court's "substantially justified or . . . harmless" inquiry; it reviewed the district court's decision to preclude not as such, but because under Rule 37(c)(1) that decision was, in the district court's view, the logical consequence of its finding that the disclosure violation was neither substantially justified nor harmless.

would require them to focus on whether each of those licenses involved a distinct injury. Likewise, Defendants would be entitled to argue that each of 88 file transfers by Defendants—which Plaintiff now claims were 88 separate DMCA violations—did not create a distinct injury. Never having been put on notice of these possibilities until now, Defendants had no reason to conduct discovery related to them.

Indeed, other courts have readily imposed sanctions where a party's failure to disclose its damages theory in a timely manner prevented its adversary from pursuing discovery targeted at that theory. *See Spotnana*, 2010 WL 3341837, at *2 ("prejudice . . . is particularly great because discovery, which closed over four months ago, would have to be reopened for [plaintiff] appropriately to respond to [counterclaiming defendant's] damages calculations"); *Ritchie*, 280 F.R.D. at 147 ("Defendants undoubtedly would have pressed for additional documents and asked additional deposition questions of fact witnesses, had [Plaintiffs'] disclosure been made prior to" the close of fact discovery); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (excluding reliance on damages theory asserted after discovery because defendants were "depriv[ed] . . . of a meaningful opportunity to conduct discovery as to this damages theory"). The resulting prejudice depends not at all on whether Defendants knew that they licensed the photographs at issue, which, as Plaintiff correctly but irrelevantly points out, they surely did.

Plaintiff's second argument that Defendants were not prejudiced by his failure to supplement or amend his damages computation is that it was clear to all on summary judgment that he would seek more than 16 damage awards. Plaintiff initially suggests that Defendants themselves argued that DMCA statutory damage awards are available only on a per-violation basis, an argument that the Court endorsed. Def. Opp. at 23; *see Agence France Presse v. Morel*,

934 F. Supp. 2d 547, slip op. at 56–58 (S.D.N.Y. Jan. 14, 2013). On Plaintiff's view, Defendants therefore cannot be prejudiced by his new argument because, like Defendants' argument that carried the day on summary judgment, it also seeks only one damage award per violation—it simply alleges that there were 527 separate violations. This argument is meritless. It is obvious that the definition of "violation" that Defendants had in mind differs substantially from the one that Plaintiff favors now, and nothing in Defendants' summary judgment briefing suggests that their per-violation argument contemplated more than 16 damage awards. To the contrary, their argument was intended to prevent Plaintiff from receiving the kind of "windfall" that a large number of statutory damage awards would necessarily involve. *See* Def. SJ Opp. at 44; Def. SJ Reply at 25. And while Plaintiff also claims that Defendants knew about his intent to pursue more than 16 damage awards because they characterized his theory as "seeking almost 2,000 . . . violations," Pl. Opp. at 22 n.11,[6] Plaintiff's theory of what constitutes a DMCA violation on summary judgment (1) differed from his theory now—then, Plaintiff sought a separate award for each entity who viewed the photographs, whereas now his theory is based on Defendants' own transferring and licensing those photographs, *see* Pl. Opp. at 21–22 (acknowledging this difference)—and (2) was *rejected* by the Court.[7] *See Agence France Presse*, 934 F. Supp. 2d 547, slip op. at 56–58. Surely then, Defendants could not have foreseen that Plaintiff, on the cusp of trial, would offer yet another theory.

---

[6] The basis for this number is unclear, although Defendants' reply brief does identify part of Plaintiff's 56.1 statement evidencing his intention to seek "12,347 damage awards." Pl. SJ Reply at 25 (emphasis omitted).

[7] The Court recognizes that Defendants also contend that Plaintiff's violation-per-license argument is essentially a new version of the same argument that the Court rejected on summary judgment. Def. Reply at 13–14. The Court does not now decide this issue one way or the other.

9

Moreover, the fact that Defendants knew about Plaintiff's shifting damages theory on summary judgment cannot diminish the prejudice suffered by Defendants for the simple reason that summary judgment came after the close of fact discovery. Thus, all of the arguments made by Defendants regarding prejudice would have been equally true then as they are now. Although Plaintiff suggests that Defendants could have moved to reopen fact discovery, there would have been no reason for them to do so following summary judgment because the Court rejected Plaintiff's theory. For all these reasons, Plaintiff's failure to meet his Rule 26 obligations prejudiced Defendants and was therefore not harmless.[8]

