COURT EXHIBIT # ___1___

DATE: ___11/20/13___
TIME: _____
CASE: ___10-cv-02730 (AJN)___

1   UNITED STATES DISTRICT COURT
2   SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
DANIEL MOREL,                                    :
                                                 :
                        Plaintiff,               :
            -v-                                  :
                                                 :          10 Civ. 2730 (AJN)
AGENGE FRANCE PRESSE and                         :
GETTY IMAGES, INC.,                              :
                                                 :
                        Defendants.              :
-------------------------------------------------------------------X

3

4

5                           **JURY INSTRUCTIONS**

6                        **Draft Sent to Attorneys**

7

1

1                                   **TABLE OF CONTENTS**

2      1.    Role of the Court and the Jury ............................................................................. 4

3      2.    Official Translation ............................................................................................... 5

4      3.    Preponderance of the Evidence ............................................................................ 6

5      4.    Conduct of Counsel .............................................................................................. 7

6      5.    Direct and Circumstantial Evidence ..................................................................... 8

7      6.    Drawing Inferences from the Evidence ................................................................ 9

8      7.    Charts and Summaries ........................................................................................ 10

9      8.    Credibility of Witnesses ..................................................................................... 11

10     9.    Failure to Testify ................................................................................................ 13

11     10.   Certain Matters Already Decided ....................................................................... 14

12     11.   Direct Copyright Infringement ........................................................................... 15

13     12.   Joint and Several Liability for Copyright Infringement ..................................... 16

14     13.   Copyright Infringement Damages........................................................................ 17

15     14.   Actual Damages and Profits for Copyright Infringement.................................... 18

16     15.   Statutory Damages—Generally .......................................................................... 19

17     16.   Statutory Damages—Innocent and Willful Infringement................................... 20

18     17.   Statutory Damages—Award Ranges and Factors................................................ 21

19     18.   Evidence of Getty Images' Size, Wealth, and Ownership................................... 22

20     19.   Digital Millennium Copyright Act ("DMCA")—Generally................................ 23

21     20.   Definition of Copyright Management Information.............................................. 24

22     21.   Joint and Several Liability for DMCA Violations.............................................. 25

23     22.   Providing or Distributing False Copyright Management Information ................ 26

24     23.   Removing or Altering Copyright Management Information .............................. 27

1  24.  Damages under the DMCA ................................................................................ 28

2  25.  Multiple Recoveries for the Same Injury ......................................................... 29

3  26.  Actual Damages and Profits under the DMCA ................................................ 30

4  27.  Statutory Damages under the DMCA ............................................................... 32

5  28.  Effect of Instructions as to Measure of Damages ........................................... 33

6  29.  Deliberation and Verdict .................................................................................. 34

7  30.  Closing Comment .............................................................................................. 35

8

9

1              **1. Role of the Court and the Jury**

2              Members of the jury, we have now reached that point in the trial where you are about to
3      enter your final function as jurors which, as you all appreciate, is one of the most important
4      duties of citizenship in this country.  You have all given very careful attention to the evidence,
5      and I am confident you will act together with fairness and impartiality and reach a just verdict in
6      the case.

7              I will now instruct you as to the law.  It is your duty to accept these instructions of law
8      and apply them to the facts as you determine them.  If an attorney has stated a legal principle
9      different from any that I state to you in my instructions, it is my instructions that you must
10     follow.  You should not single out any instruction as alone stating the law; you should consider
11     my instructions as a whole when you retire to deliberate.

12             You, the members of the jury, are the sole and exclusive judges of the facts.  You pass
13     upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as
14     there may be in the testimony. You draw whatever reasonable inferences you decide to draw
15     from the facts as you have determined them, and you determine the weight of the evidence.  You
16     must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or
17     against any party.

18             What has been said by the lawyers in the opening statements, closing arguments,
19     objections, or questions is not evidence.  The evidence before you consists of the answers given
20     by witnesses, the exhibits that were received in evidence, and all facts which may have been
21     admitted or to which all the lawyers have stipulated.  A fact is stipulated when the attorneys for
22     all parties agree to the existence of that fact, and you must accept such stipulated facts as proved.
23     You may not consider any testimony that I have told you to disregard or that was stricken from
24     the record.

25             Nor is what I say evidence.  The rulings I have made during the trial are not any
26     indication of my views of what your decision should be.  Since you are the sole and exclusive
27     judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict
28     should be.  I have no such opinion.

29

1

### 2.  Official Translation

2          The French and Haitian Creole languages have been used during this trial.  You must
3    consider only that evidence provided through the official court interpreter or translator.
4    Although some of you may know French or Haitian Creole, it is important that all jurors consider
5    the same evidence.  Therefore, you must base your decision on the evidence presented in the
6    English interpretation or translation.  You must ignore any different meaning of the non-English
7    words.

