UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

Petition to Fix a Charging Lien                                   :

BARBARA T. HOFFMAN,                                               :          **Civil Action No.**
                                                                 :
      *Former Attorney of Record for*                 :          **10-cv-2730  (AJN)**
      *Defendant Daniel Morel,*                       :
                                                                 :
        v.                                    :
                                                                 :
DANIEL MOREL,                                                    :
                                                                 :
      *Defendant, Counterclaim Plaintiff* :

---------------------------------------------------------------X

**In the Matter of:**

---------------------------------------------------------------X

AGENCE FRANCE PRESSE,                                            :
                                                                 :
      *Plaintiff,*                                     :
        v.                                    :
                                                                 :
DANIEL MOREL,                                                    :
                                                                 :
      *Defendant, Counterclaim Plaintiff* :
                                                                 :
        v.                                    :
                                                                 :
AGENCE FRANCE PRESSE,                                            :
GETTY IMAGES (US)                                                :
                                                                 :
      *Counterclaim Defendants.*                       :

---------------------------------------------------------------X

**ATTORNEY-MOVANT BARBARA T. HOFFMAN'S MEMORANDUM OF LAW
IN SUPPORT OF HER 28 U.S.C. 1367 MOTION TO FIX THE AMOUNT  OF,
AND ENFORCE, A CHARGING LIEN UNDER N.Y. JUD. LAW §475**

Barbara T. Hoffman (BH 8931)
*Former Attorney of Record for*
*Defendant Counterclaim Plaintiff Daniel Morel*
330 W. 72nd Street
New York, New York 10023
Telephone: (212) 873-6200
Fax: (212) 974-7245
*E-mail: artlaw@hoffmanlaw.org*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................... 1

FACTS ................................................................................................ 2

ARGUMENT

I.   THIS COURT SHOULD EXERCISE SUPPLEMENTAL
     JURISDICTION PURSUANT TO 28 U.S.C. § 1367 TO RULE UPON
     THIS PETITION TO FIX THE AMOUNT OF, AND ENFORCE,
     HOFFMAN'S CHARGING LIEN UNDER N.Y. JUDICIARY LAW
     § 475.............................................................................................. 3

     A.   New York Judiciary Law § 475 ............................................. 3

     B.   This Court Should Fix and Enforce the § 475 Charging Lien............... 6

II.  UNDER NEW YORK LAW, THE AMOUNT OF AN ATTORNEY'S
     CHARGING LIEN IS FIXED ON THE BASIS OF
     *QUANTUM MERUIT*....................................................................... 8

     A.   Fixing the Amount of the Charging Lien ............................... 12

     B.   The Lodestar Calculation ...................................................... 13

          1.   Determination of the Reasonable Hourly Rate Under
               New York Law.................................................................. 15

          2.   Reasonable Time Expended.............................................. 16

          3.   Appropriate Documentation.............................................. 18

III. HOFFMAN'S ENTITLEMENT TO FEES IN *QUANTUM MERUIT* IS
     INDEPENDENT OF MOREL'S APPLICATION FOR 17 U.S.C. § 505
     ATTORNEY'S FEE ........................................................................ 20

IV.  THE AMOUNT OF FEES REQUESTED BY HOFFMAN
     IS REASONABLE............................................................................ 22

          A.   Hoffman's Hourly Rate is Reasonable ........................... 22

          B.   The New York and Johnson Factors ............................... 23

          C.   Hoffman's Hours are Reasonable .................................. 24

Conclusion ......................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases:**

*A.R. ex rel. R.V. v. New York City Dep't of Educ.,* 407 F.3d 65
(2d Cir. 2005) ................................................................................... 15

*Agence Fr. Presse v. Morel,* 769 F. Supp. 2d 295 (S.D.N.Y. 2011) ......................... 1, 5

*Agence Fr. Presse v. Morel,* 934 F. Supp. 2d 547, reconsideration granted
in part, 934 F. Supp. 2d 584 (S.D.N.Y. 2013) ....................................... 1, 5

*Antonmarchi v. Consolidated Edison Co. of New York*, 678 F.Supp.2d 235
(S.D.N.Y 2010) ................................................................................... 6

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
522 F.3d 182 (2d Cir. 2008) ............................................................... 14

*Archie Comic Publications, Inc. v. Penders,* 10 Civ. 8858 (RMB)(MHD),
2012 U.S. Dist. LEXIS 112493, 2012 WL 3245421 (S.D.N.Y. 14
Aug. 6, 2012) ..................................................................................... 14

*Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................... 21

*Balestriere PLLC v. BanxCorp,*  947 N.Y.S.2d 7 (1st Dep't 2012) .......................... 10

*Beadwear, Inc. v. Media Brands, LLC,* 2001 U.S. Dist. LEXIS 20927,
No. 00 Civ. 5483, 2001 WL 1622207 (S.D.N.Y. Dec. 18, 2001) ........................ 11

*Blum v. Stenson,* 465 U.S. 886 (1984) ................................................................. 16, 17

*Blunt v. Northern Oneida County Landfill,* 145 A.D.2d 913, 536 N.Y.S.2d 295
(4th Dep't 1988).................................................................................. 9, 10

*BMS ___/Heat Music LLC v. Bidges* No. 04 Civ 2484 (PKC),
2007 WL 1989 292 .............................................................................. 22

*Bok v. Werner*, 780 N.Y.S.2d 332 (1st Dep't 2004) .................................................. 9

*Borup v. National Airlines,* 19 F. Supp. 808 (S.D.N.Y. 1958) ................................. 9

*Brennan v. New York Law School,* 10 Civ. 00338 (DLC) (HBP) 2012 U.S.
Dist. LEXIS 135 (S.D.N.Y. Aug 15, 2012) (2012 U.S. Dist. LEXIS 135083
(S.D.N.Y. Sept. 12, 2012)................................................................... 13, 18n.9

*Bryant v. Media Right Prods., Inc.,* 603 F.3d 135 (2d Cir. 2010) ........................... 21

*Butler, Fitzgerald & Potter v. Gelmin,* 235 A.D.2d 218, 651 N.Y.S.2d 525 (App. Div. 1st Dep't 1997) .............................................................................. 5, 10, 11

*Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171 (2d Cir. 2001) ............... 4, 5

*Chesley v. Union Carbide Corp.*, 927 F.2d 60 (2d Cir. 1991).................................. 8

*Cluett Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251 (2d Cir. 1988).......... 6

*Cohen v. Grainger, Tesoriero & Bell,* 81 N.Y.2d 655, 602 N.Y.S.2d 788, 622 N.E.2d 288 (1993) ...................................................................... 9, 11, 12

*Corsi v. Ott*, 44 A.D.2d 906, 357 N.Y.S.2d 746 (4th Dep't 1974) ........................... 10

*Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148 (2d Cir. 1994).................................................................................... 17, 19

*Dunn v. Advanced Credit Recovery, Inc.,* 11 Civ. 4023 (PAE)(JLC), 2012 U.S. Dist. LEXIS 27205, 2012 WL 676350 (S.D.N.Y. Mar. 1, 2012) (Cott, M.J.) (Report & Recommendation), adopted, 2012 U.S. Dist. LEXIS 47129, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012) ........................................................ 15-16

*E.S. v. Katona-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421 (S.D.N.Y. 2011)............ 18

*Farbotko v. Clinton Cnty.,* 433 F.3d 204 (2d Cir. 2005) ......................................... 15, 16

*Feldman,* 2002 U.S. Dist. LEXIS 20110, 2002 WL 31385826 ................................ 12

*Fischer-Hansen v. Brooklyn Heights R. Co.,* 173 N.Y. 492, 66 N.E. 395, 33 Civ. Proc. R. 326 (N.Y. 1985).......................................................... 5

*Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)........................................................................................................ 21

*Fox v. Vice,* — U.S. —, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011) ....................... 2

*General Star Indemnity Co. v. Custom Editions Upholstery Corp.,* 940 F. Supp. 645 (S.D.N.Y. 1996) .......................................................... 20

*Goodrich v. McDonald*, 112 N.Y. 157, 19 N.E. 649, 16 Civ. Proc. R. 222, 20 N.Y. St. 509 (1889).......................................................................... 12

*H. Kreer and Co. v. Nineteen Named Trustees*, 810 F. 2d 1250 (2d. Cir. 1987)....... 19

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)................................................................................... 16, 17, 24-25

*Hill v. Baxter*, No. 98 Civ. 4314 (SJF) (ASC), 2005 U.S. Dist. LEXIS 7157, 2005 WL 465429 (E.D.N.Y. Feb. 7, 2005) ................................................ 5

*In re Jacobson*, 304 A.D.2d 579, 757 N.Y.S.2d 466 (2d Dep't 2003) ...................... 13

*In re King*, 168 N.Y. 53, 60 N.E. 1054 (1901) ............................................................ 12

*In re Rosenman & Colin*, 850 F.2d 57 (2d Cir. 1988) ................................................ 12

*In re Will of Hofmann*, 38 A.D.3d 366, 832 N.Y.S.2d 508 (1st Dep't 2007) ........... 13

*Ingber v. Sabato*, 229 A.D.2d 884, 645 N.Y.S.2d 918 (1996)................................... 11

*Itar Tass*, 1999 U.S. Dist. LEXIS 1101 (JGK) (S.D.N.Y. 1999)............................... 4, 9

*Itar-Tass Russian News Agency v. Kurier, Inc.*, 140 F.3d 442
    (2d Cir. 1998)................................................................................. 3, 6, 7, 11, 12

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548, 2008 WL
    4613752 (S.D.N.Y. Oct. 17, 2008) ........................................................... 25

*Jennette v. City of New York*, 800 F.Supp. 1165........................................................ 18

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),
    abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87,
    109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).................................... 13, 15, 15n.8

*Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470
    (S.D.N.Y. 2009) ........................................................................................ 16

*Klein v. Eubank*, 87 N.Y.2d 459, 663 N.E.2d 599, 640 N.Y.S.2d 443
    (N.Y. 1996) ............................................................................................... 5, 10

*Koeth v. Koeth*, 2002 N.Y. Misc. LEXIS 208, 2002 WL 523109
    (N.Y. Sup Ct. Mar. 22, 2002) ................................................................... 13

*Lai Ling Cheng v. Modensky Leasing Co., Inc.*, 73 N.Y.2d 454 (1989)................... 11

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) ................................... 16

*LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61
    (2d Cir. 1999)............................................................................................ 9

*Maran S. Mishkin Law Office v. Lopalo, et al.*, Docket No. 13-2699-cv
    (2nd Cir Aug. 26 2014).............................................................................. 18, 19

*Margolis v. Cnty of Putnam*, 09 Civ 261 (RKE) (GAY), 2011 U.S. Dist.
    LEXIS 27707, 2011 WL 721698 (S.D.N.Y. Feb 23, 2011) ..................... 4

*Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000).......... 16

*Markakis v. S.S. Mparmpa Christos*, 267 F.2d 926 (2d Cir. 1959) .......................... 6

*Marrero v. Christiano,* 575 F. Supp. 837 (S.D.N.Y 1983) ........................................ 7-8

*Martin H. Bauman Assoc., Inc. v. H&M Int'l Transp., Inc.,* 171 A.D.2d 479,
    567 N.Y.S.2d 404 (App. Div. 1st Dep't 1991) ...................................... 9

*Matter of Levy,* 111 A.D.2d 849, 490 N.Y.S.2d 587 (2d Dep't 1985) ..................... 13

*Matthew Bender & Co. v. West Pub. Co.,* 240 F.3d 116 (2d Cir. 2001).................. 21

*McDermott v. Great Am Alliance Ins. Co.,* No. 5:02 Civ. 0607 (NAM/DEP),
    2006 U.S. Dist. LEXIS 52878, 2006 WL 2038452 (N.D.N.Y.
    July 18, 2006) ...................................................................... 5

*Miele v. New York State Teamsters Conf. Pension & Ret. Fund,*
    831 F.2d 407 (2d Cir. 1987) ................................................... 15

*Millea v. Metro-North R.R. Co.,* 658 F.3d 154 (2d Cir. 2011) ................................ 14

*Miroslaw Gontat et al. v. Capala Brothers, Inc.* 07-cv-3629 (ILG) (SMG)
    2014 U.S. Dist. LEXIS 108077 (June 4, 2014) ..................................... 12, 24

*New York City Housing Authority v. Spectrum Contracting Group, Inc.,*
    2014 NY Supp Op. 30568 (New York Supreme, N.Y. County) ......................... 6n.5

*New York State Association for Retarded Children Inc. v. Hugh Carey,*
    711 F. 2d 1136 (2nd Cir. June 15, 1983) .......................................... 16, 19

*Patrolmen's Benevolent Ass'n v. City of New York,* 97 Civ. 7895 (SAS),
    98 Civ. 8202 (SAS), 2003 U.S. Dist. LEXIS 13472, 2003 WL 21782675
    (S.D.N.Y. July 31, 2003) ......................................................... 17

*Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 130 S. Ct. 1662,
    176 L. Ed. 2d 494 (2010) ........................................................ 14, 15

*Petition of Harley & Browne,* 957 F. Supp. 44 (S.D.N.Y. 1997) ............................ 5

*Purchase Partners LLC v. Carier et al.,* 2014 U.S. Dist. LEXIS 14294
    (S.D.N.Y. 2014).................................................................. 7

*Rankel v. Tracey,* No. 84 Civ. 3412 (KMW), 1991 U.S. Dist. LEXIS 10673,
    1991 WL 156324 (S.D.N.Y. Aug. 2, 1991)........................................... 5

*Reiter v. MTA N.Y.C. Trans. Auth.* 457 F.3d 224 (2d Cir. 2006)............................. 23

*Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47 (2d Cir. 1992) ................... 18-19

*Robinson v. Random House, Inc.,* 877 F. Supp. 830 (S.D.N.Y. 1995)...................... 21

*Russian Entm't Wholesale v Close-Up Int'l*, 767 F. Supp. 2d 392 (E.D.N.Y.
   2011) 482 F. App'x at 607 No. 11-957 cv(1) (2d Cir. May 2, 2012) .................. 21

*Schwartz v. Chan*, 142 F. Supp. 2d 325 (E.D.N.Y. 2001) ......................................... 19

*Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998) ................................ 4, 10, 12, 13

*Shrauger v. Shrauger*, 146 A.D.2d 955, 537 N.Y.S.2d 84 (3d Dep't 1989) ............. 13

*Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009) ...................... 15

*Smith v. Boscov's Dep't Store,* 192 A.D.2d 949, 596 N.Y.S.2d 575
   (3d Dep't 1993) ........................................................................................ 9

*Stair v. Calhoun,* 722 F. Supp. 2d 258 (E.D.N.Y. 2010) .................................. 3, 7, 10, 13

*Sutton v. New York City Transit Auth.*, 462 F. 3d 157 (2d Cir. 2006) ...................... 11

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,* 996 F.2d 1366 (2d Cir. 1993) .......... 21

*United States Media Corp. Inc. v. Edde Entertainment et al.* 94 Civ 4849
   (MHD), 1999 U.S. Dist. LEXIS 10605 July 14, 1999 (S.D.N.Y. 1999) .............. 19

