UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
AGENCE FRANCE PRESSE,                                        :
                                                             :
                              Plaintiff,                     :
                                                             :
                    -v-                                      :
                                                             :        10-CV-2730 (AJN)
DANIEL MOREL,                                                :
                                                             :
                              Defendant,                     :
                                                             :
                    -v-                                      :
                                                             :
GETTY IMAGES (US), INC., et al.,                             :
                                                             :
                              Counterclaim Defendants.       :
-------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO
BARBARA T. HOFFMAN'S MOTION TO FIX THE AMOUNT OF AND
ENFORCE A CHARGING LIEN UNDER NEW YORK JUDICIARY LAW § 475**


WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, New York 10019

*Attorneys for Defendant and
Counterclaim Plaintiff Daniel Morel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................i

STATEMENT OF FACTS................................................................................................1

    A.    Ms. Hoffman's Representation of Mr. Morel. ...........................................1

    B.    Mr. Morel's Retention of Willkie Farr.....................................................2

    C.    Ms. Hoffman's Termination and Withdrawal as Counsel for Mr. Morel. .................3

    D.    Ms. Hoffman's Shifting Charging Lien. ...................................................4

    E.    Ms. Hoffman Did Not Support Mr. Morel's Motion to Recover Attorney's Fees from AFP and Getty Images. ...........................................7

    F.    Fees and Expenses Retained or Previously Received by Ms. Hoffman.......................8

ARGUMENT ...................................................................................................................9

I.    THE APPLICABLE LEGAL STANDARDS.......................................................9

II.    MS. HOFFMAN'S DEMAND FOR PAYMENT IS EXCESSIVE AND PATENTLY UNREASONABLE.........................................................................11

    A.    Ms. Hoffman's Charging Lien Should Be Considered in the Context of the Contingency Fee Arrangement....................................................12

    B.    The Hourly Rate that Ms. Hoffman Asks the Court to Use is Substantially Higher Than the Rate Quoted to Mr. Morel...........................................14

    C.    The Court Should Consider that Ms. Hoffman Failed to Support Mr. Morel's 505 Motion. ........................................................................16

    D.    Despite Being an Experienced Copyright Attorney, Ms. Hoffman Apparently Did Not Keep Time Records As Required Under Both the Copyright Act and New York Judiciary Law Section 475. ..................................................16

    E.    The Court Should Consider Funds Ms. Hoffman Retained or Previously Received. ........................................................................19

CONCLUSION ...............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Antonmarchi v. Consol. Edison Co. of New York,*
    678 F. Supp. 2d 235 (S.D.N.Y. 2010) ................................................................... 9, 10

*Board of Mgrs. of Boro Park Vil.-Phase I Condominium v. Boro Park Townhouse Assoc.,*
    284 A.D.2d 237, 726 N.Y.S.2d 606 (1st Dep't 2001) ....................................................... 13

*Bonnaig v. Nunez,*
    No. 12 Civ. 1853, 2012 WL 6200977 (S.D.N.Y. Dec. 11, 2012) ..................................... 12

*Chernis v. Swarzman,*
    No. 05 Civ. 3377, 2007 WL 2230078 (S.D.N.Y. Aug. 2, 2007)........................................ 15

*D'Jamoos v. Griffith,*
    No. 00 Civ. 1361, 2008 WL 2567034 (E.D.N.Y. 2008) ................................................... 19

*D'Jamoos v. Griffith,*
    340 F. App'x 737 (2d Cir. 2009) ........................................................................ 9

*Dialcom, LLC v. AT&T Corp.,*
    37 Misc. 3d 1228(A), 964 N.Y.S.2d 58 (Sup. Ct. 2012).................................................. 13

*Dweck Law Firm v. Mann,*
    No. 03 Civ. 8967, 2004 WL 1794486 (S.D.N.Y. Aug. 11, 2004)..................................... 19

*F.H. Krear & Co. v. Nineteen Named Trustees,*
    810 F.2d 1250 (2d Cir. 1987) .................................................................... 17, 18

*Farb v. Baldwin Union Free Sch. Dist.,*
    No. 05-0596, 2011 WL 4465051 (E.D.N.Y. Sept. 26, 2011)...................................... 10, 15

*Gen. Star Indem. Co. v. Custom Editions Upholstery Corp.,*
    940 F. Supp. 645 (S.D.N.Y. 1996) ............................................................... 18

*Gurry v. Glaxo Wellcome, Inc.,*
    No. 98 Civ. 6243, 2000 WL 1702028 (S.D.N.Y. Nov. 14, 2000).................................... 13

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
    140 F.3d 442 (2d Cir. 1998) ................................................................... 9

*Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.,*
    487 F.2d 161 (3d Cir. 1973) ................................................................... 11

*Mar Oil, S.A. v. Morrissey,*
   982 F.2d 830 (2d Cir. 1993) ......................................................................... 15, 18

*Marion S. Mishkin Law Office v. Lopalo,*
   767 F.3d 144 (2d Cir. 2014) ............................................................................... 16

*Milner v. City of New York,*
   No. 10 Civ. 9384, 2012 WL 3138110 (S.D.N.Y. Aug. 2, 2012) .......................... 12

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey,*
   711 F.2d 1136 (2d Cir. 1983) ............................................................................. 17

*Padilla v. Sansivieri,*
   31 A.D.3d 64, 815 N.Y.S.2d 173 (2d Dep't 2006) ............................................. 12

*Pilitz v. Inc. Vill. of Freeport,*
   762 F. Supp. 2d 580 (E.D.N.Y. 2011) ................................................................. 19

*Purchase Partners, LLC v. Carver Fed. Sav. Bank,*
   No. 09 Civ. 9687, 2014 WL 462823 (S.D.N.Y. Feb. 5, 2014) ........................... 11