Finally, although Plaintiff does not dispute the three other relevant factors, the Court agrees with Defendants that they weigh strongly in favor of sanctions, regardless of how important Plaintiff's new damages computation is. *Cf. Spotnana*, 2010 WL 3341837, at *2 ("ATA has offered no explanation for its failure to disclose a computation of its damages. The prejudice to Spotnana is particularly great because discovery, which closed over four months ago, would have to be reopened for Spotnana appropriately to respond to ATA's damages calculations. And the closure of discovery four months ago also weighs strongly against the possibility of a continuance. These three factors outweigh the importance of ATA's damages evidence, even though ATA may be denied any recovery as a result, because ATA has disregarded its discovery obligations without any explanation at all."). To permit entirely unexplained Rule 26 violations to go unsanctioned whenever the evidence at issue is sufficiently

---

[8] The cases Plaintiff cites, Pl. Opp. at 25, are readily distinguishable from this one and thus do not alter the Court's analysis. *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 115 (S.D.N.Y. 2012) (Oetken, J.) (holding that plaintiffs' failure to mention vice president of third-party company in initial disclosures was harmless because plaintiffs mentioned president of company and defendants conducted no discovery of company); *Been v. N.M. Dep't of Info. Tech.*, 815 F. Supp. 2d 1222, 1244 (D.N.M. 2011) (holding that plaintiff was not prejudiced by defendant's failure to disclose documents before her deposition because she "had a unique familiarity with" documents at issue).

important would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial—an extreme version of the "sandbagging" that Rule 26 attempts to avoid. Plaintiff has therefore failed to meet his burden of showing that his Rule 26 violation was either justified or harmless, and sanctions are appropriate.

Arguably, that conclusion means that the preclusion of Plaintiff's updated damages theory should be automatic. However, even assuming that the Court may, in its discretion, impose a lesser sanction, *compare, e.g.*, *Design Strategy*, 469 F.3d at 298 ("the plain text of the rule provides that *if an appropriate motion is made* and a hearing has been held, the court does have discretion to impose other, less drastic, sanctions" (emphasis added)), *with Ritchie*, 280 F.R.D. at 156 (focusing on courts' broad discretion to impose lesser sanctions), the Court concludes that preclusion is appropriate here, for two reasons already mentioned. The first is Plaintiff's complete failure to explain or justify the untimeliness of his new damages computation. That failure at least suggests a deliberate attempt on Plaintiff's part to engage in the "sandbagging" that Rule 26 forbids and, in any event, severe sanctions are appropriate in order to deter what is at best a significant and unexplained mistake or an eleventh-hour change of course in light of the Court's summary judgment ruling. Second, Plaintiff's failure to disclose his new theory until soon before trial is particularly problematic in light of Defendants' repeated discovery requests for information regarding his computation. *See Design Strategy*, 469 F.3d at 295. Rule 26 calls for voluntary disclosure, and while a party's failure to disclose information of its own accord might be excused as a mere oversight, Plaintiff's failure to do so in response to Defendant's specific requests suggests both greater prejudice to Defendants and greater culpability on Plaintiff's part.

### III.     Conclusion

For the foregoing reasons, the Court will exercise its discretion to preclude Plaintiff from arguing at trial that he is entitled to statutory damages awards for any more than 16 alleged violations of the DMCA—*i.e.*, two violations per photograph.  To be clear, this ruling does not preclude Plaintiff from introducing evidence of Defendants' conduct, such as evidence of their transmission and licensing of the photographs at issue, for other permissible purposes.  However, Plaintiff may not introduce evidence of such conduct for the purpose of establishing more than 16 DMCA violations.

In light of this conclusion, the Court will not now address the second argument raised in Defendant's motion, *i.e.*, that Plaintiff should be limited, as a matter of law, to arguing for at most one damages award.  *See* Def. Br. at 11–19.  Because the DMCA authorizes one statutory damage award for "each violation" of 17 U.S.C. § 1202, *see* 17 U.S.C. § 1203(c)(3)(B), whether Defendants' argument is correct turns on the interpretation of the DMCA's definition of "each violation."  Although the Court addressed this issue in a limited fashion in the course of summary judgment, *see Agence France Presse*, 934 F. Supp. 2d 547, slip op. at 56–58, Plaintiff's new argument raises difficult legal questions—including whether his new argument is essentially an impermissible end run around the Court's prior holding.  In any event, the Court's disposition of Defendants' Rule 26 and Rule 37 argument means that it need not address these questions at this point.  Accordingly, it is also unnecessary to consider Plaintiff's claim that Defendants' statutory interpretation arguments are inappropriate for resolution on a motion *in limine*.  Def. Opp. at 22–23.

Defendants' motion is therefore GRANTED in part. The final pretrial conference in this matter is set for November 1, 2013, at 2:00 PM. As noted above, the Court will address the parties' other motions *in limine* either at that conference or by separate order.

SO ORDERED.

Dated: October 24, 2013
       New York, New York

_____
ALISON J. NATHAN
United States District Judge