8

1           **3. Preponderance of the Evidence**

2           The standard under which you will decide whether a party in this case has met its burden
3    of proof on a particular issue is the preponderance of the evidence.  Later in these instructions, I
4    will instruct you further on which party bears the burden of proof with respect to each issue that
5    you must decide.

6           To establish something by a preponderance of the evidence means that the evidence of
7    the party having the burden of proof must be more convincing and persuasive to you than the
8    evidence opposed to it.  The difference in persuasiveness need not be great: it requires only that
9    you find that the scales tip, however slightly, in favor of the party with the burden of proof—that
10   what that party claims is more likely than not true.

11          What is important is the quality of the evidence and not the number of witnesses, or the
12   number or variety of the exhibits, or the length of time spent on a subject.  In determining
13   whether any fact has been proved by a preponderance of the evidence, you may consider the
14   testimony of all of the witnesses and all of the exhibits.

15          Simply because I have permitted certain evidence to be introduced does not mean that I
16   have decided on its importance or significance.  That is for you to decide.

17          Some of you may have heard of proof beyond a reasonable doubt, which is the proper
18   standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this
19   and you should put it out of your mind.

20

1
#### 4. Conduct of Counsel

2      It is the duty of the attorney for each side of a case to object when the other side offers
3 testimony or other evidence that the attorney believes is not properly admissible.  Counsel also
4 has the right and duty to ask the Court to make rulings of law or hold conferences out of the
5 hearing of the jury.  All those questions of law must be decided by me.

6      You should not show any prejudice against any attorney or his client because the attorney
7 objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or
8 asked the Court for a ruling on the law.

9

1      **5.   Direct and Circumstantial Evidence**

2          There are two types of evidence that you may properly use in reaching your verdict.  One
3      type of evidence is "direct evidence."  One kind of direct evidence is a witness's testimony about
4      something the witness knows by virtue of her or his own senses—something the witness has
5      seen, felt, touched or heard.  Direct evidence may also be in the form of an exhibit.  The other
6      type of evidence is "circumstantial evidence."

7          Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.
8      There is a simple example of circumstantial evidence that is often used in this courthouse.

9          Assume that when you came into the courthouse this morning the sun was shining and it
10     was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As
11     you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else
12     then walks in with a raincoat that is also dripping wet.

13         Now, you cannot look outside the courtroom and you cannot see whether or not it is
14     raining.  So you have no direct evidence of that fact.  But on the combination of the facts that I
15     have asked you to assume, it would be reasonable and logical for you to conclude that between
16     the time you arrived at the courthouse and the time these people walked in, it had started to rain.

17         That is all there is to circumstantial evidence.  You infer on the basis of reason and
18     experience and common sense from an established fact the existence or the nonexistence of some
19     other fact.  Many facts, such as a person's state of mind, can only rarely be proved by direct
20     evidence.  Circumstantial evidence is of no less value than direct evidence; the law makes no
21     distinction between direct and circumstantial evidence, but simply requires that you, the jury,
22     decide the facts in accordance with the preponderance of all the evidence, both direct and
23     circumstantial.

24

8

1      **6. Drawing Inferences from the Evidence**

2          At points in this trial, the attorneys have asked you to infer, on the basis of your reason,
3      experience, and common sense, from one or more established facts, the existence of some other
4      fact.

5          An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a
6      disputed fact exists on the basis of another fact which has been shown to exist.

7          There are times when different inferences may be drawn from facts, whether proved by
8      direct or circumstantial evidence.  The Plaintiff asks you to draw one set of inferences, while the
9      Defendants ask you to draw another.  It is for you, and you alone, to decide what inferences you
10     will draw.

11         The process of drawing inferences from facts in evidence is not a matter of guesswork or
12     speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to
13     draw—but not required to draw—from the facts which have been established by either direct or
14     circumstantial evidence.  In drawing inferences, you should exercise your common sense.

15         So, while you are considering the evidence presented to you, you are permitted to draw,
16     from the facts which you find to be proven, such reasonable inferences as would be justified in
17     light of your experience.

18

9

1               **7.  Charts and Summaries**

2          Various charts and summaries have been shown to you throughout the course of the trial.
3    Certain charts and summaries have been shown to you simply to help explain facts disclosed by
4    documents and records in evidence in the case.  These charts and summaries are not themselves
5    evidence or proof of any facts, but rather were used only as a matter of convenience.  If these
6    charts and summaries do not correctly reflect facts or figures shown by the evidence in the case,
7    you should disregard them.

8          Certain charts and summaries, however, constitute evidence that you should consider
9    when finding facts in accordance with the weight of all the evidence in the case.  These charts
10   and summaries have been marked as exhibits and entered into evidence.