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,*
   232 F.Supp. 2d 127 (S.D.N.Y 2002) reversed by *Universal Acupuncture*
   *Pain Services v. Quadrino and Schwartz,* 370 F.3d 259 (2nd Circuit 2004)......... 4, 7, 24

*Weg & Myers, P.C. v. 126 Mulberry St. Realty Corp.*, 453 F. App'x 90
   (2d Cir. 2011) ......................................................................................... 9

*Williams v. Ingersoll*, 89 N.Y. 508 (1882) ................................................................ 4

*WorldCom, Inc. v Voice Plus International, Inc., et al,* 97 Civ. 8265 (DLC)
   U.S.D.C. S.D.N.Y 2000 U.S.D. LEXIS 108 ........................................................ 19

**Statutes:**

17 U.S.C. § 505 .................................................... 1, 7, 8, 8n.7, 20, 21, 22

28 U.S.C. § 1367(a) ..................................................................................... 6

28 U.S.C. § 1367(c) ..................................................................................... 7n.6

28 U.S.C. § 1367(c)(1)-(4) ............................................................................. 6-7

28 U.S.C. § 1367 ................................................................... 2, 3, 7, 25

DMCA § 1202(c) ...................................................................................... 24

Fed. R. Cir. Proc. 26 ................................................................................ 24

N.Y. C.P.L.R. 5001(a) ............................................................................ 6

N.Y. C.P.L.R. 5001(b) ............................................................................ 6

New York Judiciary Law § 475 ................................................ 2, 3, 4, 6, 11, 13, 15, 20, 25

## <u>PRELIMINARY STATEMENT</u>

Barbara Hoffman ("Hoffman") the former lead attorney and counsel-of-record for Defendant/Counter-Claim Plaintiff, Daniel Morel ("Morel"), respectfully submits this Memorandum of Law in support of her petition to fix the amount of, and enforce, a Charging Lien ("Charging Lien") in her favor to reasonably compensate her for legal services rendered from the time of her engagement by Morel on or about February 20, 2010, until her discharge without cause in or about February 2013.

By the time she was discharged, without cause, Hoffman, after three years of hard-fought litigation and detailed discovery, had successfully obtained summary judgment on liability for Morel in his copyright infringement suit against Agence France Presse ("AFP") and Getty Images (U.S.) Inc. ("Getty Images"),[1] entitled *Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011) ("Morel I")*; Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 547 ("Morel II")*, reconsideration granted in part*, 934 F. Supp. 2d 584 (S.D.N.Y. 2013) ("Morel III")*; all but guaranteeing Morel a substantial damages award and entitlement to attorney's fees as costs pursuant to 17 U.S.C. § 505 of the Copyright Act of 1975 ("§ 505.") This Court has now issued a judgment[2] in Morel's favor of $1,220,000 (one million two hundred and twenty thousand dollars) and Morel has submitted his application for 54(d) costs and attorney fees pursuant to 17 U.S.C. § 505 as the "prevailing party."

Unfortunately after a passionate fight over three years to bring justice to Morel, Morel has elected to pit Hoffman and Morel as adversaries in this proceeding. Notwithstanding, Hoffman fully endorses and supports Morel's 54(d) application for costs,

---

[1] Docket #'s 49, 192, 217.
[2] Docket # 324.

including attorneys' fees against the defendants, AFP and Getty Images.  Such an award will further the goals of the Copyright Act, including helping indigent plaintiffs assert their rights under the Copyright Act against infringers who try to mask the theft of valuable intellectual property rights by asserting frivolous and unreasonable claims and defenses.  Hoffman, with the permission of the Court, seeks leave to supplement her declaration in support of Morel's 54(d) costs application to include attorneys' fees once the Charging Lien is adjudicated.  Under New York Judiciary Law §475, Hoffman is entitled to a charging lien on the judgment obtained by Morel.

Hoffman now moves to invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate the reasonable compensation for her services and to grant her Charging Lien under New York Judiciary Law § 475.

The Supreme Court has recently emphasized:

> [T]he determination of fees should not result in a second major litigation.  The fee applicant... must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award.  But trial courts need not, and indeed should not, become green-eyeshade accountants.
> <u>Fox v. Vice</u>, — U.S. —, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011) *(internal citations and quotation marks omitted)*

## FACTS

The facts and supporting documents to support the amount sought in fees in this matter are fully set forth in the accompanying Hoffman Declaration ("Hoff Decl.") with exhibits which is incorporated herein by reference.  The  Court's familiarity with the facts of the underlying litigation is assumed based on the Court's decisions and orders in *AFP v. Morel*, most recently the Memorandum and Order dated August 13, 2014.[3]

---

[3] Docket # 324; see also Docket #s 325 and 326, granting time extension.

Briefly, AFP commenced this action in March 2010 by filing a declaratory judgment complaint and for commercial defamation naming Morel as the defendant. Morel, a professional photographer who lives in Haiti, had taken a number of photographs on January 12, 2010, in the aftermath of the devastating Haiti earthquake, and uploaded them to Twitter via a TwitPic account. A Twitter user named Lisandra Suero copied the photographs into his own Twitter feed without Morel's consent, next, eight of the photographs initially credited to Suero, ended up being distributed by AFP and its "image partner" Getty to thousands of news outlets and other customers around the world.

Hoffman, Morel's counsel, filed counterclaims against AFP for copyright infringement and violations of the DMCA and the Lanham Act, and also brought third-party claims against Getty Images and a number of other  Defendants' who were not jointly liable with either Getty Images or AFP. Her Answer and Counterclaims provided the road map for Morel's victory.

**<u>ARGUMENT</u>**

**I.    THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367 TO RULE UPON THIS PETITION TO FIX THE AMOUNT OF, AND ENFORCE, HOFFMAN'S CHARGING LIEN UNDER N.Y. JUDICIARY  LAW § 475**

**A.    New York Judiciary Law  § 475**

New York Judiciary Law §475 ("§ 475") "governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency v. Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (citing cases). Pursuant to § 475, "an attorney who is discharged  without cause is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services."  *Stair v. Calhoun,* 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010)

(citing § 475); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 147 (2d Cir. 1998);

*Margolis v. Cnty of Putnam*, 09 Civ 261 (RKE) (GAY), 2011 U.S. Dist. LEXIS 27707,

2011 WL 721698 at 1 (S.D.N.Y. Feb 23, 2011 (Yanthis, M. J.).

An attorney discharged without cause is entitled to have the Court determine the

reasonable value of her services in *quantum meruit* and fix the amount of the charging

lien, even where, as here, the initial retention was on a contingent basis. *Universal*

*Acupuncture Pain Sources, P.C. v. Quadrino & Schwartz., P.C.* 370 F.3d, 263 (2d Cir.

2004),[4] *Itar Tass* 1999 U.S. Dist. LEXIS 1101 (JGK) (S.D.N.Y. 199 at 34-35).

Specifically, §475 provides  that:

> "From the commencement of an action, special or other proceeding
> in any court or before any state, municipal or federal department,
> except a department of labor, or the service of an answer containing
> a counterclaim, *the attorney who appears for a party has a lien*
> *upon his client's cause of action, claim* or counterclaim, *which*
> *attaches to a* verdict, report, determination, decision, *judgment or*
> *final order in his client's favor, and the proceeds thereof in whatever*
> *hands they may come*; and the lien cannot be affected by any
> settlement between the parties before or after judgment, final order
> or determination. The court upon the petition of the client or
> attorney may determine and enforce the lien." (*Emphasis added*).