*Schafrann v. Karam,*
   No. 01 Civ. 0647, 2003 WL 289620 (S.D.N.Y. Feb. 10, 2003) ......................... 18

*Scott v. City of New York,*
   643 F.3d 56 (2d Cir. 2011) ........................................................................... 16, 17

*Sequa Corp. v. GBJ Corp.,*
   156 F.3d 136 (2d Cir. 1998) ......................................................................... 11, 13

*Simon v. Sack,*
   451 F. App'x 14 (2d Cir. 2011) ....................................................................... 9, 10

*Stair v. Calhoun,*
   722 F. Supp. 2d 258 (E.D.N.Y. 2010) ................................................................. 10

*Sutton v. N.Y. City Transit Auth.,*
   462 F.3d 157 (2d Cir. 2006) .....................................................................*passim*

## Statutes

N.Y. Jud. Law § 475 (McKinney 2013) .........................................................*passim*

17 U.S.C. § 505 ..............................................................................................*passim*

17 U.S.C. § 1203 ............................................................................................*passim*

Defendant and Counterclaim Plaintiff Daniel Morel ("Mr. Morel") submits this memorandum of law in opposition to the motion filed by Barbara T. Hoffman, Esq. ("Ms. Hoffman"), for an order fixing the amount of and enforcing a charging lien in her favor and against Mr. Morel (ECF Nos. 341-348) (the "Motion" or "Mot.").[1]

## STATEMENT OF FACTS

### A.    Ms. Hoffman's Representation of Mr. Morel.

Mr. Morel first met with Ms. Hoffman in February 2010 to discuss whether she could represent him in his dispute with AFP, Getty Images, and other newsmedia companies that had distributed, licensed, and sold his photographs depicting the aftermath of the 2010 Haiti earthquake without his permission.  (*See* Declaration of Daniel Morel, dated October 31, 2014 ("Morel Decl."), ¶ 3.)  Following that meeting, Ms. Hoffman sent a letter to Mr. Morel proposing that she represent him on a contingency basis:

> I propose to represent you in connection with this matter on a contingency fee basis of 25% during negotiation and prior to litigation.    Normally,    copyright    lawyers    do    not    work    on contingency, but bill hourly and request a retainer.    The contingency means that you do not pay for my legal services unless I am successful, however, if I am successful, I am entitled to 25% of any recovery.    I think this is preferable to a non-contingency where you are obligated to pay my billable hourly rate which is $395 per hour, discounted from $440 per hour.    The discounted rate is for artists.    You agree, however, that you will pay all my out of pocket costs associated with this phase.    My office charges for expenses such as photocopying, local transportation, messengers, faxes, federal express, and word processing at $40 per hour.
>
> ***
>
> In the event that litigation becomes necessary, we may enter into a separate agreement with a contingency fee of 33.33%–40% plus expenses.

---

[1]    Ms. Hoffman uses the terms "motion," "petition," and "ancillary proceeding" interchangeably when describing her papers requesting that the Court fix and enforce her charging lien. (*See, e.g.*, Mot. at 1, 3, 8, 9, 16, 20, 22, 25.)  Because Ms. Hoffman filed a Notice of Motion (ECF No. 341), counsel for Mr. Morel treated ECF Nos. 341-348 as a motion for purposes of this opposition.

(Letter to D. Morel, dated March 5, 2010 ("March Retainer Letter"), Ex. A.)

During March and April 2010, Ms. Hoffman sent letters to AFP, Getty Images, and their clients, demanding that they cease infringing Mr. Morel's copyright and take down all infringing uses of his photographs.  (Morel Decl. ¶ 5.)  Ms. Hoffman continued acting as counsel to Mr. Morel after AFP commenced this action, and she appeared in this litigation on April 20, 2010, when Mr. Morel answered AFP's Complaint and asserted counterclaims against AFP, Getty Images, CBS, ABC, and Turner Broadcasting.  (*See* ECF No. 4.)

On or about June 1, 2010, Ms. Hoffman sent Mr. Morel a revised retainer agreement (the "June Retainer Agreement"), which he ultimately signed.  (Morel Decl. ¶ 6.)  Under the June Retainer Agreement, Mr. Morel agreed that Ms. Hoffman would represent him "on a contingency fee basis of 25% during negotiation and prior to litigation."  (June Retainer Agr., Ex. B.)  Ms. Hoffman reiterated that her "billable hourly rate" for artists like Mr. Morel was "$395 per hour, discounted from $440 per hour."  (*Id.*)  The agreement additionally stated, "[A]s to any settlement with CNN, CBS, AFP and Getty, the rate of 33.33%, applies, plus expenses as set forth above."  (*Id.*)

### B.    Mr. Morel's Retention of Willkie Farr.

Joseph T. Baio of Willkie Farr & Gallagher LLP ("Willkie Farr") filed a Notice of Appearance in this action on August 30, 2011.  (*See* Notice of Appearance, ECF No. 90.)  During the discovery phase of the litigation, Mr. Baio prepared for and deposed seven fact witnesses.  Mr. Baio continued to assist Ms. Hoffman in the prosecution of Mr. Morel's case until Mr. Morel terminated Ms. Hoffman's engagement as counsel on January 24, 2013, effective immediately.  (Morel Decl. ¶ 7.)  Thereafter, Mr. Baio served as lead counsel of record for Mr. Morel.