11

### 8.  Credibility of Witnesses

Now for the important subject of evaluating testimony.  How do you evaluate the credibility or believability of the witnesses?  The answer is that you use your plain common sense.  Common sense is your greatest asset as a juror.  You should ask yourselves, did the witness impress you as honest, open, and candid?  Or did the witness appear evasive or as though the witness were trying to hide something?  How responsive was the witness to the questions asked on direct examination and on cross-examination?

If you find that a witness is intentionally telling a falsehood, such a finding is always a matter of importance that you should weigh carefully.  If you find that any witness has lied under oath at this trial, you should view the testimony of such a witness cautiously and weigh it with great care.  It is, however, for you to decide how much of the witness's testimony, if any, you wish to believe.  Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of the testimony of any witness.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.  You may consider evidence of a prior inconsistent statement by a witness who is not a party only insofar as it relates to that witness's credibility, and may not consider it as evidence of a Defendant's liability, except for statements that have been received in evidence.  You may consider evidence of a party's prior inconsistent statement for whatever light you find it sheds on the issues in this case.

You are not required to accept testimony even though the testimony is uncontradicted and the witness's testimony is not challenged.  You may decide because of the witness's bearing or demeanor, or because of the inherent improbability of the testimony, or for other reasons sufficient to yourselves that the testimony is not worthy of belief.  On the other hand, you may find, because of a witness's bearing and demeanor and based upon your consideration of all the other evidence in the case, that the witness is truthful.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit or suffer in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you

1    are considering may have an interest in the outcome of this trial, then you should bear that factor

2    in mind when evaluating the credibility of his testimony, and accept it with great care.

3          Keep in mind, though, that it does not automatically follow that testimony given by an

4    interested witness is to be disbelieved.  There are many people who, no matter what their interest

5    in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on

6    your own perceptions and common sense, to what extent, if at all, the witness' interest has

7    affected her or his testimony.

8          Thus, there is no magic formula by which you can evaluate testimony.  You bring to this

9    courtroom all your experience.  You determine for yourselves in many circumstances the

10    reliability of statements that are made by others to you and upon which you are asked to rely and

11    act.  You may use the same tests here that you use in your everyday lives.  Among the factors

12    you may consider are the witness's intelligence; the ability and opportunity the witness had to

13    see, hear, or know about the things that the witness testified about; the witness's memory; any

14    interest, bias, or prejudice the witness may have; the manner of the witness while testifying; and

15    the reasonableness of the witness's testimony in light of all the evidence in the case.

16

1                                   **9.  Failure to Testify**

2            If you find that a witness had knowledge of important facts which he failed to provide in
3    response to questions asked during his testimony, you may infer that the withheld information is
4    unfavorable to the party who called the witness who could have testified to it and did not.

5            You are reminded that any inferences you may draw should be based on all of the facts
6    and circumstances in this case.

7

13

1                              **10. Certain Matters Already Decided**

2          The Court already has decided certain matters in the case.  In some cases, I will tell you

3   what the Court has decided; in other cases, I simply will not discuss a matter that otherwise has

4   already been resolved.  You are not to speculate on why the Court decided some matters and not

5   others.  Instead, you are to decide the issues presented to you in these instructions and in the

6   verdict form that you will be given, based on the evidence that you have heard and the

7   instructions you have received.

8

## 11. Direct Copyright Infringement

1

2       Daniel Morel owns the copyright in the eight photographs he took in the aftermath of the
3 2010 Haiti Earthquake.  A copyright grants the owner exclusive rights to do any of the
4 following: reproduce, distribute, perform, or display the copyrighted work.  Because these rights
5 are exclusive to the owner, if someone else takes one of these actions without consent, they are
6 said to have "infringed" the copyright.

7       I have already decided that AFP and Getty Images have each infringed Mr. Morel's
8 copyright in eight photographs.  These are the eight photographs that are reproduced in Exhibits
9 11 through 18.  You must determine the amount of damages that is just for the Defendants to pay
10 for copyright infringement, as I will explain in later instructions.

11

15

1    **12. Joint and Several Liability for Copyright Infringement**

2    If two or more persons or entities unite in an intentional act that violates another person's
3    rights, then all of those persons and entities are liable for the acts of each of them.  This is called
4    "joint and several" liability.  The law does not require the injured person to prove how much of
5    the injury was done by each particular person or entity found liable.

6    I have already decided that AFP and Getty Images are jointly and severally liable to Mr.
7    Morel for their infringement of his photographs.  Thus, you will make a single award of damages
8    to Mr. Morel per photograph for copyright infringement that will apply to AFP and Getty
9    Images, together.