The charging lien is predicated on the idea that the attorney has by her skill and

effort obtained the judgment, and hence should have a lien thereon for her compensation,

in analogy to the lien which a mechanic has upon any article which he manufactures.

*Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 177 (2d Cir. 2001) (citing

*Williams v. Ingersoll*, 89 N.Y. 508, 517 (1882)). The rationale behind a charging lien is to

---

[4] Hoffman entered into a written retainer with Morel on or about June 2010.  the retainer provided in
pertinent part that Hoffman was to receive 33 1/3% of any proceeds received by Morel and that Morel would
pay all costs and disbursements, including word processing and paralegal expenses.  *See* Hoff. Decl. ¶¶'s
_____.

"protect counsel against 'the knavery of his client'." *Id.*, citing *Butler, Fitzgerald  & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir. 2001).

Further, attorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney is not discharged for "good cause." *See, e.g., McDermott v. Great Am Alliance Ins. Co.*, No. 5:02 Civ. 0607 (NAM/DEP), 2006 U.S. Dist. LEXIS 52878, 2006 WL 2038452, at 2 (N.D.N.Y. July 18, 2006); *Hill v. Baxter*, No. 98 Civ. 4314 (SJF) (ASC), 2005 U.S. Dist. LEXIS 7157, 2005 WL 465429, at 2 (E.D.N.Y. Feb. 7, 2005); *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997); *Rankel v. Tracey,* No. 84 Civ. 3412 (KMW), 1991 U.S. Dist. LEXIS 10673, 1991 WL 156324, at 7 (S.D.N.Y. Aug. 2, 1991); *Klein v. Eubank*, 87 N.Y.2d 459, 663 N.E.2d 599, 600, 640 N.Y.S.2d 443 (N.Y. 1996).  Morel has not argued that Hoffman was discharged for cause. (Hoff. Decl. ¶¶ 6-10, Ex. 1.)

The New York Court of Appeals has stated that the "statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." *Fischer-Hansen v. Brooklyn Heights R. Co.*, 173 N.Y. 492, 66 N.E. 395, 397, 33 Civ. Proc. R. 326 (N.Y. 1985).

"While the eventual payment of the charging lien is contingent upon a favorable outcome for the client in the litigation, the amount of the lien is not dependent upon the result reached in the underlying suit." *Butler, Fitzgerald & Potter,* 235 A.D.2d at 219, 651 N.Y.S.2d at 527. Since client recovery does not affect the amount at which the charging lien should be fixed, this Court has no reason to postpone the calculation of the lien until the conclusion of the *AFP v. Morel* litigation.  Obviously, at some time either Morel will

receive funds to satisfy the lien or Hoffman may enforce a judgment against Morel for the amount of the Charging Lien.  In this connection, Hoffman's entitlement to statutory interest of 9% under N.Y. C.P.L.R. 5001(a) Interest is computed at the "earliest ascertainable date, or February, 2013, the cause of action arose."[5] C.P.L.R. 5001(b).

Moreover, the statutory charging lien takes precedence, and should be fixed in advance of an attorney's 54(d) fee application.

**B.      This Court Should Fix and Enforce the § 475 Charging Lien.**

A federal district court has a "responsibility to protect its own officers in such matters as fee disputes." *Cluett Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988).  As already noted, § 475 "creates an equitable right and remedy cognizable in the federal courts." *Itar-TASS,* 140 F.3d at 448, citing *Markakis v. S.S. Mparmpa Christos*, 267 F.2d 926, 927 (2d Cir. 1959). Under § 1367(a), a court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Consistent with that grant of jurisdiction, it is well established that a court "may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and lien claims between litigants and their attorneys." *Antonmarchi v. Consolidated Edison Co. of New York*, 678 F.Supp. 2d 235 (S.D.N.Y 2010), (the federal court's "jurisdiction to hear fee disputes and lien claims between litigants and their attorneys" is ancillary).

Moreover, the Second Circuit has held that "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of 28

---

[5] *See New York City Housing Authority v. Spectrum Contracting Group, Inc.*, 2014 NY Supp Op. 30568 (New York Supreme, N.Y. County, J.M. Freidman).

U.S.C. § 1367(c)(1)-(4), none of which are applicable here.[6] *Itar-Tass Russian News Agency v. Russian Kurier*, 140 F.3d 442, 448 (2d Cir. 1998). The Second Circuit has emphasized that district courts must rule on charging lien claims, holding that it is "the task" of federal courts to fix the amount of the lien." *Itar-TASS*, 140 F.3d at 453.  Indeed, the Second Circuit in *Itar-TASS*  reversed a district court's refusal to exercise supplemental jurisdiction under 28 U.S.C. §1367 over an attorney's motion to have the court enforce a charging lien in *quantum meruit*, holding that the "appellant  attorney was entitled to the district court's determination of a statutory lien under New York Judiciary Law §475;" notwithstanding that the district court had the granted the attorney's application for 17 U.S.C. § 505 attorneys fees, in part, and that the client and the attorney had a contingency fee agreement.  *Id.; see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,* 232 F.Supp. 2d 127 (S.D.N.Y 2002) reversed by *Universal Acupuncture Pain Services v. Quadrino and Schwartz,* 370 F.3d 259 (2nd Circuit 2004) (remanding to fix lien even without recovery of damages).

The Second Circuit has also made clear that such liens are 'enforceable in federal courts in accordance with the interpretation of § 475 by New York courts." *Stair v. Calhoun*, *supra*, 722 F.Supp. 2d at 267 (quoting *Itar–Tass Russian News Agency v. Russian Kurier, Inc*., *supra*, 140 F.3d at 449. *Purchase Partners LLC v. Carier et al.* 2014. U.S. Dist. LEXIS 14294 at * ____ (S.D.N.Y. 2014); *Marrero v. Christiano,* 575 F. Supp.

---

[6] The district courts may decline to exercise supplemental jurisdiction over an ancillary claim if: (i) the claim  raises a novel or complex issue of State law; (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (iii) the district court has dismissed all claims over which it has original jurisdiction; or (iv) in exceptional circumstances, there are other compelling reasons for declining  jurisdiction. 28 U.S.C. § 1367(c).  There can be no dispute that none of these apply here.

837, 839 (S.D.N.Y 1983); *see also, e.g. Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991).

Accordingly, this Court should grant Hoffman's petition to fix and determine her Charging Lien. It is particularly appropriate that this Court do so based on familiarity with the case and the Court's consideration of Morel's current counsel's application for attorney's fees pursuant to 17 U.S.C. § 505 as the "prevailing party"[7]

In the final analysis, the decision to entertain an ancillary fee dispute turns upon "whether the policies of judicial economy, convenience, and fairness to litigants are furthered by the assumption of jurisdiction." *Chesley,* 927 F.2d at 64 (*internal quotation marks omitted*). Here, there is no question that exercising jurisdiction would further those policies: The Court is intimately familiar with the issues and parties in the case, having presided over it from litigation of the cross-motions for summary judgment, the pre-trial motions and the trial (and a related motion for reconsideration). In such circumstances, it would be highly inefficient, not to mention unfair to Hoffman, to decline jurisdiction and leave Hoffman to pursue her remedies in a state court unfamiliar with the matter, particularly when this Court's jurisdiction of the underlying matter is based on a federal question.