**C.      Ms. Hoffman's Termination and Withdrawal as Counsel for Mr. Morel.**

Mr. Morel discharged Ms. Hoffman without cause.  (Morel Decl. ¶ 8.)  Ms. Hoffman moved to withdraw as counsel on February 12, 2013, asserting that her discharge was without cause and "subject to and without prejudice to" her right to a charging lien in an amount to be determined by the Court.  (*See* ECF Nos. 202-204.)  Ms. Hoffman did not identify a claimed amount.  The Court granted Ms. Hoffman's request to withdraw on February 15, 2013, "without prejudice to any and all rights Hoffman has to a charging lien on any proceeds of this lawsuit."  (Order Granting Motion to Withdraw as Counsel, ECF No. 207.)[2]

After Ms. Hoffman's withdrawal as counsel, Mr. Baio and Willkie Farr met and conferred with counsel for AFP and Getty Images, prepared Mr. Morel's contributions to the parties' joint Pretrial Report, appeared at pretrial conferences, opposed seven motions *in limine*, and represented Mr. Morel at a mediation before Magistrate Judge Maas.  Although the Court had found AFP liable for copyright infringement on summary judgment, numerous issues remained, including Mr. Morel's actual damages and statutory damages, AFP and Getty Images' relative culpability, and liability and damages under the Digital Millennium Copyright Act ("DMCA").

During the eight-day jury trial, Mr. Baio and Willkie Farr attorney Emma James elicited testimony from nine witnesses and opposed AFP and Getty Images' motion for a directed verdict.  Following trial, the jury unanimously found that AFP and Getty Images willfully infringed Mr. Morel's rights in his photographs under the Copyright Act.  (*See* Final Verdict Form, ECF No. 323-9, at 3.)  Based on the evidence presented during the trial, the jury awarded Mr. Morel (1) actual damages in the amount of $303,889.77, and (2) the maximum statutory

---

[2]      The Court crossed out "subject to" from Ms. Hoffman's proposed order.  (*See id.*)

damages for each of the eight Photos-at-Issue, or $1.2 million in total.  (Order, ECF No. 305.)
The jury also found that AFP and Getty Images violated both sections 1202(a) and 1202(b) of the
DMCA and that these violations were "not innocent," awarding Mr. Morel an additional
$20,000.  (Final Verdict Form, ECF No. 323-9, at 7.)  The jury therefore determined that AFP
and Getty Images' conduct fell squarely within the most egregious category of misconduct under
both the Copyright Act and the DMCA.  After Mr. Morel elected to receive statutory damages,
the Court entered judgment in favor of Mr. Morel in the amount of $1,220,000.  (*See* Amended
Judgment, ECF No. 307, at 1-2.)

AFP and Getty Images subsequently moved under Federal Rules of Civil Procedure 50
and 59(a) for judgment as a matter of law, a new trial, or remittitur (the "Post-Trial Motions").
(*See* ECF Nos. 313-315.)  Willkie Farr opposed the Post-Trial Motions, and on August 13, 2014,
the Court affirmed the liability verdicts (with one exception) and the actual and statutory
damages that the jury had awarded.  (*See* Mem. & Order, ECF No. 324.)  Ms. Hoffman was not
involved in any of these efforts.

**D.      Ms. Hoffman's Shifting Charging Lien.**

Since her discharge in January 2013, Ms. Hoffman has articulated the alleged value of
her charging lien in writings to the Court on three different occasions.  The amounts she has
claimed are inconsistent, seemingly arbitrary, and ever-increasing.

*First*, in a letter to the Court dated October 7, 2013, Ms. Hoffman "estimated" the amount
of her charging lien to be in the range of "approximately six-hundred-fifty-thousand dollars
($650,000.00) to seven-hundred-thousand dollars ($700,000.00)" on Mr. Morel's claims "against
Agence France Presse, Getty Images and the Washington Post."  (Letter to Judge Nathan, dated
Oct. 7, 2013 (ECF No. 261), at 1.)

*Second*, on August 27, 2014, Ms. Hoffman moved this Court to fix the value of her charging lien "in *quantum meruit*" under New York Judiciary Law § 475 ("Section 475") "in an amount no less than $784,000" against Mr. Morel's judgment calculated by multiplying her hourly rate and time expended.  (ECF No. 327 ("Withdrawn Motion") at 2, 15, 16-18.) Specifically, based on her "review of [her] records, the docket, [ ] contemporaneous computer files, notes, calendar and other relevant material," Ms. Hoffman "calculate[d]" her "reasonable hours" spent representing of Mr. Morel to be 1,080 – 300 hours for 2010 and 780 hours for 2011 through 2013.  (*See* Declaration of Barbara T. Hoffman, dated Aug. 27, 2014, ECF No. 328 ("8/27/14 Hoffman Decl."), ¶ 59; Withdrawn Mot. at 15.)  Ms. Hoffman, however, failed to submit contemporaneous time records or other documentation supporting this claim.

Ms. Hoffman claimed that her "reasonable hourly rate in this Circuit" was $690 per hour in 2010 and $740 per hour for 2011 to 2013.  (*Id*. ¶¶ 56-58.)  She argued that these "minimum" rates should be "adjusted upward by 15%" because of the "contingent nature of the case," but cited no authority to support such "adjustment."  (*Id*. ¶ 58.)  She also made no attempt to reconcile these purportedly reasonable rates with the significantly lower hourly rates she quoted Mr. Morel in the retainer letters.  (*Compare id.* ¶¶ 56-57 *with* March Retainer Letter, Ex. A *and* June Retainer Agr., Ex. B.)

In total, Ms. Hoffman's Withdrawn Motion appeared to request that this Court fix her Section 475 charging lien to be paid solely by Mr. Morel (separate and apart from whatever amount the Court may award Mr. Morel in attorney's fees under section 505 of the Copyright Act) at $1,026,481.53 – including prejudgment interest and the 15 percent "adjustment" on Ms. Hoffman's claimed hourly rate – an amount equivalent to approximately 84 percent of Mr. Morel's judgment against AFP and Getty Images.