10    My instruction that AFP and Getty Images are liable to Mr. Morel pertains only to
11    copyright infringement.  Liability as to Mr. Morel's Digital Millennium Copyright Act
12    ("DMCA") claims is for you to decide.  Therefore, my instruction regarding AFP and Getty
13    Images' liability for copyright infringement should have no effect on your assessment of Mr.
14    Morel's claims related to the DMCA, which I will explain further in separate instructions.

15

1          **13. Copyright Infringement Damages**

2          For copyright infringement, Mr. Morel is entitled to recover either:

3          1.  Actual damages, plus any of the Defendants' profits attributable to the infringement;
4               or

5          2.  Statutory damages.

6          Mr. Morel himself is entitled to choose between these two categories of damages at any
7    time, including after you render your verdict.  Therefore, you must decide on a damages amount
8    for both categories.

9          I will now describe to you both categories of damages.

10

17

### 14. Actual Damages and Profits for Copyright Infringement

As I just mentioned, the first category of damages that you must decide upon is Mr. Morel's actual damages, plus any of the Defendants' profits attributable to the infringement.

"Actual damages" means the amount of money adequate to compensate Mr. Morel for his losses due to the Defendants' infringement, such as lost sales or royalties, or other profits that Mr. Morel would have earned if the infringement had not occurred. This includes, but is not limited to, money that Mr. Morel would have earned from sales of his photographs, as well as a "reasonable licensing fee," that is, the amount that the Defendants and third parties would have paid for their use of Mr. Morel's photographs but did not pay him because of the infringement.

The amount of a "reasonable licensing fee" may not be based on mere speculation, but it also does not need to be established with absolute certainty. Rather, it is based on the evidence indicating the amount that a willing buyer and a willing seller would have agreed upon for the use in question. In determining what a reasonable licensing fee would be, you can consider testimony from the parties, past licensing fees for similar uses, other licensing fees for Mr. Morel's photographs, and other contracts identifying how much a license would cost.

In addition to actual damages, Mr. Morel is also entitled to recover profits earned by the Defendants that are attributable to their infringement. However, you may not include in an award of profits any amount that you already included in calculating actual damages.

The Defendants are not jointly and severally liable for their infringing profits, unlike actual or statutory damages. Instead, each Defendant is individually liable for its own profits. Therefore, you must perform a separate calculation of profits for each Defendant.

To calculate the Defendants' profits, you must first determine the Defendants' gross revenue. Gross revenue is all of the money received by the Defendants that is reasonably related to the infringement. I instruct you not to consider Defendants' subscription fees or revenues in any calculation of Defendants' gross revenue.

Next, you must deduct expenses. Expenses are all operating, overhead, and production costs incurred by the Defendants in obtaining the gross revenue. Additionally, Mr. Morel is entitled only to the portion of Defendants' profits that is attributable to their infringement. Therefore, you must finally deduct any elements of the Defendants' profits that are not attributable to their use of Mr. Morel's eight copyrighted photographs.

Mr. Morel has the burden of proving gross revenue by a preponderance of the evidence. The Defendants have the burden of proving expenses and the portion of their profits attributable to factors other than the copyrighted work by a preponderance of the evidence.

18

1          **15. Statutory Damages—Generally**

2          The second category of damages that you must decide upon is statutory damages.

3          Because copyright owners often face great difficulties in ascertaining and proving what
4      the law calls "actual damages," the law provides that a copyright owner is entitled in certain
5      circumstances to recover a monetary award from an infringer even if the owner cannot prove
6      actual damages.  Within certain broad ranges, which I will describe in a moment, the statute
7      gives you discretion to determine the amount of statutory damages that you find to be just in
8      light of the evidence presented.

9          You must make one award of statutory damages per "work" infringed.  This is true no
10     matter how many copies were made or how widely they were distributed, or how many
11     Defendants jointly participated in infringing the work.  In this case, you should consider each of
12     Mr. Morel's photographs as a separate "work" for the purpose of awarding statutory damages.  I
13     have already decided that eight of Mr. Morel's photographs were infringed, and that AFP and
14     Getty Images are jointly and severally liable for those infringements.  Thus, you must make a
15     total of eight statutory damages awards in this case.

16         For each of Mr. Morel's eight photographs, you must award statutory damages within a
17     certain range.  The applicable range differs depending on whether you find that the Defendants'
18     infringements were "willful," "innocent," or neither willful nor innocent.  I will refer to
19     infringement that is neither willful nor innocent as "regular."  In a moment, I will tell you what
20     those three ranges are.  I will now describe what willful and innocent mean.

21

1                 **16. Statutory Damages—Innocent and Willful Infringement**

2         Infringement is "innocent" if the infringer was not aware, and had no reason to believe,
3 that its actions were infringing.