## II.   UNDER NEW YORK LAW, THE AMOUNT OF AN ATTORNEY'S CHARGING LIEN IS FIXED ON THE BASIS OF *QUANTUM MERUIT*

Under New York law, a party seeking recovery in *quantum meruit* must prove "(1) the performance of the services in good faith, (2) the acceptance of the services by the

---

[7] Notwithstanding it is clear that the amount adjudicated as owed to Hoffman by Morel, in *quantum meruit* different than that determined to be owed by defendants to Moral pursuant to 17 U.S.C. § 505 while Hoffman believes that defendants should be required to pay the amount of Charging Lien to Morel, as discussed more fully in Part III, the 17 U. S. C. § 505 fee awarded for Hoffman's contribution may be reduced.

person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 66 (2d Cir. 1999) (quoting *Martin H. Bauman Assoc., Inc. v. H&M Int'l Transp., Inc.,* 171 A.D.2d 479, 484, 567 N.Y.S.2d 404, 408 (App. Div. 1st Dep't 1991)) (*internal quotation marks omitted*).  There is no genuine issue that Hoffman meets these requirements.  Hoffman is entitled to the reasonable value of services in the amount as set forth in this petition.  *See* Part III *infra*.

Under New York law, where an attorney withdraws for cause, he or she is entitled to be compensated based on *quantum meruit*. *Itar-Tass*, at *12 (S.D.N.Y. Feb. 4, 1999), (1992) ("Where an attorney's withdrawal from a case is justifiable, the attorney is entitled to recover for services rendered on the basis of *quantum meruit* . . . ."); *see also Bok v. Werner*, 780 N.Y.S.2d 332 (1st Dep't 2004). "Recovery in *quantum meruit* is permitted even where the attorney and the client had previously agreed that the attorney was to be compensated on a contingency basis." *Itar-Tass,* 1999 WL 58680, at *12 (citing *Blunt v. Northern Oneida Count Landfill,* 536 N.Y.S.2d 295, 297 (4th Dep't 1988)); s*ee also Weg & Myers, P.C. v. 126 Mulberry St. Realty Corp.*, 453 F. App'x 90, 92 (2d Cir. 2011) (observing that under New York law, the law firm that represented its former client on a contingency basis is now entitled to compensation in *quantum meruit* after its withdrawal).

*See also Smith v. Boscov's Dep't Store,* 192 A.D.2d 949, 950, 596 N.Y.S.2d 575, 576 (3d Dep't 1993);  *see also, Cohen,* 81 N.Y.2d at 658, 602 N.Y.S.2d at 790, 622 N.E.2d at 290 (discussing a discharged attorney's options for recovery in a case involving a contingency-fee agreement).  *See, e.g., Borup v. National Airlines,* 19 F. Supp. 808, 810 (S.D.N.Y. 1958) (finding in case where attorney's fee was to be 40% of any recovery that

"since [the attorney] has the right to withdraw as counsel in this action, he is entitled to be paid on *quantum meruit* basis for the services he has rendered in the action"); *Blunt v. Northern Oneida County landfill,* 145, A.D. 2d 913, 914, 536 N.Y.S.2d 295, 297 (4th Dep't) ("Even where, as here, the withdrawing attorney and his client have a contingent contract, the amount of the compensation must be fixed in *quantum meruit.*")

The charging lien, and the plenary action in *quantum meruit*—"are not exclusive but cumulative." *Balestriere PLLC v. BanxCorp*, 947 N.Y.S.2d 7, 8-9 (1st Dep't 2012) (citations omitted). These remedies are available not just when the attorney has been discharged without cause but even when he or she has withdrawn from the case. *See, Klein v. Eubank*, 663 N.E.2d 599, 601 (N.Y. 1996). Under New York law, these remedies are distinct: An attorney discharged without cause may be compensated in quantum meruit and also receive a charging lien. *Butler*, 235 A.D.2d at 219, 651 N.Y.S.2d at 527 (holding that although payment on a charging lien is contingent upon recovery, the operation of a charging lien does not preclude the right also to elect payment in *quantum meruit*). But *see Corsi v. Ott*, 44 A.D.2d 906, 906, 357 N.Y.S.2d 746, 747 (4th Dep't 1974) (mem.) (ordering that a *quantum meruit* fee "should be made as a charging lien upon any recovery had in the action").

While the theory of *quantum meruit*, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien, a court may still use such agreement as guidance in determining the reasonable value of the services provided. *Stair v. Calhoun*, *supra*, 722 F. Supp. 2d at 268-269. *See, also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998) ("It is undisputed that it was proper to determine the amount of attorneys' charging lien on a *quantum meruit* basis, ascertaining the reasonable

10

value of the legal services rendered up to the date of termination without cause"); *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658, 602 N.Y.S.2d 788, 622 N.E.2d 288, 290 (1993) ("As against the client, a discharged attorney may recover the "fair and reasonable value" of the services rendered, determined at the time of discharge and computed on the basis of quantum meruit.") (*Internal citations omitted.*) *See also, Ingber v. Sabato* 229 A.D. 2d 884, 887 645 N.Y.S.2d  918, 920 (1996)*.*   A charging lien "is equitable in nature," and "the overriding criterion for determining the amount of a charging  lien is that it be 'fair.'" *Sutton v. New York City Transit Auth.* 462 F. 3d 157, 161 (2d Cir. 2006)*.  See also, Lai Ling Cheng v. Modensky Leasing Co., Inc.* 73 N.Y.2d 454, 457 (1989).

The amount of the charging lien may be determined and fixed prior to the outcome of the underlying suit.  *Butler, Fitzgerald & Potter v. Gelmin,* 235 A.D. 2d 218, 219 651, N.Y. S. 2d 525, 527 (App. Div. 1st Dep't 1997).  Under § 475, "[i]f the amount of the charging lien has been fixed by agreement..... execution is appropriate on the judgment for the amount agreed to by the parties." *ltar-Tass,* 140 F. 3d at 453];   *See also Beadwear, Inc. v. Media Brands, LLC,* 2001 U.S. Dist. LEXIS 20927, No. 00 Civ. 5483, 2001 WL 1622207, at *2 (S.D.N.Y. Dec. 18, 2001) (holding that where neither the attorney nor client disputed the amount of the contingent fee arrangement, the attorney should receive the agreed upon amount under a charging lien).

Morel and Hoffman had a contingency fee agreement under which Hoffman was to receive 33 1/3% of any money received by Morel, either by way of judgment or settlement.  Morel fully understood the terms of the retainer.  (Hoff. Decl. ¶¶'s 21-22.)

Morel, however, has been unwilling to engage in any discussions with Hoffman with respect to the reasonable compensation due and owing to her.  Thus the parties have

11

not entered into any agreement with respect to the amount of the Charging Lien.  (Hoff.
Decl. ¶¶'s 12-14) Only if the client and attorney agree, may the attorney receive a
percentage fee. *Matter of Cohen v. Grainger, Tesoriero*, 81 N.Y.2d 655, 658 (1993).

However, if Hoffman's reasonable compensation exceeds the 33 1/3% to which
she was entitled under her contingency agreement with Morel (*see* Hoff. Decl. ¶¶'s 21-22),
the law is clear that the contingency agreement is not a ceiling.  *See, Miroslaw Gontat
et al. v. Capala Brothers, Inc.* 07-cv-3629 (ILG) (SMG) 2014 U.S. Dist. LEXIS 108077
(June 4, 2014) ("although [a contingency fee] may be indicative of counsel's expectations
when taking the case, it is not 'an automatic ceiling'" (p. 9)).

## C.     Fixing the Amount of the Charging Lien

A charging lien, although originating at common law, *see Itar-Tass*, 140 F.3d at
449 (citing *Goodrich v. McDonald*, 112 N.Y. 157, 163, 19 N.E. 649, 16 Civ. Proc. R. 222,
20 N.Y. St. 509 (1889)), is equitable in nature, *see In re Rosenman & Colin*, 850 F.2d 57,
60 (2d Cir. 1988); *In re King*, 168 N.Y. 53, 58-59, 60 N.E. 1054, 1056 (1901), and the
overriding criterion for determining the amount of a charging lien is that it be "fair,"
*Cohen v. Grainger, Tesoriero, & Bell*, 81 N.Y.2d 655, 658, 622 N.E.2d 288, 602 N.Y.S.2d
788, 790 (1993).