*Third*, on October 3, 2014, Ms. Hoffman filed a "corrected and substituted" motion, requesting that her prior motion to fix the amount of her lien be "deemed withdrawn."[3] (Declaration of Barbara T. Hoffman, dated Oct. 3, 2014, ECF No. 347 ("10/3/14 Hoffman Decl."), ¶¶ 4, 11.)  In this latest motion, Ms. Hoffman calculates the value of her lien in *quantum meruit* as no less than $831,250 by multiplying her "reasonable hourly rate" and "reasonable time expended."  (Mot. at 22.)  As compared to the Withdrawn Motion, Ms. Hoffman's "reasonable fees" are based on both a different "reasonable hourly rate" and an increased number of hours expended.  In particular, Ms. Hoffman argues that $665 per hour – not $690 or $740 per hour as she had previously claimed – is "presumptively reasonable," provided that rate be "increased by at least 18%" to "reflect the fact that [her] recovery was contingent."  (10/3/14 Hoffman Decl. ¶¶ 59-62.)  Ms. Hoffman again cites no authority to support such an "adjustment."  She again also fails to explain the discrepancy between her claimed "presumptively reasonable rate" of $665 per hour and the significantly lower rates she quoted Mr. Morel in the retainer letters.  (*Id*.; *see also* Mot. at 22.)

With respect to time expended, Ms. Hoffman contends that she incurred 1,250 hours – 170 more hours than alleged in the Withdrawn Motion.  (Mot. at 22.)[4]  (*See* 10/3/14 Hoffman Decl. ¶ 72.)  Ms. Hoffman concedes that she did not keep contemporaneous records of her own attorney time devoted specifically to Mr. Morel's case.  (*Id*. ¶ 36.)  Rather, she asserts that she "use[d her] best efforts to calculate and reconstruct" the hours expended on Mr. Morel's matter from "time-stamped" documents generated on her computer, her "computer directory," and her

---

[3]   Mr. Morel does not oppose or object to Ms. Hoffman's withdrawal of her prior motion.  Therefore, this opposition responds only to the instant Motion filed on October 3, 2014.  In the event that the Court considers Ms. Hoffman's Withdrawn Motion still viable, Mr. Morel respectfully requests that counsel be permitted an opportunity to respond.

[4]   Ms. Hoffman avers that the new 1,250 hour calculation did not include "time [incurred] for ABC, CBS, and CNN."  (*See* 10/3/14 Hoffman Decl. ¶ 66.)

"email database and the documents and letters attached thereto," and concluded that "[m]ore likely than not, [she] underestimated [her] time."  (*Id*. ¶¶ 35-36.)

These reconstructed records, however, contain no description at all of the nature of the work done in the 446 hours Ms. Hoffman supposedly expended in 2010.  (*See* 10/3/14 Hoffman Decl. at Ex. 12.)  They contain only the bare-bones description of "legal services" performed in 2011 as "*inter alia* meetings with client, research for discovery dispute memos, letter motions, review of 15,000 documents."  (*Id*.)

It appears that, including prejudgment interest and the 18 percent "adjustment" on Ms. Hoffman's claimed hourly rate, Ms. Hoffman is requesting that this Court fix the Section 475 charging lien to be paid by Mr. Morel (again, separate and apart from whatever amount the Court may award Mr. Morel in attorney's fees under section 505 of the Copyright Act) at, in total, approximately $1,113,283 – an amount equivalent to approximately 91 percent of Mr. Morel's judgment against AFP and Getty Images.  Ms. Hoffman also requests that she be permitted to supplement her claim for a lien and supporting documentation if Mr. Morel is awarded attorney's fees as the prevailing party under section 505 of the Copyright Act.  (Mot. at 2.)

     **E.**    **Ms. Hoffman Did Not Support Mr. Morel's Motion to Recover Attorney's Fees from AFP and Getty Images.**

During August and September 2014, Roger Netzer, a partner of Willkie Farr, engaged in in-person, written, and telephonic discussion with Ms. Hoffman and later with her attorney, Ronald C. Minkoff, in an attempt to secure from Ms. Hoffman a declaration in support of Mr. Morel's motion for an award of attorney's fees under section 505 of the Copyright Act (the "505 Motion").  (*See* Declaration of Roger Netzer, dated October 31, 2014 ("Netzer Decl."), ¶ 3.)  In a telephone call on August 15, at a meeting at Willkie Farr's office on September 19, and via email on September 28 and 30, Mr. Netzer repeatedly requested that Ms. Hoffman sign a declaration

attesting to and attaching documentation regarding the hours she worked for Mr. Morel.  (*Id.* ¶¶ 8, 12, 22, 30.)  Ms. Hoffman, however, ultimately refused to sign a declaration swearing to these facts.  (*See* Netzer Decl. ¶¶ 4, 18, 20, 29; Netzer Decl., Ex. H ("I was willing to work with you but it is not to my interest to have [AFP and Getty Images] interfere with my lien."); Netzer Decl., Ex. I ("Until the amount of my charging lien is determined, I cannot submit an application to the Court with respect to fees . . . ."); Netzer Decl., Ex. Q ("On advice of counsel I am not making a feen [sic] application at this time but am not waiving [m]y right to do so once the amount of the charging lien has been determined . . . .").)