4         The level of sophistication of each Defendant's business is a factor you should consider
5 in determining whether each Defendant's infringement was innocent.  Other factors to consider
6 are the customs in the Defendants' industry and the overall circumstances at the time the
7 photographs were disseminated.

8         It is each Defendant's burden to prove, by a preponderance of the evidence, that its
9 infringements were innocent.

10        Infringement is "willful" if the infringer either knew that its conduct was infringing or
11 acted with reckless disregard or willful blindness to the prospect that its conduct was infringing,
12 that is, that it harbored actual doubts about its right to distribute Mr. Morel's photographs and yet
13 willfully proceeded to do so without investigating further.  You may infer a Defendant's state of
14 mind, including reckless disregard or willful blindness, from its conduct.

15        Factors you should consider in determining willfulness include: whether the Defendant
16 knew or should have known that Mr. Morel's photographs were protected by copyright; whether
17 the Defendant received warnings about its infringements; whether the Defendant had experience
18 with previous copyright ownership or prior lawsuits regarding similar practices; and whether the
19 Defendant was in an industry where knowledge of copyright is prevalent.

20        Mr. Morel has the burden of proving, by a preponderance of the evidence, that each
21 Defendant's infringement was willful.

22        Although AFP and Getty Images are jointly and severally liable, you should evaluate
23 each Defendant separately when assessing innocence and willfulness.

24

1        **17. Statutory Damages—Award Ranges and Factors**

2        If you find that both Defendants' infringements were innocent, Mr. Morel is entitled to an
3        award of not less than $200 and not more than $30,000 for each of the eight works infringed
4        (that is, at least $1,600 and at most $240,000 in total).

5        If you find that either or both Defendants' infringements were willful, Mr. Morel is
6        entitled to an award of not less than $750 and not more than $150,000 for each of the eight works
7        infringed (that is, at least $6,000 and at most $1,200,000 in total).

8        If you find that both Defendants' infringements were regular, or that one Defendant's
9        infringement was regular and the other's was innocent, Mr. Morel is entitled to an award of not
10       less than $750 and not more than $30,000 for each of the eight works infringed (that is, at least
11       $6,000 and at most $240,000 in total).

12       As I have already mentioned, in deciding on an award within these ranges, you have
13       discretion to choose an amount that you believe is just in light of the evidence presented.  The
14       following are some of the factors that may help guide your assessment of an appropriate award,
15       and you may consider any or all of them:

16           1.  The Defendants' states of mind, including innocence or willfulness;

17           2.  The expenses saved, and profits earned, by the Defendants;

18           3.  The revenue lost, if any, by Mr. Morel as a result of the infringement;

19           4.  The deterrent effect, if any, on the Defendants and third parties;

20           5.  The Defendants' cooperation in providing evidence concerning the value of the
21               infringing material; and

22           6.  The conduct and attitude of the parties.

23

21

1        **18. Evidence of Getty Images' Size, Wealth, and Ownership**

2        Some evidence was admitted at trial regarding Getty's size, wealth and ownership.  I
3    instruct you that that evidence is to be considered only for purposes of evaluating the deterrent
4    effect of a statutory damages award on Getty Images.  You must consider this evidence only for
5    that limited purpose.  You should not punish Getty Images solely because of its profitability,
6    wealth, or size.  Nor should you infer from this evidence that Getty Images acted willfully or
7    engaged in wrongdoing.

8

22

1                   **19. Digital Millennium Copyright Act ("DMCA")—Generally**

2        Mr. Morel has asserted that the Defendants violated the Digital Millennium Copyright

3 Act, which I will refer to as the "DMCA," in two ways.  First, he asserts that the Defendants

4 provided or distributed false "copyright management information," or "CMI."  Second, he

5 asserts that the Defendants altered or removed CMI from his photographs.

6        I will describe the elements that Mr. Morel must prove in order for you to find the

7 Defendants liable for those two violations in a moment.  First, I will tell you what "CMI" means.

8

1 **20. Definition of Copyright Management Information**

2      Copyright management information, or "CMI," means any of the following conveyed in

3 connection with Mr. Morel's photographs:

4      1.  The title and other information identifying the photographs, including the information

5           set forth on a notice of copyright;

6      2.  The name of, and other identifying information about, the author of the photographs;

7      3.  The name of, and other identifying information about, the copyright owner of the

8           photographs, including the information set forth in a notice of copyright;

9      4.  Terms and conditions for use of the photographs; and

10     5.  Identifying numbers or symbols referring to such information or links to such

11          information.

12      CMI does not, however, include any personally identifying information about a user of a

13 work, in this case, the photographs.