In assessing the reasonable value of an attorney's services, New York courts have
considered the following factors: (a) the difficulty of the questions involved; (b) the skill
required to perform the services; (c) the time and labor required; (d) the lawyer's
experience, ability and reputation; (e) the customary fee charged by the Bar for similar
services; (f) the benefit to the client from the services; and (g) the amount involved. *See
Feldman,* 2002 U.S. Dist. LEXIS 20110, 2002 WL 31385826, at *5.  *See also, Sequa
Corp.*, 156 F.3d at 148 (*citations omitted*).  A court may look to such factors as whether

the fee was fixed or contingent, any time limitations "imposed by the client or circumstances," and the "nature and length of the professional relationship with the client." *Stair*, 722 F. Supp. 2d at 273 n.1 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). "[T]he determination of the reasonable value of the services at issue is a matter within the sound discretion of the trial court." *Stair*, 722 F. Supp. 2d at 269 (citing *Sequa Corp.,* 156 F.3d at 149).

New York, however, has established "[n]o hard and fast rule . . . by which it can be determined what is reasonable compensation for an attorney in any given case." *In re Jacobson*, 304 A.D.2d 579, 579, 757 N.Y.S.2d 466 (2d Dep't 2003); *accord Matter of Levy*, 111 A.D.2d 849, 850, 490 N.Y.S.2d 587 (2d Dep't 1985). Courts have "broad discretion" to determine the reasonable value of an attorney's services, *In re Will of Hofmann*, 38 A.D.3d 366, 367, 832 N.Y.S.2d 508 (1st Dep't 2007), and the "court is not required to precisely spell out how it weighed the various factors making up the fee allowed," *Shrauger v. Shrauger*, 146 A.D.2d 955, 956, 537 N.Y.S.2d 84 (3d Dep't 1989); *Koeth v. Koeth*, 2002 N.Y. Misc. LEXIS 208, 2002 WL 523109, at *18 (N.Y. Sup Ct. Mar. 22, 2002).

## D.      The Lodestar Calculation.

In *Brennan v. New York Law School* (10 Civ. 00338 (DLC) (HBP)) 2012 U.S. Dist. LEXIS 135 at 95 (S.D.N.Y. Aug 15, 2012) (2012 U.S. Dist. LEXIS 135083 (S.D.N.Y. Sept. 12, 2012), the Court was asked to fix the amount of a charging lien. The underlying action involved provisions of state and federal law. *Brennan* had entered into a contingency retainer with attorney for one third (1/3) of the net proceeds, but the attorney petitioned to enforce his § 475 statutory lien in *quantum meruit* against the proceeds from

13

settlement.   Magistrate Judge Robert Pitman, in his Report and Recommendation, applied

the Lodestar approach:

> The lodestar approach is sufficiently congruent with the criteria applicable under New York law to justify such a choice' of calculation methodology." *Sequa Corp. v. GBJ Corp., supra*, 156 F.3d at 148-49, citing *F.H. Krear & Co. v. Nineteen Named Tr*., 810 F.2d 1250, 1263 (2d Cir. 1987) and *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 314-20 (2d Cir. 1985). Because I am more accustomed to determining fees through the lodestar method and because it is "sufficiently congruent" with a pure quantum meruit approach, I shall use it to determine counsels' fees.

Although in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,

522 F.3d 182, 189-90 (2d Cir. 2008), the Second Circuit abandoned the use of the term

"lodestar" to describe the appropriate method for calculating attorneys fees: "attorneys'

fees awards are now calculated based on the 'presumptively reasonable fee' approach . . ."

the Supreme Court arguably called into question that approach in *Perdue v. Kenny A. ex

rel. Winn*, 559 U.S. 542, , 130 S. Ct. 1662, 1669, 176 L. Ed. 2d 494 (2010); ("[T]here is a

strong presumption that the lodestar is sufficient . . . .") calling into question *Arbor Hill,

supra.*

More recently in fact, the Second Circuit has reverted to the use of term lodestar.

*See, e.g., Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 159 (2d Cir. 2011); *see also

Archie Comic Publications, Inc. v. Penders,* 10 Civ. 8858 (RMB)(MHD),  2012  U.S.

Dist.  LEXIS  112493, 2012 WL 3245421 at *1 n. 3 (S.D.N.Y. Aug. 6, 2012) (Dolinger,

M.J.) ("The term "lodestar" has recently had a somewhat up-and-down fate in the Second

Circuit. After years of usage of this term, the Second Circuit seemed to banish it in the

series of *Arbor Hill* opinions..., but it has since made a comeback after the Supreme Court

utilized it last year (in *Perdue*) without questioning its appropriateness as a descriptor of the required fee analysis.")

### 1.    Determination of the Reasonable Hourly Rate Under New York Law.

New York law as well as the law of the Second Circuit have clarified that when determining an award of attorney's fees, there is "a presumption in favor of application of the forum rule," *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009), which means that courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee," id. at 174.

In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the district, but should also consider any evidence offered by the parties. *Farbotko v. Clinton Cnty.,* 433 F.3d 204, 208-09 (2d Cir. 2005). The court is also free to rely on its own familiarity with prevailing rates in the district. *A.R. ex rel. R.V. v. New York City Dep't of Educ.,* 407 F.3d 65, 82 (2d Cir. 2005); *Miele v. New York State Teamsters Conf. Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987).

The Second Circuit has also held that in determining the reasonable hourly rate pursuant to the enforcement of the § 475 statutory charging lien, the district courts should assess case-specific considerations, including the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron,* 489 U.S. 87, 92-93, 109 S. Ct. 939, 103 L. Ed. 2d 67... (1989).[8] See *Dunn v. Advanced Credit Recovery, Inc.,* 11 Civ. 4023

---

[8] The factors set forth in *Johnson v. Ga. Highway Express, Inc.* include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary fee; (6) whether the attorney's fee is fixed or contingent; (7) the time limitations imposed by the client or the

(PAE)(JLC), 2012 U.S. Dist. LEXIS 27205, 2012 WL 676350 at *5 (S.D.N.Y. Mar. 1, 2012) (Cott, M.J.) (Report & Recommendation), adopted, 2012 U.S. Dist. LEXIS 47129, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012) (Engelmayer, D.J.).

Hoffman has met her burden of showing by satisfactory evidence -- her own and three additional affidavits -- that her requested hourly rate of $665 dollars an hour is the prevailing market rate. *Farbotko v. Clinton Cnty., supra,* 433 F.3d at 209, quoting *Blum v. Stenson, supra,* 465 U.S. 886 (1984) at 895-96 n.11. In determining reasonable hourly rates, a court should first examine the attorneys' experience. *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009) (Holwell, D.J.), citing *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (Ward, D.J.).

### 2.    Reasonable Time Expended

In determining the presumptively reasonable fee, a court may adjust the hours actually billed to a number the court determines to have been "reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. Where an attorney's services were rendered over two or three years, relevant figures for the current year will normally be appropriate. *New York State Association for Retarded Children Inc. v. Hugh Carey* 711 F. 2d 1136 (2nd Cir. June 15, 1983). The number of hours claimed must be "not be excessive or duplicative." *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998); *see also Hensley*, 461 U.S. at 434 (excluding hours not "reasonably expended"). Because Hoffman is the sole attorney in a 2-person office, the number of hours is neither excessive or duplicative.   No hours are included in this petition for ministerial, administrative, paralegal, or secretarial services.