This Court had already determined, however, that all fee motions – including Mr. Morel's 505 Motion and Ms. Hoffman's motion to fix the amount of her charging lien – would be addressed by the Court "on the same briefing and argument schedule."  (*See* ECF No. 333.)  As a result, Mr. Morel was unable to seek reimbursement for Ms. Hoffman's attorney fees from AFP and Getty Images in his 505 Motion.  (Netzer Decl. ¶ 6.)[5]

**F.      Fees and Expenses Retained or Previously Received by Ms. Hoffman.**

During the period in which Ms. Hoffman represented Mr. Morel, she settled his copyright infringement claims against ABC, CBS, and CNN.  Ms. Hoffman retained or received approximately $310,000 in settlement proceeds, including an amount from a settlement with the Washington Post that was reached after Ms. Hoffman's involvement in the case ended.  A portion of this amount – as much as $76,455, as Ms. Hoffman claims in her motion (*see* 10/3/14 Hoffman Decl. ¶ 13) – may have been reimbursement for costs incurred by Ms. Hoffman.  The total Ms. Hoffman apparently received as fees to date is, therefore, approximately $233,545. (Netzer Decl. ¶ 33.)  Ms. Hoffman's declaration does not mention the fees she already recovered

---

[5]      Ms. Hoffman did provide to Willkie Farr certain documentation relating to her costs and disbursements, all of which had been paid by Mr. Morel during her representation of him.  (Netzer Decl. ¶ 5.)  This information was therefore incorporated into the 505 Motion. (*Id.*)

pursuant to these settlements.  Ms. Hoffman also has not averred that all of the funds in the

IOLA account she maintained for Mr. Morel have been used.

**ARGUMENT**

## I.      THE APPLICABLE LEGAL STANDARDS

New York Judiciary Law § 475 provides for a charging lien in favor of an attorney who

appears in an action, but is subsequently replaced.  N.Y. Judiciary Law § 475 (McKinney 2013).

It provides:

> From the commencement of an action . . . in any court . . . the
> attorney who appears for a party has a lien upon his or her client's
> cause of action, claim or counterclaim, which attaches to a verdict,
> report, determination, decision, award, settlement, judgment or
> final order in his or her client's favor, and the proceeds thereof in
> whatever hands they may come; and the lien cannot be affected by
> any settlement between the parties before or after judgment, final
> order or determination.  The court upon the petition of the client or
> attorney may determine and enforce the lien.

*Id.*  "A charging lien is a security interest in the favorable result of litigation, giving the attorney

[an] equitable ownership interest in the client's cause of action . . . ."  *Antonmarchi v. Consol.*

*Edison Co. of New York*, 678 F. Supp. 2d 235, 240-41 (S.D.N.Y. 2010) (citation omitted).  "The

lien created by Section 475 . . . is enforceable in federal courts in accordance with its

interpretation by New York courts."  *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140

F.3d 442, 449 (2d Cir. 1998) (quoting *In re Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d

Cir. 1991)).

Under New York law, an attorney may be discharged by a client "at any time, with or

without cause."  *D'Jamoos v. Griffith*, 340 F. App'x 737, 740 (2d Cir. 2009) (citing *Garcia v.*

*Teitler*, 443 F.3d 202, 211 (2d Cir. 2006)).  "If the discharge is for cause, the attorney is not

entitled to fees."  *Id.*  "If, however, the discharge is without cause, the attorney may recover the

value of services rendered in *quantum meruit*."  *Id.*; *Simon v. Sack*, 451 F. App'x 14, 16 (2d Cir.

-9-

2011). This is true even "where the attorney discharged without fault was employed under a contingent fee contract." *Id*. (citation omitted). The discharged attorney bears "the burden of proving the amount of legal fees due from client and, in so proving, is 'held to the highest standards' of proof." *Farb v. Baldwin Union Free Sch. Dist.*, No. 05-0596, 2011 WL 4465051, at *10 (E.D.N.Y. Sept. 26, 2011) (quoting *Estate of Jackson*, 120 A.D.2d 309, 316, 508 N.Y.S.2d 671, 676 (3d Dep't 1986)).

A fee based on *quantum meruit* is for "'the reasonable value of the services rendered up to the date of' counsel's withdrawal or discharge." *Antonmarchi*, 678 F. Supp. at 241 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 147 (2d Cir. 1998)). In making a fee award based on *quantum meruit*, courts consider various factors in determining the "reasonable value of the services rendered," including but not limited to "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)." *Id*. In addition, a court may look to the parties' retainer agreement "as guidance in determining the reasonable value of the services provided." *Stair v. Calhoun*, 722 F. Supp. 2d 258, 269 (E.D.N.Y. 2010); *see also Simon v. Sack*, 451 F. App'x 14, 17 (2d Cir. 2011) (finding that the district court properly considered as one factor "the amount [the discharged attorney] would have received under the original contingent-fee agreement").

The determination of the reasonable value of the services of a discharged attorney under Section 475 is a matter "within the sound discretion of the trial court." *Stair*, 722 F. Supp. 2d at 269 (citing *Sequa Corp.*, 156 F.3d at 149). "At bottom, the amount should be 'fair' in the equitable sense; the Second Circuit has instructed that '[a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a

-10-

charging lien is that it be 'fair.'" *Id.* (quoting *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161

(2d Cir. 2006)); *see also Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09 Civ. 9687,

2014 WL 462823, at *3 (S.D.N.Y. Feb. 5, 2014).

Ms. Hoffman was discharged without cause.  (Morel Decl. ¶ 8.)  Mr. Morel recognizes

that Ms. Hoffman contributed to the settlements he achieved and the amounts he was awarded

against AFP and Getty Images (*see* Morel Decl. ¶ 9), and that this Court is best positioned to

determine such compensation.  However, Ms. Hoffman's asserted charging lien of $831,250 plus

prejudgment interest plus an 18 percent "upward adjustment" – approximately $1,113,283 in

total – is neither fair nor reasonable.  (*Id.*)  For the reasons set forth below, the Court should deny

Ms. Hoffman's application in its entirety or, in the alternative, fix Ms. Hoffman's charging lien

in an amount substantially reduced from her contingency fee arrangement with Mr. Morel.