14

1        **21. Joint and Several Liability for DMCA Violations**

2        As I have already mentioned, liability may be "joint and several." That is, if two or more
3    persons unite in an intentional act that violates another person's rights, then all of those persons
4    are jointly liable for the acts of each of them; the law does not require the injured party to
5    establish how much of the injury was done by each particular Defendant that you find liable.

6        Now, although I have found that both Defendants jointly infringed Mr. Morel's copyright
7    in his eight photographs, I have made no findings with respect to the DMCA. Therefore, you
8    yourselves must decide whether either or both of the Defendants violated the DMCA, according
9    to the instructions that I shall give you in a moment.

10        In making that decision, you must also decide whether the Defendants are jointly and
11   severally liable for any DMCA violations that you find. Each Defendant is entitled to a fair,
12   separate, and individual consideration of the evidence in connection with Mr. Morel's DMCA
13   claims. If you find that only one Defendant is responsible for a DMCA violation, then only that
14   Defendant is liable for that violation. However, if you find that the Defendants acted jointly in
15   committing a DMCA violation, then the Defendants are jointly and severally liable for that
16   violation.

17

18

25

1        **22. Providing or Distributing False Copyright Management Information**

2        The first way in which Mr. Morel alleges that AFP and Getty Images violated the DMCA
3    is by providing or distributing false CMI.  In order to prevail on this claim, Mr. Morel must
4    prove all three of the following elements by a preponderance of the evidence:

5        1.  The Defendants provided or distributed CMI that was false;

6        2.  The Defendants knew that the CMI was false at the time they provided or distributed
7            the CMI; and

8        3.  The Defendants provided or distributed the false CMI with the intent to induce,
9            enable, facilitate or conceal copyright infringement.

10        You should determine whether each element is met for each of Mr. Morel's eight
11    photographs separately.  In other words, the number of DMCA violations that you find depends
12    on the number of Mr. Morel's photographs for which the Defendants provided or distributed
13    false CMI.

14        As I mentioned earlier, you must also decide whether the Defendants are jointly and
15    severally liable for any violations that you find.  Therefore, you must decide whether any
16    violations that you find were committed by:

17        1.  AFP only;

18        2.  Getty Images only; or

19        3.  AFP and Getty Images acting jointly.

20

26

1      **23. Removing or Altering Copyright Management Information**

2          Mr. Morel has alleged that AFP and Getty Images also violated the DMCA by removing
3   or altering the CMI associated with Mr. Morel's photographs.  Under the DMCA, this is a
4   distinct violation from providing or distributing false CMI.  In order to prevail on a claim for
5   removing or altering CMI, Mr. Morel must prove by a preponderance of the evidence that the
6   Defendants did one or more of the following three things:

7          1.  Intentionally removed or altered CMI without Mr. Morel's permission;

8          2.  Distributed or imported for distribution CMI, knowing at the time of distribution or
9              importation that the CMI had been removed or altered without Mr. Morel's
10             permission; or

11         3.  Distributed or imported for distribution Mr. Morel's photographs, knowing at the
12             time of distribution or importation that the CMI had been removed or altered without
13             Mr. Morel's permission.

14         Mr. Morel must also prove that at the time AFP and Getty Images took any such actions,
15  they knew or had reasonable grounds to know that doing so would induce, enable, facilitate or
16  conceal copyright infringement.

17         You should determine whether each element is met for each of Mr. Morel's eight
18  photographs separately.  In other words, the number of DMCA violations that you find depends
19  on the number of Mr. Morel's photographs whose CMI the Defendants removed or altered.

20         As I mentioned earlier, you must also decide whether the Defendants are jointly and
21  severally liable for any violations that you find.  Therefore, you must decide whether any
22  violations that you find were committed by:

23         1.  AFP only;

24         2.  Getty Images only; or

25         3.  AFP and Getty Images acting jointly.

26

27

1                                **24. Damages under the DMCA**

2              If you find that Mr. Morel has proved that either or both of the Defendants violated the
3    DMCA, then you must determine the amount of damages that Mr. Morel is entitled to recover.  If
4    you find that Mr. Morel has failed to prove that either Defendant violated the DMCA, then you
5    should not consider the question of damages.

6              For any DMCA violations that you find, Mr. Morel is entitled to recover either:

7              1.   Actual damages, plus any of the Defendants' profits attributable to the violation; or

8              2.   Statutory damages.

9              Mr. Morel himself is entitled to choose between these two categories of damages at any
10   time, including after you render your verdict.  Therefore, you must decide on a damages amount
11   for both categories.

12

1                           **25. Multiple Recoveries for the Same Injury**

2          Before I describe to you both categories of damages that Mr. Morel may be entitled to
3   under the DMCA, you should know that the law does not allow a plaintiff to recover twice for
4   the same injury.  Mr. Morel seeks to recover against the Defendants based on multiple legal
5   claims—under both the Copyright Act and the DMCA.  However, if you find that Mr. Morel is
6   entitled to a verdict on both his copyright infringement and his DMCA claims, you may not
7   compensate him twice for any harm he might have suffered.