---

circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

Hoffman does not do word processing and given the "David/Goliath" nature of this litigation, did not have time to do such tasks.

The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable. *See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994), citing *Hensley v. Eckerhart, supra*, 461 U.S. at 437; *Patrolmen's Benevolent Ass'n v. City of New York,* 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 U.S. Dist. LEXIS 13472, 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003) (Scheindlin, D.J.), citing *Blum v. Stenson, supra,* 465 U.S. at 897. As set forth in more detail in the Hoffman Declaration, the legal services Hoffman provided to Morel included *inter alia*:

- Assessing Morel's claims regarding copyright infringement and drafting letters.

- Reviewing and responding to AFP and Getty Images' motion to dismiss and preparing a reply brief and additional declaration thereto

- Preparing and responding to multiple discovery disputes including third party discovery; protective order and privilege log

- Preparing and responding to multiple pre-motion letters relating to copyright claims including mediation and settlement discussions before Magistrate Judge Michael L. Dolinger.

-  Engaging in multiple settlement discussions that were fruitless due in large part to AFP's and Getty Images' ill-founded and erroneous belief that their view of copyright law was correct, particularly with respect to the "Twitter house theory" and the DMCA "safe harbor."

- Preparing full sets of moving, opposition and reply papers on all claims and on cross-motions for summary judgment including evidence memo.

- Drafting 100% of the documents filed on behalf of Morel on the EFC docket.

See Hoffman Decl. ¶¶'s 15-49.

The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee

17

application when the underlying substantive claim is based on a federal claim rather than a
state claim:

> To assess the reasonableness of the time expended by an attorney,
> the court must look first to the time and work as they are
> documented by the attorney's records. *See Forschner Group, Inc. v.
> Arrow Trading Co., Inc.,* No. 92 Civ. 6953 (LAP), 1998 U.S. Dist.
> LEXIS 19557, 1998 WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998).
> Next the court looks to "its own familiarity with the case and its
> experience generally . . . . Because attorneys' fees are dependent on
> the unique facts of each case, the resolution of the issue is
> committed to the discretion of the district court." *AFP Imaging
> Corp. v. Phillips Medizin Sys.,* No. 92 Civ. 6211 (LMM), 1994 U.S.
> Dist. LEXIS 17764, 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13,
> 1994) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)
> (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

*E.S. v. Katona-Lewisboro Sch. Dist.* 796 F. Supp. 2d 421, 429 (S.D.N.Y. 2011)[9]

Hoffman has claimed only 50% of her hourly rate as travel time. (*See* Hoff. Decl.
¶ 39, Ex. 6 and Ex. 7; ¶ 49, Ex. 8)  ("The touchstone in determining whether hours have
been properly claimed is reasonableness[,] ... made by reference to standards established
in dealings between paying clients and the private bar."). *See, e.g., Jennette v. City of New
York*, 800 F.Supp. 1165, 1170 (travel time compensated at 50% of the hourly rate
awarded).

**3.      Appropriate Documentation**

Under New York State law, counsel need not track time contemporaneously for a
court to award fees. As Cir. Judge Poole recently opined in *Maran S. Mishkin Law Office
v. Lopalo, et al.* (Docket No. 13-2699-cv 2nd Cir Aug 26 2014),  "Our Court has
recognized that in cases in which the right to attorneys' fees is governed by state law, New
York's more liberal rule allowing reconstructed records should apply." *Riordan v.*

---

[9] *See, also, Brennan* for an excellent discussion of the decisions in this Circuit reviewing attorneys' time
claims. (pgs. 9-10)

*Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) ("State law creates the substantive right to attorney's fees, a right which cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit." (internal citations omitted)); *see also, Schwartz v. Chan*, 142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001) ("Under New York law, courts may award attorney's fees based on contemporaneous or reconstructed time records."). *H. Kreer and Co. v. Nineteen Named Trustees*, 810 F. 2d 1250, 1265 (2d. Cir. 1987). "The burden is in counsel to keep present records from which the Court may determine the nature of the work done, the need for it and the amount of time reasonably required."

In the Second Circuit, all applications for attorney's fees based on federal statutes must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1982). Also acceptable are "attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records." *Cruz v. Local Union No. 3 of Int'l Bro. Of Elec. Workers,* 34 F.3d 1148, 1160-61 (2d Cir. 1994) (internal quotation omitted). *WorldCom, Inc. v Voice Plus International, Inc., et al*, 97 Civ. 8265 (DLC) U.S.D.C. S.D.N.Y 2000 U.S.D. LEXIS 108. *See also, United States Media Corp. Inc. v. Edde Entertainment et al.* 94 Civ 4849 (MHD), 1999 U.S. Dist. LEXIS 10605 July 14, 1999 (S.D.N.Y. 1999), finding compiled lists created from contemporaneously kept time records are adequate.

More recently, in *Mishkin*, Circuit Judge Poole stated,

We turn, then, to Mishkin's fee application, mindful that when reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate

and rule on every entry in an application," *Carey*, 711 F.2d at 1146, and that "[a] request for attorneys' fees should not turn into a second major litigation." B*uckhannon Bd. & Care Home, Inc. v. W. Va.*, 532 U.S. 598, 609, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (alteration in original) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40, (1983)).

In reviewing the record before it, the Second Circuit determined that the district court's finding that Mishkin failed to keep contemporaneous time records was clearly erroneous. "In response to questioning by the district court, counsel reported that while Mishkin did not track her time on a computer, Mishkin did not reconstruct her time for her fee application. Rather, "[e]verything was time-stamped when she did it. She just had to go back and review."

> So long as an attorney "made contemporaneous entries as the work was completed, and that [her] billing was based on these contemporaneous records," *Carey* is satisfied. *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994); *see also David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees."); *Maran S. Mishkin Law Office v. Lopalo, et al*. (Docket No. 13-2699-cv 2nd Cir Aug 26 2014).

Thus, in this ancillary proceeding to fix and enforce a charging lien pursuant to § 475, the adjudication of Hoffman's reasonable attorneys' fees constitutes a substantive state law issue and is governed by the more lenient New York approach. *See General Star Indemnity Co. v. Custom Editions Upholstery Corp.,* 940 F. Supp. 645, 653 (S.D.N.Y. 1996).

## III.   HOFFMAN'S ENTITLEMENT TO FEES IN *QUANTUM MERUIT* IS INDEPENDENT OF MOREL'S APPLICATION FOR 17 U.S.C. § 505 ATTORNEY'S FEE

Concurrently before the Court is Morel's application against the Defendants for attorney's fees. The Copyright Act permits a court to award reasonable attorneys' fees and

costs to a "prevailing party." 17 U.S.C. § 505. The Second Circuit has interpreted § 505 to create a "standard for awarding fees [that] is very favorable to prevailing parties; indeed, fees are generally awarded to a prevailing plaintiff." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,* 996 F.2d 1366, 1383 (2d Cir. 1993) (internal quotation marks omitted); *see Robinson v. Random House, Inc.,* 877 F. Supp. 830, 844 (S.D.N.Y. 1995). "There is no precise rule or formula" for determining the appropriateness or magnitude of attorneys' fees. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (internal quotation marks omitted). Rather, courts must exercise "equitable discretion." *Id.*

In exercising such discretion, courts commonly consider several factors, including "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 144 (2d Cir. 2010) [*51] (citing *Fogerty,* 510 U.S. at 534 n.19). *See also, Russian Entm't Wholesale v Close-Up Int'l* 767 F. Supp. 2d 392 (E.D.N.Y. 2011) 482 F. App'x at 607 No. 11-957 cv(1) (2d Cir. May 2, 2012) (quoting *Matthew Bender & Co. v. West Pub. Co.,* 240 F.3d 116, 122 (2d Cir. 2001)), finding that the third factor in particular should be given substantial weight in determining whether an award is warranted. Indeed, courts have granted fee motions based on a showing of objective unreasonableness alone. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) (collecting cases). Hoffman supports Morel's application for costs under 54(d) but has not participated in Morel's fee application against Defendants.