## II.   MS. HOFFMAN'S DEMAND FOR PAYMENT IS EXCESSIVE AND PATENTLY UNREASONABLE

Ms. Hoffman contends that the Court should calculate her charging lien simply by

multiplying her claimed "reasonable" hourly rate by the "reasonable" number of hours she

expended – a method that she refers to as "Lodestar," a term coined by the Third Circuit in *Lindy

Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.

1973).  (*See* Mot. at 13-20.)  Ms. Hoffman's pure Lodestar calculation is both legally and

factually *un*reasonable under the circumstances because it directly contradicts the Second

Circuit's mandate that the court consider "all the factors relevant to a *quantum meruit* fee

analysis" in computing a charging lien.  *Sequa Corp.*, 156 F.3d 136, 149 (2d Cir. 1998).  Ms.

Hoffman's calculation is far in excess of the hourly rate she actually quoted to Mr. Morel, on the

one hand, and ignores that Mr. Morel retained her to represent him on a 25 to 33.33 percent

contingency basis, on the other hand.

Ms. Hoffman's lien should be fixed in an amount, if any, that is significantly less than either the amount she asserts or her contingency percentage, in light of (1) the parties' express agreement on Ms. Hoffman's contingency percentage; (2) Ms. Hoffman's actual hourly rate identified in her retainer letters and charged to other artists; (3) Ms. Hoffman's actions which prevented Mr. Morel from seeking reimbursement for her fees from AFP and Getty Images under section 505 of the Copyright Act; (4) the substantially deficient documentation and time records submitted with the Motion; and (5) the compensation already received by Ms. Hoffman for work performed for Mr. Morel.

### A.    Ms. Hoffman's Charging Lien Should Be Considered in the Context of the Contingency Fee Arrangement.

The Court should consider the June Retainer Agreement in setting Ms. Hoffman's lien in *quantum meruit*.  Courts have repeatedly made clear that a fee agreement should be considered in fixing a charging lien because "it is some evidence of, inter alia, the parties' own assessment of their respective contributions."  *Padilla v. Sansivieri*, 31 A.D.3d 64, 67, 815 N.Y.S.2d 173 (2d Dep't 2006).  *See, e.g.*, *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (reversing the lower court's lien determination where "[n]o specific recognition was given to the terms of the percentage agreement" and the former firm's representation of the client throughout settlement proceedings would not have entitled it to additional compensation); *Milner v. City of New York*, No. 10 Civ. 9384, 2012 WL 3138110, at *16 (S.D.N.Y. Aug. 2, 2012) (finding that a one-third fee, as contemplated by the retainer agreement, was appropriate where the attorney represented the plaintiff throughout settlement proceedings); *see also Bonnaig v. Nunez*, No. 12 Civ. 1853, 2012 WL 6200977, at *4 (S.D.N.Y. Dec. 11, 2012), *aff'd*, 546 F. App'x 55 (2d Cir. 2013).

Under the June Retainer Agreement, Ms. Hoffman was entitled to 25 percent or, at most, 33.33 percent of Mr. Morel's recovery.  (*See* June Retainer Agr., Ex. B.)  Twenty-five percent of Mr. Morel's judgment against AFP and Getty Images is $305,000; 33.33 percent is about $406,626.  But those amounts are materially less than what Ms. Hoffman appears to claim her lien should be fixed at.  Ultimately, this Court should consider the value of the actual services Ms. Hoffman provided to Mr. Morel and the results that were obtained before she was discharged.  *See Sequa Corp*, 156 F.3d at 147 (listing relevant Section 475 factors); *see also Gurry v. Glaxo Wellcome, Inc.*, No. 98 Civ. 6243, 2000 WL 1702028, at *4 (S.D.N.Y. Nov. 14, 2000) (finding it appropriate to consider the final result and the extent to which the discharged attorneys contributed to help the client obtain that result); *Board of Mgrs. of Boro Park Vil.-Phase I Condominium v. Boro Park Townhouse Assoc.*, 284 A.D.2d 237, 237, 726 N.Y.S.2d 606 (1st Dep't 2001) (finding the work performed by the incoming and outgoing attorneys and the contributions of the respective attorneys toward achieving the outcome reached in the action must be considered in determining the outgoing attorneys' fees); *Dialcom, LLC v. AT & T Corp.*, 37 Misc. 3d 1228(A), 964 N.Y.S.2d 58 (Sup. Ct. 2012) (declining to award discharged law firm any fees in part because it did not contribute to the ultimate settlement of the litigation).

Ms. Hoffman's support and efforts as Mr. Morel's counsel at the outset of the case, in opposing the motions to dismiss, and during the summary judgment process, certainly contributed to the ultimate successful outcome.  But Ms. Hoffman was terminated as Mr. Morel's counsel in January 2013, more than eight months before trial and more than a year and a half ago.  After the summary judgment ruling, Mr. Morel was entitled to recover statutory damages under the Copyright Act from Defendants within a range of $200 to $30,000 for each of his works, or $1,600 to $240,000 in total.

Since January 2013, Willkie Farr met and conferred with counsel for AFP and Getty Images, prepared portions of the parties' joint Pretrial Report, appeared at pretrial conferences, opposed seven motions *in limine*, represented Mr. Morel in a mediation, and prepared for trial against two sets of opposing counsel.[6]  During the eight-day jury trial, Mr. Morel's counsel elicited testimony from nine witnesses, secured favorable verdicts under the Copyright Act and DMCA, opposed AFP and Getty Images' motions for a directed verdict and post-trial relief, and has continued to represent him in this matter.  Ms. Hoffman was not involved in any of these efforts.