8          This is not to say that Mr. Morel's copyright infringement and DMCA claims necessarily
9   involve the same injury.  But in order to award Mr. Morel damages for any DMCA violations
10  that you find, you must first conclude that those violations harmed Mr. Morel in a different way
11  than the Defendants' copyright infringements did.  In other words, you must find that the
12  Defendants' actions in falsifying, removing, and/or altering CMI caused Mr. Morel extra harm
13  that he would not have suffered if the Defendants had only copied and distributed his
14  photographs without his consent.  And in determining the amount of damages to award Mr.
15  Morel for any DMCA violations that you find, you should compensate him only for that extra
16  harm, and not for whatever harm you have already compensated him for through your award for
17  copyright infringement.

18

1          **26. Actual Damages and Profits under the DMCA**

2          If you find that Mr. Morel has proved that one or more of the Defendants violated the

3     DMCA, Mr. Morel may elect to recover the actual damages that he suffered as a result of the

4     violation, plus any of the Defendants' profits attributable to the violation.

5          "Actual damages" means the amount of money adequate to compensate Mr. Morel for his

6     losses due to a violation, such as lost sales or royalties, or other profits that Mr. Morel would

7     have earned if the violation had not occurred.  This includes, but is not limited to, a decrease in

8     the market value of Mr. Morel's photographs caused by the violation and revenue that Mr. Morel

9     would have made on sales without the violation.  Any amounts that you award to Mr. Morel in

10    actual damages must compensate him for injury sustained as a result of the DMCA violation

11    alone, not for harm suffered as a result of Defendants' infringement of Mr. Morel's copyright.

12         As I have mentioned, you must decide whether any DMCA violations that you find were

13    committed by one or both of the Defendants.  If you find that a given violation was committed

14    by just one of the Defendants, you should award actual damages for that violation against only

15    that Defendant.  But if you find that a given violation was committed jointly by both of the

16    Defendants, then those Defendants are jointly and severally liable, and you should award actual

17    damages for that violation against both Defendants.

18         In addition, if you find that Mr. Morel has proved that either or both of the Defendants

19    violated the DMCA, then Mr. Morel is also entitled to recover profits earned by the Defendants

20    that are attributable to any such violations.  However, you may not include in an award of profits

21    any amount that you already included in calculating actual damages.

22         The Defendants are not jointly and severally liable for their infringing profits, unlike

23    actual or statutory damages.  Instead, each Defendant is individually liable for its own profits.

24    Therefore, even if you find that the Defendants committed any DMCA violations jointly, you

25    must perform a separate calculation of profits for each Defendant.

26         To calculate the Defendants' profits, you must first determine the Defendants' gross

27    revenue.  Gross revenue is all of the money received by the Defendants that is reasonably related

28    to their DMCA violations.  I instruct you not to consider Defendants' subscription fees or

29    revenues in any calculation of Defendants' gross revenue.

30         Next, you must deduct expenses.  Expenses are all operating, overhead, and production

31    costs incurred by the Defendants in obtaining the gross revenue.  Additionally, Mr. Morel is

32    entitled only to the portion of Defendants' profits that is attributable to their DMCA violations.

33    Therefore, you must finally deduct any elements of the Defendants' profits that are not

34    attributable to the DMCA violation.  This includes amounts that are attributable to the

35    Defendants' infringement of Mr. Morel's copyright.

1       Mr. Morel has the burden of proving both his actual damages and the Defendants' profits

2   by a preponderance of the evidence.  This includes the burden of proving the portion of the

3   Defendants' profits that is attributable to the DMCA violation alone and not to the Defendants'

4   infringement of Mr. Morel's copyright or other factors unrelated to the Defendants' DMCA

5   violations.

6

1            **27. Statutory Damages under the DMCA**

2            If you find that Mr. Morel has proved that one or more Defendants violated the DMCA,

3    Mr. Morel may elect to recover statutory damages.  The amount of statutory damages that you

4    award must be between $2,500 and $25,000 for each violation of the DMCA.  Within that range,

5    you should award an amount that you believe is just in light of the evidence presented.  The

6    following are some of the factors that may help guide your assessment of an appropriate award,

7    and you may consider any or all of them:

8            1.  The expenses that the Defendants saved and the profits that they earned because of
9                the violation;

10           2.  The revenues that Plaintiff lost because of the violation;

11           3.  The difficulty of proving Plaintiff's actual damages;

12           4.  The circumstances of the violation;

13           5.  Whether Defendants violated the DMCA intentionally or innocently; and

14           6.  Deterrence of future violations.