Hoffman was entitled to an adjudication of her Charging Lien on her withdrawal for cause based on New York law. It would be patently unfair to her to involve her in litigation with Morel's 54(d) application for attorneys' fees prior to adjudication of her Charging Lien and permit the Defendants and Morel to conflate the two distinct actions. This is particularly appropriate given that Morel has not acknowledged the legitimacy of Hoffman's Charging Lien (see Hoff. Decl. ¶¶'s 12-14). Hoffman's ancillary action for reasonable compensation is not related to the success of Morel's recovery of 17 U.S.C. 505 statutory attorney's fees. For that reason, Hoffman's fee award should not be reduced because of the success or failure of Morel in his action against the Defendants.

## IV.    THE AMOUNT OF FEES REQUESTED BY HOFFMAN IS REASONABLE

Hoffman's Charging Lien as calculated under New York law should be fixed at $831,250.00 in *quantum meruit* representing 1,250 hours for legal services provided to Mr. Morel solely by Hoffman.  The appropriate evidentiary support for the Charging Lien is supported by Hoffman's Declaration and the Exhibits attached hereto.  *See* Hoff. Decl. ¶¶'s 31-52 and ¶¶'s 63-71.

### A.    Hoffman's Hourly Rate is Reasonable

Hoffman's hourly rate of $665 an hour is commensurate with or lower than those charged by copyright lawyers of reasonably comparable skill, experience and reputation for similar services.  (*See* Hoff. Decl. ¶¶'s 54-71.)  Hoffman has concurrently submitted the Declarations of three prominent copyright lawyers, Kim J. Landsman, David Rabinowitz, and Edward H. Rosenthal, who confirm that the hourly rate requested by her is "presumptively reasonable," if not at the lower end for someone of her skill, background, reputation and experience.  *See also, BMS ___/Heat Music LLC v. Bidges* No. 04 Civ 2484 (PKC), 2007 WL 1989 292 at 2 (finding hourly rates greater than $500

reasonable for experienced copyright litigators).  *Reiter v. MTA N.Y.C. Trans. Auth.* 457

F.3d 224, 232 (2d Cir. 2006).

**B.    The New York and Johnson Factors**

Hoffman *inter alia* rendered the following services of benefit to Morel:

- successfully defended against a motion to dismiss, reviewed more than 15,000 documents, noticed and prepared 15 depositions of parties and third parties in New York, Seattle, and Atlanta (after settlement with CNN)

- successfully supervised the prosecution of an ancillary action in California related to the deposition of third party Twitter and engaged in discovery disputes with third party Corbis

- prosecuted and obtained the third party deposition of Twitpic.

- engaged in extensive motion practice before this Court. In addition to the motion to dismiss and the complex cross motions for summary judgment, numerous issues relating to privilege, etc. were the subjects of motions. Hoffman also prepared for expert depositions and expert reports although ultimately trial counsel did not utilize the experts.

- cooperated fully in transferring all documents and transcripts to successor counsel.

*See* Hoff. Decl. ¶¶'s 31-49; ¶¶'s 61-71.

Hoffman is a sole practitioner. During this period of representation, she had to

refuse new clients and was barely able to service her long time regular clients. In fact, as a

result of this litigation she lost several long term clients. She was not able to undertake

other litigation.  Each of the defendants were represented by at least three lawyers, putting

enormous pressure on her and her small law office to address their ceaseless demands and

big firm obstructionism and tactics and litigation strategy.

In short, Hoffman possessed the skill and intellectual ability to provide the road

map with which Morel's current counsel could chart his course to victory.  Indeed, New

York courts have also held that the client's actual chance of success of the time the

attorney was discharged, is relevant.  Thus, at the time of discharge, Hoffman success on

the motion for summary judgment not only guaranteed Morel's right to request attorneys'

fees as the prevailing party but also provided the evidentiary roadmap to victory for his

current counsel.  *See Universal Acupuncture supra*.

      The fact that Morel did not prevail on every motion or succeed in every aspect of

his case is not a basis for reducing fees sought by counsel.  *See Hal Miroslaw Gortat,*

*supra*.

      Finally, Hoffman's hourly rate should not be adjusted negatively based on the

Court's order precluding Morel from introducing a damage theory under the DMCA §

1202(c) for each of the Defendants' violative acts as sanctions for Hoffman's allegedly

stonewalling and failure to comply with Fed. R. Cir. Proc. 26.  Mr. Morel's damage

computation under the DMCA was not last minute and was known to the Defendants as

early as September 2011, if not before.  (See Hoff. Decl. ¶¶'s 62-64.)  The detailed

calculations based on this theory although explicitly set forth in Morel's Reply

Memorandum on summary judgment on p. 19 were known to AFP:

> Accordingly, for violating § 1202(a)(b), damages under §
> 1203(c)(3)(B), under this analysis at a minimum, the calculations
> for Morel are as follows: 16 assets x 2 to ImageForum; 44 assets x 2
> through the feed; 845 assets x 2; all at $25,000.

### C.    Hoffman's  Hours are Reasonable

      The reasonable number of hours of 1250 submitted by Hoffman in her billing

summary is also reasonable. (*See* Hoff. Decl. ¶¶'s 71, Ex. 12; See also ¶¶'s 35, 65, ex. 10.)

      The records on which she relied are "appropriate".

      Significantly, both New York courts and the Second Circuit have held that  "the

most critical factor is the degree of success obtained" by the attorney.  *Hensley v.*

*Eckerhardt*, 461 U.S. 424, 436 (1983); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03

Civ. 1548, 2008 WL 4613752, at *3 (S.D.N.Y. Oct. 17, 2008).  Where the attorney "has

obtained excellent results for the client, his attorney should recover a full compensatory

fee.  Normally this will encompass all hours reasonable expended on the litigation . . . ."

*Hensley*, 461 U.S. at 435.  So many of the hours Hoffman spent were to defend against the

meritless and objectively unreasonable claims by AFP and Getty in particular.  AFP

voluntarily dismissed its claim for commercial defamation on August 9, 2010 prior to

conducting any discovery (Docket #34) and subsequently withdrew its standing claim but

not before Morel expended large amount of legal time on third party practice involving

Corbis. Hoffman's work with Wilkie Farr was complimentary and not redundant. (Hoff.

Decl. ¶¶'s 50-58, Ex. 10, 11)

## Conclusion

Accordingly, Attorney-Movant Barbara T. Hoffman respectfully submits that this

Court should exercise its supplemental jurisdiction pursuant to 28 U.S.C. §1367 and (i)

grant the present motion to fix the amount of the undersigned's Charging Lien under New

York Judiciary Law §475 in an amount of no less than $831,250.00, against any monetary

damages ultimately recovered by Morel resulting from the entry of a judgment in his

favor; (ii) that the Court should put into place appropriate procedural safeguards to ensure

that the undersigned's Charging Lien is ultimately satisfied by the parties and their

attorneys; (iii) award prejudgment interest in the amount in the amount of 9%; and (iv)

such other and further relief as this Court deems just and proper.

Dated:  October 1, 2014                    Respectfully submitted,
New York, New York                        /s/ Barbara T. Hoffman
                                          *Former Attorney of Record for*
                                          *Defendant Counterclaim Plaintiff Daniel Morel*

25