An attorney's charging lien – above all – is "equitable in nature;" and the "overriding criterion for determining the amount of a charging lien is that it be 'fair.'"  *Sutton*, 462 F.3d at 161 (citation omitted).  Ms. Hoffman's asserted charging lien on Mr. Morel's judgment of a multiple of what she would have been entitled to under the June Retainer Agreement had she completed her representation of Mr. Morel is patently *un*fair.  Under the circumstances of this case, Ms. Hoffman's lien should be fixed at an amount substantially below the contingency rate of either 25 or 33.33 percent contemplated by the June Retainer Agreement.

**B.     The Hourly Rate that Ms. Hoffman Asks the Court to Use is Substantially Higher Than the Rate Quoted to Mr. Morel.**

In her current Motion, Ms. Hoffman claims that she should be compensated at "the prevailing market rate" of $665.  (Mot. at 16.)  This hourly rate is unjustified given that it is 68 percent higher than the hourly rate of $395 quoted to Mr. Morel in the June Retainer Agreement. (*See* June Retainer Agr., Ex. B.)  It is also approximately 50 percent higher than what she identified as her standard hourly rate of $440.  (*Id.*)

---

[6]     Willkie Farr also prepared for and deposed seven fact witnesses.

Mr. Morel respectfully submits that Ms. Hoffman's request does not satisfy the "highest standards" for proving her hourly rate is reasonable. *Farb*, 2011 WL 4465051, at *10 (citation omitted). Ms. Hoffman provides no justification for ignoring what she told Mr. Morel she would charge him on an hourly basis. Rather, Ms. Hoffman submitted declarations from three random attorneys purportedly of "comparable skill and expertise" that set forth each attorney's "standard billing rates." (Mot. at 16, 22; *see also* ECF Nos. 344-348.) But here, Ms. Hoffman expressly told Mr. Morel her "standard billing rate" is $395 for artists and $440 for non-artists. (*See* June Retainer Agr., Ex. B.)

In an analogous situation involving a dispute over attorney's fees, this court found it "[s]omewhat remarkabl[e]" that an attorney contended "he should be awarded fees on a *quantum meruit* basis at the rate of $500 per hour, rather than his 'standard rate' of $375 per hour." *Chernis v. Swarzman*, No. 05 Civ. 3377, 2007 WL 2230078, at *10 (S.D.N.Y. Aug. 2, 2007). The court fixed the attorney's "reasonable hourly rate" at the amount he had actually billed his former client – $325 per hour – reasoning that the attorney had "failed to provide any justification for the Court to award him fees at a rate one-third higher than his standard rate." *Id*; *see also Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 842-43 (2d Cir. 1993) (finding that a district court's award of attorney's fees in a fee dispute based on an hourly rate ($200) that was higher than the average rate the attorney had actually billed his client ($120) "could not have been reasonable, for it represented a higher rate than [the attorney] himself had sought").

Ms. Hoffman's stated hourly rate of $395 should create a cap for purposes of this charging lien. Awarding Ms. Hoffman a higher hourly rate than the rate she communicated to Mr. Morel and actually charged to similar clients would give Ms. Hoffman an unjustified and inequitable fee at Mr. Morel's expense.

**C.    The Court Should Consider that Ms. Hoffman Failed to Support Mr. Morel's 505 Motion.**

To recover attorney's fees and costs from AFP and Getty Images under section 505 of the Copyright Act and section 1203 of the DMCA, Mr. Morel was required to submit, among other things, "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *see also* 17 U.S.C. §§ 505, 1203.  To that end, Mr. Morel, through his counsel, Willkie Farr, sought to have Ms. Hoffman attest to the fees she incurred in her representation of him by means of a declaration supporting his 505 Motion.  (*See* Part E, *supra*.) As detailed in the accompanying Declaration of Roger Netzer, Ms. Hoffman refused to sign such a declaration or provide documentation of the fees she incurred until the amount of her charging lien is eventually determined by the Court.  (Netzer Decl. ¶¶ 4, 32.)  Ms. Hoffman's actions therefore resulted in Mr. Morel being unable to incorporate Ms. Hoffman's fees into his 505 Motion.  (*Id.* ¶ 6.)  As a matter of fairness, the Court should weigh this failure in evaluating what, if anything, Ms. Hoffman should be awarded here.  *Sutton*, 462 F.3d at 161.

**D.    Despite Being an Experienced Copyright Attorney, Ms. Hoffman Apparently Did Not Keep Time Records As Required Under Both the Copyright Act and New York Judiciary Law Section 475.**

The applicable standard for the relief requested by Ms. Hoffman on her motion is found in Section 475 of the New York Judiciary Law and the case law construing that state statute. The Court also should consider whether and the extent to which Ms. Hoffman's record keeping met the federal standards under section 505 of the Copyright Act and section 1203 of the DMCA, which require the creation and maintenance of "contemporaneous" time records.  *See Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011) (requiring an application for attorney's

fees to be supported by contemporaneous time records except in the "rarest of cases"); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (same).

For the reasons noted below, Mr. Morel submits that Ms. Hoffman's record keeping does not meet either the federal standards (thereby prejudicing her former client's claim for attorney's fees against AFP and Getty Images) *or* the state standard for attorney's fees (thereby undermining her own claims in this Motion). As a result, Ms. Hoffman's request for relief should be denied or significantly reduced.

### 1.  Ms. Hoffman's Record Keeping Fails to Meet the Standard to Recover Fees Under the Copyright Act or the DMCA.

Ms. Hoffman concedes that she did not keep contemporaneous records of her own attorney time devoted to Mr. Morel's case. (10/3/14 Hoffman Decl. ¶ 36.) Rather, she claims she "use[d her] best efforts to calculate and reconstruct" the hours expended on Mr. Morel's matter from "time-stamped" documents generated on her computer, her "computer directory," and her "email database and the documents and letters attached thereto." (*Id*. ¶¶ 35-36.) These documents may be "time-stamped" in the sense that Ms. Hoffman's computer shows a corresponding date and time that each was created or sent, but Ms. Hoffman does not – and cannot – claim that they substantiate the amount of time that she reasonably worked on any given task.