15           If the Defendants prove that they innocently violated the DMCA, then you may, but are

16   not required to, reduce the statutory damage award below the $2,500 minimum per violation.  A

17   violation is considered "innocent" if the Defendants did not know, and had no reason to know,

18   that their acts constituted a violation.  It is each Defendant's burden to prove, by a preponderance

19   of the evidence, that its violations were innocent.

20           As I have mentioned, you must also decide whether any DMCA violations that you find

21   were committed by one or both of the Defendants.  If you find that a given violation was

22   committed by just one of the Defendants, you should award statutory damages for that violation

23   against only that Defendant.  But if you find that a given violation was committed jointly by both

24   of the Defendants, then those Defendants are jointly and severally liable, and you should award

25   statutory damages for that violation against both Defendants.

26

32

1        **28. Effect of Instructions as to Measure of Damages**

2               The fact that I have instructed you as to the proper measure of damages should not be

3        considered as indicating any view of mine as to which party is entitled to your verdict on

4        whether the Defendants violated the DMCA.  Instructions as to the measure of damages are

5        given for your guidance only in the event you should find in favor of Mr. Morel on that issue by

6        a preponderance of the evidence according to the other instructions.

7

1                               **29. Deliberation and Verdict**

2         The verdict must represent the considered judgment of each juror. The verdict must be

3 unanimous as to each question on the special verdict form.

4         Before you attempt to answer the questions on the verdict form, you should read each

5 question completely and make sure that everybody understands each question. Before you

6 answer the questions, you should deliberate in the jury room and discuss the evidence that relates

7 to that question.

8         After your deliberations are complete and you have got the verdict, you will indicate your

9 verdict on the extra copy of the special verdict form that has been distributed to you. You will

10 all sign at the bottom of it and advise the Marshal that a verdict has been reached. It is important

11 that you adhere strictly to the instructions on the form. Please do not add anything that is not

12 called for by the special verdict form and please skip any questions that the instructions require

13 you to skip based on your answers to the previous questions.

14         The purpose of the questions on the verdict form is to help us—the Court, the attorneys,

15 the Plaintiff, and the Defendants—understand what your findings are. No inference is to be

16 drawn as to what the answers should be. The questions are not to be taken as any indication that

17 I have any opinion as to how they should be answered. I have no such opinion.

18         Now, finally, with respect to your deliberations. Your first task will be to select a

19 foreperson. The foreperson has no greater voice or authority than any other juror but is the

20 person who will communicate with the Court when questions arise.

21         The foreperson will send out any notes, and when the jury has reached a verdict, he or

22 she will notify the Marshal that the jury has a verdict, and you will come into open court and

23 give verdict.

24

1                                  **30. Closing Comment**

2          The most important part of this case, members of the jury, is the part that you as jurors
3   are now about to play as you deliberate on the issues of fact.  I know you will try the issues that
4   have been presented to you according to the oath that you have taken as jurors.  In that oath you
5   promised that you would well and truly try the issues joined in this case and a true verdict render.

6          As you deliberate, please listen to the opinions of your fellow jurors, and ask for an
7   opportunity to express your own views.  Every juror should be heard.  No one juror should hold
8   the center stage in the jury room and no one juror should control or monopolize the deliberations.
9   If, after listening to your fellow jurors and if, after stating your own view, you become convinced
10  that your view is wrong, do not hesitate because of stubbornness or pride to change your view.
11  On the other hand, do not surrender your honest convictions and beliefs solely because of the
12  opinions of your fellow jurors or because you are outnumbered.

13         Your decision must be unanimous.  You are not to reveal the standing of the jurors, that
14  is, the split of the vote, to anyone, including me, at any time during your deliberations.  Finally, I
15  say this, not because I think it is necessary, but because it is the custom in this courthouse to say
16  this: you should treat each other with courtesy and respect during your deliberations.

17         During your deliberations, you will have the exhibits available to you.  You may also ask
18  for portions of the testimony, but please try to be as specific as you can in requesting testimony.

19         If you have questions for me, just send me a note.  As I said, you have a copy of this set
20  of instructions to take with you into the jury room.

21         All litigants stand equal in this room.  All litigants stand equal before the bar of justice.
22  All litigants stand equal before you.  Your duty is to decide between these parties fairly and
23  impartially, and to see that justice is done.  Under your oath as jurors, you are not to be swayed
24  by sympathy.  You should be guided solely by the evidence presented during the trial and the law
25  as I gave it to you, without regard to the consequences of your decision.  You have been chosen
26  to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If
27  you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a
28  just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and
29  impartial decision so that you will arrive at the just verdict.

30         Members of the jury, I ask your patience for a few moments longer.  Please remain
31  patiently in the jury box without speaking to each other.