Importantly, as an experienced attorney and "prominent copyright lawyer" (*id*. ¶ 17), Ms. Hoffman should be well aware that recovery of attorney's fees in this Circuit, and under the Copyright Act in particular, require that she kept contemporaneous time records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987). Ms. Hoffman should also be aware that "where adequate contemporaneous [time]

records have not been kept, the court should not award the full amount requested." *Id.*; *see also Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 841 (2d Cir. 1993) (same). Ms. Hoffman, therefore, should not be permitted to recover her fees – or a significant portion of them – from Mr. Morel when her admitted failure to keep adequate records has prevented Mr. Morel from seeking the same fees from AFP and Getty Images under section 505 of the Copyright Act.

> **2.     Ms. Hoffman's Record Keeping Fails to Meet the New York State Standard to Recover Fees Under Section 475.**

Ms. Hoffman's "reconstructed" records are similarly insufficient under Section 475 as they are vague, inconsistent, and largely indecipherable. Ms. Hoffman identified 446 hours expended in 2010 (*see* 10/3/14 Hoffman Decl., Ex. 12), but she failed to provide any descriptions of her work that year. Ms. Hoffman claimed that she devoted 80 hours to "legal services" on Mr. Morel's case in 2011, but she provided only one single-sentence, bare-bones description of such services. (*Id*. at Ex. 12 (describing "legal services" as "*inter alia* meetings with client, research for discovery dispute memos, letter motions, review of 15,000 documents").) The narratives submitted of the Hoffman Law Firm's "professional services rendered" in 2011 (1) lack corresponding time references and (2) were actually drafted by a legal assistant in 2013, presumably when she was hired after Ms. Hoffman's discharge and in anticipation of her claim for a charging lien. (*See* Declaration of Adalene Minelli, dated Oct. 4, 2014, ¶ 4.) "[E]ven if contemporaneous records are not required, this court cannot rely on an admittedly speculative, reconstructed hourly bill to set compensation." *Gen. Star Indem. Co. v. Custom Editions Upholstery Corp.*, 940 F. Supp. 645, 653 (S.D.N.Y. 1996); *see also Schafrann v. Karam*, No. 01 Civ. 0647, 2003 WL 289620, at *6 (S.D.N.Y. Feb. 10, 2003), *aff'd*, 81 F. App'x 391 (2d Cir. 2003) (same).

The Motion also claims almost 200 hours *more* than Ms. Hoffman previously asserted in the Withdrawn Motion.  The increasing amount of hours further undermines Ms. Hoffman's credibility.  At best, Ms. Hoffman's "records" are a speculative estimation of her time worked and do not satisfy either the federal or New York standard.  Accordingly, a significant across-the-board reduction of Hoffman's claimed hours is warranted here.  *See, e.g.*, *Pilitz v. Inc. Vill. of Freeport*, 762 F. Supp. 2d 580, 584 (E.D.N.Y. 2011) (denying a charging lien where it was "impossible for the Court to evaluate the reasonable value of the Gold Firm's services since counsel failed to provide the Court with contemporaneous time records"); *Dweck Law Firm v. Mann*, No. 03 Civ. 8967, 2004 WL 1794486, at *3 (S.D.N.Y. Aug. 11, 2004) (reducing attorney's claimed fees by 25% for lack of adequate records supporting attorney's claim); *D'Jamoos v. Griffith*, No. 00 Civ. 1361, 2008 WL 2567034, at *5 (E.D.N.Y. 2008) (reducing attorney's claimed fees by 15% "to account for the uncertainty arising from [discharged attorney]'s lack of documentation"), *aff'd*, 340 F. App'x 737, 742 (2d Cir. 2009).

### E.    The Court Should Consider Funds Ms. Hoffman Retained or Previously Received.

Ms. Hoffman wholly fails to account for the approximately $310,540 that she retained or previously received from settlements with ABC, CBS, CNN, and the Washington Post.[7]  (*See* Part F, *supra*.)  Indeed, Ms. Hoffman failed to provide *any* evidence of the compensation she already received from her representation of Mr. Morel.  Rather, she contended only that her claimed number of reasonable hours "do[] not include *time* for ABC, CBS, and CNN."  (*See* 10/3/14 Hoffman Decl. ¶ 66 (emphasis added).)  The amount of Ms. Hoffman's charging lien should be further reduced for this additional reason.  *See Sutton*, 462 F.3d at 161.

---

[7]    A portion of these funds – as much as $76,455 – may have been for reimbursement of costs incurred by Ms. Hoffman, but specifically how much is not clear from the documents submitted.  (*See* Part F, *supra*.)

## CONCLUSION

For the foregoing reasons, Defendant and Counterclaim Plaintiff Daniel Morel respectfully requests that this Court deny Ms. Hoffman's application in its entirety or, in the alternative, fix Ms. Hoffman's charging lien in an amount substantially reduced from her contingency percentage, in an amount that is fair and equitable to Mr. Morel.


Dated:  New York, New York
        October 31, 2014                    Respectfully submitted,


                                   By:  _____/s/ Joseph T. Baio_____
                                        Joseph T. Baio
                                        jbaio@willkie.com
                                        Roger Netzer
                                        rnetzer@willkie.com
                                        Teri M. Seigal
                                        tseigal@willkie.com
                                        Alison R. Levine
                                        alevine@willkie.com

                                        WILLKIE FARR & GALLAGHER LLP

                                        787 Seventh Avenue
                                        New York, New York 10019
                                        (212) 728-8000

                                        *Counsel for Defendant and Counterclaim
                                        Plaintiff Daniel Morel*